UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*****************************************

KIMBERLY BACHIOCCHI, *
                                          *
            Plaintiff,        *        CIVIL ACTION No. 3:02CV908(CFD)
                                          *
     v.                     *
                                          *
SOUTHERN NEW ENGLAND    *        April 16, 2004
TELEPHONE COMPANY,       *
                                          *
            Defendant.      *
*****************************************

# PLAINTIFF'S MEMORANDUM  IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

BRIEF BACKGROUND OF THIS CASE

Plaintiff, Kimberly Bachiocchi, is an employee of the Southern New England Telephone Company ("SNET").  She commenced her employment in 1984 and has continued to work for SNET to the present day.  In or about June, 1998 Plaintiff transferred into a new position working for a group headed by an individual named Kevin West (the "West Group").  After a relatively short time SNET experienced a strike and Ms. Bachiocchi was reassigned to strike duty.

As events developed in 1999, and especially during the first half of 2000, Ms. Bachiocchi came to experience unpleasantness in her workplace.  As a result of these events Plaintiff went on a medical leave, received extensive counselling from a

ARGUMENT REQUESTED/
TESTIMONY NOT REQUIRED

psychologist, suffered emotionally and incurred damages.  In this suit she alleges that she was a victim of discrimination, sexual harassment and retaliation.

Discovery is near its conclusion.  Plaintiff has disclosed her treating physicians and has signed a medical records authorization (the "authorization") providing for release of all medical records back to July 1, 1999.  The authorization was prepared by SNET's counsel and was signed by Plaintiff in blank and in the form presented without any change.

In its motion to compel, the subject of the instant argument, Defendant seeks to compel Plaintiff to sign an authorization allowing access for her medical records back to 1982, a period of over 22 years.

FACTS RELEVANT TO THE INSTANT MOTION

In its motion, Defendant makes reference to Interrogatory response 9 from Plaintiff dated in April, 2003.  Specifically, Defendant notes that Plaintiff interposed no objection to Interrogatory 9 which sought disclosure of treating physicians for a period back to 2 years prior to commencement of Plaintiff's employment.  The circumstances which ultimately led to Plaintiff's failure to perfect a technical objection to this Interrogatory are set forth in Counsel's affidavit, submitted herewith.  Gillespie Affidavit at ¶¶ 5-9.

Initially, Plaintiff disclosed only her internist and her psychologist both having treated her for the injuries sustained.  Gillespie affidavit, ¶9.  Thus, even absent a proper objection to the broadly worded Interrogatory, it was clear that Plaintiff intended a less invasive disclosure than what was sought.  Although Defendant expressed general dissatisfaction with Plaintiff's disclosure, no specific item or issue was raised until Plaintiff's deposition on May 12, 2003.  Gillespie Affidavit at ¶10.

DISCUSSION OF PLAINTIFF'S MEDICAL TREATMENT

At Plaintiff's deposition, conducted on May 12, 2003 Ms. Alexander enquired as to Plaintiff's care-givers for a five year period.  Ms. Alexander then began to enquire as to the specifics of Plaintiff's treatment with her Ob-Gyn.  Discussion between counsel ensued.  Ms. Alexander explained her view as to why an enquiry beyond the two immediate, treating physicians was appropriate.  Excerpts from the deposition are attached hereto as Exhibit A.  Ex A at Tr. 81-83.

This was the first occasion that Defendant explained a rationale for seeking disclosure of Plaintiff's overall medical history *within a five year time frame* as noted above.  Defendant's exploration of Plaintiff's medical history then continued unobstructed, with Ms. Alexander continuing to explore a five year period.  Ex A at Tr. 88 at L. 12-13; Tr. 121 at L. 15

Ms. Alexander also enquired about any psychological or psychiatric counseling. With respect to this subject, however,  she did not limit herself to a five year time frame.   Again Plaintiff co-operated and allowed Ms. Alexander's enquiry to proceed unimpeded.  Ex A at Tr. 94-95.

Following conclusion of the deposition on that date, there was some discussion in which Ms. Alexander asked for identification of the doctors discussed.  Plaintiff had already represented that she would supply the name of the psychiatrist from whom treatment had been sought more than five years earlier.  Ex A at Tr  94.  Following the closing of the record we agreed to provide additional information as well.  Gillespie Affidavit at ¶13.

