UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*****************************************
KIMBERLY BACHIOCCHI, *
                         *
          Plaintiff,     *      CIVIL ACTION No. 3:02CV908(CFD)
                         *
     v.              *
                         *
SOUTHERN NEW ENGLAND     *      April 17, 2004
TELEPHONE COMPANY,       *
                         *
          Defendant.     *
*****************************************

# MEMORANDUM  IN SUPPORT OF PLAINTIFF'S
# MOTION TO COMPEL

BRIEF BACKGROUND OF THIS CASE

Plaintiff, Kimberly Bachiocchi, is an employee of the Southern New England Telephone Company ("SNET").  She commenced her employment in 1984 and has continued to work for SNET to the present day.  In or about June, 1998 Plaintiff transferred into a new position working for a group headed by an individual named Kevin West (the "West group").  After a relatively short time SNET experienced a strike and Ms. Bachiocchi was reassigned to strike duty.

As events developed in 1999, and especially during the first half of 2000, Ms.

ARGUMENT REQUESTED

Bachiocchi came to experience unpleasantness in her workplace.  As a result of these events Plaintiff went on a medical leave, received extensive counselling from a psychologist, suffered emotionally and incurred damages.  In this suit she alleges that she was a victim of discrimination, sexual harassment and retaliation.

Discovery is near its conclusion.  Plaintiff has some remaining discovery issues which do not appear to be subject to resolution through mutual discussion, notwithstanding that Plaintiff's counsel has made good faith efforts to so so.

In her motion to compel, filed on even date herewith, Plaintiff seeks to compel disclosure of 3 documents or classes of materials which are pertinent to her claims.

FACTS RELEVANT TO THE INSTANT MOTION

Plaintiff was first assigned to work in the group headed by Kevin West (the "West group") at SNET's Elizabeth Street facility in or about June, 1998.  Not too long after she started that assignment SNET's bargaining unit personnel engaged in a job action.  She was then put on temporary assignment for a period of approximately 8 weeks.  After that I returned to my work at the West group and continued to work there, subject to a medical leave, until on or about June 22, 2001.  Bachiocchi Affidavit at ¶4.

While Plaintiff  worked in the West group, she became familiar with the use of

an office document generally referred to as the sign-out log.   Bachiocchi Affidavit at

¶5.  The log listed the names of the individuals assigned to the West Group.  It is

arranged in a grid-work graphic form  showing the workers' names in a column on the

left-hand margin and the business days, Monday to Friday along the top of the form.

This arrangement provided a rectangular space for each listed employee for each day

of the week.  If an individual is going to be out of the office for more that a short time

or a regular break, that individual is to note on the sign-out log where they would be.  If

the sign-out log was left blank, it signified that the employee has not "signed-out" and

therefore was in the office.  Bachiocchi Affidavit at 6; Gillespie Affidavit at Ex. E at Tr.

93-94.

In using the sign-out log employees of the West group were to note where they

would be when they were away from the office so that if they were needed for some

reason they could be located.  Employees were also to use this form to note if they

were going to be out on vacation, out for compensatory time, at seminars, at client

meetings, at job sites and the like.  Bachiocchi Affidavit at 7; Gillespie Affidavit at Ex. E

at Tr. 94.

The sign-out log is the only contemporaneous record keeping device utilized by

the West group at the Elizabeth Street facility to establish who is present in the office

and who is not.  The sign-out log was in use throughout the time that Plaintiff was

assigned to work with the West group at the Elizabeth Street facility.  The way that the sign-out log was to be utilized was explained to Plaintiff when she was first assigned to  the West group.  Richard Light, Plaintiff's  immediate boss, and Kevin West, Light's boss, told her about the sign-out log, how it worked, and how important it was. The importance of keeping the sign-out log accurately was stated to Plaintiff on many occasions throughout the time that she was assigned to work with the West group. Bachiocchi Affidavit at ¶8.

The sign-out log was maintained on a shelf affixed to the outside of the cubical occupied by the office administrator, Carol Stanevich.  All of the sign-out log sheets were maintained in a three ring binder.  As each week concluded, the completed sheet would be flipped up and a new sheet would then be utilized for the next week. Completed log sheets were simply kept in the three ring binder for safe keeping. Bachiocchi Affidavit at ¶9.

