UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI, * | | |
| * | | |
| Plaintiff, * | CIVIL ACTION No. 3:02CV908(CFD) | |
| * | | |
| v. * | | |
| * | | |
| SOUTHERN NEW ENGLAND * | April 17, 2004 | |
| TELEPHONE COMPANY, * | | |
| * | | |
| Defendant. * | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT OF KIMBERLY BACHIOCCHI IN SUPPORT OF PLAINTIFF'S'S MOTION TO COMPEL

I, Kimberly BACHIOCCHI, being duly sworn, depose and state as follows:

1.  I am over 18 years of age and I believe in the obligations of an oath.

2.  I am the Plaintiff in the above-captioned matter.

3.  This affidavit is submitted in support of Plaintiff's Motion to Compel dated April 17, 2004.

4.  I was first assigned to work in the group headed by Kevin West (the "West group") at SNET's Elizabeth Street facility in or about June, 1998. Not too long after I started that assignment SNET's bargaining unit personnel engaged in a job action and I was put on temporary assignment for a period of approximately 8 weeks. After that I

returned to my work at the West group and continued to work there, subject to a medical leave, until on or about June 22, 2001.

THE ELIZABETH STREET FACILITY SIGN-OUT LOG

5. While I worked in the West group, I became familiar with the use of an office document generally referred to as the sign-out log.

6. The sign-out log listed the names of the individuals assigned to the West Group. It is arranged in a grid-work graphic form showing the workers' names in a column on the left-hand margin and the business days, Monday to Friday along the top of the form. This arrangement provides a rectangular space for each listed employee for each day of the week. If an individual is going to be out of the office for more that a short time or a regular break, that individual is to note on the sign-out log where they will be. If the sign-out log is blank, it signifies that the employee has not "signed-out" and therefore is in the office.

7. In using the sign-out log employees of the West group were to note where they would be when they were away from the office so that if they were needed for some reason they could be located. Employees were also to use this form to note if they were going to be out on vacation, out for compensatory time, at seminars, at client meetings, at job sites and the like.

8. So far as I am aware the sign-out log is the only contemporaneous record keeping device utilized by the West group at the Elizabeth Street facility to establish who is present in the office and who is not. The sign-out log was in use throughout the time that I was assigned to work with the West group at the Elizabeth Street facility. The way that the sign-out log was to be utilized was explained to me when I was first assigned to the West group. I believe that both Richard Light, my immediate boss, and Kevin West, Light's boss, told me about the sign-out log, how it worked, and how important it was. The importance of keeping the sign-out log accurately was stated to me on many occasions throughout the time that I was assigned to work with the West group.

9. The sign-out log was maintained on a shelf affixed to the outside of the cubical occupied by the office administrator, Carol Stanevich. All of the sign-out log sheets were maintained in a three ring binder. As each week concluded, the completed sheet would be flipped up and a new sheet would then be utilized for the next week. Completed log sheets were simply kept in the three ring binder for safe keeping.

10. My Complaint details my effort to conclude my medical leave and return to work in January, 2001. Complaint ¶¶27 - 29. On January 18, 2001 I was to go to work at the West group for one day to re-acclimate myself before returning on a

regular basis. This effort was frustrated, however, because every other regular employee who normally works at that location was out of the office.

     11. I asked Mr. West where everyone was on that day in January and he told me that it was quite a common occurrence at that time due to the press of business. Another SNET employee, Lorraine Mattei, addressed the absence of employees in the Elizabeth Street facility on January 18, 2001. She wrote a letter, identified by Mr. West at his deposition, PX-KW-20. Ms. Mattei noted, in part:

> [T]he work environment in Ms. Bachiocchi's work group is one in which most employees are out at customer premises and job sites most of each day. As mentioned above there are very few people who are usually in the office on any given day . . . .

I do not believe that this is true. When I did return to work in May, 2001 I was able to observe the office routine for myself and these comments were not accurate at that time. While I do not know for certain, I do not believe Ms. Mattei's comments were ever accurate. Seeing this, I made a copy of the sign-out log for the week of January 16-19, 2001.

     12. On my last day assigned to the West group I stopped by Carol Stanevich's work area. This would have been on or about June 22, 2001. I saw that

the three ring binder within which the sign-out logs were maintained was still there.  As a curiosity I looked at the binder on that day.  It had all of the sign-out log sheets, week by week, going back to at least 1998.  The binder was a thick book, perhaps four or five inches wide and it appeared to be about half full.

13.    I filed a Charge of Discrimination with the Connecticut Commission on Human Rights and Opportunities on June 12, 2001.  In that charge at ¶¶10 - 12 allegations are made which are substantially similar to ¶¶27-29 of the Complaint in this matter.  In the Charge of Discrimination at ¶15 I specifically stated, inter alia, that "I strongly believe that Mr. West lied to me about the reason for emptying out the office on January 18.

THE EQUAL PAY CLAIM

14.    At Count Five of my Complaint, ¶¶53-55, I assert an equal pay claim.  I believe that I was given less in pay, compensation and benefits than men who were employed to do comparable work.  We have sought discovery from SNET about the pay and benefits of others, but have received only one document of which I am aware.

15.    A single sheet in a spreadsheet format was produced and identified at the deposition of Laurie Moffett as Plaintiff's Exhibit LM-3.  It really doesn't tell us

much of anything. For example, it has no information of any type as to the merit ratings given to the men working in the group. When I joined the West group I was listed as meeting expectations and later, my rating was improved. Were men treated in the same way?

Then, after my return from medical leave, my rating was reduced to merely meeting expectations. Were men treated the same way ? There are similar questions about salary progression which cannot be determined from the broad, non-specific overview presented in PX-LM-3.

16. Much, if not all, of SNET's payroll records, as well as other records, is computerized, organized, and readily accessible. For example, each employee receives their compensation ratings and payments by email on a monthly basis. Recently I asked for my compensation ratings and payment history during the period of time that I was assigned to the West group. The compilation was sent to me by email that same day. In a clear format the material presents the employee's merit rating and each change it undergoes, and the monetary awards which go with those ratings. I printed my history and it was identified by Mr. West at his deposition as PX-KW-2. I believe that similar documentation is available for wage information.

I have read the foregoing affidavit and I swear that it is true to the best of my

knowledge and belief.

_____
Kimberly Bachiocchi

Subscribed and sworn to before
me this     day of April, 2004.


_____
Peter E. Gillespie
Commissioner of the Superior Court

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the forgoing was transmitted

by first class post this 17th day of April, 2004 to the following:

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901

_____                    Peter E. Gillespie