UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV908(CFD) |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| Defendant. | : | MAY 3, 2004 |

## AFFIDAVIT OF DEBORAH DEHART CANNAVINO IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL A COPY OF PLAINTIFF'S STATEMENT

I, Deborah DeHart Cannavino, being duly sworn, hereby depose and say:

1.    I am over 18 years of age and believe in the obligation of an oath.

2.    I have personal knowledge of the facts set forth in this affidavit, and the facts are true and accurate to the best of my knowledge and belief.

3.    I am an attorney at Tyler Cooper & Alcorn and I represent the defendant Southern New England Telephone company in this matter.

4.    On February 6, 2003, defendant served a Second Request for the Production of Documents on the plaintiff. A true and complete copy of the Production Request is attached hereto as Exhibit A.

5.   On April 2, 2004, plaintiff served Objections and Responses to the Defendant's First Request for the Production of Documents. A true and complete copy of the Objections are attached hereto as Exhibit B[1].

6.   Plaintiff attached a Privilege Log to the Objections stating that certain information was being withheld on the basis of attorney client privilege. A true and complete copy of the Privilege Log is attached hereto as Exhibit C.

7.   On or about June 3, 2003, I discussed with plaintiff's attorney the Objections and the Privilege Log. At that time, I informed him that the Privilege Log did not comply with the Local Rules. Plaintiff's counsel appeared to agree and stated that he would "clean it up." To date, no supplemental privilege log has been produced.

8.   On April 6, 2004, I wrote plaintiff's attorney a letter seeking the production of two items on her Privilege Log, (1) plaintiff's log/diary, and (2) the draft statement submitted to Mr. Ellis. A true and complete copy of my letter is attached hereto as Exhibit D.

9.   On April 12, 2004, plaintiff's attorney responded. A true and complete copy of his letter is attached hereto as Exhibit E.

---

[1]  Please note, however, that because some of plaintiff's responses to other Requests disclose medical information, those pages have been redacted. They have no bearing on the issue before the court at this time.

10.    As set forth above and in the attached letters, I have made good faith attempts to resolve this

discovery dispute without the intervention of the court. However, I have been unable to do

so because plaintiff has refused to provide a copy of her draft statement to the investigator,

Mr. Ellis.

_____

Deborah DeHart Cannavino  (CT  08144)


STATE OF CONNECTICUT  )
COUNTY OF FAIRFIELD    )        ss: Stamford, Connecticut

    Personally appeared, Deborah DeHart Cannavino, who swore to and subscribed the above
affidavit before me, this 1st day of May, 2004

_____

Notary Public/~~Commissioner of the Superior Court~~

**MICHELLE A. VILLEGAS**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2008

3

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 3rd day of May, 2004:

Peter E. Gillespie, Esq.
46 Riverside Avenue
P.O. Box 3416
Westport, CT 06880

_____
Deborah DeHart Cannavino

4

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIMBERLY BACHIOCCHI

      Plaintiff,

v.

SOUTHERN NEW ENGLAND
TELEPHONE COMPANY

      Defendant.

CIVIL ACTION NO.
3:02CV908(CFD)

FEBRUARY 6, 2003

## DEFENDANT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant, The Southern New England Telephone Company, ("Defendant"), requests that plaintiff Kimberly Bachiocchi, ("Plaintiff"), provide legible copies of all of the documents requested herein to be delivered to the offices of Tyler Cooper & Alcorn, LLP, 1 Landmark Square, Stamford, Connecticut 06901–2501, within thirty (30) days from the date of certification of service of the Defendant's First Request for the Production of Documents to Plaintiff.

## I. INSTRUCTIONS

In response to these requests, you shall furnish all information available to you, including information in the possession of your attorneys, agents and investigators and all persons acting on your behalf, and not merely such information known of your own personal knowledge. If you cannot respond to these requests in full after exercising due diligence to secure the information requested, you shall so state and answer to the extent possible, specifying the nature of your inability to fully comply.

Questions regarding the interpretation of the requests should be resolved in favor of the broadest possible construction.

The requests which follow are to be considered as continuing, and you are requested to provide, by way of supplementary responses thereto, such additional information as you or any persons acting on your behalf may hereafter obtain which will augment, clarify, or otherwise modify the responses now given. Such supplementary responses are to be filed and served upon counsel within thirty (30) days after receipt of such information or documents.

