UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KIMBERLY BACHIOCCHI,      \*

                                   \*

           Plaintiff,     \*      CIVIL ACTION No. 3:02CV908(CFD)

                                   \*

      v.                  \*

                                   \*

SOUTHERN NEW ENGLAND    \*      May 6, 2004
TELEPHONE COMPANY,       \*

                                   \*

           Defendant.    \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S OBJECTION TO DEFENDANT'S
## MOST RECENT MOTION TO EXTEND DISCOVERY

Plaintiff objects to Defendant's most recent motion, dated May 3, 2004, seeking yet another extension of discovery in this matter.  Plaintiff disputes many of the factual assertions set forth therein, and also maintains that Defendant's difficulty, if any, results from a lack of earlier diligent effort.

PRELIMINARY MATTERS

A.  Defendant Understates the Number of Earlier Extensions.  Defendant has sought extensions of pre-trial discover in 10 earlier motions, and has been granted, a total of 341 days in extensions.  A tabulation of these earlier requests is set forth on Schedule A, attached hereto.  The current motion **is Defendant's 11th attempt** to seek an extension, **not its 8th request**, as alleged in its current motion at page 7.

   **B.  The Court Has Stated that There Will Be No Further Extension.**  In granting Defendant's request for an extension dated February 24, 2004 and seeking of 50 days the Court specifically noted that there would be no further extensions in this matter. Under these circumstances there should in fact be no further extensions, absent extraordinary circumstances not present here.[1]

   **C.  Defendant's Effort To Contact Counsel.**  Defendant asserts that it inquired of counsel but was unable to ascertain his position.  It is true that Ms. Alexander did call me at mid-day May 3, 2004 and left a brief message as to her intention to file this motion.  However, at the time she left her voicemail message, I was in a <u>deposition in this case.</u> The deposition was being conducted in West Hartford by Ms. Cannavino. So, one might assume, Ms. Alexander timed her inquiry so as to insure that I would be unavailable to respond to it.

   At the conclusion of the deposition Ms. Cannavino and I discussed a brief extension relating to Dr. Tirado's deposition and I assured Attorney Cannavino that I had no objection to that extension under the circumstances surrounding that deponent.

---

[1]
   The extension of time for Dr. Tirado was clearly an appropriate accommodation. It could have been argued that Defendant waited too long to seek her deposition. However, the Doctor had been contacted during the discovery period and was legitimately unavailable.  Defendant agreed to take the deposition immediately upon the Doctor's return.  The requested extension was for a specific, narrow purpose and for a very limited period of time.  All of these factors distinguish that request from the instant one. Plaintiff did not object to the Tirado extension.

2

Ms. Cannavino never mentioned any broader extension.  I was unaware of Ms. Alexander's message until I returned to my office and retrieved it late that day.

DEFENDANT'S INTENDED USE OF THE EXTENSION.

A.  Plaintiff's Deposition.  In its motion Defendant describes a number of discovery actions which it would like to undertake.   It now claims, for instance, that it "has not been able to complete plaintiff's deposition because of delayed or missing items of discovery."  This is a novel, but recently invented, claim by defendant. Counsel has forgotten her own earlier agreements and the history of this matter.

Plaintiff was first deposed on May 12, 2003 commencing at 2:12 pm.  The session adjourned at 4:52 pm, 2 hours, 40 minutes later.  A second session ultimately was scheduled for July 24, 2003 starting at 10:00 am.  At Ms. Alexander's request the start of the second session was delayed until Noon.

When Ms. Alexander requested the delayed opening,  I explained that the plaintiff was prepared to submit to an examination all day, but intended for this session to be the final one.  We agreed to be start at Noon, to conduct the deposition session without a break and Ms. Alexander said that she felt she would finish with the Plaintiff within that time.  The second session ran for 5 hours, 7 minutes, having commenced at 12:05pm. and ended at 5:12 pm.  Plaintiff adhered to her agreement to continue the deposition uninterrupted, but Ms. Alexander did not conclude as she had said she

3

would.  Conclude or not, Defendant's counsel never mentioned any of the concerns

which now, at the last minute, seem to weigh so heavily.

In late August, 2003 Ms. Alexander spoke with me.  She wanted to select a date

to conclude Plaintiff's deposition.  Again there was no mention of any of the recent

concerns cited in the current motion.  At the time of this request, Attorney Alexander

rejected the notion that the parties had ever agreed to any durational limit on Plaintiff's

deposition and said that she would not be bound to <u>any</u> durational limit of Plaintiff's

third deposition session.  I objected to this.

