FILED

UNITED STATES DISTRICT COURT MAY 28 P 3: 44
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

```
*****************************************
KIMBERLY BACHIOCCHI,             *
                                 *
                Plaintiff,       *      CIVIL ACTION No. 3:02CV908(CFD)
                                 *
        v.                       *
                                 *
SOUTHERN NEW ENGLAND             *      MAY 28, 2004
TELEPHONE COMPANY,               *
                                 *
                Defendant.       *
*****************************************
```

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S THREE OUTSTANDING MOTIONS TO COMPEL

BRIEF BACKGROUND OF THIS CASE

Plaintiff, Kimberly Bachiocchi, is an employee of the Southern New England Telephone Company ("SNET"). In 1999, and especially during the first half of 2000, Ms. Bachiocchi came to experience unpleasantness in her workplace. As a result of these events Plaintiff went on a medical leave, received extensive counselling from a psychologist, suffered emotionally and incurred damages. In this suit she alleges that she was a victim of sexual harassment and retaliation.

Discovery is near its conclusion, having been frequently extended. Defendant filed three separate motions to compel on April 29, May 3 and May 4, respectively. In this memorandum and the supporting documents filed herewith, Plaintiff sets forth her opposition to these motions.

The Motion to Compel Production of a Videotape (Doc. No. 50). Plaintiff previously has produced a copy of the videotape being sought[1]. She produced another copy in response to this motion, the most recent copy having been sent by overnight mail to Ms. Alexander on May 26, 2004. Based upon these facts Plaintiff believes that this item is not at issue.

The Motion To Compel a Copy of Plaintiff's Statement (Doc. No. 62) In her Complaint ¶31(H)(vi) Plaintiff alleges that Kevin West, a managerial employee of Defendant and her supervisor, grabbed her wrist in a moment of anger and ripped a paper from her hand. Among other events which followed, Defendant assigned an individual named Robert Ellis to investigate what had occurred on this occasion.

Mr. Ellis asked Plaintiff to submit a written statement. Plaintiff was unprepared as to how she should respond to this request. She conferred with counsel. She was instructed by counsel to prepare a draft and transmit it to counsel for his review and comment. She did so. The draft statement was not sent to any other person.

---

[1]

Plaintiff produced a copy of the videotape in or about June, 2003. Defendant sought a copy by its discovery of February 13, 2004. Plaintiff responded that it had already been produced; Defendant responded that it did not have any such tape. Plaintiff co-operated, allowing Defendant to take counsel's remaining tape for copying. Thereafter Ms. Alexander asserted that the tape provided was blank, a claim now modified to state that the tape provided was in a format which could not be accessed. The tape alleged to be inaccessible has not yet been returned to Plaintiff, as promised. Plaintiff caused new copies to be made from the original and, as noted, has supplied a "vhs" format copy to Ms. Alexander on May 26.

Plaintiff and her lawyer, the undersigned, then reviewed the draft and made such revisions as they deemed appropriate. Then the statement was finalized and submitted to Mr. Ellis, as he had requested. See Bachiocchi Affidavit at ¶¶4-7.

Defendant has the statement which was submitted to Mr. Ellis. It now seeks to obtain the draft which was prepared for counsel's exclusive use at his instruction and which formed the basis for conversation between lawyer and client. Plaintiff maintains that the draft is privileged.

Where there is an expectation of confidentiality concerning a lawyer-client communication, privilege attaches. The burden to establish privilege rests with the party who seeks to assert the privilege. *U.S. v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)

In the instant matter, Plaintiff , who already had one administrative charge of discrimination pending and was considering an array of potential additional actions based upon Defendant's conduct, including West's battery of June 4, reasonably sought out the confidential advice of her attorney before returning any written statement to Mr. Ellis.

In *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D 4, 14 (D. D. C. 1991) the Court held that privilege attached to preliminary drafts of letters to be published to third parties because Coast to Coast, the party asserting the privilege, had forwarded the drafts to counsel seeking confidential advice as to the content of

3

the letters.  This seems to be on all fours with the conduct of Plaintiff in the instant matter.

In an effort to reach a contrary conclusion Defendant's seems to rely on Complaint ¶33 which states, in part: "Ellis asked Plaintiff to prepare a written statement.  Plaintiff did so and gave the statement to Ellis .   .   .   ."  Plaintiff sees no relevance in this reference.  It is completely silent as to the way in which Plaintiff went about the preparation of her statement, the very point at issue in this motion. That point is set forth with clarity in the affidavit submitted herewith and discussed above.

For these reasons Plaintiff believes that the draft statement which she prepared at counsel's instruction for his exclusive review and comment is privileged and should not be disclosed.

