UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KIMBERLY BACHIOCCHI,     \*
                           \*
         Plaintiff,     \*     CIVIL ACTION No. 3:02CV908(CFD)
                           \*
     v.             \*
                           \*
SOUTHERN NEW ENGLAND     \*     JUNE 2, 2004
TELEPHONE COMPANY,     \*
                           \*
         Defendant.     \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


## PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER


Pursuant to Fed. R. Civ. P. 26(c) Plaintiff respectfully requests that the Court protect her from five recent behaviours by Defendant.

1.    <u>Failure and Refusal to Pay Expert Witness Fees.</u>  Defendant has deposed two of Plaintiff's treating physicians who rendered bills for the time spent at the depositions[1].  Yet, despite an exchange of correspondence between counsel on the subject of payment, it appears that Defendant has failed and refused to pay these bills.  True copies of the correspondence are attached as Exhibit A.

---

[1]Defendant has deposed three physicians, but so far as Plaintiff is aware, only Dr.

2.    <u>Wrongful Failure to Return a Videotape</u>.  Defendant has taken Plaintiff's

videotape on the condition that it would be promptly returned, but has failed to do

so despite the written representation of its agent and a request for the tape made

to counsel; and

3.    <u>Onerous, Stale, Last Minute Discovery Demands</u>.  Defendant has served

onerous last minute demands for discovery materials and information on the

afternoon of Friday, May 28, 2004 and demanded comprehensive answers by

the close of business on Wednesday, June 2 the second business day[2]  following

service of its demands.  Defendant's questions related to discovery served and

answered one year ago.  The letter is attached as Exhibit B.

     Defendant has engaged in this particular conduct at a time when it knew

from prior exchanges that  Plaintiff's counsel, a single practitioner, was not

available to it on May 28 and would be occupied at depositions, scheduled by

Defendant in this matter, on both June 1 and June 2, 2004.  Plaintiff believes

Defendant's conduct in this regard is intended to vex, harass and burden Plaintiff.

4.    <u>Oppressive, Embarrassing and Intimidating Conduct at Plaintiff's Deposition</u>.

Defendant noticed Plaintiff's deposition for June 1, 2004.  Plaintiff believed that

---

Zachariah and Dr. Sarfeh have submitted bills for their time.

2

     Monday, May 31, 2004 was Memorial day, a national holiday.

she had no obligation to attend, absent a Court Order, as she had already

offered deposition testimony of more than 7 hours.  Nevertheless, desirous of

bringing discovery to a timely and orderly close plaintiff appeared for her

deposition as noticed.

Initially it was Plaintiff's position that she would attend for 2 _ hours, thus

honoring her original offer to testify for 1 _ days.  At the close of the morning

session, however, which included three hours of testimony, Plaintiff

acknowledged that the questions seemed legitimate.  In light of this Plaintiff

changed her position and agreed to attend the afternoon session as Defendant

requested.  The afternoon session was quite different in tone, however.

In the afternoon session the interrogation by Ms. Alexander was

argumentative and overbearing.  Frequently Ms. Alexander would demand a

"Yes" or "No" response to an ambiguous question, stating in response to any

offered testimony that Plaintiff had failed to respond.  She also questioned

Plaintiff about her treating psychologist, insisting on referring to him as Mr.

Zachariah rather than Dr. Zachariah.

At the same time this was underway, Mr. Vegliante, SNET's employee

who has also entered an appearance in this matter, repeatedly employed

exaggerated gestures such as shaking his head vigorously in agreement or

disagreement, rolling his eyes, rolling his head and other like gestures in

response to Plaintiff's responses.

Finally, having voluntarily agreed to continue, Plaintiff declared a halt to

this proceeding and indicated her desire to seek a protective Order, assuming

that Defendant is allowed to go forward at all.

