THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*
                                                     \*

KIMBERLY BACHIOCCHI,    \*

       Plaintiff,           \*

v.                                         \* CIV. ACTION NO. 02-CV-908 (CFD)

THE SOUTHERN NEW
ENGLAND TELEPHONE
COMPANY,                            \*

       Defendant.          \* JUNE 8, 2004
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## FOR ORDER AND AWARD OF ATTORNEYS' FEES AND COSTS

### I.    PRIOR PROCEDURAL HISTORY

This is a memorandum in support of the defendant, the Southern New England Telephone Company's ("SNET's"), request for an Order of the Court and an award of attorneys' fees and costs in connection with the conduct of plaintiff and her counsel when they walked out of the plaintiff's deposition held on June 1, 2004 before it was concluded.

SNET will not repeat the numerous instances in which plaintiff and her counsel have obstructed, delayed, and refused to provide clearly discoverable information in this case. See, e.g., Defendant's Reply to Plaintiff's Objection to Defendant's Request for Extension of Time dated May 12, 2004, and SNET's several pending motions to compel. With respect to the plaintiff's deposition,

*ORAL ARGUMENT IS NOT REQUESTED*

which is at issue on the present motion, on May 3, 2004, SNET filed a Motion for Extension of Time for SNET to Complete Fact Witness Depositions through June 2, 2004.

Plaintiff responded with a 14-page Objection plus exhibits. See Plaintiff's Objection to Defendant's Most Recent Motion to Extend Discovery dated May 6, 2004 ("Objection"). In her Objection, plaintiff argued that SNET had no legitimate reason to question the plaintiff for more than 7 hours. SNET filed a Reply in which it responded to plaintiff's inaccurate statements in her Opposition and also "[sought] permission of the Court to exceed the seven-hour time delineated in Rule 30(d)(2) of the Federal Rules of Civil Procedure." See Defendant's Reply to Plaintiff's Objection to Defendant's Request for Extension of Time dated May 12, 2004 ("Reply") at 2. In its Reply, SNET devoted <u>eight pages</u> to explaining to the Court some of the many problems it had had obtaining discovery from the plaintiff in this matter and why more than 7 hours were needed for a fair examination of the plaintiff pursuant to Rule 30(d)(2). See Reply at 2-9.

On May 13, 2004, the Court overruled the plaintiff's Objection and granted SNET's Motion for Extension of Time. See Endorsement Order dated May 13, 2004 re Defendant's Motion for Extension of Time for SNET to Complete Fact Witness Depositions.

On May 27, 2004, just two business days before plaintiff's scheduled continued deposition, SNET received from plaintiff another pleading addressing once again the same issue, this one entitled plaintiff's "Motion to Limit Continued Deposition on June 1" dated May 25, 2004 ("Motion"). SNET was forced to file an objection and did so on May 28, 2004.

On June 2, 2004, the Court denied the plaintiff's Motion to Limit Continued Deposition on June 1, concluding, inter alia, that the

2

>plaintiff's deposition will continue until it is concluded. The imposition of any time limitation is inappropriate in the circumstances of this case, as is the instant motion itself. If conduct such as the filing of this motion persists, at the conclusion of all proceedings in this case, the court will entertain an application for an imposition of attorney's fees against plaintiff's counsel personally pursuant to 28 U.S.C. § 1927.

See Court's Endorsement Order on Plaintiff's Motion to Limit Continued Deposition on June 1.

## II. PLAINTIFF AND HER COUNSEL'S CONDUCT DURING AND AFTER THE JUNE 1ST DEPOSITION WARRANT AN AWARD OF SANCTIONS.

### A. Legal Standard

Federal law provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonable incurred because of such conduct." 28 U.S.C. § 1927.

Moreover, Rule 26 of the Federal Rules of Civil procedure states that every discovery response and objection must contain the signature of an attorney and that such signature

>constitutes a certification that to the best of the signer's knowledge, information and belief, formed after a reasonable inquiry, the request, response, or objection is:
>(A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;
>(B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and
>(C) not unreasonable or unduly burdensome or expensive . . . .

Fed. R. Civ. P. 26(g)(2). If a certification is made without substantial justification and in violation of this rule, "the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Fed.

3

R. Civ. P. 26(g)(3) (emphasis added).

**B.     Argument**

Plaintiff and/or her counsel should be required to pay the expenses incurred and to be incurred by SNET as a result of their meritless filings and improper conduct related to plaintiff's deposition, which actions have multiplied the proceedings in this case unreasonably and vexatiously.

