THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*
KIMBERLY BACHIOCCHI, \*
 \*
 \*
 \*
 Plaintiff, \*
 \*
v. \* CIV. ACTION NO. 02-CV-908 (CFD)
 \*
 \*
THE SOUTHERN NEW \*
ENGLAND TELEPHONE \*
COMPANY, \*
 \*
 Defendant. \* JUNE 8, 2004
 \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTIONS TO COMPEL A COPY OF A VIDEOTAPE, PLAINTIFF'S STATEMENT, AND RESPONSES TO DEFENDANT'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS

I.   **INTRODUCTION**

Despite its good faith efforts, defendant was unable to obtain responses from the plaintiff to its discovery requests and, therefore, defendant was forced to file three motions to compel. The first one was filed on April 28, 2004 and sought a copy of a videotape taken by the plaintiff of SNET's facilities in 2001. The second motion was filed on April 30, 2004 and it sought to compel and responses to Defendant's Second Request for the Production of Documents. The third motion was filed on May 3, 2004 seeking to compel a copy of plaintiff's draft statement to SNET's investigator.

II. **ARGUMENT**

A. **Plaintiff Still has not Provided a Good Copy of the Videotape**

Plaintiff apparently took a videotape of the SNET facility with her co-workers coming and going from the office while she was out on a medical leave of absence in 2001. She testified at her deposition that she believed this videotape supported her claim of harassment and retaliation with respect to others being out of the office when she returned for one day on January 18, 2001. Once it was aware the videotape existed (from a notation on plaintiff's calendar, not because plaintiff disclosed its existence in response to discovery), SNET tried to obtain a copy of the videotape unsuccessfully for several months.

Plaintiff did not produce a copy of the videotape in discovery until approximately 10 days ago. Notwithstanding plaintiff's claim that she sent the videotape to an unspecified person on an unspecified date at defense counsel's firm, no videotape was included in any discovery response from the plaintiff or any letter from her counsel. (Plaintiff's pattern has been to list enclosed discovery documents in a cover letter or discovery response throughout this litigation.) Plaintiff has never provided any letter or document addressed to SNET or its counsel indicating that a copy of the videotape was enclosed.

On May 24, 2004, in a final attempt to get a copy of the videotape after repeated requests over several months, Attorney Alexander asked plaintiff's counsel again to please send a copy prior to the plaintiff's deposition scheduled for June 2nd, indicating once again that this was not an issue over which there should be a dispute. Later the same day, plaintiff's counsel called back and asked whether we knew a skilled videotape reproduction service because <u>he said he had tried to have the tape copied but had been told that day that the tape could not be copied.</u>

2

Plaintiff's counsel knows full well that this conversation occurred on May 25, 2004 (about 2 weeks ago), yet he persists in his claim that the tape had been copied prior to date and actually sent to SNET. This representation is not accurate. Moreover, whether it was sent or not, another copy should have been made and sent promptly once SNET's counsel informed him that it had never received a videotape.

Instead, defense counsel has had to engage in a long and protracted series of communications and other efforts to cajole the plaintiff to provide this clearly discoverable item, which included the following:

> 1. <u>February 6, 2003</u>: SNET served plaintiff with requests for production which included the following:
>
>> 20. Any and all documents[1] concerning your allegations in paragraph 28 that when plaintiff returned to the office on January 18, 2001, the only other regular full-time employee in th office was Kevin West; that every other regular employee who normally works in that location was scheduled to be out of the office on that day for the entire day; that in plaintiff's experience of 18 months or more in the Elizabeth Street facility this had never happened . . . .
>>
>> 38. Any and all documents you may introduce as exhibits or part of exhibits at the trial of this matter.
>>
>> 48. Any and all documents concerning your claims of retaliation.

Defendant's First Request for the Production of Documents dated Feb. 6, 2003. No videotape was produced in response to these requests.

> 2. <u>February 12, 2004</u>: SNET served plaintiff with supplemental requests for production which included, <u>inter alia</u>, a request for "[a]ny and all videotape(s) or pictures taken of SNET, its current or former employees, as referenced in plaintiff's calendar previously produced." Exh. A to Affidavit of Deborah DeHart Cannavino in Support of Defendant's Motion to Compel a Copy of the Videotape dated April 28, 2004 ("Affidavit").

---

[1] "Documents" were defined to include tape and other electronic recordings.

3. <u>March 12, 2004</u>: Plaintiff objected to the above request as "duplicative and burdensome to demand production of these materials a second time." Exh. B to Affidavit.

