FILED

2004 OCT -4 P 4: 04

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*****************************************
KIMBERLY BACHIOCCHI,            *
                                *
           Plaintiff,           *   CIVIL ACTION No. 3:02CV908(CFD)
                                *
    v.                          *
                                *
SOUTHERN NEW ENGLAND            *   October 4, 2004
TELEPHONE COMPANY,              *
                                *
           Defendant.           *
*****************************************

## OBJECTION TO THE RULINGS OF THE MAGISTRATE JUDGE CONCERNING PLAINTIFF'S CLAIM OF LAWYER-CLIENT PRIVILEGE

Defendant sought to compel Plaintiff to produce draft copies of a statement, the final copy of which previously had been provided. Plaintiff resisted production of the draft materials based upon a claim of lawyer-client privilege, noting: (I) that the draft had been prepared at counsel's instruction for his exclusive use; (ii) it formed the basis for a discussion between lawyer and client; (iii) the discussion was reflected in Plaintiff's handwritten notes on the draft; and (iv) the draft materials had not been released to anyone else. The Magistrate Judge considered Plaintiff's position, found that she had not established lawyer client privilege, granted the motion to compel and declined to seal Plaintiff's submissions on the ground that they were not privileged. Plaintiff respectfully objects to these rulings on the issue of lawyer client privilege as set forth more fully below.

The Procedural Background of This Issue.

Defendant filed a motion to compel the production of all draft materials concerning the statement in question. (Docket No. 62)[1]. Plaintiff objected, relying on a claim of lawyer client privilege, (Docket No. 84), and supported her objection with an affidavit of Plaintiff (Docket No. 85).

The Magistrate Judge issued an endorsement order requiring Plaintiff to submit the draft materials for in camera inspection (Docket No. 99). Plaintiff submitted an affidavit identifying the draft (Docket No. 117) and supplemented it with a second affidavit identifying a draft bearing interlinear handwritten notations which reflected her conversation with her lawyer. (Docket No. 120).

The Magistrate Judge issued a Ruling (Docket No. 132) granting the motion to compel and over-ruling Plaintiff's claim of lawyer client privilege. The Court below also issued an endorsement Order (Docket No. 131) declining to seal the supplemental submission setting forth the Plaintiff's contemporaneous notes of her discussion with her lawyer, also on the ground that there was no lawyer client privilege.

---

[1] To avoid confusion, references to the various submissions and Orders will be made by reference to the Docket Number of the item.

2

General Background Facts

This is a suit alleging sexual harassment and retaliation directed against the Plaintiff. The Complaint sets forth a series of actions and incidents upon which Plaintiff relies. One of those incidents forms the factual setting for the issue now being considered.

In her Complaint at ¶31(H)(vi) Plaintiff alleges that Kevin West, a managerial employee of Defendant and her supervisor, grabbed her wrist in a moment of anger and ripped a paper from her hand. Among other events which followed, Defendant assigned an individual named Robert Ellis to investigate what had occurred on this occasion.

Mr. Ellis asked Plaintiff to submit a written statement. As Plaintiff stated:

> I was still very upset. I wasn't sure what rights I had, if any, or how I should respond to Mr. Ellis' request. I did not know what, if anything, I could do about West.
>
> I called my lawyer, Peter Gillespie. He told me to prepare a draft statement and send it to him. He said to be careful with the draft and not show it to anyone else until after we had spoken. I followed his instruction. I did not send the draft to any other person.

Bachiocchi Affidavit, No. 85 at ¶¶5 and 6

Plaintiff then did confer with her lawyer seeking his assistance. Bachiocchi Affidavit, No. 85 at ¶7; Bachiocchi Affidavit, No. 117 at ¶4. Plaintiff and her lawyer, the undersigned, reviewed the draft. During her discussion with counsel Plaintiff made contemporaneous handwritten notes of the conversation on the draft. These interlinear notes reflect the actual discussion between lawyer and client. Bachiocchi Affidavit, No. 120 at ¶5.

3

Following the consultation between lawyer and client the statement was finalized. In final form the statement was submitted to Mr. Ellis, as he had requested. Bachiocchi Affidavit, No. 85 at ¶7.

Defendant has the statement which was submitted to Mr. Ellis in final form. It now seeks to obtain the draft materials, including Plaintiff's contemporaneous notes of her discussion with her lawyer. In his Ruling, No. 132, the Magistrate Judge granted Defendant's motion to compel over-ruling Plaintiff's claim of lawyer client privilege. The Court below also issued an endorsement Order, No. 131, denying Plaintiff's motion to seal the document containing her contemporaneous notes of her discussion with her lawyer, based upon a finding that the materials were not protected by lawyer client privilege.

Plaintiff respectfully objects to this ruling and endorsement order holding that there was no privilege and granting the motion to compel. She seeks review by the Court.

