UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV908(CFD) |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| Defendant. | : | OCTOBER 25, 2004 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S OBJECTION TO THE RULINGS OF THE MAGISTRATE JUDGE CONCERNING PLAINTIFF'S STATEMENT

### I.    PRELIMINARY STATEMENT

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule 72, the

defendant, the Southern New England Telephone Company ("defendant"), respectfully submits this

Opposition to the Objection to the Rulings of the Magistrate Judge Concerning Plaintiff's Claim of

Lawyer-Client Privilege filed by the plaintiff Kimberly Bachiocchi ("plaintiff") on October 4, 2004.

### II.    FACTS

#### A.    In June 2001, Plaintiff Made an Internal Complaint to SNET

In her complaint, plaintiff alleges claims for sexual harassment in violation of the

Connecticut Fair Employment Practices Act and Title VII of the Civil Rights Act, retaliation and

violation of the Equal Pay Act. Plaintiff seeks damages for emotional distress, back pay, and loss of benefits. Plaintiff has remained continuously employed by SNET.

In support of her claims, plaintiff alleges inappropriate conduct, commencing in 1999, occurring in the workplace while she was employed as an Analyst Technical Sales Support for SNET. Complaint, ¶¶ 11-33. As an alleged result of this conduct, plaintiff went out on a medical leave of absence from May 2000 through May 15, 2001. Complaint, ¶¶ 26, 31.

Upon her return, plaintiff alleges that she made a complaint to human resources against her supervisor, Kevin West. Complaint, ¶ 32. In response to her complaint, plaintiff alleges that SNET commenced an investigation using an individual named Bob Ellis to conduct the investigation. Complaint, ¶ 32. Plaintiff met with Mr. Ellis two times. Complaint, ¶ 33. At the first meeting, plaintiff alleges, Mr. Ellis asked her to prepare a written statement. Complaint, ¶ 33. Plaintiff alleges that she prepared a written statement and gave it to Mr. Ellis at their second meeting. Complaint, ¶ 33.

B.    Plaintiff Refuses To Provide Her Draft Statement To The Investigator

On February 6, 2004, defendant served its First Request for the Production of Documents on plaintiff. Exhibit A attached to the Affidavit of Deborah DeHart Cannavino dated May 3, 2004. In Request No. 25, defendant sought all documents concerning plaintiff's allegations in paragraph 33 of her complaint alleging that she met with Mr. Ellis on two occasions and, among other things, that she provided him with a written statement. Cannavino Aff., Exhibit A, at 13.

2

On April 2, 2004, plaintiff served her objections and responses. Cannavino Aff., Exhibit B. In response to Request No. 25, plaintiff did not object and in fact failed to include a written response to that Request. Id., at 13-14. She did, however, provide a copy of her statement to the investigator.

Plaintiff attached a Privilege Log to the objections stating that certain information was being withheld on the basis of attorney client privilege. Cannavino Aff., Exhibit C. One of them was "a preliminary draft of the final statement which was prepared by the plaintiff and supplied to SNET Investigator Ellis" and another was her diary/log of events. Id.

On April 6, 2004, defendant wrote plaintiff's attorney a letter seeking the production of these two items. Cannavino Aff., Exhibit D. Defense counsel stated that these documents were not communications between plaintiff and her lawyer and, therefore, were not protected from disclosure by the attorney client privilege. Id. In addition, defense counsel stated that these documents were highly relevant to plaintiff's claims and needed to be provided immediately. Id. Defense counsel further explained that if the documents were not forthcoming, she would be forced to file a motion to compel them with the court. Id.

On April 12, 2004, plaintiff's attorney responded. Cannavino Aff., Exhibit E. He produced the plaintiff's log/diary based upon plaintiff's testimony at her deposition that she had created the log *before* she retained counsel. Id. However, plaintiff stated that he would not produce the draft statement as it was prepared at his direction and for his "exclusive review." Id. Plaintiff's attorney

3

further stated that "I had a discussion with the plaintiff about the draft, and the final statement for Mr. Ellis was then prepared and delivered." Id.

