UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
*********************************************
KIMBERLY BACHIOCCHI,                    *
                                        *
            Plaintiff,                  *   CIVIL ACTION NO. 02-CV-908 (CFD)
                                        *
       v.                               *
                                        *
THE SOUTHERN NEW ENGLAND                *
TELEPHONE COMPANY,                      *   MAY 23, 2005
                                        *
            Defendant.                  *
                                        *
*********************************************
```

## PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT UNDER LOCAL RULE 56(a)(2)

1. Admitted, except that Plaintiff also states that the "promotion" which she applied for and received in or about June, 2001 came about due to the harassment and intimidation which she suffered in the West Group; that although the "promotion" carried an increase in base pay, PX-F Tr 23[1]. she was no longer eligible for either overtime pay or the West Group compensation plan; and that as a result of the "promotion" she was no longer afforded the use of a company car, her daily commute increased from approximately 5 minutes to about 45 minutes each way, and she did

---

[1] Plaintiff's Exhibits will be referred to in this way. Defendant's Exhibits will be referred to as "DX-__."

not like the everyday work of the promotion position which did not include customer contact.

  2. Admitted that Plaintiff was not terminated or demoted. However, on June 4, 2001 she left the West Group offices after having been assaulted and battered by Kevin West and she was not paid for the balance of that day. PX-F, Tr 124. Further, she lost the use of a company car, eligibility for overtime pay, and eligibility for the compensation program that had been available to her while working in the West Group.

  3. Admitted.

  4. Admitted.

  5. Admitted, except Plaintiff does not know what is being referred to when Defendant makes reference to "other publications" and to that extent ¶5 is denied. Further, Plaintiff notes that the policies also provide that complaints may be made to any SNET manager, DX-22, which she did.

  6. Admitted.

  7. Admitted.

  8. Admitted, except that Plaintiff denies that portion of ¶8 which states that Plaintiff "had no engineering experience . . . ." as "engineering experience" is an undefined term. In fact, Plaintiff did have particular knowledge and experience which was useful and relevant to some of her functions while working at the West Group. PX-H, Tr 7-8.

9. Denied. Plaintiff admits that she was on medical leave from May 19, 2000 to January 17, 2001, and from January 19, 2001 to May 6, 2001. The day January 18, 2001 may have been coded as medical leave for administrative or other reasons, but Plaintiff reported to the West group offices on that day for the purpose of reacclimating herself with her workplace prior to an intended return to work that month. Plaintiff admits the second sentence of 9. **PX-L**

10. Admitted.

11. Admitted.

12. Admitted. Plaintiff further felt that in some instances she had skills which could be utilized in her engineering position which were skills not possessed by others in the West Group. PX-H, Tr 50.

13. Admitted.

14. There is a motion for order and sanctions pending on the subject of wage information. Plaintiff respectfully requests to be permitted to amend her response to this paragraph after the motion is decided.

15. Plaintiff admits that the testimony cited is accurate.

16. Plaintiff had no knowledge of any such complaints from employees in early 2000, PX-C, Tr 32. As to Contractors, Plaintiff believes there may have been one enquiry, perhaps 2. PX-C, Tr 90, 132; PX-O.

17. Denied. PX-O; PX-P; PX-Q; DX-3, ¶9.

18. Plaintiff admits that at the urging of Robert Vallario in November, 2000, more than five months after Plaintiff had gone out of work on a medical leave, three

employees submitted statements concerning alleged interactions between Plaintiff and Nick Faiella. The three unsworn statements speak for themselves to the extent that they may be considered even though they do not comply with the requirements of Fed. R. Civ. P. 56. The additional characterizations set forth ¶18 therefore are denied. PX-C, Tr 28;DX-3, ¶9.

19. To the extent that ¶19 is a restatement of ¶18, Plaintiff's answer to ¶18 is incorporated by reference and restated herein. Plaintiff is unaware of any timely complaint made by Manouse, although Plaintiff admits that he made statements in his deposition, as cited by Defendant.

20. Plaintiff is without knowledge or information sufficient to respond to the allegations that Faiella was reprimanded for "his conduct," and therefore this allegation is denied. DX-3, ¶18 states that Faiella was put on a performance improvement plan for 4 stated reasons, none of which seem to relate to his interactions with Ms. Bachiocchi.