Another matter was also discussed at the conclusion of Plaintiff's deposition on May 12, 2003.  Ms. Alexander caused a new medical records authorization (the "authorization") to be prepared.  She asked counsel to have Plaintiff sign it.  It was perfectly clear from the circumstances that this authorization would be used for the doctors who had been discussed that day.  On its face, the authorization was limited to records from July 1, 1999 to the present.  I retained the proposed authorization for later review and action.  Gillespie Affidavit at ¶19.

In the early evening of May 14, 2003 I met with Ms. Bachiocchi.  We began a review of her care-givers.  At that time she executed the authorization which had been

prepared by Ms. Alexander.  It was executed in the same format and containing the same terms which had been given to us by Ms. Alexander.  On its face, as noted above,  the authorization was limited to records from July 31, 1999 and later.

Seven days after our discussion at the close of the deposition, by letter of May 19, 2003, Plaintiff disclosed 14 doctors with whom she had treated in the last five years.  This, of course, was consistent with the time period utilized by Ms. Alexander in her questioning of Plaintiff.  Gillespie Affidavit at ¶15.

Ms. Cannavino responded by letter, also of May 19, 2003.  She then renewed Defendant's request for 22 years of disclosure.[1]  Gillespie Affidavit at ¶ 15 and Ex B. Surprised by Defendant's insistence the undersigned spoke with Defendant's counsel. Enquiry was made as to why the Defendant would not accept disclosure for five years past, consistent with the enquiries made by Ms. Alexander at the deposition.  Plaintiff's view was reiterated noting that the extensive time period demanded by the Interrogatory was overbroad, burdensome, irrelevant and intrusive.  Defendant's counsel was concise in response: Interrogatory 9 had sought 22 years; No objection

---

[1]Ms. Cannavino also refers to an earlier  letter of May 13.  My copy of that letter has a facsimilie transmission header indicating that it was sent on May 16, 2003.  This minor discrepancy in dates is not meaningful as I did not return to my own office until Monday, May 19, 2003 in any event.  When I saw Ms. Cannavino's earlier letter on that Monday, I assumed it was a mistake in light of the deposition questioning and the time limited authorization.  Not until receiving the letter of May 19 did I realize that Defendant

had been interposed; Defendant wanted what it asked for.  Gillespie Affidavit at ¶16.

No rationale was stated; no authority was cited.

Rather than become mired in a discovery dispute, Plaintiff acceded to

Defendant's demand and produced additional information, identifying care-givers for

the entire time period sought.  Gillespie Affidavit at ¶17.  Plaintiff assumed that if there

was any physician of particular interest, like Dr. Kligfield the earlier treating

psychiatrist, for example,  Defendant would discuss it with Plaintiff.[2]

The issue of the time-limited authorization was not discussed again until it

arose between the parties on February 25, 2004.

Late in the day on February 24, 2004 Defendant transmitted by telecopier three

subpoenae directed to three of Plaintiff's presumed care-givers.  The circumstances

concerning these subpoenae are set forth in the Gillespie Affidavit at ¶¶23-29.  The

subpoenae sought extensive production of _original_ documents to be made at Tyler

Cooper's New Haven office on very short notice.  I initiated a conversation with Ms.

Cannavino on February 25, 2004 concerning these subpoenae.

In our discussions, Plaintiff noted that two of the doctors had already supplied

---

was persisting in its demand for 22 years of disclosures.

[2]In fact, Defendant's counsel did discuss Dr. Kligfield with the undersigned.  He was initially reluctant to release records.  At Defendant's request Plaintiff and her counsel intervened.  Thereafter the records were disclosed.  Gillespie Affidavit at ¶32.

records and one of those two had been previously deposed by Ms. Cannavino.  The short time frame allowed for production and the lack of any time limitation were also raised as issues in this conversation.  Gillespie Affidavit at ¶24.