The Complaint describes Plaintiff's effort to conclude her medical leave and return to work in January, 2001.   Complaint ¶¶27 - 29.  On January 18, 2001 Plaintiff was to go to work at the West group for one day to re-acclimate herself before returning on a regular basis.  This effort was frustrated, however, because every other regular employee who normally works at that location was out of the office.

Plaintiff asked Mr. West where everyone was on that day in January and he

told her that it was quite a common occurrence at that time due to the press of business for everyone to be out.  Bachiocchi Affidavit at ¶11.   Another  SNET employee, Lorraine Mattei, addressed the absence of employees in the Elizabeth Street facility on January 18, 2001.  She wrote a letter, identified by Mr. West at his deposition, Gillespie Affidavit, Exhibit E at Tr. 91 and PX-KW-20.   Ms. Mattei noted, in part:

> [T]he work environment in Ms. Bachiocchi's work group is one in which most employees are out at customer premises and job sites most of each day.  As mentioned above there are very few people who are usually in the office on any given day   .    .    .    .

Mr. West testified that Lorraine Mattei got this information from him.  Gillespie Affidavit, Exhibit E at Tr. 92 at L. 7-8.  Based upon her own observations, Plaintiff does not believe that this explanation is true.  Bachiocchi Affidavit at ¶11.

On the last day that Plaintiff worked with the West group she stopped by Carol Stanevich's work area.  This would have been on or about June 22, 2001.  Plaintiff saw that the three ring binder within which the sign-out logs were maintained was still there.  As a curiosity she looked at the binder on that day.  It had all of the sign-out log sheets, week by week, going back to at least 1998.  The binder was a thick book, perhaps four or five inches wide and it appeared to be about half full.  Bachiocchi

affidavit at ¶12.

Plaintiff filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities on June 12, 2001.  In that charge at ¶¶10 - 12 allegations are made which are substantially similar to ¶¶27-29 of the Complaint in this matter.  In the Charge of Discrimination at ¶15 Plaintiff specifically stated, inter alia, that "I strongly believe that Mr. West lied to me about the reason for emptying out the office on January 18."  Bachiocchi affidavit at ¶13.

Plaintiff's administrative charge had been signed on Friday, June 8, 2001 prior to its filing.  On that date a copy of the covering letter and Charge were sent to SNET's attorney, Carole F. Wilder, Esq.  Gillespie Affidavit at ¶9, Exhibit F.  This certainly was sufficient to put Defendant on notice that the sign-out logs would be of significant and material evidentiary value.

Mr. Manouse testified as to the sign-out log, as follows:

Q.  Back in '98 and '99 did you have to make any notation when you came to the office.

A.  We have one of those sign-in and sign-out books.

Q.  Okay.  And is that book still kept today ?

A.  Yes, it is.

Q.  And has it been, as best you are aware in continuous use since Kim first started there in 1998 ?

\*                    \*                    \*

A.  Yes, it has been.

Gillespie Affidavit, Exhibit D, Tr. 46 at L. 8 - 18

THE EQUAL PAY CLAIM

At Count Five of the Complaint, ¶¶53-55, Plaintiff asserts an equal pay claim. Plaintiff believes that she was given less in pay, compensation and benefits than men who were employed to do comparable work.  We have sought discovery from SNET about the pay and benefits of others, Gillespie Affidavit, Exhibit A at request No. 6. However, Defendant has not been very forthcoming, producing only one single page document in response.  Bachiocchi Affidavit at ¶15.

A single sheet in a spreadsheet format was produced and identified at the deposition of Laurie Moffett as Plaintiff's Exhibit LM-3.  Gillespie Affidavit, Exhibit C at Tr. 95 - 96.  It really doesn't reveal usable information.  For example, it has no information of any type as to the merit ratings given to the men working in the group. When Plaintiff joined the West group she was listed as meeting expectations and later, her rating was improved.  Bachiocchi Affidavit at ¶15.  Were men treated in the same way?  Plaintiff's - LM - 3 does not enlighten us on that subject.