If any document or file demanded herein or any document formerly contained in a file is no longer in your possession, custody or control, identify the file or document and the reason for loss of possession, custody or control.

-2-

## II. DEFINITIONS

Pursuant to Local Rule 39 and Fed. R. Civ. P. 34(a), these terms have the meanings indicated:

1.   *Communication.*  The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.   *Document.*  The term "document" includes writings, drawings, graphs, charts, photographs, phonorecords, tape and other electronic recordings, computer files and other data compilations from which information can be obtained and translated, if necessary, by the respondent through detection devices into reasonably useful form.  Each original, draft and nonidentical copy (including any with handwritten or other notations) is a separate "document" within the meaning of this term.

3.   *Identify (with respect to persons).*  When referring to a person, "identify" means to provide, to the extent known, (1) the person's full name, (2) present or last known address, and (3) when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

-3-

4.    *Identify (with respect to documents)*. When referring to documents, "identify" means to provide to the extent known information about the (1) type of document; (2) its general subject matter; (3) the date of the document; and (4) author(s), addressee(s) and recipient(s).

5.    *Parties*. The term "plaintiff" and "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.    *Person*. The term "person" means any natural person or any business, legal or governmental entity or association.

7.    *Concerning*. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8.    *All/Each*. The terms "all" and "each" shall both be construed as all and each.

9.    *And/Or*. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

10.    *Number*. The use of a singular form of any word includes the plural and vice versa.

11.    *You*. The term "you" refers to plaintiff, Kimberly Bachiocchi.

-4-

## III. DOCUMENT REQUESTS

<u>Request No. 1.</u>     All documents reviewed or relied upon in answering Defendant's First Set of Interrogatories to Plaintiff dated February 6, 2003.

<u>Response:</u>

<u>Request No. 2.</u>     Any and all documents concerning your allegations in paragraph 10 that plaintiff progressed through a variety of positions during her employment at SNET; that in each of these positions she was assigned to work with a group of co-workers who predominantly were male; that plaintiff always accepted these placements and did not have any difficulty functioning in these assignments; and that plaintiff received annual reviews that were positive and encouraging and was given wage increases.

<u>Response:</u>

<u>Request No. 3.</u>     Any and all documents concerning your allegations in paragraph 11 that in or about June, 1998 plaintiff accepted a new position as Analyst-Technical Sales Support; that she was assigned to work out of the SNET facility at 90 Elizabeth Street, Derby, Connecticut reporting to Richard Light, Engineering Manager; and that a portion of her working time was to be spent outside of the SNET facility while working at customer locations.

<u>Response:</u>

-5-

Request No. 4.    Any and all documents concerning your allegations in paragraph 12 that Nick Faiella, a SNET managerial employee, was also assigned to work at the Elizabeth Street facility, having been assigned to that location before plaintiff received her own assignment and that plaintiff had known Faiella from some of her earlier job placements and considered him to be a mentor and friend.

Response:

Request No. 5.    Any and all documents concerning your allegations in paragraph 13 that when plaintiff first began her assignment at Elizabeth Street, Faiella was out on sick leave; that when he returned he was assigned to manage many of the jobs which were assigned to plaintiff and that plaintiff and Faiella had frequent work-related meetings at customer work sites.

Response:

Request No. 6.    Any and all documents concerning your allegation in paragraph 14 that in or about June, 1999 plaintiff had a question concerning her compensation and she called the payroll department; and that Kevin West, Manager of the Elizabeth Street facility, spoke to plaintiff within a few days after she had made this inquiry and told her that she should not make calls concerning her payroll issues but should come to see him directly.

-6-

Response:

Request No. 7.     Any and all documents concerning your allegation in paragraph 15 that in October, 1999 plaintiff called Human Resources concerning continuing problems with the lack of heat in the Elizabeth Street facility; and that within a few days Mr. West took plaintiff aside and instructed her not to make calls to other SNET departments or locations concerning her working conditions; that he told her that she should not call payroll; and she should not call human resources; and that by continuing to involve others she was jeopardizing herself in her employment.