Counsel agreed that  Ms. Alexander would file a motion with the Court to

exceed the presumptive 7 hour limit of Fed. R. Civ. P. 30(d)(2), and I would promptly

file a response.  I memorialized this agreement by letter of September 4, 2003.  Ms.

Alexander acknowledged our agreement in a letter of September 15, 2004.   Copies of

the letters are attached as Exhibit A.   <u>However, Defendant never implemented our</u>

<u>agreement.</u>  <u>Defendant never honored its obligation to seek permission from the Court.</u>

**Defendant never made any further attempt to pursue Plaintiff's deposition.**

Now, at the very close of discovery, Defendant suddenly seeks to depose

Plaintiff for the third time after the passage of about 10 months from her last session.

This is nothing but a narrow partisan tactic to harass and burden Plaintiff, to make her

preparation difficult if not impossible, and to gain partisan advantage.  There was a

mechanism in place last August, memorialized in September, by which Plaintiff could

4

have been deposed if the Court would authorize it; an arrangement to which Defendant had agreed; an arrangement which Defendant, by inattention, negligence or design abandoned.

If all of that is not enough, we note that Defendant's current position is a complete reversal of its earlier posture.  In its motion Defendant seems to maintain that it needs information from treating physicians before it can depose Plaintiff.  In the past, however, Defendant has adopted the absolute mirror image of this position.    In its motion of March 11, 2003 (Doc. 15) Defendant sought an extension of time to depose Plaintiff's two disclosed experts, both of whom were her treating physicians.  The stated reason necessitating the extension was that Defendant wanted to complete Plaintiff's deposition before deposing these two treating physicians.  See Defendant's motion of March 11, 2003 (Doc. 15) at ¶1.   Today, in an effort to gain yet another extension, Defendant wants to get compete information from doctors before deposing Plaintiff.

Plaintiff has given more than 7 hours of testimony.  Discovery has closed.

B. A Contractor's Deposition.  Defendant also states that it wants to depose an independent contractor.  It has never previously noticed such a person in this case nor did it ever previously inform Plaintiff of such a desire.

Certainly Defendant knew of contractors.  They have been mentioned in numerous depositions in this case and they were the subject of discussion in both of

5

the administrative proceedings below.  But now Defendant has a sudden desire to depose one un-named such individual.  This could have been done, and should have been done, more than one year age.

C.  The Husband's Deposition.  Defendant's motion also states that now it desires to depose Mr. Bachiocchi.  As with the contractor, however, Defendant could have done this at any time.  There is no reason to extend discovery in light of Defendant's earlier inaction.

On Friday, April 16, 2004 in the early afternoon, Attorney Alexander wrote to me[2].  The text of her letter stated, in its entirety:

> I want to schedule the deposition of Ms. Bachiocchi's husband, Edward Bachiocchi, as soon as possible.  Please let me know if I should have him served with a subpoena or whether you will agree to produce him at a mutually convenient time.

This request came rather as a surprise.  Although Plaintiff has been married to the same husband throughout this litigation, Defendant had never before indicated any interest in deposing him, not even once during the 19½ months of discovery which preceded this letter.

I responded by letter of the same day, noting that I would be on vacation the week of April 19 and I was fully committed during the week of April 26.  I suggested that the

---

[2]

On its face, Attorney Alexander's letter is dated April 15, 2004.  However it was first transmitted to me by telecopier on April 16, 2004.  Both the Tyler, Cooper telecopy sheet and the machine generated header bear the date April 16, 2004.

husband's deposition take place on May 3 or May 4, subject to confirmation.

On Sunday, April 18, I left a follow-up voicemail for Ms. Alexander stating that the client was not available on May 3 or 4.  Noting that we were near the end of discovery, I offered to re-arrange my schedule and to depose the husband on Wednesday, April 28.

Ms. Alexander responded by Voicemail, received by me on Monday.  The proposed date was not good for her and she asked me to porpose another date, although she did not give me any insight into her availability.  I responded on Monday offering to change my schedule yet again and depose the husband on Thursday, April 29.  <u>Ms. Alexander never responded to this message.</u>

There was, in these voicemail exchanges, a single passing reference to the Plaintiff, contained in Ms. Alexander's single voicemail.  However, Ms. Alexander never raised any of the other "pressing concerns" cited in her motion nor did she notice Plaintiff.