The Motion to Compel Production of Documents (Doc. No. 55) In the remaining motion in the set of three, Defendant seeks to compel the production of documents. At issue are a variety of personal and financial items concerning Plaintiff and others who are non-parties.  It is Plaintiff's position that with respect to most of the items sought Defendant has not established that they have any relevance; that in any event there is no proportionality to support the production of these items which are highly personal and involve others.

4

Defendant has arranged the items which it seeks to compel into four broad categories or subject areas. This makes good sense and Defendant's groupings appear to be logical. Plaintiff will accept those groupings and respond to them.

Plaintiff's Disability Documents (Request No. 12) Defendant seeks disclosure of such records as plaintiff may have as well as the execution of a an appropriate release. Plaintiff has no responsive records not previously provided and a release was promptly executed upon receipt of the Court's earlier Order (Doc. No. 48). While the circumstances are set forth more fully below, Plaintiff respectfully submits that this issue is a red herring.

A. The Authorization. In its first motion to compel Defendant sought a broader medical records release (reaching back for a period of 22 years) than had previously been executed by Plaintiff. On April 29, 2004 Defendant's counsel initiated a telephone conversation noting that Judge Smith had granted the motion and asking for the execution of a new release. Plaintiff agreed to comply. On May 3, 2004 counsel hand-delivered a newly executed medical records authorization, on a form prepared by Defendant, to Defendant's counsel.

The medical records authorization delivered to counsel on May 3, 2004 was identical to the form sought to be executed in conjunction with Request No. 12. So why is Defendant demanding that another, identical authorization be compelled ?

5

And why did Defendant seek to compel this authorization on April 30, the day following counsel's discussion of this matter and Plaintiff's acknowledgment that she would comply?

B. Documents Concerning Disability Benefits. Plaintiff believes that she has previously submitted any and all documentation which she may have. With respect to her thyroid cancer she believes that the doctors handled such documentation. In any event she has none. These comments were conveyed to Defendant during the exchange of letters between counsel.

If Defendant has some specific form of documentation in mind, it may want to clarify its request, but Plaintiff has no further documents to provide. She has delivered all of what she has, and she has authorized every doctor with whom she has treated or consulted for a period of 22 years past to open their files to Defendant. She has nothing more.

Plaintiff's Financial Records (Requests 8, 9, 13 and 14) Defendant seeks a broad and intrusive review of Plaintiff's financial records including:

- all of her family's brokerage, stock or other investment accounts for 1999-2001(Request 8);

- all bank account records from 1999-2001 (Request No.9);

- information as to you [sic] 401(k) or similar plans - no time limitation (Request No. 13); and

- all credit card statements for all accounts, including joint accounts for

6

1999-2001 (Request No. 14)

Generally, the Courts have been reluctant to order the disclosure of financial information. See 6 *Moore's Federal Practice* §26.41(8(a) and (b) (Matthew Bender 3rd Ed.) Defendant does not cite a single case on point in support of its theory that such records are relevant in this case. Moreover, Defendant's memorandum overlooks the fact that Plaintiff has already given over substantial financial information, well beyond, in her view, what Defendant could have compelled.

In response to initial discovery demands Plaintiff delivered her complete joint tax returns for 1996, 1997, 1998 1999, 2000 and 2001, a period of six years. Typically tax returns are accorded a "qualified privilege." *Gattegno v. Pricewaterhouscoopers, LLP*, 205 F. R. D. 70, 72 (D. Conn 2001); *See also, Bolick v. ALEA Group*, Civil No. 3:03CV165 (PCD) Slip Opinion Doc. No. 45. Normally the Court is reluctant to compel such disclosure, but Plaintiff acted voluntarily so as to resolve any questions quickly. Her strategy does not seem to have met with unqualified success.

In addition to demanding and receiving tax returns, Defendant had an opportunity to question Plaintiff at her deposition with respect to her financial condition.

Defendant seems to place some emphasis on the stray comments of their expert, recounting:

7

> [F]inancial difficulties are a well recognized cause of
> depression and anxiety. Based upon the extensive
> documentation reviewed by defendant's expert witness, .
> . . financial well being should be carefully examined.

Defendant's Memorandum at p. 10-11.

**Defendant's argument overlooks the fact that the expert never looked at**

**Plaintiff's tax returns** ! Dr. Kleinman did a report which included, as an appendix,

his "Sources of Data." This appendix ran for 10 complete pages and mentions many,

many documents, appearing to be in excess or 200 entries. However, he does not

ever claim to have seen, much less examined, Plaintiff's tax returns or any financial

document. No such documents are referred to in the Appendix. It is clear that his

comment as to financial concerns was nothing more than rank speculation untethered

to reality by any material fact.

In any event, Defendant already has more than sufficient material to inform it of

Plaintiff's financial condition.   To grant this further broad and intrusive view of her

financial records - -  and those which she holds jointly with others  - -  is duplicative

and burdensome.