5.    Subpoena of Financial Records.  Defendant has a theory that financial difficulty

may account for stress.  It has filed a motion to compel release of financial

documents and information concerning brokerage accounts, money market

accounts and the like based upon its theory (Doc No. 55).  That motion has been

opposed by Plaintiff (Doc. No. 84).

At her deposition on June 1 Plaintiff was permitted to answer questions

concerning her financial records, notwithstanding her opposition to the motion to

compel.  She identified, inter alia, an Oppenheimer account for which her

financial advisor is Steven Sawtelle.  A copy is attached as Exhibit C.

At 4:21 pm Plaintiff's counsel was served with a subpoena directed to the

Keeper of Records in Mr. Sawtelle's office.  The subpoena seeks financial

information concerning Plaintiff's Oppenheimer account, an account held jointly

with her husband.  Plaintiff believes that this subpoena is in contumacious

disregard of the Court's procedures and prerogatives with respect to the pending,

opposed motion to compel.


ARGUMENT

Failure and Refusal to Pay Expert Witness Fees  Plaintiff was treated extensively

by Gary Zachariah, Psy.D. for the psychological harms and emotional trauma which

resulted from Defendant's treatment of Plaintiff.  Defendant deposed Dr. Zachariah and

he submitted a bill to Plaintiff for his time spent in connection with his deposition

appearances.  Plaintiff promptly forwarded that bill to Defendant's counsel for payment.

James Sarfeh, M.D. is Plaintiff's internist.  He treated her for bruising which

resulted from the actions of Kevin West, Plaintiff's supervisor, who grabbed her wrist on

or about June 4, 2001 and ripped a paper from her hand[3].  Dr. Sarfeh was also deposed

by Defendant.

By letter dated April 26, 2004 Attorney Cannavino wrote to Plaintiff's counsel.

She stated that both Dr. Zachariah and Dr. Sarfeh had submitted bills for time spent in

connection with their depositions.  Defendant, however, was refusing to pay their bills.

Defendant stated, as its theory, that these two treating physicians had been improperly

disclosed as experts because they had not rendered the report required by Fed. R. Civ.

---

[3]Mr. West denies having grabbed Plaintiff's wrist, but appears to have admitted
that he "ripped" a paper from her hand.

P.  26(a)(2)(B).

Plaintiff's counsel responded with a letter dated April 30, 2004.  Plaintiff

explained her position that as treating physicians rather than retained experts Dr.

Zachariah and Dr. Sarfeh were not required to produce a report under the rule cited by

Defendant.

Plaintiff's correspondence sited relevant commentators and precedents in

support of her position, stating:

> By making reference to the language of the Rule itself, you will note that it
> applies to
>> a witness who is retained or specially employed to provide
>> expert testimony in the case or whose duties as an
>> employee of the party regularly involve giving expert
>> testimony .   .   .
>
> Neither of the experts disclosed by Plaintiff fall within this category.  Each of them
> is a treating physician.  Although I think that our enquiry could end here, I will
> share some of the relevant commentary and case law with you as well.
>
> Turning first to the advisory committee notes, there is a discussion of this very
> issue.  The notes state that :
>
>> A treating physician, for example, can be deposed or called
>> to testify at trial without any requirement for a written report.
>
>> 146 F.R.D at 635 (1993).
>
> I have reviewed the Local Rules and I see no reference to this issue.  If you are
> aware of any relevant Local Rule, please let me know.
>
> Two of the leading commentators also seem to clearly state that a treating

physician need not comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B). See, Vol. No. 6, *Moore's Federal Practice* §26.23(2)(b)(iii) (Matthew Bender 3d ed.); Wright, Miller & Marcus, *Federal Practice and Procedure Civil 2d* §2031.1 and cases cited therein, especially at n.6.

Finally, the precedents seem quite consistent.  For example, in *Riddick v. Washington Hospital Center, et al*., 183 F.R.D 327 (D. D.C. 1998) the Court addressed this issue citing a number of earlier decisions and the Court states, in part:

> As a treating physician, Dr. Mines may describe what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer her opinions and expert inferences therefrom  .    .    .    .