Prior to the plaintiff's continued deposition on June 1, 2004, in a discussion between counsel, the undersigned pointed out to plaintiff's counsel that the Court had already overruled plaintiff's Objection to the continuation of her deposition in accordance with SNET's briefing on the issue. Plaintiff's counsel was clearly aware of SNET's position that it had obtained the Court's authorization to exceed the 7-hour guidelines set forth in Rule 30(d)(2) prior to the deposition, and also clearly knew that the Court had not placed any limitation on the time for questioning.

Notwithstanding the above, plaintiff's counsel interjected at the beginning of plaintiff's deposition on June 1st the following commentary: "Just as a courtesy to let you know in advance, it is our intention at least as of this moment to stay this morning for two and a half hours, **then we will be leaving**. If there is a court order of which I'm unaware, I'd be happy for you to direct me to it." Exh. A, Pl. Dep.[1] at 4 (emphasis added). The following dialogue ensued:

> MS. ALEXANDER: And what is the basis for your refusal to stay more than two and a half hours?
> MR. GILLESPIE: Well, as you know, the witness has already been deposed for more than seven hours which is what's permitted under the Rule. We had originally had a discussion, not you and I, I believe Ms. Cannavino and I, in which the plaintiff proposed staying for a day and half of deposition, and we plan to honor what we had originally proposed. Beyond that I think you will require permission of the Court as we discussed and memorialized in an exchange of letters in September 2003. Now, if I've missed something in the Court's order, I'd be happy for you to direct me

---

[1] A copy of the entire transcript after the lunch break is included.

4

to it.

 MS. ALEXANDER: I completely disagree with your position. The Court has not -- you did file a motion to limit the deposition which we objected to. Has the Court issued an order limiting us to two and a half hours?

 MR. GILLESPIE: It has not. I filed the --

 MS. ALEXANDER: Okay. That's all I wanted to know.

 MR. GILLESPIE: I filed the motion actually as a courtesy so we could all get [sic] record. We're required to comply with the Rule, which is seven hours.

 MS. ALEXANDER: Well, for the record, we filed a motion for extension of time to complete fact witness depositions on May 3, 2004. Following the granting of that extension it was my intention to ask for a waiver of the seven-hour period.

 However, Attorney Gillespie opposed the motion for extension of time and therefore in my reply brief -- oh, also on the basis that we had exceeded seven hours for the deposition, therefore, in my reply brief I included six pages of argument about why the defendant should not be limited to a seven-hour deposition and seeking permission of the Court in that reply brief to exceed the seven-hour period.

 Now, the Rule does not require that the Court set any particular time limitation. All it requires is authorization by the Court for a party to exceed the seven-hour limit. As you know, Attorney Gillespie, your objection was overruled, our motion was granted. There is no order by the Court limiting us. There is only the Court's authorization based on our reply brief to exceed the seven-hour time limit and to finish depositions by the end of the day tomorrow.

 As you know, I wanted to do Ms. Bachiocchi's deposition last week, but as a courtesy for your schedule, you were not available Thursday or Friday, I agreed to do it today. Tomorrow is the discovery cut off and I want to get this deposition done. We're prepared to be here all day. There is no rule preventing us from continuing the deposition. We've been authorized by the Court in its ruling on the motion for extension for time to exceed the seven-hour limit.

 Are you prepared to change your position or are you, in fact, insisting even though the Court did not grant your motion to limit the deposition to only stay here two and a half hours today and then to walk out?

. . . .

 MR. GILLESPIE: Since we're speaking about what we know, as you know the only motion presented to the Court was for an extension of the discovery period. We will be leaving after two and a half hours. . . .

Exh. A, Pl. Dep. at 4-7.

Thus, from the outset of plaintiff's deposition on June 1st, plaintiff and her counsel were planning to leave the deposition early.

5

After the lunch break, the undersigned counsel for SNET moved to the topic of other sources of plaintiff's alleged emotional distress as reflected in various doctors' reports and notes recently received by SNET pursuant to the Court's order for plaintiff to provide medical authorizations. See Exh. A, Pl. Dep. at 145-172. Plaintiff claims emotional distress damages in this case from 1999 to the present, including alleged severe depression, due to her experiences at SNET in 1999-2001 four to five years ago.