4. <u>March 29, 2004</u>: SNET's counsel wrote to plaintiff's counsel that no videotape had been provided and requested that a copy of the videotape be produced immediately. Exh. C to Affidavit.

5. <u>April 9, 2004</u>: Plaintiff's counsel wrote to SNET's counsel asking whether SNET wanted him to make a copy of the videotape at SNET's expense. (SNET had already indicated it did not receive any videotape and had clearly already requested a copy.) Exh. D to Affidavit. The videotape was not included.

6. <u>April 22, 2004</u>: SNET's counsel wrote to plaintiff's counsel stating that she had located a company, Creative Video Corporation, who would come to his office to pick up the original tape, copy it, and return it. Exh. E to Affidavit.

7. <u>April 22, 2004</u>: Attorney Gillespie left SNET's counsel a telephone message stating that he was on vacation, that defense counsel was harassing him with respect to obtaining a copy of the tape, that his office was closed, and that no one could be available until the next week.

8. <u>April 26, 2004</u>: SNET's counsel arranged to have the videotape picked up from Attorney Gillespie's office and copied. However, upon obtaining the videotape, Creative Video Corporation informed SNET's counsel that the tape could not be viewed or copied on its equipment or on any professional or consumer system, because it had been recorded at an extremely high rate of speed on a specialized deck often used for security purposes. <u>See</u> Exh. F to Affidavit.

No defendant should be required to undergo the kind of repeated efforts SNET underwent to obtain legitimate discovery. Finally, on May 28, 2004, well after SNET had expended significant time and expense associated with the efforts set forth above, and well after it had filed its Motion to Compel a Copy of the Videotape dated April 28, 2004, SNET received a copy of a videotape from plaintiff's counsel. The audio track on the copy is unintelligible and the video is distorted so that the picture cannot be seen in many places. If the plaintiff in this case claims that the videotape supports her claims, as she does, a copy of the videotape should have been produced in a viewable

and understandable form more than a year ago. It was not. It has now been produced in garbled form after SNET's Motion to Compel and after repeated efforts to obtain it.

    B.    **Plaintiff Should be Compelled to Provide a Complete Response to the Defendant's Second Set of Discovery**

        1.    **Plaintiff's Disability Records are Within The Scope of Permissible Discovery**

In her Opposition, plaintiff represents, for the very first time, that she has no documents responsive to Request No. 12. Opposition at 5. In her attorney's letter to defense counsel prior to defendant bringing the instant motion to compel, however, plaintiff vigorously objected to this Request, which led to SNET's filing of a Motion to Compel. Exhibit D at 2, Cannavino Affidavit dated April 28, 2004. If plaintiff had withdrawn her objection, and represented in a formal pleading that she had no responsive documents, defendant would not have filed a motion seeking to compel a response to this Request.

        2.    **Plaintiff's Activity During her Disability Leave of Absence is Within The Scope of Permissible Discovery**

Plaintiff's mental state and level of functioning during the period of her leave of absence from SNET for alleged severe depression is relevant to her claim of emotional distress and defendant's defenses to that claim. In her Opposition, plaintiff does not dispute that. However, she still refuses to provide responses to Request Nos. 2 (family Christmas photos), 3 (family photo taken in November 2000), 4 (pictures from family vacations taken as referenced in her calendar), 10

(telephone bills), and 11 (correspondence sent to third parties)[2]. Just as SNET may question plaintiff concerning her activities during the period she is claiming emotional distress due to the alleged discrimination by SNET, it is similarly within the scope of permissible discovery to view photographs of these events. This Request is nether burdensome nor onerous. Plaintiff's husband, Edward Bachiocchi, testified at his deposition that the family keeps a photo album or albums. SNET should be permitted to inspect it for the relevant period, as well as other photos for the period of time she claims she has suffered distress because of SNET's alleged unlawful conduct. This information is relevant to demonstrate her level of functioning during this critical period and should be provided.

3. **Correspondence With SNET's Employees Concerning the Allegations in the Complaint is Within the Scope of Permissible Discovery**

Request No. 7 seeks "all documents concerning correspondence to or from any current or former employee of SNET, including but not limited to Nick Faiella." In her Opposition, plaintiff states that she has no documents in response to this Request. Opposition, at 11. However, in her counsel's correspondence concerning this Request, and in her response to the Request, plaintiff objected rather than stating that there were no responsive documents. In her correspondence, plaintiff renewed her objections and stated, "Plaintiff understands this request to be seeking social correspondence and/or correspondence relating to her work at the Elizabeth street facility. If that understanding is correct, she has no materials which she believes would be responsive to this request." See Exh. D to Cannavino Affidavit dated April 28, 2004, at 2. Plaintiff's limitation on this Request is not acceptable and plaintiff has not withdrawn her objection. If plaintiff has no responsive documents, defendant respectfully requests that she provide a formal response to

---

[2] If plaintiff's position is that she has no responsive documents, she should so date in a formal pleading, and withdraw her objections.