1.   Plaintiff Did Meet Her Burden of
     Establishing that Privilege Exists.

It is not disputed that the party asserting a privilege has the burden of establishing it. <u>U.S. v. Schwimmer</u>, 892 F.2d 237, 244 (2d Cir. 1989). That burden requires a demonstration that (1) There was a communication between client and counsel; (2) That the communication was intended to be confidential and was so in fact; and (3) That the communication was made for the purpose of obtaining or providing legal advice. <u>United</u>

4

*States v. Construction Prods. Research, Inc.*, 73 F. 3d 464, 473 (2d Cir. 1996). The following year Magistrate Judge Fitzsimmons of this District elaborated somewhat, in *U.S. v. Housing Authority of Town of Milford*, 179 F.R.D. 69 (D. Conn., 1997), noting, among other elements, that the privilege exists where legal advice of any kind is sought.  179 F.R.D. at 70.  Other cases make clear that seeking legal advice includes the receipt of assistance in legal proceedings.  *See, e.g., Montgomery County v. MicroVote Corp.*, 175 F.3d 296, on remand 2000 WL 134708, opinion corrected 2000 WL 341566 (3d Cir. 1999); *Hawkins v. Stables*, 148 F. 3d 379 (4th Cir. 1998).

It seems beyond dispute that the draft is a communication between lawyer and client.  The original draft copy, No. 117, was prepared for counsel at his request and has never been distributed to anyone else.  That draft formed the basis for a discusssion between lawyer and client concerning how best to respond to the Ellis request within the context of Plaintiff's rights.  The give and take of that conversation was then memorialized by Plaintiff who made handwritten notes on the typewritten draft, No. 120.

Secondly, Plaintiff and her lawyer intended that the draft, produced for him at his request as the basis for an ensuing consultation between lawyer and client, would be, and remain, confidential.  Plaintiff's specifically recounted that she was cautioned to keep the draft private, not to show it to anyone other than counsel, and that she did so.

Plaintiff also established the third element necessary to show the existence of privilege. At the time of the events concerning the draft, there was already one charge of

discrimination pending before the administrative agencies,[2] and a second administrative filing followed almost immediately after the West incident of June 4, 2001 which is the subject of the draft materials.[3] As Plaintiff stated, she consulted her lawyer because she was not sure what rights she had; she did not know how to respond to Ellis; she did not know what she could do about West; and she wanted counsel's assistance.

In its memorandum, Defendant maintained that Plaintiff prepared the draft in response to a request from Investigator Ellis[4]. This is not accurate. Upon receiving a request from Mr. Ellis, Plaintiff did not know what to do. She did not immediately draft anything in response to Mr. Ellis. Instead she called her lawyer. It was her lawyer, speaking to his client, who instructed her to prepare a draft statement; It was in response

---

[2] The Release of Jurisdiction issued by the CCHRO and attached to the Complaint at ¶5, EX B, notes that the Charge in Case No. 0130048 had been filed on July 24, 2000.

[3] The Release of Jurisdiction issued by the CCHRO and attached to the Complaint at ¶5, EX B, notes that the Charge in Case No. 0130598 had been filed on June 12, 2001.

[4] Defendant cites Complaint ¶33 in support of this factual allegation. However, the Complaint merely states that Ellis requested a statement and it then recites the ultimate conclusion that Plaintiff provided one. The Complaint allegation does not refer to any of the intervening discussions between client and lawyer which are set forth above. In relevant portion Complaint ¶33 states:

> Plaintiff met with Ellis two times. On the first occasion Mr. Ellis spoke with Plaintiff, but the time allotted was insufficient to complete the conversation. Ellis asked Plaintiff to prepare a written statement. Plaintiff did so and gave the statement to Ellis on the second occasion that they met together. [Remainder deleted.]

6

to the lawyer's instruction that a draft then was prepared; and it was to the lawyer, not Mr. Ellis, that the draft was sent; it was with the lawyer, not Mr. Ellis, that a discussion then commenced. Only after discussing her rights and her options with her lawyer, only after exploring with her lawyer the appropriate content for a statement, was a final copy prepared and forwarded to Mr. Ellis.

At the same time Mr. Ellis was attempting to investigate West's conduct, Plaintiff was considering an array of potential additional actions based upon Defendant's conduct, including West's battery of June 4. She reasonably sought out the confidential advice of her attorney so that she could explore all of her rights and, within that context, lawyer and client considered the content of an appropriate written statement for disclosure to Mr. Ellis, an employee of Defendant.

In *Alexander v. FBI*, 186 F.R.D. 154 (D.D.C. 1999) the Court considered, and found to be privileged, entries made in a client's own diaries which describe confidential communications made by the client to the lawyer while seeking guidance. That was the same purpose for which Plaintiff prepared and forwarded her draft statement to her lawyer. The handwritten interlinear notes made by Plaintiff reflecting the advice then received from her lawyer are similarly privileged, a point of law also discussed in *Alexander v. FBI*, 186 F.R.D. at 161.

The apparent, unspoken implication of Defendant's claim, is that Plaintiff was trying to take a pre-existing factual summary and protect it from disclosure by artificially cloaking

it with a claim of privilege. Such conduct would be inappropriate. <u>See, e.g. Philadelphia v. Westinghouse Electric</u>, 205 F. Supp. 830, 831 (ED PA 1962) (putting pre-existing relevant factual material into a communication to counsel and then claiming that all of such facts had become privileged and non-discoverable.) However, that fact pattern is not present here.