## C.    SNET Moves to Compel The Plaintiff's Draft Statement

On May 3, 2004, defendant filed a Motion to Compel a Copy of the Plaintiff's Statement, with a supporting Memorandum of Law and Affidavit of Deborah DeHart Cannavino. Plaintiff filed an Opposition on April 30, 2004, and defendant filed a Reply on June 8, 2004. [1]  On June 22, 2004, Magistrate Judge Smith issued an Order directing the plaintiff to submit the draft statement which she contended she was entitled to withhold from production on the grounds of the attorney-client privilege, as well as a copy of the final statement she later gave to Mr. Ellis, within ten (10) days. The Magistrate Judge further stated that since plaintiff has not asserted work product immunity, such claim was waived.

On July 7, 2004, plaintiff filed a Motion for In Camera Inspection, stating that the draft statement and the final statement was attached to plaintiff's Affidavit dated July 1, 2004. A copy

---

[1]      Plaintiff provided one Opposition to the three Motions to Compel pending at the time. In addition to the Motion to Compel Plaintiff's Statement, defendant also filed a Motion to Compel a copy of a videotape plaintiff took of the defendant's premises and another Motion to Compel complete responses to the Defendant's Second Request for the Production of Documents. Defendant's Reply followed the form of plaintiff's Opposition, and addressed all three pending motions. Magistrate Judge Smith subsequently granted all three of defendant's motions in their entirety.

of the Plaintiff's Affidavit, which was filed with the Court is attached hereto as Exhibit A.[2]  Then,

21 days later, on July 28, 2004, plaintiff filed a Request to File Supplemental Affidavit attaching

a purportedly newly discovered second draft document, along with a Motion to Seal Exhibit A to the

Supplemental Affidavit.  A copy of the plaintiff's Supplemental Affidavit which was filed with the

Court is attached hereto as Exhibit C.

D.    Magistrate Judge Smith Issues a Ruling Granting SNET's Motion to Compel

On September 24, 2004, Magistrate Judge Smith issued a Ruling granting defendant's

Motion to Compel and ordered defendant to submit an Affidavit setting forth its attorney's fees and

costs incurred in bringing the Motion, and ordered plaintiff to show cause, if there is any, why an

award of attorney's fees and cost should not be immediately imposed on plaintiff and/or her counsel.

Ruling, at 1-2 (See Docket # 132).  Specifically, Magistrate Judge Smith found that (1) plaintiff had

not sustained her burden of showing that the privilege applies; (2) it was clear from the fact of the

document itself (which the Magistrate Judge had reviewed in camera) that the privilege did not

apply, since it protects only communications, not facts; and (3) the subject, essence, gravaman and

substance of the information was contained in a document that was previously revealed to the

---

[2] However the final statement, which plaintiff says is attached as Exhibit B to her
Affidavit, was incomplete on the docket.  A copy of the complete copy of plaintiff's statement is
attached hereto as Exhibit B.

5

defendant when a later version of the statement was disclosed to the plaintiff's employer, SNET. Ruling, 1-2. [3]

E.    Magistrate Judge Smith's Rulings Should be Upheld

On October 5, 2004, plaintiff filed an Objection to the Magistrate Judge's two Rulings: one granting the Motion to Compel (Docket #132) and the endorsement order denying the plaintiff's Motion to Seal her Supplemental Affidavit (Docket # 131). Plaintiff's objection lacks merit and should be overruled.

In granting the Defendant's Motion to Compel, Magistrate Judge Smith correctly applied the applicable law to the facts in concluding that the plaintiff's draft statement was not privileged. Plaintiff contends essentially that since her lawyer reviewed this draft statement before she submitted it to the investigator, the draft is protected from disclosure by the attorney client privilege.

Plaintiff's argument is legally incorrect. As Magistrate Judge Thomas P. Smith properly concluded, plaintiff has not sustained her burden of showing that the privilege applies. The draft statement was not a confidential communication between attorney and client for the purposes of rendering legal advice. As alleged in her complaint, it was prepared at the request of the investigator, and, ultimately, the final version of her factual statement was provided to him. Furthermore, the

---

[3]    Plaintiff's Supplemental Affidavit was not provided within 10 days of the court's June 22, 2004 Order requiring that the proposed draft statement be provided to the court, and therefore, it does not appear to have been considered by the court in its Ruling. The court issued a separate endorsement Order on September 23, 2004 denying plaintiff's Motion to Seal finding that it was not protected by the attorney client privilege. See Docket #131.

6

draft statement consists merely of the facts supporting the plaintiff's complaint. As Magistrate Judge Smith found, the attorney client privilege does not protect *facts* that are transmitted to counsel.