21. Denied. Mr. West did not normally interact with contractors. No contractor complained to West. PX-H, Tr. 120. The alleged Complaints were brought to West's attention by Vallario. In fact, West's regular course of conduct was to actively refrain from speaking with contractors. The West notes and recounting alleged contractor complaints are unreliable hearsay and should be stricken.

Of the four contractors allegedly concerned, only one was deposed. His sworn recollection did not support the West notes. PX-O. Further, at his deposition it appeared that SNET personnel sought to have the contractor change his testimony to

a version that would better suit the SNET story-line. PX-O, Tr. 58-60. Further, Plaintiff was led to believe that, at most there were two contractor complaints. PX-C 90, 133. See also, PX-P.

22. ¶22 appears to be a restatement of ¶21. Plaintiff's answer to ¶21 is incorporated by reference and restated herein.

23. There is no support set forth for the conclusory allegations of ¶23 and therefore this allegation is denied.

24. Admitted.

25. Admitted, except that Plaintiff states in addition that she was prepared to return to work on May 7, 2001. Although SNET returned her to the payroll on that date, as a matter of its own convenience it asked Plaintiff not to report for active duty until May 14, 2001. PX-C, Tr 19; PX-H, Tr. 129.

26. Admitted.

27. The first sentence of ¶27 is admitted. The remainder of ¶27 is denied.

As Defendant is aware, the suit pending before this Court is a de novo proceeding. Therefore, references to any dismissal are irrelevant and should be stricken.

Further, as Defendant is also aware, Plaintiff sought reconsideration of the merit assessment dismissal. In response to her argument, the dismissal was rescinded, the charges of discrimination in CCHRO Case No. 0130048 and EEOC Charge No. 16aa03399 were reinstated and further investigation was commenced by

the appropriate agency. In failing to reference these facts, Defendants statement in ¶27 is misleading as well as irrelevant. PX-I.

28. Plaintiff admits that she assisted her co-worker, Mr. Faiella, by submitting an affidavit in support of a charge of discrimination which he filed in CCHRO Case no. 0130268. Plaintiff also admits that Mr. Faiella also went out on a medical leave of absence commencing on or about June 7, 2000. DX-3, ¶15. To avoid any ambiguity, Plaintiff denies that Mr. Faiella's medical leave was for the purpose of pursuing a claim of discrimination.

29. Denied, except that Plaintiff admits that Dr. Zachariah, Plaintiff's treating professional, contacted SNET's medical department suggesting that Plaintiff return to work for a single day on January 18, 2001 to "become re-acclimated to her job." Dr. Zachariah stated, in addition, that subject to a further evaluation, he anticipated that Plaintiff would then return to full time employment on February 1, 2001.
DX-14, ¶10; PX-M.

30. Denied. PX-M.

31. Admitted that no work was assigned. Light had been replaced by Manouse, she should report to him.

32. Admitted that Plaintiff and a friend parked in an SUV across the street from SNET's Elizabeth Street facility on several days in January – March, 2001, videotaping members of the West Group entering and leaving the facility. Admitted further that at that time Plaintiff was on a paid disability leave based upon total disability from working. Plaintiff further states that she did this to show that Kevin

West's statement that West Group workers frequently had no daily contact with the office was untrue. PX-E, Tr. 56. Plaintiff further states that she was concerned that SNET would fail to produce and/or properly maintain the West Group sign out log which would have made such documented observations unnecessary. Plaintiff further states that SNET has failed to produce relevant copies of the sign out log, stating that it has been lost. PX-H, Tr 95-96.

33. Denied, although Plaintiff admits that she had intended to return in February, 2001. PX-M. Further, Plaintiff was available to return to work on May 7, 2001; that SNET placed her on the payroll as of May 7, 2001; that she failed to report for active service until May 14, 2001 at SNET's request and for SNET's convenience. PX-H, Tr. 129.

34. Admitted.

35. Admitted, to the extent that West dropped Plaintiff's compensation rating. Denied that he ever explained to Plaintiff why he had done so. PX-F, Tr. 105.