Ms. Cannavino said that she wanted <u>all</u> records, not just those from July, 1999 as provided in the authorization.  With respect to the short  time frame involved, Ms. Cannavino stated that she wanted to get it done by the end of the month.  I was somewhat taken aback by this response and expressed surprise.  Ms. Cannavino then explained  that under the current scheduling order discovery was to close at the end of February.  While that was true, I reminded her in turn that by motion dated February 24, 2004 she had sought an extension of that deadline and that the extension itself was unopposed.  We then went on to discuss the time limitation of the authorization. Gillespie Affidavit at ¶25.

It was in this conversation on February 25, 2004 that, <u>*for the first time*</u>, any claim was raised that the limitation date of July 1, 1999 had been inserted into the authorization in error.  I said that I thought it was completely appropriate.  Ms. Cannavino enquired as to why I would have such a view.  I explained how the release was prepared by Ms. Alexander and presented to us on the same day that she had been limiting her questioning, except for psychological records, to a period of five years.  Ms. Cannavino challenged me, noting that with the initial set of Interrogatory

answers in April, 2003, the Plaintiff had signed an authorization without a date

limitation.  I agreed, but noted that at the time, Plaintiff had identified only her treating

internist and her treating psychologist.  It was for "such doctors" that the original

authorization had been provided.  Only after Ms. Alexander's questioning at Plaintiff's

deposition, and counsel's explanation of her legal theory, did Plaintiff understand that

a broader enquiry among many of Plaintiff's care-givers might be allowable.  Under

these circumstances, the time limited authorization, as drafted by Tyler Cooper, also

was appropriate.

In addition, I noted that the July 1, 1999 date preceded the onset of Plaintiff's

psychological treatment by almost one year.  The only response which I recall from

Ms. Cannavino was that Plaintiff had identified 22 years of doctors in her Interrogatory

responses without interposing an objection and therefore the Defendant should get an

authorization for all of those records  - -  without any time limitation. I disagreed.

Gillespie Affidavit at ¶26.

It now seems that Defendant seeks to exploit Plaintiff's failure to initially raise a

technically proper objection and expand it, claiming that somehow disclosure of the

names of treating physicians gives rise to an inalienable right to see their records in all

cases and without any time limitation.  Plaintiff disagrees.  In her view, the parties

discussed this issue and resolved it with the execution of the authorization proposed

by Defendant's counsel.

ARGUMENT

I.    Defendant's Motion Is
      Procedurally Defective.

      A.   Defendant's Motion Lacks the Necessary Certification.

      With respect to this motion, one assumes that Defendant is complaining of an

alleged failure to execute a medical records authorization in response to Request No.

12 of Defendant's Second Request for Production, Cannavino Affidavit at Ex. K.

Alternatively, Defendant may be seeking to rely on Interrogatory 9 of Defendant's First

Set of Interrogatories initially answered on April 17, 2003 and supplemented on May

19, 2003, May 27, 2003 and June 10, 2003.  In either case, this motion is governed by

Fed. R. Civ. P. 37(a)(2)(B) which governs disputes where a party is alleged to have

failed to answer an Interrogatory.  The rule requires, in part, as follows:

>           The motion must include a certification that the movant has
>           in good faith conferred or attempted to confer with the
>           person or party failing to make the discovery in an effort to
>           secure the information or material without court action.

It does not appear that any certification has been presented with the motion, although it is acknowledged that the Cannavino affidavit make reference to most of the interactions between the parties. However, Plaintiff believes that the motion is defective for reasons beyond mere format.

The actual nature of the relief being sought by Defendant is not entirely clear. On one hand, they seek a medical records authorization for a virtually unlimited period of time which can then be used to access irrelevant medical records which are remote in time and unrelated to this dispute. On the other hand, Defendant complains that it cannot obtain current medical records with the existing release. Defendant motion at ¶22. These two issues are distinctly different.

Plaintiff believes that her current treatment for thyroid cancer is irrelevant and has stated her position. Nevertheless, if Defendant wishes to test the relevance of this treatment, it has an existing authorization fully suitable for the purpose. If the real concern is the willingness of a physician with current records to honor an authorization signed last year, that issue could have been easily addressed and resolved, but Defendant never raised it. Gillespie Affidavit at ¶32.