After Plaintiff's return from medical leave, her merit rating was reduced to merely meeting expectations.  Gillespie Affidavit, Exhibit E at Tr. 36.  Were men treated the same way ?  PX - LM -3 does not inform us on this subject.  There are similar questions about salary progression which cannot be determined from the broad, non-specific overview presented in PX-LM-3.  Bachiocchi Affidavit at ¶15.

Much, if not all, of SNET's payroll records, as well as other records, is computerized, organized, and readily accessible.  For example, each employee receives their compensation ratings and payments by email on a monthly basis. Bachiocchi Affidavit at ¶16; Gillespie Affidavit at Exhibit E, Tr. 27-28.

Recently Plaintiff asked for all of her compensation ratings and payment history during the period of time that she was assigned to the West group.  The compilation was sent to me by email that same day.  Bachiocchi Affidavit at ¶16.  In a clear format the material presents the employee's merit rating and each change it undergoes, and the monetary awards which go with those ratings.  Plaintiff printed my history and it was identified by Mr. West at his deposition as Gillespie Affidavit, Exhibit E, Tr. 30, PX-KW-2.  Plaintiff believes that similar documentation is available for wage information.  Bachiocchi Affidavit at ¶16.  Ms. Moffett testified that Snet uses a standard form, known as Form 99, which forms, for any individual employee, are kept in that individual's personnel file and can be used to document wage changes.

Gillespie Affidavit, Exhibit C at Tr. 24 (Session of 9/26/03).


THE FAIELLA AND BACHIOCCHI FILES

      The Complaint has numerous allegations concerning Plaintiff's co-worker and friend, Nick Faiella.  Among other allegations concerning Plaintiff and Faiella, the Complaint refers to Rumors that she was involved with Faiella, Complaint ¶16(A); that she was having an affair with him, ¶¶16(B), 20; and that an employee was assigned to break up the Nick and Kim thing ¶25.

      At her deposition Ms. Moffett, SNET's Senior Human Resources Generalist, testified that she had possession of a Faiella file, but that it had not been produced. The file contains, inter alia, Ms. Moffett's notes of her conversation(s) with Faiella, an asset protection report and other materials.  Gillespie Affidavit at Exhibit C, Tr. 18. This file, clearly within the scope of Request numbers 1 and/or 3, has not been produced.


ARGUMENT

      Where a party fails to respond to a request for production and good faith efforts to resolve the dispute have failed, Fed. R. Civ. P. 37(a)(2)(B) provides a remedy. Generally the party seeking production has the burden of establishing that the

materials being sought are pertinent within the broad standard of discovery.  See generally, 7 Moore's Federal Practice 37.01 et seq. (Matthew Bender 3rd Ed.).

Assuming that there is a showing that the material is relevant material for purposes of discovery, production can be resisted by the party from whom discovery is sought if it can make a showing that the requirements of proportionality of relevancy have not been met.  _Fisher v. Nat'l R.R. Passenger Corp_., 152 F.R.D. 145, 148-149 (S.D. Ind. 1993).

A.  Investigations and Related Materials.  In request No 1 Plaintiff sought all reports and related materials concerning any investigation of Plaintiff's claims of discriminatory conduct.  It appears that there are two items which fall within this request.  First as set forth in Exhibit A is the complete report of Robert Ellis. Defendant represented that it would release this report, but has never done so despite repeated requests.

Further, there is Ms. Moffett's Faiella file.  Plaintiff and Faiella are clearly closely linked and associated.  It is Faiella with whom Plaintiff is alleged to have an affair, Faiella who caused SNET to break up the "Nick and Kim thing."  We believe that if there is a file concerning Nick it is inconceivable that it does not mention, or in some way, implicate Plaintiff.  For example, in production Plaintiff produced affidavits from

other employees complaining of allegedly inappropriate contact between Nick and

Kim.  If those affidavit were the subject of the Faiella file, they are clearly relevant and

Plaintiff is entitled to review the file to see what it contains.


      B.  Wage Benefit and Performance Information  In Request No. 6 Plaintiff seeks

wage, benefit and performance information concerning five individuals for a narrow

period of two years.  These individuals were her co-workers.