Response:

Request No. 8.     Any and all documents concerning your allegation in paragraph 16 that throughout the Spring of 2000 plaintiff was subjected to a hostile sexual environment.

Response:

-7-

<u>Request No. 9.</u>    Any and all documents concerning your allegation in paragraph 17 that plaintiff thought that Vallerio was offering to make the office environment easier for her if she would spend some time with him.

<u>Response:</u>

<u>Request No. 10.</u>    Any and all documents concerning your allegation in paragraph 18 that plaintiff also saw that her supervisors treated her differently than the manner in which they interacted with her co-workers who were male.

<u>Response:</u>

<u>Request No. 11.</u>    Any and all documents concerning your allegation in paragraph 19 that in March 2000, during an office meeting, plaintiff confronted Light about some of the above stated issues; that when there was no constructive response plaintiff asked, "what do you think the EEOC would think of this office?"

<u>Response:</u>

-8-

Request No. 12.   Any and all documents concerning your allegations in paragraph 20 that after the conversation referred to in paragraph 17 of the Complaint, SNET management at the Elizabeth Street facility continued to maintain the alleged hostile environment of the office, continued to engage in references to her affair with Nick Faiella and also began to retaliate against plaintiff for her views.

Response:

Request No. 13.   Any and all documents concerning your allegations in paragraph 21 that on or about April, 2000, SNET managers from the Elizabeth Street office started making visits to jobs to which plaintiff had been assigned to work and that plaintiff was repeatedly confronted with incorrect and baseless critisims.

Response:

Request No. 14.   Any and all documents concerning your allegations in paragraph 22 that in or about April, 2000, Carl Lortenzen, an engineering employee, was assigned to oversee and review plaintiff's jobs; that Lortenzen frequently followed plaintiff in her work, spoke to her customers behind her back, and spoke critically about her and her work to others.

Response:

<u>Request No. 15.</u>   Any and all documents concerning your allegations in paragraph 23 that Lortenzen was extremely critical of plaintiff's work; that he never asked plaintiff what she had done or why she had done something before he criticized her; and that he sometimes couldn't wait to voice his criticisms and on some occasions criticized her publicly.

<u>Response:</u>

<u>Request No. 16.</u>   Any and all documents concerning your allegations in paragraph 24 that on or about May 15, Lortenzen and plaintiff met at the Elizabeth Street facility and discussed some of the allegedly unfair criticisms Lortenzen had made and that when plaintiff went to get some paperwork that he had requested, Lortenzen left the office without concluding the exchange.

<u>Response:</u>

<u>Request No. 17.</u>   Any and all documents concerning your allegations in paragraph 25 that plaintiff followed Lortenzen to the Wendy's restaurant around the corner from the Elizabeth Street facility and confronted him; that Lortenzen stated that he had been instructed to find and document everything that was wrong with plaintiff's jobs and was assigned to break up the "Nick and Kim thing"; and that Lortenzen stated that he got these instructions form the higher-ups in the office.

<u>Response:</u>

-10-

Request No. 18.   Any and all documents concerning your allegations in paragraph 26 that plaintiff went out on medical leave and was treated for depression and stress which resulted from the conduct described above.

Response:

Request No. 19.   Any and all documents concerning your allegations in paragraph 27 that plaintiff's doctor suggested that she should return to work with some form of preparation; that the doctor contacted SNET and arranged for plaintiff to report to work for one day on January 18, 2001, and that the purpose of this day was to allow plaintiff to become re-acclimated and then report on a regular, full-time basis beginning the next week.

Response:

Request No. 20.   Any and all documents concerning your allegations in paragraph 28 that when plaintiff returned to the office on January 18, 2001, the only other regular full-time employee in the office was Kevin West; that every other regular employee who normally works in that location was scheduled to be out of the office on that day for the entire day; that in plaintiff's experience of 18 months or more in the Elizabeth Street facility this had never happened; and that, when she inquired, West told her that it was quite a common occurrence as of that time due to the press of business.

-11-

Response:

Request No. 21.    Any and all documents concerning your allegations in paragraph 29 that on January 18, 2001, there were no other regular full time employees present in the office for plaintiff to speak with; that plaintiff asked Mr. West if there were any changes in the office and was told that he would discuss this with her only after she had returned to full-time employment; that she was given no assignment; and that for most of the day she simply read her mail and then a book.