<u>The Videotape</u>.  Finally at item 4 of its motion SNET alleges that it was given a blank videotape.  There is some suggestion of umbrage in Defendant's prose.  There should not be.

Counsel had viewed the videotape previously and there were images on it at the time.  This is the second time that SNET's counsel has had a problem with a video tape.  Counsel claims that the first copy that was provided to them was never received.  Now they claim that the second tape is blank.  It is especially troubling to Plaintiff that: (a) A second copy now seems to have developed a problem while under Defendant's control

7

and (b) the first notice that Plaintiff had of any problem with the videotape came to her through this motion.  The fact is that the tape supports Plaintiff and adversely impacts Defendant.  There is no purpose for Plaintiff to hide, destroy or conceal this evidence. Defendant, however, does not have the same interests.

In any event, Plaintiff also took still pictures of the same events and those still photographs have been provided.[3]  Being in hard copy, it appears that Defendant was able to handle them without incident.  That aside, while the videotape may be a preferable medium, it is cumulative of the photographs.

DEFENDANT HAS NOT USED ITS EARLIER EXTENSIONS DILIGENTLY.

Discovery has now been underway in this matter since in or about August, 2002. Thus, Defendant has had 20 full calendar months in which to pursue discovery.  In all of that time, prior to April , 2004, it issued one deposition notice for one fact witness other than Plaintiff and sought to subpoena four doctors by documents dated February 25, 2004, an effort which Defendant then abandoned as to 3 of the Doctors.

The individual fact witness was Nick Faiella.  He was noticed by both parties. Defendant did not issue any other deposition notice for any other fact witness.

The subpoenae were issued by Defendant on February 25, 2004.  On extremely

---

[3]

    In light of Defendant's disclosure, Plaintiff is seeking to ascertain whether there is yet another surviving copy of the tape still extant.  If one exists, it will be provided.

short notice, Defendant sought to obtain documents pursuant to these doctors. Plaintiff opposed three of the subpoenae. The facts concerning that exchange need not be repeated here as they are set out in the affidavit of counsel, dated April 15, 2004, submitted in opposition to Defendant's first motion to compel at ¶¶23-28 and Affidavit Exhibits B, C, E and F. It should be noted the subpoenae of February, 2004 were issued immediately prior to the then currently expiring discovery deadline. See affidavit at ¶25. The manner of the resolution of this issue is of some interest for this discussion.

I discussed these subpoenae with Ms. Cannavino and she agreed to mark them off pending our discussion. See Affidavit ¶27. I memorialized our conversation by letter dated February 25, 2004, Affidavit ¶28, Exhibit F. In my letter I noted, inter alia:
"In the next day or so you and I will discuss any possible field of agreement by which the parties might proceed on an amicable basis."

I then spoke with Ms. Cannavino on February 26, but she did not have time to discuss the subpoenae. I invited her to call me during the next week as I would be in the office all week. Following the model established by Ms. Alexander when she failed to implement her own agreement with respect to the possible continuation of Plaintiff's deposition, Ms. Cannavino did not call; she did not write. Affidavit at ¶28.

Defendant did not seek out any witnesses during March, 2004. Then Defendant filed its first motion to compel, dated April 1, 2004.

9

Other than its motions, the only recent affirmative actions which Ms. Alexander[4] has taken was to enquire as to the possible deposition of Plaintiff's husband. However, she then failed to respond when offered a possible available date.

THE ALLEGED JUSTIFICATIONS IN DEFENDANT'S MOTION ARE INSUFFICIENT.

Defendant's extension motion of May 3, 2004 is not very specific. However, if Plaintiff understands this Defendant's position properly, it begins with a reference to the recent discovery disputes between the parties, including Plaintiff's responses of March 19, 2004 and our correspondence of April 9. 2004. Yet it is clear that Defendant was aware of these issues earlier, having attached a copy of the production responses to its first motion to compel dated April 1, 2004. See Cannavino Affidavit, ¶17, Ex. K. Defendant also discussed these issues in its first motion to compel. So, as a preliminary matter, why did it wait until May 3, 2004, immediately prior to the close of discovery, to seek the Court's intervention ?