Plaintiff's Personal and Family Materials (Request Nos. 2, 3, 4, 10 and 11).

In this area again Defendant seeks terribly intrusive and burdensome discovery. Again

8

Defendant cites no case with any specific holding, on point[1], for the specific kinds of items which it seeks.  In fact, Plaintiff believes that the items sought in this category are irrelevant and so vague as to be difficult to comprehend.

For example, Request 2 seeks any and all family photographs sent for Christmas 1999 through the present.  What does that demand include ?  A child's picture sent to a Grandparent in a holiday card; A picture of a family pet; is it limited to actual Holiday greetings fashioned from a photograph; is it limited to only photos of plaintiff, or photographs which include plaintiff; both the intended sweep of this request and its relevance, if any, are unknown.

Assuming that this request can be made to be understood, what is the relevance of such a picture, assuming that it includes the Plaintiff.  Does Defendant claim that if Plaintiff is pictured in a holiday time photograph it follows that she was not depressed, or could not have been so ?  Not even the expert who opined on the importance of finances without having seen records offers support for that conclusion. So, just what is the relevance of this request, assuming that it can be defined properly?

And, if it is relevant, how can that small relevance ever meet the test of

---

[1]

Plaintiff sought three personnel files.  As expected, Defendant objected.  Plaintiff then supplied four citations specifically dealing with the production of personnel files. See Plaintiff's Second Motion To Compel.  How can one adequately evaluate Defendant's position absent a single case supporting its specific claim ?

9

proportionality set out in Fed. R. Civ. P. 26. Defendant has had ample opportunity to explore Plaintiff's state of mind in her deposition, during the four deposition sessions it has had with her psychologist, its deposition of her internist and the deposition of her Ob-Gyn. Isn't the whole issue of holiday photographs duplicative of the opportunities which Defendant has had already? Isn't this whole issue of holiday photographs burdensome to her as a wife and mother and intrusive of her family's right to privacy?

If Defendant really wanted to establish the level of Plaintiff's activities, as it claims, it could have deposed others with whom she had contact, but made no effort to do so. Why should Defendant now be permitted to disrupt Plaintiff and her family with vague, overbroad requests for questionable evidence.

Similarly Request No. 3 seeks a copy of the family photograph taken in November, 2000. In our exchange of correspondence it was pointed out that Plaintiff did not recall such a photograph or understand the reference. Now in motion papers Defendant states that it relies on a calendar entry in November of 2000. The only such entry found by Plaintiff is a reference to the "Downs Family Photos." Is Defendant seeking a photograph of a different family ? If this is the family photo being sought, why did Defendant wait to identify it until the filing of a motion to compel? Why was Plaintiff not asked about this at her deposition?

Request No. 4 seeks pictures from family vacations in 2000 and 2001. Yet, in our correspondence, we noted that Plaintiff did not go on any family vacation in either

10

year.  In light of this, Defendant's Request is exclusively limited to events which, if they occurred at all, were not attended by Plaintiff.  What is the relevance of such information.  How can a demand for such extraneous material meet the test of proportionality and good faith ?  Defendant does not cite a single case to address these issues.

Request No. 10 seeks copies of all telephone bills, including cel phones, for all phones used in 1999-2001.  Again, Plaintiff is puzzled by the alleged relevance of this request.  We will happily stipulate that Plaintiff used telephones during that period. She used her husband's cellular telephone, as did he; She used her home telephone, as did the rest of her family and visitors; She used her mother's telephone, her father's telephone and telephones of friends and neighbors.  What is the relevance of that - clearly no expert has been produced to show a linkage between telephone usage and a direct conclusion that one could not be depressed.

If relevance is established, how is Plaintiff to obtain all of those telephone bills? If Plaintiff did obtain all of those bills, what protection would be given to the owners of those lines as their privacy was invaded ?  Finally, if, for example,  Defendant were to limit its enquiry to Plaintiff's home telephone t would find that it is Plaintiff's practice to discard the bill when she makes payment.

Requests Nos. 7 and 11 are of similar scope and difficulty, although, as noted in the earlier correspondence between counsel, Plaintiff does not have any emails for

the relevant period, nor does she have any personal correspondence.

Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that Defendants three serially filed motions to compel be denied in their entirety.

THE PLAINTIFF
KIMBERLY BACHIOCCHI

By: _____
    Peter E. Gillespie (ct06554)
    46 Riverside Drive
    P. O. Box 3416
    Westport, CT 06880
    Tel: (203) 227-7000
    Fax:(203) 454-5508
    Email:petelaw@attglobal.net

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the forgoing was transmitted by first class post this 28th day of April, 2004 to the following:

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901

Peter E. Gillespie

13