>       *            *            *

As one court has said:

> Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of the disability, if any, caused by the condition or injury.  Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirements of Rule 26(a)(2)(B).

>       *            *            *

> So long as a treating physician acquired the opinions that are the subject of the testimony directly through treatment of the Plaintiff, the treating physician cannot be forced to file a written report required by Rule 26(a)(2)(B).

*Riddick*, 183 F.R.D. at 330 (Citations omitted).

> *See, also, Salas v. U.S.*, 165 F.R.D 31 (W.D. N.Y. 1995).
>
> I hope that I have been responsive to your enquiry. I would urge you to reconsider your determination to "file an appropriate motion with the Court" as I believe that your contention is without merit. If, however, you believe that my analysis is incorrect and you wish to engage in further consideration of this issue, I will look forward to a prompt reply.
>
> In light of the proper designation of these two doctors, I would urge you to make prompt, full payment of their bills and desist from your unseemly conduct in withholding payment.

Plaintiff's counsel invited a "prompt response" if Defendant disagreed with his analysis. As of this date Defendant has not offered any response to Plaintiff's letter of April 30, 2004, nor have either of the two treating physicians been paid for their time so far as Plaintiff is aware. To the contrary during May, 2004 when enquiry was made of her on this subject, Ms. Cannavino has said that Defendant is preparing a response to Plaintiff's position.

Plaintiff is concerned that her relationship with her treating physicians will be adversely impacted if they are left with the impression that by treating her they will be subjected to the inconvenience of being deposed and that they will not even be compensated for their time. Such a result is unfair to both Plaintiff and her treating healthcare professionals. This course of conduct by Defendant leaves Plaintiff with concern that in the future one or more of her treating professionals, if subjected to such

treatment, may become reluctant to continue treating with her.  In this way Defendant's conduct embarrasses, oppresses and unduly burdens Plaintiff who has already suffered extensive emotional pain at the hands of this Defendant.

Wrongful Failure to Return a Videotape  In January, 2001 Plaintiff wanted to return to work.  Her treating psychologist, Dr. Zachariah, developed a plan by which Plaintiff would return for one day to re-acclimate herself to the workplace and then, a short time thereafter, would return on a regular full-time basis.  Dr. Zachariah made the arrangements for this preliminary one day return through SNET's medical department.

When Plaintiff did return for one day on January 18, 2001, there was not one regular full -time employee present in the office.   She spent the day without any work assignment and without any co-workers with whom to interact.  Then in mid-afternoon Kevin West, her supervisor and head of the office, sent the one remaining temporary employee home, allegedly due to inclement weather.

When Dr. Zachariah made a follow-up enquiry as to why these events took place, he was told that office was short-handed and that it frequently would be empty.  Plaintiff believed this to be untrue.  On several occasions following the incident of January 18, 2001 she made a log of her co-workers entering and leaving the office.  She also video-taped these activities.  Plaintiff made two copies of the video-tape and provided them to counsel.    On or about July 5, 200**3** Plaintiff made supplemental production to

Defendant and included a copy of the videotape. Defendant maintains that it never received the videotape.

Plaintiff first became aware of Defendant's claim that it never received the videotape when Defendant served additional discovery on Plaintiff dated February 12, 200**4**, seeking, <u>inter alia</u>, a copy of the videotape. Plaintiff's counsel, in an exchange of correspondence, addressed this issue, stating:

> As to requests 4 and 5, the video tape was previously provided to you. I sent it. I do have in my office ***one remaining copy***. If you would like to review it here, you are welcome to do so. If you would like me to have another copy made at your expense, I would be happy to undertake that effort for you.

Thereafter, on short notice, Defendant requested that the videotape be given to a messenger that it would send.