With respect to other stressors in her life, during her testimony after lunch, Ms. Bachiocchi testified that (1) she does not "recall" at all a five-month leave of absence from work due to a shoulder injury, (2) she does not "recall" being out of work on a disability leave of absence due to a hand injury in 1993-94, (3) she does not "recall" telling Dr. Kligfeld, who she describes as a marriage counselor, that she was concerned about her marriage nor can she recall ever being emotionally distressed over marital issues even though she treated with Dr. Kligfeld, (4) she denies that her father's repeated arrests for DWI caused her any emotional distress, (5) she does not "recall" treating with a doctor in 1999 for recurrent pain to both legs, (6) she denies that finding a lump and her subsequent medical appointments due to the lump in 2000 caused her any emotional distress, (7) she denies that she treated with a Mr. Zachariah in 2000, although upon further questioning, she admits that she treated with "Dr. Zachariah,"[2] (8) she does not "recall" telling Dr. Zachariah that she was stressed because she was contacted by EEO about a complaint made by a co-worker at SNET in 2000, even though her medical records indicate that she did, and (9) she does not recall telling Dr.

---

[2] Ms. Bachiocchi pointedly made clear that she had answered in the negative due to the fact that defense counsel had used the title "Mr." rather than "Dr." in the question. She admits that Mr. Zachariah is a therapist and psychologist and not a medical doctor. Exh. A, Pl. Dep. at 164-65.

6

Zachariah that she was also stressed about the possibility of taking an early retirement package available to SNET employees during a reorganization in 2000, even though her medical records reflect that she did. See Exh. A at 149, 150, 151-52, 155, 157, 159, 161, 165, 166, 167, 168-69.

Following the above testimony, plaintiff suddenly interrupted the deposition to make a critical statement directly to the undersigned's client who was attending the deposition and sitting several seats away out of her line of vision ("Do you want to answer for me?"), accusing him of "shaking [his] head." See Exh. A at 165. Attorney Gillespie at first advised plaintiff just to answer the questions posed. At no time did the undersigned's client address the plaintiff or verbally respond to her remarks. Although the parties had just returned from the lunch break, the plaintiff abruptly stated that she needed a bathroom break, left the room with her counsel, and the two proceeded directly to a conference room where they conferred. The deposition resumed, but after a few more questions, Attorney Gillespie then accused the same client of "actively nodding his head during questioning, sigh[ing], and glanc[ing] away in exasperation." Exh. A at 170. The undersigned did not hear any sounds coming from her client during the deposition. Attorney Gillespie then announced that ". . . I think we've given you more time than we're required to" and walked out of the deposition with his client. Exh. A at 171-72.

Following the deposition, plaintiff's counsel filed a 17-page (38 pages with exhibits) Motion for Protective Order dated June 2, 2004.[3] In the Motion for Protective Order, plaintiff's counsel argues, inter alia, for the third time now that SNET should be prevented from concluding its deposition of the plaintiff, or, in the alternative, that "her deposition be ordered continued for a

---

[3] Inasmuch as the Motion for Protective Order deals with topics in addition to plaintiff's deposition, SNET will reluctantly be filing separately an objection to that motion in its entirety.

7

specified period of time and that it be completed at Court in front of a Special Master or Magistrate Judge." Pl. Motion for Protective Order at 15-16.

### III. CONCLUSION

The conduct of plaintiff and her counsel in this case is astonishing and completely unacceptable. As set forth in prior filings in this case, plaintiff and her counsel have repeatedly attempted to block legitimate discovery in this case and have filed numerous frivolous motions and objections in an apparent attempt to drive up the costs of litigation and prevent SNET from following up on legitimate discovery that has come in "dribs and drabs" and only after repeated follow-up. SNET has wished to avoid Court intervention in these discovery issues and had attempted (repeatedly) to obtain the information itself. Reluctantly, it now seeks Court intervention to get discovery concluded and order plaintiff and her counsel to cooperate in discovery as contemplated by the Federal Rules of Civil Procedure.

For all of the above reasons, SNET seeks an order of the Court (1) that plaintiff appear for her continued deposition at a time to be noticed by SNET, (2) that plaintiff and/or her counsel pay all costs and attorneys' fees incurred in connection with the continued deposition of the plaintiff and counsel's preparation for the continued deposition, as well as reimburse SNET for its attorneys' fees incurred in preparing and filing the instant motion, (3) that SNET be given an extension of time to complete discovery through the conclusion of plaintiff's deposition and the production of any documents or information ordered by the Court in response to SNET's pending motions to compel, and (4) that SNET be allowed 21 days following the close of the extended discovery period to file a dispositive motion in this case.

Dated at New Haven, Connecticut this 8th day of June, 2004.