6

that effect, and withdraw her objection.

      4.      **Plaintiff's Financial Records of the SNET Saving Plan are Within the Scope of Permissible Discovery**

In her Opposition, plaintiff vigorously objects to defendant's expert's opinion that her "financial well being should be carefully examined." Plaintiff states that defendant's expert never even reviewed the plaintiff's tax returns and that his opinion is "nothing more than rank speculation untethered to reality by any material fact." Opposition, at 8. Plaintiff's argument misses the point. Plaintiff's calendar entry for October 11, 2001 indicates that she took (or at a minimum considered taking) a hardship withdrawal of $60,585.21 from her savings account during her leave of absence from SNET. A copy is attached hereto as Exhibit A. The calendar entry identified a confirmation number. Exh. B. Defendant's expert report lists plaintiff's calendars from 2000 and 2001 as items which he reviewed.

Discovery of plaintiff's financial situation during her leave of absence from SNET (when it appears that she either took a hardship withdrawal, or considered taking one) is reasonable and could lead to the discovery of admissible evidence.

However, given the recent deposition testimony of plaintiff's husband last week, defendant would agree at this time to limit Request No. 13 to information concerning plaintiff's pension, 401(k), savings or similar plans, and an authorization to obtain such records for the relevant period.

      C.      **Plaintiff's Draft Statement to SNET's Investigator is not Privileged and Should be Produced**

Plaintiff has not met her burden of establishing that her draft statement to Mr. Ellis, SNET's investigator, is subject to the attorney client privilege. Specifically, her draft statement was

7

not: (1) a communication between client and counsel, which (2) was intended to be and in fact was kept confidential, and (3) made for the purpose of obtaining or providing legal advice. U.S. v. Construction Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

In her Opposition, plaintiff admits that it was Mr. Ellis who requested that she submit a written statement, not her counsel, and therefore, the draft written statement could not have been made for the purposes of seeking legal advice. Moreover, it was presumably addressed to Mr. Ellis, not her lawyer. The draft statement was made for the purpose of setting forth the facts that supported her complaint to SNET, which the defendant is entitled to know. Just because her lawyer reviewed the draft statement (and presumably made changes to it) before it was submitted to Mr. Ellis does not cloak the documents in the attorney client privilege. Defendant is not seeking anything prepared by counsel, but is only seeking the first draft report by the plaintiff to SNET's investigator, Mr. Ellis.

In fact, the factual modifications to plaintiff's draft statement are highly relevant to the instant matter, and defendant should have the opportunity to question plaintiff about them.

Plaintiff's reliance on the District Court's decision in Western Trails Inc. v. Coast to Coast, Inc., 139 F.R.D. 4 (D.C.C. 1991) is misplaced. There, the court found that the client intended that certain communications to counsel relating to preliminary drafts of letter be kept confidential and the client retained the discretion not to publish the letters. 139 F.R.D. at 14. In so holding, the court specifically recognized that, "if Coast to Cost intended that the information communicated to Berliner [the attorney] would be revealed to third parties by publication of the final drafts of the documents, the preliminary drafts may not be privileged." Id. at 13.

Moreover, in sharp contrast to the instant matter, the District of Columbia court also

8

relied upon the fact that the draft documents revealed confidential attorney-client communications relating to legal advice provided to the client. Id. Where the draft documents did not reveal the legal advice of counsel, the court ordered them to be produced. Id. Here, there is no claim that the documents drafted by the plaintiff contains the advice of counsel. Plaintiff's draft statement sets forth only facts, the facts as she saw them and initially intended to report them to SNET.

### III. CONCLUSION

WHEREFORE, based upon the foregoing, and as set forth in the memoranda of law and affidavits submitted previously, the defendant respectfully requests that its Motions to Compel be granted.

THE DEFENDANT,
SOUTHERN NEW ENGLAND TELEPHONE COMPANY

By *Debbie Canna*
Deborah DeHart Cannavino (CT 08144)
Tyler Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901-2501
Tel. (203) 348-5555
Fax: (203) 348-3875
cannavino@tylercooper.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was sent via facsimile and first-class mail, postage prepaid to all counsel and *pro se* parties of record on this 8th day of June, 2004, as follows:

Peter E. Gillespie
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

_____
Deborah DeHart Cannavino