Plaintiff seeks merely to preserve from disclosure and further continuing inquiry the actual communications which she had with her lawyer. The draft materials make the actual communications clear to public view. Plaintiff respectfully suggests that such a result should not be permitted.

> The attorney client privilege is the oldest of the privileges for confidential communication known to the common law . . . . . Its purpose is to encourage full and frank communication between attorneys and their clients . . . .
>
> <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389.

2. The Draft Materials Should
   <u>Be Protected By the Privilege.</u>

In his Ruling the Magistrate Judge observes that the privilege protects communications, not facts. Later in the Ruling it is noted that the "subject essence, gravamen and substance" of the draft materials had been disclosed to Defendant when the finalized copy of Plaintiff's statement was given to Defendant. Plaintiff does not disagree with either of these factual propositions. Neither, however, does she understand why

8

either of them defeat her claim of privilege.

It is true that only communications, not facts, are protected. For this reason inquiry can be made about the underlying facts, but not which of them may have been discussed with counsel. Similarly, as noted above, pre-existing facts and materials cannot be shielded from view because they are discussed with a lawyer. See, *Philadelphia v. Westinghouse Electric*, 205 F. Supp. 830, 831 (ED PA 1962). However, to release the draft materials discussed by Plaintiff and counsel is to expose the exact nature of the communications between lawyer and client in this case. The first draft, No.117, when compared to the final statement given to Mr. Ellis implicitly reveals the essence of the lawyer client communication; Plaintiff's hand written interlinear notes, No. 120, explicitly reveal the communication.

This distinction between protected communications and unprotected facts was discussed by the Supreme Court in *Upjohn Co., v. United States*, 449 U. S. 383 (1981). In that matter the Court ruled that a control group test was too tight a restriction in determining questions of lawyer client privilege. In its discussion, while upholding the claim of privilege, the Court stated:

> Application of the Attorney-client privilege to communications such as those involved here, however, puts the adversary in no worse position than if the communications had never taken place. The privilege only protects the disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:

9

> \* \* \*
>
> A fact is one thing and a communication concerning the fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.
>
> \* \* \*
>
> Here the Government was free to question the employees who communicated with Thomas and outside counsel. . . . While it would probably be more convenient for the Government to secure some of the results . . . by simply subpoenaing the questionaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney client privilege.
>
> *Upjohn Co.*, 449 U. S. At 395-396 (Internal citations omitted).

The fact that the final statement is similar to the draft materials also fails to strip Plaintiff of her privilege concerning the ebb and flow of her discussion with counsel. In one sense, the similarity of the documents shows that Plaintiff was not seeking to hide or shield underlying facts from disclosure. It also shows that there is no apparent prejudice to Defendant if the draft is protected. In any event, it is common for a final product to resemble a draft.

The Courts have often held that draft statements sent to counsel for review are privileged. *Alexander v. FBI*, 186 F.R.D. 154, 162 (D.D.C. 1999) (Finding privileged a draft

10

public affairs statement sent to an attorney for review and comment prior to final release.); <u>Western Trails, Inc. V. Camp Coast to Coast, Inc.</u>, 139 F.R.D. 4,14 (D.D.C. 1991) (Finding privileged draft letters which were forwarded to counsel for advice and comment before being finalized and published to third parties.); <u>Rohm and Haas Co., v. Brotech Corp.</u>, 815 F. Supp. 793 (D. Del. 1993) (Finding that a draft patent application provided to a lawyer was privileged.)

Here, Plaintiff provided the draft at counsel's request so that she could be advised of her rights and how best to proceed in light of her pending and anticipated legal proceedings including, most specifically, the battery by West, as well as her pending and about to be filed CCHRO matters. Both client and lawyer regarded the communication as confidential and maintained it as such. Plaintiff continues to believe that the draft materials are privileged communication.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court review the Ruling and accompanying endorsement Order of the Magistrate Judge granting Defendant's motion to compel and finding that the draft materials which passed between Plaintiff and her lawyer were not protected by attorney client privilege.

Plaintiff makes this request, notwithstanding that the materials themselves have already been released. In light of the Court's Orders, Plaintiff's deposition will now resume.

We anticipate that there will be continuing inquiry of Plaintiff, not only as to the facts of the draft but also as to how and why specific phrases were added or dropped. That inquiry, if not limited by a finding of privilege, will become an ongoing inquiry into the confidential communications which earlier passed between lawyer and client.

Respectfully submitted,

THE PLAINTIFF
KIMBERLY BACHIOCCHI

By: /s/ Peter E. Gillespie
Peter E. Gillespie   (Ct06554)
Her Attorney
46 Riverside Avenue
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508
E-Mail: petelaw@mac.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the forgoing was transmitted by first class post this 4th day of October, 2004 to the following:

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
New Haven, CT 06510

Deborah DeH. Cannavino, Esq.
Tyler, Cooper & Alcorn, LLP
One Landmark Square
Stamford, CT 06901

Peter E. Gillespie