A comparison of the plaintiff's initial draft statement and the statement submitted to the investigator demonstrates that what the plaintiff is seeking to withhold here is not an attorney client communication, but rather that the facts supporting her complaint of workplace violence against her supervisor, Kevin West, have been manipulated.

For these same reasons, the Magistrate Judge issued an endorsement ruling denying the Plaintiff's Motion to Seal a subsequent version of the draft statement finding, that it "is not properly withheld from discovery. It shall not be filed under seal. It is not protected by the attorney-client privilege." See Docket # 131.

In addition, plaintiff waived the attorney client privilege with regard to this subsequent draft statement. She did not object to Document Request No. 25 of Defendant's First Request for the Production of Documents, which sought copies of all notes, drafts, etc. relating to Mr. Ellis' investigation, nor did she include it on any privilege log.

7

III.   STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Rules of Civil Procedure and the Federal Magistrates Act,  28 U.S.C. § 631 et seq., govern the court's review of the Plaintiff's Objection to Magistrate Judge Thomas P. Smith's Rulings.  Under both Rule 72 and 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," except for certain enumerated dispositive motions. Thomas E. Hoar, Inc., v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).  Whether the matters referred are dispositve motions or non-dispositive determines the standard of review. Id. Matters concerning discovery motions are considered "non-dispositive" since they do not resolve substantive claims for relief. Id. These matters include issues of attorney client privilege. Commodity Futures Trading Commission v. Standard Forex, Inc.,  882 F.Supp. 40, 42 (E.D.N.Y. 1995). A District Court may only overturn a Magistrate Judge's order on non-dispositive matter when the order is  "clearly erroneous or contrary to law." Id; 28 U.S.C. § 636(b)(1)(A).

The U. S. Supreme Court has recognized that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). Under this highly deferential standard of review, a Magistrate Judge is "afforded broad discretion in resolving discovery disputes and reversal is only appropriate if discretion is abused." Doe v. Marsh,  899 F.Supp. 933 (N.D.N.Y. 1995); Conway v. Icahn, 16 F.3d 504 (2d Cir. 1994).

8

Reversal based upon an improper order denying or curtailing discovery is "unusual." B.F. Goodrich v. Betkoski 99 F. 3d 505, 523 (2d Cir. 1996) (quoting Moore's Federal Practice and Procedure § 2006 at 94).

In the instant matter, the plaintiff has not and cannot demonstrate that Magistrate Judge Smith's Rulings were clearly erroneous or contrary to law. Accordingly, plaintiff's objection should be overruled.

IV.    ARGUMENT

A.    Magistrate Judge Smith's Ruling Granting Defendant's Motion To Compel Is Not Clearly Erroneous or Contrary to Law

1.    Legal Standard

Magistrate Judge Smith's decision compelling plaintiff to provide a copy of her initial draft written statement to Mr. Ellis should be upheld because the plaintiff has not established that the decision was "clearly erroneous or contrary to law", as specifically required by 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(b).

This case is before the Court based upon its federal question jurisdiction by virtue of Plaintiff's Title VII claim. The Second Circuit has held that, in such cases, the elements of the attorney-client privilege are governed by federal law. See von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir.1987), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Under federal law, to invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept

9

confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Construction Prods. Research, Inc ., 73 F.3d 464, 473 (2d Cir.1996).

The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements. von Bulow v. von Bulow, 811 F.2d at 144. "Since the privilege stands in derogation of the public's right to every man's evidence, ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re grand Jury Proceedings v. Doe, 219 F.3d 175, 182 (2d. Cir. 2000). "Blanket assertions" of privilege have been held insufficient to satisfy this burden.  See Burns v. Imagine film Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

### 2.   The Plaintiff's Draft Statement Is Not A Confidential Communication

The Magistrate Judge was correct when he found that the plaintiff had not met her burden of establishing that her draft statement to Mr. Ellis, SNET's investigator, was subject to the attorney client privilege.   First, the draft of plaintiff's statement for Mr. Ellis is not a confidential communication. An attorney-client communication is not considered confidential if the information contained in it was intended to be conveyed to third parties. U.S. v. Tellier, 255 F.2d 441, 447 (2d. Cir. 1958); U.S. Postal Service v. Phelps Dodge Refining Co., 852 F.Supp. 156, 163 (E.D.N.Y. 1994) ("[t]he fact that the document is to be sent to a third party ordinarily removes the cloak of confidentiality necessary for protection under the attorney-client privilege").   Therefore, drafts of documents to be submitted to third parties are generally not privileged. U.S. Postal Service v. Phelps

Dodge Refining Co., 852 F.Supp at 162-163 (holding that drafts of documents which contained handwritten comments of in house counsel which were letters to be submitted to third parties were not privileged); Renner v. Chase Manhattan Bank, 2001 WL 1356192 (S.D.N.Y. 2001) (holding that a draft of a letter to be sent to a third party not privileged).