36. Admitted that West makes this claim.

37. Admitted.

38. Denied, except that Plaintiff admits that upon her return to work in May, 2001 she was not returned to either the Cingular (previously known as SNET Wireless), or Yale accounts. Plaintiff further admits that she was assigned to an outside construction job at Pfizer in southern shoreline of Connecticut and, at the same time, to a job at the Enfield Board of Education located at the northern border of Connecticut.

39. Admitted.

40. Admitted, but Plaintiff denies that she was disciplined in any way.

41. Admitted, and Plaintiff further states that she requested to record the meeting. DX-18, ¶15.

42. Admitted, except that Plaintiff states that she requested time for the funeral and admits she received her full pay for June 1, 2001.

43. Denied, except that Plaintiff admits that she requested to work overtime on Saturday, June 2, 2001.

44. Admitted.

45. Admitted. Plaintiff further states that she submitted her vacation requests only after being instructed to do so by Kevin West. DX-18, ¶17.

46. This paragraph seems to set forth two entirely separate facts.

Plaintiff admits the facts set forth in the first sentence, but denies any implication that her displeasure motivated West's confrontation with Plaintiff later on the morning of Monday, June 4, 2001. Plaintiff admits the remainder of the paragraph.

47. Admitted, although Plaintiff does not understand the relevance or meaning of the reference to Faiella being on disability leave.

48. Denied as this paragraph is internally inconsistent and the police report will speak for itself if it is deemed relevant after introduction with proper foundation.

49. Denied. Plaintiff returned to work later in the week of June 4, 2001.

50. Admitted. Plaintiff also states that she felt forced out of the West Group, PX-F, Tr 124, and that as a result of the "promotion" she was no longer eligible for overtime, no longer eligible to participate in the compensation plan, and no longer had a company vehicle assigned to her, among other material detriments. PX-F, Tr 23.

51. Admitted.

52. Admitted.

53. Admitted, except that Plaintiff denies that the administrative charges filed on June 12, 2001 "made the same allegations as the previous one . . . ." It is undisputed that some of the same allegations were included as background for the new charges.

54. Denied, except that Plaintiff admits that no one at SNET ever propositioned her sexually or ever subjected her to actual sexual conduct. West battered her. DX-18, ¶18.

55. Denied, except that Plaintiff admits that SNET employee Laurie Moffet questioned Faiella about his behavior with plaintiff. DX-3, ¶19.

56. Admitted.

57. Plaintiff admits that she did not work with Vallario after May 19, 2000; That Light was her supervisor, and; That Light retired during her medical leave. The remainder of ¶57 is denied.

58. Admitted, except that Plaintiff denies that June 4, 2001 was her last day of work with the West Group. See, e. g. ¶50, *supra*.

59. Denied. Plaintiff admits that she could specifically identify only one such meeting. Plaintiff denies that it then follows that there was only one such.

60. Admitted. Plaintiff further states that West had answered some questions for her in the past.

61. Admitted that the testimony is as stated.

62. Admitted, however, Plaintiff noted that the Pfizer account exceeded her knowledge base. See deposition excerpts cited. Also, the two jobs, assigned at the same time. Were at opposite borders of the State.

63. Admitted that the testimony is as stated.

64. Admitted. She was told; "There is no overtime for you Kim." DX 18, ¶ 17.

65. Admitted, but Plaintiff states that the visit with her doctor had been previously scheduled and approved. DX-20, ¶¶ 14-15.

66. Admitted.

67. Admitted.

68. Admitted that Plaintiff has continued to get raises.

69. Admitted.

70. Admitted.

71. Denied. Dursza had been a bargaining unit worker.

72. Admitted that the testimony is as stated.

73. Denied. Plaintiff knew of, and complied with, the SNET policies.

74. Denied. Plaintiff brought her concerns to SNET managers, as the policies provide. DX-22.

Respectfully submitted,

THE PLAINTIFF
KIMBERLY BACHIOCCHI

By:_____
Peter E. Gillespie  (ct06554)
46 Riverside Avenue
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served this 23rd day of May, 2005 upon the following by first class mail:

Lori B. Alexander, Esq.
Tyler, Cooper and Alcorn
205 Church Street
New Haven, CT 06509

_____
Peter E. Gillespie