In fact, Plaintiff's counsel sent a letter stating the belief that the parties were to confer further with respect to the issue of the authorization. He offered to discuss it during a telephone call on February 26, 2004, but Ms. Cannavino had another

commitment.    Finally, Plaintiff's counsel requested that Ms. Cannavino telephone him during the week of March 1, 2004, but no call ever came.  Gillespie Affidavit at ¶28.  If, in whole or in part, Defendant's concern was the need for a newly executed  - **but not broader** - release, it failed in making an effort to resolve that issue.

B.  Defendant Failed to File a Brief in Support of this Contested Motion.

Local Rule 7(a)(1) provides that motions involving disputed issues of law shall be accompanied by a memorandum of law.  Again, it is conceded that at ¶26 of its motion Defendant includes two case citations for the general proposition that medical records are discoverable in sexual harassment cases.  However, there is no disagreement among the parties with respect to that proposition.

Plaintiff has already co-operated with Defendant by executing a broad authorization for all of her medical records back to July 1, 1999.  The issue to be determined on this motion is the extent to which, if at all, still broader discovery is appropriate.  Today Defendant seeks 22 years of Plaintiff's most personal records.  Plaintiff files this brief to establish that such an intrusion is overbroad.

II. Defendant's Motion Seeks
   Intrusive Discovery of Otherwise
   Privileged Medical Records.

*Conn. Gen. Stat*. §52-146c provides that communications between a patient and a

psychologist are privileged. _Conn. Gen. Stat_. §52-146d and 52-146o provide similar privileges for communications between a patient and a psychiatrist or medical doctor, respectively. The privilege is deemed waived, however, where an authorization for release of records is given by the patient, _Conn. Gen. Stat_. §52-146e, or in civil litigations where "the patient introduces his mental condition as an element of his claim," _Conn Gen. Stat_. §52-146f(5).

These statutory provisions show the sensitivity of medical records and the framework constructed to protect them while also accommodating the needs of a Defendant to properly construct a defense. Clearly there is a balancing to be undertaken between the extent to which Plaintiff has put her mental condition at issue and the boundaries of relevance within which Defendant may be permitted access. _See generally_, 27 C.J.S., Discovery §84. In Connecticut, the burden of establishing that justice requires disclosure rests with the party seeking it. _Cabrera v. Cabrera_, 23 Conn. App. 330, 339 (1990).

Plaintiff believes that Defendant does not establish that there is any relevant reason to support Defendant's demand for the expanded authorization being sought. The primary thrust of Defendant's motion is that Plaintiff disclosed the names of all care-givers she could identify for a period covering the last 22 years. Therefore, _ipso facto_, Defendant should have ready, easy access to <u>all</u> of her records. Plaintiff rejects that

argument, most especially in light of the circumstances surrounding the initial response

to the Interrogatory.  In apparent acknowledgment that such a gambit is not sufficient,

Defendant tries to come up with a few extra reasons as to why the additional

authorization will be necessary or relevant.  See Defendant's motion at ¶26.  Those

reasons, however, also fail to hold up under scrutiny.

In the motion, at ¶26 Defendant makes cavalier reference to the partial removal of Plaintiff's cervix.  That procedure was performed by Dr. Tirado, Plaintiff's Ob-Gyn who has been disclosed and has already supplied records for the relevant period.  The particular condition arose in 2001 at a time within the coverage of the previously executed authorization. Ex A at Tr. 84.  Further there is no allegation by Defendant that there was any psychological counseling or depression relating to this condition, nor, in fact, was there any.

In ¶26 it is recited that Plaintiff had a lump in her breast which made her "scared and nervous."  Well, what woman would not be scared and nervous?  Defendant fails to report that upon examination the lump turned out to be non-cancerous and that no further treatment was needed.  There was no surgery, not even a biopsy.  Ex A at Tr. 85-86.

In ¶26 Defendant mentions a possible diagnosis of lupus, but again neglects to mention that a diagnosis of lupus was ruled out shortly thereafter. Ex A Tr. 91

In ¶26 a reference to marriage counseling is included.  But nowhere does Defendant acknowledge that this was for an extremely limited number of visits, Ex A Tr. 95, that Plaintiff resolved this issue at the time and it has not recurred, Ex A Tr. 96.  Neither does Defendant acknowledge that the treating physician's records have been sought by Defendant and obtained.  So why do they need another release for this issue ?