          Defendant objected on the timeworn ground that the request was vague,

broad, burdensome and irrelevant.   Defendant also relied on *Conn. Gen. Stat*. §31-

128a et seq.  Plaintiff believes that any such reliance is misplaced.  Plaintiff's request

clearly falls within the exception set forth in sub-section 2 of that provision.

    As set forth above, the information is clearly relevant to Plaintiff's equal pay

claim.  She has produced computerized documentation concerning her own account

showing the kind of benefit and ratings information which is easily accessible and

readily available.  There is a protective order in place which should be effective for the

protection of any individuals privacy.  Yet the Defendant has produced no useful

information.  It should now be compelled to do so.


      C.  Sign out Logs.  In Request No. 8 Plaintiff sought any logs or attendance

sheets for the Elizabeth Street facility for a narrow period of two years. We now know that at that facility, according to Mr. West, a sign-out log was maintained.

Defendant objected on the timeworn ground that the request was vague, broad, burdensome and irrelevant.   Defendant also relied on *Conn. Gen. Stat*. §31-128a et seq.   Plaintiff believes that any such reliance is misplaced.  Plaintiff's request clearly falls within the exception set forth in sub-section 2 of that provision.  It may be most important to note, however, that at no earlier time did Defendant assert that the sign-out logs cannot be found, the position which Mr. West now adopts.

As noted above, the relevance of these logs stems from Plaintiff's attempt to return to the West group for one day of reaclimation on January 18, 2001.  All of the other regular workers were gone.  SNET's stated reason for their absence was to say, in essence, it's a new tougher working environment and the office will often be empty.  Plaintiff never observed that claim to be true.  In fact, she suspects that it is a complete red herring.  The sign-out logs would give both parties a documentary trail through which they could determine if the stated reason put forth by both Mr. West and Ms. Mattei is accurate.

Mr. West says that the logs cannot be found.  However, this makes no sense.  When Plaintiff was assigned to the West group he and others frequently stressed the importance of the logs.

How could such an important document be lost?

The log was at the Elizabeth Street facility and complete in late June, 2001.  Mr. Manouse testified that it had been in constant use and that it was still in use.  When did it come to be misplaced?

In light of the fact that the log had always been maintained in a three ring binder, how did it - or a portion of it - come to be misplaced.

If the log is truly lost, how was Defendant able to produce one page of the log, and why was it Bates' stamped D000049 as though it was part of a series?

More importantly, Plaintiff signed an affidavit of discrimination which was transmitted to the CCHRO with a covering letter of June 8, 2001.  A copy of those materials was sent to Carole F. Wilder, Esq., SNET's attorney.  In light of the allegations in that charge, SNET had to know that the sign-out log was an important piece of evidence.  On or about June 22, 2001 Plaintiff verified that the sign-out log was still at the Elizabeth Street facility, just as it had been throughout her assignment there.  She looked through it and determined that it was complete as far back as 1998.  How then could this log have been "lost."

Plaintiff respectfully asks that the Court reject the cavalier attitude that Plaintiff has to troll though SNET's employees until she finds a witness with knowledge of what

happened to the log.  We respectfully ask that SNET be encouraged to make a further good faith effort to find the complete log for the time period sought.  Alternatively, Plaintiff asks that a negative inference be drawn from SNET's failure to produce the log.


CONCLUSION


   For all the reasons set forth above, Plaintiff respectfully requests that Defendant's motion be denied.  Plaintiff also respectfully requests that the Court protect her from the unreasonably broad disclosure being sought and that  she be awarded her fees and costs on this motion as sanctions pursuant to Fed. R. Civ. P. 37(A)(4)(B).


                                        THE PLAINTIFF
                                        KIMBERLY BACHIOCCHI



                              By: _____
                                        Peter E. Gillespie (ct06554)
                                        46 Riverside Drive
                                        P. O. Box 3416

Westport, CT 06880
Tel: (203) 227-7000
Fax:(203) 454-5508
Email:petelaw@attglobal.net

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the forgoing was

transmitted by first class post this 17th day of April, 2004 to the following:


Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901


_____

Peter E. Gillespie