Response:

Request No. 22.    Any and all documents concerning your allegations in paragraph 30 that as a direct result of an allegedly intimidating atmosphere, plaintiff regressed in her condition and continued care with her treating professional.

Response:

Request No. 23.    Any and all documents concerning your allegations in paragraph 31 that plaintiff did return to regular full-time employment on or about May 15, 2001; and that SNET,

-12-

through its supervisory and managerial employees, continued to discriminate and retaliate against plaintiff.

Response:

Request No. 24.   Any and all documents concerning your allegations in paragraph 32 that plaintiff made a complaint to Human Resources; and that in response to her complaint SNET started an investigation using an individual named Bob Ellis.

Response:

Request No. 25.   Any and all documents concerning your allegations in paragraph 33 that plaintiff met with Ellis two times; that on the first occasion time was not sufficient to complete the conversation; that Ellis asked plaintiff to prepare a written statement; that plaintiff gave her statement to Ellis on the second occasion that they met; that on this second occasion, other than small talk, Ellis did not speak with plaintiff; that he asked for the statement and read her entire written statement; and that when Ellis was done reading, he asked plaintiff two questions: (1) if she was married and (2) why she called Nick Faiella instead of her husband on the occasion that Mr. West allegedly grabbed her wrist.

Response:

-13-

Request No. 26.   Any and all documents concerning your allegations in paragraph 34 that no disciplinary action was taken against Mr. West.

Response:

Request No. 27.   Any and all documents concerning your allegations in paragraphs 40, 44, 48 and 52 that defendant SNET was aware that the conduct of its supervisors and managerial employees was a violation of federal law, but did not make a good faith attempt to comply with the laws against discrimination on the basis of sex and hence displayed reckless indifference to the rights of plaintiff.

Response:

Request No. 28.   Any and all documents concerning your allegations in paragraph 53 that during her employment at the Elizabeth Street facility, plaintiff was given less pay, compensation and benefits than defendant SNET afforded to men employed to do work which was comparable to, the same as, or substantially the same as work being performed by plaintiff.

Response:

-14-

Request No. 29.    Any and all documents, including but not limited to, notes, diaries, appointment books, personal calendars, logs, journals or tape recordings prepared, maintained or obtained by you concerning your employment with defendant and/or the subject matter of this litigation, through the time of trial.

Response:

Request No. 30.    Any and all diaries, calendars, appointment books and any other scheduling and memorializing materials you used from 1998 to the present.

Response:

Request No. 31.    Any and all documents concerning your job performance, including but not limited to, disciplinary warnings, counseling notices, performance appraisals and other such documents.

Response:

-15-

Request No. 32.    Any and all logs, documents, notes or other writings taken by you or others related to your feelings that you were discriminated against or otherwise treated unfairly during your employment at SNET, from the beginning of your employment with the company to the present.

Response:

Request No. 33.   Any and all documents which relate to or reflect any conversation between or among you and any other employee or former employee of defendant, regarding any matter at issue in this litigation.

Response:

Request No. 34.   All written statements rendered by persons that you may call as a witness in the trial of this matter.

Response:

-16-

Request No. 35.  All reports rendered by experts who have been contacted and/or retained for this litigation by you and/or your representative(s).

Response:

Request No. 36.  All drafts of reports rendered by experts who have been contacted and/or retained for this litigation by you and your representative(s).
Response:

Request No. 37.  Any and all documents sent to, received from, reviewed by, or relied upon by any experts who have been contacted and/or retained for this litigation by you or your representative(s).

Response:

Request No. 38.  Any and all documents you may introduce as exhibits or part of exhibits at the trial of this matter.

Response:

Request No. 39.    Any and all documents reflecting the number of hours worked, a description of the work, and the rate charged by each attorney and paralegal of plaintiff's counsel for which plaintiff will seek attorneys' fees as alleged in the complaint.

Response:

Request No. 40.    Any and all documents which support your alleged entitlement to an award of punitive damages.

Response:

Request No. 41.    Any and all documents which support your claim that you have suffered damages as a result of defendant's conduct.