Secondly, Plaintiff believes that she is acting in good faith under the rules. It is "process" which has caused the delay on this issue, as well as Defendant's delay in bringing these matters forward more effectively and at an earlier date. The whole issue

---

4

      Ms. Cannavino has been somewhat more active in the concluding days of discovery. On July 22, 2004 she informed me that she was noticing a deposition of Psychological Health Associates for Thursday, April 29, 2004 (the same date earlier suggested to Ms. Alexander for the husband) and that she was trying to arrange the deposition of Dr. Tirado before the close of discovery. She also sought to arrange for pick-up of the video tape. Plaintiff co-operated in all three instances, notwithstanding the short notice.

in this regard relates to the Request for Production which was not served until mid-February, 2004, 18 months or so after discovery had commenced. What was Defendant waiting for ?

Defendant also makes reference to its recent, serially filed, motions to compel. It is as though Defendant believes it should be given additional time after those motions are resolved. There is no basis for any such claim. Even assuming that Defendant's motions are based upon good faith arguments, it was the Defendant which elected to wait until February 12, 2004 to serve its second request for documents. Once gain it was Defendant that delayed. It was the Defendant that created the risk which it now courts. Interestingly, at the time that request was served, discovery was scheduled to conclude on March 15, 2004. Even from the most charitable point of view, this was a last minute request.

Defendant also seems to strike a recurring, unflattering theme concerning Plaintiff's reluctance to execute a medical records authorization giving unrestricted access to all of her medical records for a period of 22 years. She is unaware of any case, including either of the two cited by Defendant, where such access was afforded. She made that good faith argument in her papers. However, when we learned on Thursday April 29 that the Court had ruled in Defendant's favor on this issue, Plaintiff acted promptly. A freshly signed release, specifying access for a period of 22 years, was executed on Monday, May 3 and delivered to Defendant's counsel by hand on that day.

11

Next, veering from the present to the past in its desperate search for good cause, Defendant belabors the procedural history of this case which was explored at length in the papers filed with respect to the first motion to compel. Defendant's motion at numbered Item 1, p.3. These events took place in the months of February through May, 200**3**. It is too bad that Defendant didn't get over it and commence its active discovery efforts then - or perhaps it did.

In the earlier motion Ms. Cannavino stated that Defendant promptly sought records from all of the doctors concerned. That was in June, 2003. Defendant utilized the release which it gave Plaintiff and which Plaintiff then signed at Defendant's request. Just exactly what bad faith did Plaintiff exhibit. When did Plaintiff's alleged failure of co-operation become so meaningful? When did Defendant's needs become so pressing ? None of those questions seem to have any clear answer in Defendant's motion. There are many allegations, but Plaintiff can find few facts.

Defendant then continues onto page 4 of its motion, hunting for good cause. It claims that Plaintiff refused to execute a new authorization to obtain records from <u>new</u> physicians. **<u>This is not true.</u>** We observed that the existing authorization covered the new physicians. No one ever told either Plaintiff or her counsel that the doctors would not honor the existing authorization. Gillespie Affidavit of April 15, 2004 at ¶¶31-33.


<u>CONCLUSION</u>

_____For all of the foregoing reasons, Plaintiff respectfully requests that the Court honor

12

its earlier admonition that no further discovery extension will be granted and deny this motion.

THE PLAINTIFF
KIMBERLY BACHIOCCHI


By: _____
Peter E. Gillespie (ct06554)
46 Riverside Drive
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax:(203) 454-5508
Email:petelaw@attglobal.net


Schedule A Defendant's Motions for Extensions of Pre-trial Deadlines

| Motion Date | Doc. No. | Time Sought |
|---|---|---|
| 1/31/03 | 12 | 60 days |
| 4/22/03 | 16 | 45 days |
| 5/28/03 | 17 | 45 days |
| 7/11/04 | 18 | 30 days |
| 9/9/03 | 21 | 30 days |
| 10/31/03 | | 30 days |
| 12/9/03 | 25 | 15 days |
| 12/30/03 | 30 | 30 days |

13

| | | |
|---|---|---|
| 2/24/04 | | 50 days |
| 4/30/04 | | 6 days as to Dr. Tirado |

Defendant's Additional Motions for Extensions of Time to Depose Experts

| | | |
|---|---|---|
| 3/11/03 | 15 | 30 days |
| 9/23/03 | 22 | 14 days |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the forgoing was transmitted by first class post this 27th day of February, 2004 to the following:


Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901



_____
Peter E. Gillespie