On or about April 27, 2004 Defendant's messenger retrieved the videotape for copying and signed a receipt representing that the tape would be returned not later than May 1, 2004, the close of business that week. **The tape was not returned  - the tape has still not been returned.**

The first Plaintiff heard of the second tape which it had released to Defendant was Attorney Alexander's claim that "when SNET   .   .   . played the tape it was

blank.[4]"   See Defendant's motion for an extension of time dated May 12, 2004 at page

6.  Plaintiff believed that this claim was absolutely untrue.

Thereafter, in papers dated April 28, 2004 (Doc No. 57) at Exhibit F, Attorney

Cannavino attached a statement from Creative Video Corporation referring to the very

same videotape that Attorney Alexander had represented was "blank."  The Creative

Video statement said, in part:

> The video tape  .   .   .  was recorded on a
> specialized deck at an extremely high speed.
> Unfortunately,   .  .  . it  .  .  . makes the
> tape impossible to play on any professional or
> consumer decks.

Plaintiff is suspicious of this second claim as well.  The two copies provided to

Defendant, both of which were provided by Plaintiff to her counsel,  were made by

Plaintiff herself.  She used the basic RCA vhs tape deck located in her bedroom for this

function, not "a specialized deck" operating "at an extremely high speed."

Plaintiff would like to have the same vhs tape earlier provided to Defendant

---

[4]Plaintiff was shocked, chagrined and embarrassed by the claim that evidence in her possession was degraded and useless.  Counsel immediately contacted Plaintiff and requested that she search for the original "super 8" tape and deliver it to him if it was still available.  Notwithstanding Plaintiff's earlier reference to "one remaining copy" Plaintiff had retained the original and she produced it.  Plaintiff then hired an expert to work with the tape.  It had deteriorated somewhat over time, but still produced a usable image.  A new copy was produced and forwarded to Defendant.  We have not yet heard whether Defendant received it, or whether Defendant was able to decipher it.

returned to her  - -  as promised  - - so that she might have it subjected to expert analysis.  So far, Defendant has claimed the tape is blank; has claimed that it is indecipherable; and has refused to return it.  Plaintiff requests it back now.

Onerous, Stale, Last Minute Discovery Demands  Defendant served discovery on Plaintiff in February, 200**3**.  Plaintiff formally responded in April, 200**3** and formally supplemented her discovery responses on or about July 5, 200**3** [5].  Now, Defendant has served a ten page letter on Plaintiff, the letter having been served by telecopier on Friday, May 28, 2004.  **The letter relates exclusively to the discovery issues concerning the 2003 discovery**.

In its letter Defendant poses questions concerning 52 items, and demanding a response not later than June 2, 2004.

---

5.    Defendant tends to focus on the date of "formal" responses.  This may not be of much moment, given that compliance occurred more than one year ago.  The actual progression of Plaintiff's discovery responses was set forth in Plaintiff's opposition to Defendant's first motion to compel. Many items were produced in advance of the "formal response", however. That accurate sequence follows.

After some personal issues had arisen for counsel, Plaintiff made her first discovery responses, perhaps regretfully, without the full attention of her lawyer.  Defendant expressed general dissatisfaction, but did not address these issues until Plaintiff's first deposition session in May 12, 200**3**.  Thereafter, Plaintiff supplied additional information  informally on May 19, 200**3** and at the end of May, 200**3**. Plaintiff's formal response, dated  June 10, 200**3**, was not mailed until July 5, 200**3**.  The delay resulted from Defendant's failure to respond to Plaintiff's proposed stipulated protective order.

Plaintiff informed Ms. Cannavino of both the delayed reponse and its cause by letter of June 27, 2003. When the Stipulated Protective order was agreed upon, Plaintiff transmitted its formal response on July 5, 200**3**.  In the intervening period between June 10 and July 5 Plaintiff had copied her videotape and supplied it to her counsel.  In the hope of making a complete production, counsel included the

Prior to serving its last minute demands for information relating to production that occurred a year ago, Defendant was aware that Plaintiff's counsel was not available to it on either May 27 or May 28.  He had set forth this information in a letter to counsel dated May 19, 2004 and he had discussed his unavailability on those two dates with Ms. Alexander on May 21, 2004.  Further, in response to an earlier letter from Ms. Cannavino, Counsel spoke to Attorney Cannavino by telephone.  He noted that he was unavailable on May 27 or May 28 during that conversation.