        THE DEFENDANT,
        SOUTHERN NEW ENGLAND TELEPHONE COMPANY

By_____/s/ Lori B. Alexander_____
    Lori B. Alexander
    Federal Bar No. CT08970
    Tyler Cooper & Alcorn, LLP
    205 Church Street
    New Haven, Connecticut 06509
    Tel. (203) 784-8200
    Fax No. (203) 789-2133
    E-Mail: alexander@tylercooper.com

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - -x

KIMBERLY BACHIOCCHI             :
                                :
                                :
VS                              : 02-CV
                                : 908(CFD)
                                :
THE SOUTHERN NEW ENGLAND        :
TELEPHONE COMPANY               :

- - - - - - - - - - - - - - - -x

Continued deposition of KIMBERLY BACHIOCCHI taken pursuant the Federal Rules of Civil Procedure, before Jacinda A. Grigaitis, Licensed Shorthand Reporter #00381 and Notary Public within and for the State of Connecticut, held at the offices of Tyler, Cooper & Alcorn, 205 Church Street, New Haven, Connecticut, on June 1, 2004, at 9:29 a.m.

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CT 06443
203 245-9583

HARTFORD                                      STAMFORD

DEL VECCHIO REPORTING SERVICES, LLC

---

APPEARANCES:

ON BEHALF OF THE PLAINTIFF:

PETER E. GILLESPIE, ESQ.
46 Riverside Avenue
Westport, CT 06880

ON BEHALF OF THE DEFENDANT:

LORI B. ALEXANDER, ESQ.
DEBORAH D. CANNAVINO, ESQ.
Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT 06509-1910

DAVID VEGLIANTE, ESQ.
SNET Legal Department
310 Orange Street
8th Floor
New Haven, CT 06510

---

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between counsel representing the parties that each party reserves the right to make specific objections at the trial of the case to each and every question asked and of answers given thereto by the deponent, reserving the right to move to strike out where applicable, except as to such objections as are directed to the form of the question.

IT IS HEREBY STIPULATED AND AGREED by and between counsel representing the respective parties that proof of the official authority of the Notary Public before whom this deposition is taken is waived.

IT IS FURTHER STIPULATED AND AGREED by and between counsel representing the respective parties that the reading and signing of the deposition by the deponent is waived _____, is not waived _x_.

IT IS FURTHER STIPULATED AND AGREED by and between counsel representing parties that all defects, if any, as to the notice of the taking of the deposition are waived.

Filing of the Notice of Deposition with the original transcript is waived.

---

MS. ALEXANDER: As I was saying, Mr. Vegliante will be coming but we don't need to stop. Did you want to say something?

MR. GILLESPIE: Yes. Just as a courtesy to let you know in advance, it is our intention at least as of this moment to stay this morning for two and a half hours, then we will be leaving. If there is a court order of which I'm unaware, I'd be happy for you to direct me to it.

MS. ALEXANDER: And what is the basis for your refusal to stay more than two and a half hours.

MR. GILLESPIE: Well, as you know, the witness has already been deposed for more than seven hours which is what's permitted under the Rule. We had originally had a discussion, not you and I, I believe Ms. Cannavino and I, in which the plaintiff proposed staying for a day and half of deposition, and we plan to honor what we had originally proposed. Beyond that I think you will require permission of the Court as we discussed and memorialized in an exchange of letters in September 2003. Now, if I've missed something in the Court's order, I'd be

5

1 happy for you to direct me to it.
2     MS. ALEXANDER: I completely disagree with
3 your position. The Court has not -- you did
4 file a motion to limit the deposition which we
5 objected to. Has the Court issued an order
6 limiting us to two and a half hours?
7     MR. GILLESPIE: It has not. I filed
8 the --
9     MS. ALEXANDER: Okay. That's all I wanted
10 to know.
11     MR. GILLESPIE: I filed the motion
12 actually as a courtesy so we could all get
13 record. We're required to comply with the
14 Rule, which is seven hours.
15     MS. ALEXANDER: Well, for the record, we
16 filed a motion for extension of time to
17 complete fact witness depositions on May 3,
18 2004. Following the granting of that extension
19 it was my intention to ask for a waiver of the
20 seven-hour period.
21     However Attorney Gillespie opposed the
22 motion for extension of time and therefore in
23 my reply brief -- oh, also on the basis that we
24 had exceeded seven hours for the deposition,
25 therefore, in my reply brief I included six