Moreover, even assuming that the information contained in the draft statement was communicated from plaintiff to her attorney in confidence, which it was not, the privilege was waived when the plaintiff revealed the information to the SNET investigator. See Int'l Honeycomb Corp., v. Transtech Service Network, Inc., 1992 WL 314897 at *2 (E.D.N.Y. 1992) (holding that information contained in opinion letters was not confidential because the communication was made with the intent that the counsel would include that information in correspondence to third parties).

As alleged in her complaint, plaintiff prepared the written statement in response to a request from defendant's investigator. Complaint, ¶ 33. That the draft statement may have been reviewed by plaintiff's attorney, does not change the fact that it was prepared at the request of the investigator (not her attorney) for purposes of setting forth her complaint to her employer (not for purposes of seeking legal advice). Contrary to plaintiff's assertions, this statement was never intended to be confidential, and was not kept confidential. It was always intended to be submitted to the investigator and was provided to him.

11

3.    Facts Communicated to Counsel Are Not Privileged

Furthermore, Magistrate Judge Smith was correct in finding that the privilege did not apply

since the document contains only facts, not confidential communications.  The attorney client

privilege extends only to communications between attorney and client, not to the facts

communicated, and therefore, a client may not refuse to disclose any relevant fact merely because

he or she incorporated it into a communication to counsel. Upjohn Co. v. United States, 449 U.S.

383, 395-96 (1981)(holding the attorney- client privilege applies to confidential communications,

not to facts underlying those communications); Gordon v. Boyles 9 P.3d 1106, 1124 (Col. 2000)

("[t]he scope of the attorney-client privilege does not encompass otherwise unprivileged facts

disclosed in attorney-client relations, and unprivileged facts cannot become privileged merely by

incorporation into a communication with an attorney");  SCM Corp. v. Xerox, 70 F.R.D. 509, 515

(D.Conn. 1976) (holding memoranda prepared by patent attorneys not privileged where it contained

technical information,   public information and legal opinions regarding patent coverage which

opinions were ultimately revealed to third parties); See also Carrier Corp. v. The Home Ins. Comp.,

1992 WL 129778 (Conn. Super.) ("The attorney client privilege attaches to the communication itself,

not to the facts communicated and therefore, may not be used to protect the disclosure of underlying

facts to opposing counsel").

Similarly here, the plaintiff's draft statement was made for the purpose of setting forth the

facts that supported her complaint against her supervisor.  It is merely a listing of events.   The

12

factual representations made in plaintiff's draft statement are highly relevant to the instant matter, and defendant should have the opportunity to question plaintiff about them. Therefore, it is not subject to the attorney client privilege.

4.    The Plaintiff's Draft Was Not Made For The Purposes Of Seeking Legal Advice

In addition, the plaintiff's draft written statement could not have been made for the purposes of seeking legal advice. Her argument that her counsel requested she draft the statement is not supported by either the allegations in the complaint, or the facts. On its face, the draft statement does not indicate that it was prepared for her attorney, or for the purposes of seeking legal advice. It is not addressed to her lawyer. It does not contain a request for legal advice on any issue.

As alleged in the complaint, the statement was made at the request of Mr. Ellis, not her lawyer. Just because her lawyer reviewed the draft statement before it was submitted to Mr. Ellis does not cloak the otherwise non-privileged facts in the attorney client privilege. See City of Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830 (E.D.Pa. 1962) (explaining that a client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney").

Plaintiff's argument that the comparison between the initial draft statement and the final statement reveals the advice of counsel lacks merit. The only thing that a comparison of the two documents reveals is that the plaintiff changed some facts, omitted others and added still others. It does not disclose any privileged communication.