The workers compensation injury referred to in ¶26 occurred *after* Plaintiff left the West Group in 2001, Ex A at Tr. 109, at a time when Dr.

Zachariah testified that Plaintiff was significantly improved.  Further, these records, if they are relevant, are within the time frame for which Plaintiff has already executed a release ?  So why does this incident give rise to the need for a new release?

Defendant then turns to Plaintiff's family history in ¶26, noting, *inter alia*, that her brother is troubled.  If this is the standard, then Bill Clinton and Jimmy Carter, both of whom had problematic siblings, should have been clinically depressed.

We must note that Defendant does not link a single item from this serial list of random incidents to clinical depression, ongoing treatment, or any other indicator which might make them relevant, as opposed to merely embarrassing for Plaintiff to endure.

Similarly, in ¶1 of its motion Defendant includes brief serial reference to a few unpleasant incidents which Plaintiff encountered over the 20 years that she has spent at SNET so far.  However, Defendant's deposition excerpts, Cannavino Affidavit, Ex A, appear to some of the relevant transcript pages which show that Plaintiff never reported these isolated, infrequent incidents, Tr. 25 at L. 23; Tr. 26* at L. 5 - 7; Tr. 37 at L. 14-15; Tr. 44* at L. 16 - 18; Tr. 49* at L. 24 - 25.  or that in one case the issue came to light only afer she had been sought out by a SNET EEO investigator who asked about the conduct of a specific individual, Tr. 27* at L. 10-13, **after someone else had registered a complaint.**

In <u>Kelly v. Giguere</u>, et al., CV-99 69450 (Dec, 19, 2000) Judge Sferraza applied the teaching of Connecticut's statutes.  A copy of the <u>Kelly</u> decision is attached for ease of

reference.  The Plaintiff's mental condition was in issue based upon claims of depression, mental anguish and distress of the mind resulting from a car accident. Plaintiff opposed a demand for the records of her treating psychiatrist.  In resolving this issue the Court stated:

> Certain records pertain to communications made in 1984. These communications are highly sensitive and bear little on the issues of the present litigation concerning the aftermath of the motor vehicle accident in 1997.  Allowing disclosure of

\*  INDICATES A TRANSCRIPT PAGE NOT INCLUDED IN DEFENDANT'S EXHIBIT.

> such communications which are remote in time and relevancy would unnecessarily undermine the confidence the plaintiff placed in her psychiatrist.
>
> The remaining records  . . . . deal with the consequences of the motor vehicle accident and the communications contained in them connect directly to the validity and extent of the plaintiff's claims of injury to her mental state.

The Court then ordered the release of records dating from 1999, a time <u>after</u> the accident which gave rise to the injury.   The Court reached this conclusion notwithstanding  Plaintiff Kelly's claim that the accident aggravated a pre-existing propensity to migraine headaches.

In _Posey v. Calvert County Bd of Educ_., 20 IER Cases 51 (D. Md. 2003), a case cited by Defendant, Judge Nickerson carefully analyzed the relevancy of the records sought.

He noted that Plaintiff had testified to a history of using anti-depressants prior to the rise of the alleged emotional harms there in question, as well as an abusive relationship with her alcoholic ex-husband.  Further the records sought to be shielded from disclosure in _Posey_, were those of the very physicians who treated Plaintiff for the depression at issue in that case.  In this case, those are the very type of records which have already been released.

The second of the two cases cited by Defendant, _EEOC v. Grief Brothers Corp._, 218 F.R.D. 59 (W.D.N.Y. 2003) concerns a plaintiff who testified in deposition that he had a long, documented history of depression and had been treated for it since his teenage years.  The Plaintiff also admitted that depression ran in his family, that his brother and cousin committed suicide and that he himself had twice attempted to take his own life, most recently less than a year before commencing his employment.  Based upon these extraordinary facts the Court ordered the production of medical records going back to 1994.  This was a time five years prior to the onset of the mental anguish complained of in that case in which the events at issue took place in 1999.  The time period specified by the Court was a total of 9 years from the date of the decision.  So based upon the extraordinary history of that plaintiff, circumstances not present here, the discovering party received less than one-half of the durational sweep sought by SNET.