-18-

Response:

Request No. 42     Any and all documents submitted to or received from the Connecticut Commission on Human Rights and Opportunities (Case Nos. 0130048, 0130598 and 0130268) and the Equal Employment Opportunities Commission (Case Nos. 16AA03399, 16AA13352 and 16AA13095). In addition, please complete and sign the Authorization attached as Exhibit A.

Response:

Request No. 43.     Any and all documents concerning your claim that you have suffered emotional pain, suffering, inconvenience and loss of enjoyment of life.

Response:

-19-

    <u>Request No. 44.</u>    Any and all documents provided to Bob Ellis, the investigator who investigated your complaint.

<u>Response</u>:

    <u>Request No. 45.</u>    Any and all documents concerning, evidencing, or memorializing the investigation conducted by Mr. Ellis, including but not limited to hand written notes.

<u>Response</u>:

    <u>Request No. 46.</u>    Any and all documents which relate to any claims you have made for government assistance, including, but not limited to, Unemployment Compensation, Workers' Compensation or disability insurance, since the beginning of your employment with SNET.

<u>Response</u>:

<u>Request No. 47.</u>     Any and all documents concerning any communications, whether written or oral, with any representative of defendant, including but not limited to Mr. West, Mr. Ellis, Mr. Lortenzen, Mr. Faiella or Mr. Vallerio, concerning the terms and conditions of your employment or any of the allegations contained in the Complaint.

<u>Response</u>:

<u>Request No. 48.</u>   Any and all documents concerning your claims of retaliation.

<u>Response</u>:

<u>Request No. 49.</u>     Any and all documents that constitute, refer to, or relate to any communication(s) that you have had with any person other than your attorney concerning this lawsuit or any matter encompassed by the Complaint.

<u>Response</u>:

Request No. 50.    Any and all documents concerning your claim that defendant violated the Equal Pay Act, 29 U.S.C. §206(d).

Response:

Request No. 51.    Copies of your tax returns including, without limitation, your federal and state income tax returns and W-2 Forms, for the years 1982 through the time of trial.  In addition, please execute the IRS authorization attached as Exhibit B.

Response:

Request No. 52.    Any and all documents, that in any way discuss or relate to any treatment, care, or consultation you sought or received from any health care provider, institution, or counselor, including any documents you sent to or received from any health care provider, institution, or counselor, and any records or notes, and reports of any health care provider or institution, including but not limited to hospitals, mental health care providers or facilities, doctors, psychologists, physical or mental therapists or religious or other counselors, for the period from 1982 through the time of trial.

-22-

Response:

THE DEFENDANT,
SOUTHERN NEW ENGLAND
TELEPHONE COMPANY

By: _____
Deborah DeHart Cannavino  (CT 08144)
TYLER COOPER & ALCORN, LLP
One Landmark Square
Stamford, CT  06901-2501
Telephone: (203)348-5555
Fax: (203) 348-3875
Cannavino@TylerCooper.com

-23-

## AUTHORIZATION FOR CONNECTICUT COMMISSION ON
## HUMAN RIGHTS AND OPPORTUNITIES RECORDS

Date:_____

To:    State of Connecticut
        Commission on Human Rights and Opportunities
        55 West Main Street
        Waterbury, Connecticut  06702

       I hereby request and authorize you to furnish Tyler Cooper & Alcorn, LLP c/o Deborah DeHart Cannavino, One Landmark Square, Stamford, Connecticut 06901-2501, or its representative or agent, with a complete copy of my entire files at the Connecticut Commission on Human Rights and Opportunities, file numbers 0130598 and 0130048, including, but not limited to all exhibits, transcripts, decisions, motions, correspondence, videotapes, tape recordings, or any other documentation of any kind whatsoever which relates to my charge of discrimination. Please submit a letter, under oath, that the information provided represents a complete and accurate duplicate of all of the original documents found in the above-referenced file.

       A photocopy of this authorization shall be considered as effective and valid as the original.

Signed_____
             Kimberly Bachiocchi

-24-

Form **4506**
(Rev. May 1997)

Department of the Treasury
Internal Revenue Service

# Request for Copy or Transcript of Tax Form

▶ Read instructions before completing this form.