Plaintiff cannot see any purpose for this extensive, last minute barrage of discovery demands relating to production in the Spring, 2003 except for the purpose of vexing and harassing Plaintiff.

<u>Oppressive, Embarrassing and Intimidating Conduct at Plaintiff's Deposition</u> As noted above, Plaintiff elected to voluntarily participate in the deposition noticed for June 1, 2004 in an effort to bring discovery in this matter to a proper, orderly conclusion.  She had previously fulfilled all of her obligations under the rules and, so far as she is aware, had no obligation to go forward.

Her good faith was met with derisive, insulting and argumentative conduct.  This should not have been so and it is conduct which should not be tolerated.

Plaintiff respectfully requests that she be permitted to supplement this item with

---

videotape in the package of documents sent to Ms. Cannavino.

excerpts from the transcript of the deposition when they become available.

Subpoena of Financial Records. As set forth above, Defendant has sought to subpoena financial records which are already the subject of a motion to compel which has been opposed by Plaintiff.  Defendants conduct in this regard appears to be nothing less than an attempt to substitute its own narrow partisan interests for the informed judgment of the Court.  The subpoena is oppressive as it seeks to deny Plaintiff access to normal avenues of judicial review.

Further, Fed. R. Civ. P. 45 (c) provides that a party issuing a subpoena should take reasonable steps to avoid undue burden or expense.  Calling for compliance from a non-party on notice of one business day seems to offer unreasonable time for compliance which is burdensome and an embarrassment to Plaintiff whose records are sought.

Finally, as the records sought relate to a joint account, the subpoena is unduly intrusive as to the rights of third parties who are not litigants in this matter.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1.    As to the expert witnesses, Drs. Zachariah and Sarfeh, Plaintiff respectfully requests that Defendant pay their outstanding bills within 10 calendar days of an Order from this Court;

2.    With respect to the videotape, allegedly blank, or alternatively recorded on

specialty equipment, Plaintiff respectfully prays that the same tape made available to Defendant be returned to Plaintiff within 10 calendar days of an Order by this Court;

3.  As to the Onerous, Stale, Last Minute Discovery Demands made by Defendant in Ms. Cannavino's letter of May 28, 2004, Plaintiff notes that Defendant has previously elected to file a motion to compel relating to that discovery; that the various issues now set forth in the letter were not raised in that motion; and therefore Plaintiff respectfully requests that the Court find that Defendant has waived the issues raised in the Cannavino letter of May 28 and that letter shall be declared a nullity. In the alternative, Plaintiff respectfully requests that Plaintiff be afforded a reasonable time of 30 calendar days from the entry of any Order by this Court on this motion within which to respond to the Cannavino letter.

4.  As to the conduct of her deposition, Plaintiff respectfully requests that the Court act on her motion to limit the duration of her deposition and conclude that Plaintiff has fully complied with her discovery obligations in this matter as to her deposition testimony. Alternatively, Plaintiff respectfully requests that her deposition be ordered continued for a specified period of time and that it be completed at Court in front of a

Special Master or Magistrate Judge.

5.    As to the subpoena issued to the Office of Steven Sawtelle, Plaintiff

respectfully requests that the subpoena be quashed.  Plaintiff will then

proceed as the Court may order when a decision issues on Defendant's

currently pending, but opposed, motion to compel.

THE PLAINTIFF
KIMBERLY BACHIOCCHI

_____
Peter E. Gillespie   (ct06554)
46 Riverside Drive
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax:(203) 454-5508
Email:petelaw@attglobal.net

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the forgoing was transmitted by first class post this 2d day of June, 2004 to the following:

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901

_____
Peter E. Gillespie