6

1 pages of argument about why the defendant
2 should not be limited to a seven-hour
3 deposition and seeking permission of the Court
4 in that reply brief to exceed the seven-hour
5 period.
6     Now, the Rule does not require that the
7 Court set any particular time limitation. All
8 it requires is authorization by the Court for a
9 party to exceed the seven-hour limit. As you
10 know, Attorney Gillespie, your objection was
11 overruled, our motion was granted. There is no
12 order by the Court limiting us. There is only
13 the Court's authorization based on our reply
14 brief to exceed the seven-hour time limit and
15 to finish depositions by the end of the day
16 tomorrow.
17     As you know, I wanted to do
18 Ms. Bachiocchi's deposition last week, but as a
19 courtesy for your schedule, you were not
20 available Thursday or Friday, I agreed to do it
21 today. Tomorrow is the discovery cut off and I
22 want to get this deposition done. We're
23 prepared to be here all day. There is no rule
24 preventing us from continuing the deposition.
25 We've been authorized by the Court in its

7

1 ruling on the motion for extension for time to
2 exceed the seven-hour limit.
3     Are you prepared to change your position
4 or are you, in fact, insisting even though the
5 Court did not grant your motion to limit the
6 deposition to only stay here two and a half
7 hours today and then to walk out?
8     (Mr. Vegliante entered the deposition.)
9     MR. GILLESPIE: Since we're speaking about
10 what we know, as you know the only motion
11 presented to the Court was for an extension of
12 the discovery period. We will be leaving after
13 two and a half hours. I'd also be happy to
14 offer to contact the Court in an attempt to
15 arrange for a telephone conference if you like.
16     MS. ALEXANDER: If you wanted to limit
17 this deposition, you should have filed a motion
18 well in advance of one business day before the
19 deposition was to take place.
20     MR. GILLESPIE: I filed a motion on the
21 day following the notice.
22     MS. ALEXANDER: You knew that I would be
23 continuing her deposition and you've known that
24 for months because we've been trying to get
25 documents from you in order to finish this

8

1 deposition.
2     MR. GILLESPIE: And I knew from our
3 earlier correspondence there would be a
4 specific application by the defendant which has
5 not been made.
6     MS. ALEXANDER: In my reply brief I
7 specifically asked for authorization by the
8 Court to exceed the hour limit, the seven-hour
9 limit as part of the motion for extension of
10 time which was granted.
11     All right. It's 9:35 let's start the
12 deposition. I do not agree to have
13 Ms. Bachiocchi leave after two and a half
14 hours. I have changed my schedule in order to
15 finish your deposition today. I had planned to
16 try to finish the deposition today
17 notwithstanding all of the new documents.
18     We're here to proceed, and I will ask for
19 our fees in connection with any further
20 attempts by you to block our ability to finish
21 the deposition.
22     Okay. Ms. Bachiocchi, you recall that
23 your deposition was previously taken on two
24 dates in this case. Right?
25     THE WITNESS: Yes.

```
1         MS. ALEXANDER:  And for the record, you
2     remain under oath.  Okay?  Actually, let's
3     swear her in.
4
5         K I M B E R L Y  B A C H I O C C H I,
6  Residing at 21 Silano Drive, Oxford, Connecticut,
7  having first been duly sworn, deposed and testified as
8  follows:
9
10 DIRECT EXAMINATION
11 BY MS. ALEXANDER:
12    Q.  Okay.  Ms. Bachiocchi, good morning.
13    A.  Good morning.
14    Q.  You remember that your last deposition in this
15 case was taken in July of 2003.  Is that right?
16    A.  I don't recall the exact time frame.
17    Q.  Do you remember it was last summer?
18    A.  I don't recall the time frame.
19    Q.  Okay.  Have you -- but you recall that your
20 deposition was taken on two different occasions.
21 Right?
22    A.  Yes, I do.
23    Q.  Between the time of your last deposition and
24 the present date, have you reviewed any documents
25 related to this case?
```

                                                    10
```
1     A.  No.
2     Q.  You haven't looked at any documents?
3     A.  Just what's been submitted to the courts.
4     Q.  And what were those?
5     A.  Whatever Peter filed.
6     Q.  Mr. Gillespie you mean?
7     A.  Yes.
8     Q.  And do you recall what those documents were?
9     A.  Motions.
10    Q.  Okay.  Have you taken any medications today?
11    A.  Yes, I have.
12    Q.  What did you take?
13    A.  I took Effexor.  I took Aciphex and Synthroid.
14    Q.  Now, Effexor is the antidepressant?
15    A.  Yes, it is.
16    Q.  What dosage did you take today?
17    A.  75 milligrams.
18    Q.  And you remember we had an issue about that at
19 the first deposition, right, your having taken an
20 antidepressant?
21    A.  I hadn't taken it at the first deposition.  I
22 think I told you I didn't take my medication that day.
23    Q.  You hadn't taken it at the second deposition.
24 Right?
25    A.  I don't recall which one, but I remember one
```