13

5.    Plaintiff Waived Any Privilege

Moreover, plaintiff admits she waived the attorney client privilege by voluntarily providing

it to defendant along with the detailed log of events prepared by plaintiff in April 2004.  See

Plaintiff's Notice of Inadvertent Disclosure dated October 12, 2004.  The likely reason for the

disclosure is that plaintiff's draft statement is in the same format as her log, and just like plaintiff's

log which describes other events at SNET, the draft statement is merely the plaintiff's description

of the facts as she experienced them.

6.    The Caselaw Cited In Plaintiff's Objection Is Not Controlling

Plaintiff's reliance on the District Court's decision in Western Trails Inc. v. Coast to Coast,

Inc., 139 F.R.D. 4 (D.C.C. 1991) is misplaced.  There, the court found that the client intended that

certain communications to counsel relating to preliminary drafts of letter be kept confidential and

the client retained the discretion not to publish the letters.  139 F.R.D. at 14.  In so holding, the court

specifically recognized that, "if Coast to Cost intended that the information communicated to

Berliner [the attorney] would be revealed to third parties by publication of the final drafts of the

documents, the preliminary drafts may not be privileged."  Id. at 13.

Moreover, in sharp contrast to the instant matter, the District of Columbia court also

relied upon the fact that the draft documents revealed confidential attorney-client communications

relating to legal advice provided to the client.  Id.  Where the draft documents did not reveal the

14

legal advice of counsel, the court ordered them to be produced. Id. Here, the initial draft statement drafted by the plaintiff does not contain the advice of counsel. Plaintiff's draft statement sets forth only facts, the facts as she saw them and as she initially intended to report them to SNET.

Plaintiff's objection includes a number of new cases and arguments which were not presented to the Magistrate Judge. See e.g. Plaintiff's Objection, pages 6-11. This is inappropriate and should not be allowed. In any event, these cases do not change the result. For instance, plaintiff's reliance on Alexander v. Federal Bureau of Investigation, 186 F.R.D. 154 (D.C.C. 1999) lacks merit. There, the court found that although the facts within the draft public affairs document regarding the release of Linda Tripp's background security information were not privileged, the document itself sought an opinion of law based upon those facts and, therefore, it was a privileged communication. Unlike Alexander, plaintiff's initial draft statement itself sought no legal advice and merely recited discoverable, non-privileged facts.

The Delaware District Court's decision in Rohm & Hass Corp. v. Brotech Corp., 26 U.S.P.Q. 2d 1800 (D.Del. 1993), holding that a draft patent application is subject to the attorney client privilege cited by the plaintiff in her objection is also distinguishable. This is not a patent case. Even so, Rohm recognized that there was a considerable body of law holding that draft patent applications are not privileged because they contained only technical information and did not seek legal advice. After conducting an in camera review, however, the Rohm court found that the patent application at issue was a privileged communication as it sought legal advice.

15

In summary, there is no basis to find that the Magistrate's Ruling was not clearly erroneous or contrary to the law and, therefore, the Ruling should be upheld.

B.    Magistrate Judge Smith's Endorsement Ruling Denying Plaintiff's Motion To Seal Is Not Clearly Erroneous or Contrary to Law

In her Objection, plaintiff combines her initial draft statement, which was submitted to the court on July 7, 2004 (Docket # 117) with her second draft statement, which was submitted to the court on July 28, 2004 (Docket # 120) in an apparent effort to confuse the issues regarding Magistrate Judge Smith's two Rulings.

Plaintiff's initial draft statement, attached hereto as attachment A to Exhibit A, does not contain any references to communications with counsel. It does not contain any notes of any type that relate to communications with counsel. The fact that the plaintiff's initial draft statement may have been subsequently reviewed by plaintiff's attorney does not change the fact that it was prepared at the request of the investigator (not her attorney) for purposes of setting forth her complaint to her employer (not for purposes of seeking legal advice), and it contains merely the facts as to what she says happened on June 6, 2001 at SNET, and the final version was provided to the investigator. Plaintiff preserved her objection as to the attorney client privilege by placing the initial draft statement on a privilege log when she provided her responses to discovery. Plaintiff also provided this initial draft statement in response to the court's Order for In Camera review by the court. That draft is the document that defendant sought to compel in its Motion and which the court ordered compelled.