In the instant matter there is no dispute that SNET has received all of the treatment

notes from Plaintiff's psychologist, all records of any and all past psychological and/or psychiatric counseling, and the records of her internist.  Nor is there any denial of the fact that Plaintiff co-operated in authorizing the release of all medical records back to July 1, 1999, the durational limit selected by Defendant.

In *Josephs et al. v. Oliver*, 48 A.D.2d 688, 367 NYS 2d 836 (1975) the Plaintiff sued for medical malpractice arising from improper treatment of a cardiac condition.  The Defendant sought specific medical records relating to a cardiac procedure conducted 10 months prior to the injury at issue, apparently in an effort to determine if there was a re-existing condition.  In reasoning analogous to the mental status cases, the Court concluded that the earlier records were sufficiently related to the alleged physical impairment that discovery was reasonable.

In the instant case Plaintiff was co-operative with Defendant and answered questions at her deposition with respect to the entire range of medical treatment which she had received for a period of five years.  She executed an authorization for all medical records back to July 1, 1999.  She discussed all psychological and/or psychiatric counseling which she had received without any limitation in time.  And when Dr. Kligfield was reluctant to disclose his psychiatric records, Plaintiff intervened.  Plaintiff can see no reasonable relevance to support wholesale disclosure of all medical records for a 22 year period.

In *Broderick v. Shad*, 7 Fed. Rules Serv 3rd, 1275 (D. DC 1987) Plaintiff brought an employment discrimination suit.  She alleged, in part, that due to her work environment she had suffered severe psychological stress, recurring headaches and insomnia. Defendant sought to discover all of her medical records from 1975 to the date of the hearing, 1987.  Plaintiff objected on the ground that she had waived privilege only for underline relevant medical evidence and, in light of the fact that she had not sought or received any medical treatment for the for the conditions set forth in the Complaint, there were none.  The Court agreed, stating:

> [S]he has only waived her privilege regarding medical records that could fairly be considered within the scope of ¶80 of the complaint [which detailed her injury claim].

> [W]e deny as irrelevant and intrusive defendant's motion to compel a wholesale investigation of plaintiff's medical history over the last 11 years.

In the instant case plaintiff has received treatment relating to the events complained of herein, has disclosed it, and has authorized release of all medical records relating to it, as well as the release of all medical records  since July 1, 1999.  Further all of her psychological records have been released, some apparently as the result of her own intervention.  In her view, that is enough.

By its renewed effort to obtain a newly executed overbroad release for a period of 22 years, Defendant repudiates the release which it drew up itself.  It seeks to do so because, it claims, that the date limitation included therein was a clerical error.  However, that claim raises more questions than answers.

> If the release was in error, why was the deposition questioning specifically focused on a maximum five year period ?

> If the release was in error, why did that go for so long without detection ?  The release was sent 26 times to 26 doctors.  Cannavino Affidavit at ¶11.  Did no one at Tyler Cooper look at what they were sending out ?

> If the release was in error, why was that error not mentioned in either Ms. Cannavino's letters of February 25, 2004 or March 29, 2004 ?

In fact there was no error.  After Ms. Alexander explained her legal theory on May 12, 2003, Plaintiff agreed to a field of disclosure broader than that which she had anticipated at first.  Defendant, by its own writing, the authorization, agreed to seek records from July 1, 1999 forward.  Plaintiff did not fail to execute an appropriate release  - -  she signed the one she had been given and which was appropriate to the circumstances and legal arguments then being discussed.


CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that Defendant's motion be denied.  Plaintiff also respectfully requests that the Court protect her from

the unreasonably broad disclosure being sought and that  she be awarded her fees and costs on this motion as sanctions pursuant to Fed. R. Civ. P. 37(A)(4)(B).

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the forgoing was transmitted by first class post this 16th day of April, 2004 to the following:

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901