▶ **Type or print clearly. Request may be rejected if the form is incomplete or illegible.**

OMB No. 1545-0429

Note: ***Do not use this form to get tax account information. Instead, see instructions below.***

| 1a  Name shown on tax form. If a joint return, enter the name shown first. | 1b  First social security number on tax form or employer identification number (see instructions) |
|---|---|
| 2a  If a joint return, spouse's name shown on tax form | 2b  Second social security number on tax form |

3   Current name, address (including apt., room, or suite no.), city, state, and ZIP code

4   Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

5   If copy of form or a tax return transcript is to be mailed to someone else, enter the third party's name and address

6   If we cannot find a record of your tax form and you want the payment refunded to the third party, check here . . . . . ▶ ☐

7   If name in third party's records differs from line 1a above, enter that name here (see instructions)▶

8   Check only one box to show what you want. There is no charge for items 8a, b, and c:

a ☐ Tax return transcript of Form 1040 series filed during the **current calendar year and the 3 prior calendar years** (see instructions).

b ☐ Verification of nonfiling.

c ☐ Form(s) W-2 information (see instructions).

d ☐ Copy of tax form and all attachments (including Form(s) W-2, schedules, or other forms). **The charge is $23 for each period requested.**
   Note: *If these copies must be certified for court or administrative proceedings, see instructions and check here* . . . . ▶ ☐

9   If this request is to meet a requirement of one of the following, check all boxes that apply.
   ☐ Small Business Administration   ☐ Department of Education   ☐ Department of Veterans Affairs   ☐ Financial institution

| 10   Tax form number (Form 1040, 1040A, 941, etc.) | 12   Complete only if **line 8d** is checked. Amount due: | |
|---|---|---|
| | a  Cost for each period . . . . . . . | $ **23.00** |
| 11   Tax period(s) (year or period ended date). If more than four, see instructions. | b  Number of tax periods requested on line 11 | |
| | c  Total cost. Multiply line 12a by line 12b . | $ |
| | *Full payment must accompany your request. Make check or money order payable to "Internal Revenue Service."* | |

**Caution:** *Before signing, make sure all items are complete and the form is dated.*

I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. I am aware that based upon this form, the IRS will release the tax information requested to any party shown on line 5. The IRS has no control over what that party does with the information.

|  | | | Telephone number of requester ( ) |
|---|---|---|---|
| **Please Sign Here** | Signature. See instructions. If other than taxpayer, attach authorization document. | Date | Best time to call |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | | **TRY A TAX RETURN TRANSCRIPT** (see line 8a instructions) |
| | Spouse's signature | Date | |

# Instructions

*Section references are to the Internal Revenue Code.*

**TIP:** If you had your tax form filled in by a paid preparer, check first to see if you can get a copy from the preparer. This may save you both time and money.

**Purpose of Form.**—Use Form 4506 to get a tax return transcript, verification that you did not file a Federal tax return, Form W-2 information, or a copy of a tax form. Allow 6 weeks after you file a tax form before you request a copy of it or a transcript. For W-2

information, wait 13 months after the end of the year in which the wages were earned. For example, wait until Feb. 1999 to request W-2 information for wages earned in 1997.

**Do not** use this form to request Forms 1099 or tax account information. See this page for details on how to get these items.

**Note:** *Form 4506 must be received by the IRS within 60 calendar days after the date you signed and dated the request.*

**How Long Will It Take?**—You can get a tax return transcript or verification of nonfiling within 7 to 10 workdays after the IRS receives your request. It can take up to 60 calendar

days to get a copy of a tax form or W-2 information. To avoid any delay, be sure to furnish all the information asked for on Form 4506.

**Forms 1099.**—If you need a copy of a Form 1099, contact the payer. If the payer cannot help you, call or visit the IRS to get Form 1099 information.

**Tax Account Information.**—If you need a statement of your tax account showing any later changes that you or the IRS made to the original return, request tax account information. Tax account information lists

*(Continued on back)*

**For Privacy Act and Paperwork Reduction Act Notice, see back of form.**   Cat. No. 41721E   Form **4506** (Rev. 5-97)

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 6th day of February, 2003:

Peter E. Gillespie, Esq.
46 Riverside Avenue
P.O. Box 3416
Westport, CT 06880

Deborah DeHart Cannavino

-25-