16

In contrast, the plaintiff's second draft statement, submitted nearly a month later, was not identified on any privilege log, was not timely provided by the plaintiff to the court for In Camera Inspection, and in fact, does not even appear to have been contemplated, let alone argued, by the plaintiff when she opposed the Defendant's Motion to Compel. Perhaps because of this, the second draft does not appear to have been considered by the Magistrate Judge in his Ruling on the Defendant's Motion to Compel.

The only difference between the two drafts is that the second draft statement contains handwritten factual edits which were not present on the initial statement. Plaintiff argues that some of these handwritten edits were made by her while speaking with her lawyer, and which she claims "reflect" her conversation with her lawyer. Plaintiff's Supplemental Affidavit, ¶ 5. However, this does not create a privilege as to the document.

The attorney client privilege attaches to communications from an attorney to a client only if the attorney's communication would reveal the client's confidential information. Loftis v. Amica Mutual Ins. Co., 175 F.R.D. 5 (D. Conn. 1997) (ordering disclosure of attorney's opinion letter because it did not reveal any client confidences). SCM Corp v. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn. 1976)("[u]nless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice").

Therefore, even if the handwritten notations did reflecting plaintiff's counsel's communications to his client, they are not privileged because they do not reveal plaintiff's

17

confidential information. Moreover, the final statement provided to Mr. Ellis contains most, if not all of these changes and, therefore, any purported confidentiality was waived. See U.S. Postal Service v. Phelps Dodge, 852 F. Supp. at 156 (ordering production of a draft with attorney's notes where the final version sent to third party contained the revisions).

Furthermore, the fact that the plaintiff's second draft statement contains handwritten notes that add facts, reword other facts, and delete still other facts does not transform an otherwise non-privileged document into a privileged one. The reader could have created a document similar to the second draft merely by comparing the initial draft with the final statement provided to the investigator. The second draft is essentially a "redlined" version of many of the factual changes in the plaintiff's statement. At its core, however, these are still all facts, intended to be disclosed to a third party, not confidential communications, and they are therefore, subject to discovery as set forth above. See pgs. 10 to 12, supra.

Finally, a close review of all three of plaintiff's statements demonstrate that the facts concerning plaintiff's complaint of workplace violence are being manipulated. By way of example, the facts as initially drafted by the plaintiff state that after Police Officer Chapman investigated her complaint by speaking to her, to her supervisor Kevin West and looking at her arm (where she alleges Mr. West injured her in an altercation), she asked Officer Chapman to file charges against Mr. West. She states in her initial statement that he refused to press charges because he believed the red mark on her wrist was caused by her watch. Exhibit A. at 3. Officer Chapman's refusal to

18

press criminal charges and his belief as to the cause of the red mark on plaintiff's wrist are both conspicuously absent from the final version of the plaintiff's statement submitted to the investigator. Exhibit C. Similarly, the facts surrounding Mr. West's alleged grabbing of the plaintiff's wrist, which is at the heart of the plaintiff's workplace violence complaint, are completely rewritten from the plaintiff's initial draft.    Exhibit B, at 2.

The defendant has every right to conduct discovery into the varying different versions of the facts that the plaintiff has offered to support her claim. These are not issues of privileged communications. These are issues of fact. There is no privilege for withholding or changing facts to create a false or misleading impression of events.

The legal issues with regard to the two drafts are the same. Therefore, Magistrate Judge Smith's arguments on his Ruling on the Motion to Compel are equally applicable and lead to the same conclusion that the attorney client privilege does not apply to the plaintiff's second draft statement.

IV.    CONCLUSION

WHEREFORE, based upon the foregoing, defendant respectfully requests that plaintiff's

Objection to Magistrate Judge Thomas P. Smith's Ruling granting Defendant's Motion to Compel

be overruled and that plaintiff's Objection to Magistrate Judge Smith's endorsement ruling denying

Plaintiff's Motion to Seal be similarly overruled.

> THE DEFENDANT,
> SOUTHERN NEW ENGLAND
> TELEPHONE COMPANY
>
> By: _Debbi Cannavino_
> Deborah DeHart Cannavino (CT 08144)
> TYLER COOPER & ALCORN, LLP
> One Landmark Square
> Stamford, CT  06901-2501
> Telephone: (203)348-5555
> Fax: (203) 348-3875
> Cannavino@TylerCooper.com

20

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 25th day of October, 2004:

Peter E. Gillespie, Esq.
46 Riverside Avenue
P.O. Box 3416
Westport, CT 06880

Deborah DeHart Cannavino