UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * *    *
KIMBERLY BACHIOCCHI,                  *
                                      *
                                      *
                                      *
                                      *
    Plaintiff,                        *
                                      *
v.                                    *  CIVIL ACTION NO. 02-CV-908 (CFD)
                                      *
                                      *
THE SOUTHERN NEW                      *
ENGLAND TELEPHONE                     *
COMPANY,                              *
                                      *
    Defendant.                        *  JUNE 28, 2005
* * * * * * * * * * * * * * * * * *    *

## REPLY TO PLAINTIFF'S MEMORANDUM
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   PLAINTIFF'S BURDEN TO DEFEAT SUMMARY JUDGMENT WAS TO PRESENT
     CONCRETE EVIDENCE OF EACH ESSENTIAL ELEMENT OF HER CLAIMS. .........2

II.  HOSTILE WORK ENVIRONMENT CLAIM ....................................................................3

   A.   PRIMA FACIE CASE .......................................................................................3

      1.   No Disparate Treatment Claim ...............................................................3

      2.   Hostile Work Environment Claim ...........................................................4

         a.   There Is No Nexus Between the Conduct Plaintiff Alleges and Her Gender............5

            (1)   "Same Actor" Inference ..................................................6

            (2)   The Incidents Plaintiff Alleges Have No Nexus to Gender ...............7

         b.   Plaintiff's Allegations of Stray Remarks Do Not Consitute Severe and Pervasive
              Conduct That Can Support a Hostile Work Environment Claim............................9

         c.   All of Plaintiff's Evidence Together Does Not Establish Severe and Pervasive
              Conduct.......................................................................................... 10

         d.   The Cases Cited by the Plaintiff Do Not Support Denial of Summary Judgment on
              Plaintiff's Hostile Work Environment Claim.........................................25

         e.   Plaintiff's Attempts to Add New Factual Claims Is Unavailing ...............................29

         f.   Plaintiff Is Incorrect That Comments of Which the Plaintiff is Unaware Can Create
              a Hostile Work Environment ..............................................................................30

   B.   LEGITIMATE BUSINESS REASONS.......................................................................31

III.  PLAINTIFF HAS FAILED TO PRESENT CONCRETE EVIDENCE TO ESTABLISH
      A CLAIM OF RETALIATION..................................................................................33

IV.  PLAINTIFF HAS FAILED TO PRESENT CONCRETE EVIDENCE TO MAKE OUT
      A PRIMA FACIE CASE UNDER THE EQUAL PAY ACT...........................................35

V.   CONCLUSION............................................................................................................39

The defendant, the Southern New England Telephone Company ("SNET"), hereby files its reply to the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment dated May 23, 2005 ("Plaintiff's Opposition" or "Pl. Opp.").

Plaintiff's Opposition is a clear attempt to tell so long a story, with so many side incidents, that the Court will in frustration conclude that there must be a material issue of fact somewhere and let the evidence go to the jury. Notwithstanding plaintiff's emotionally charged language, far beyond what is justified by the record of this case, SNET urges the Court to look behind plaintiff's rhetoric to the evidence in this case. The evidence clearly demonstrates that summary judgment is appropriate and warranted. Plaintiff's kitchen-sink strategy to describe every single event in the workplace that potentially peeved her in the three years she worked in Kevin West's group,[1] should not convert a legally deficient claim into a cognizable cause of action. While the Complaint alleges ten discrete incidents, plaintiff appears to have expanded the list to now include an expansive list of purported incidents, no matter how trivial and no matter whether they involved a co-worker, a supervisor, or someone not even employed by SNET.

Plaintiff's attempts to avoid summary judgment are unavailing. Upon consideration of the <u>evidence</u> -- not the admittedly flamboyant but inaccurate descriptions by counsel -- the Court should properly conclude that, on the record of this case, summary judgment must be granted. As the Fourth Circuit commented with respect to a discrimination case, factually dissimilar to the present case but instructive nonetheless, "Such a lawsuit . . . is precisely the type of litigation that

---

[1]  Plaintiff worked in Mr. West Business Communications Services group from June 1998 to June 2001, a period of three years. Mem. at 2, 15.

every day threatens to undermine, rather than advance, the laudable objectives of the antidiscrimination laws by causing the courts and the public alike to view even the most meritorious claims with suspicion." Blistein v. St. John's College, 74 F.3d 1459, 1473 (4th Cir. 1996).

## I. PLAINTIFF'S BURDEN TO DEFEAT SUMMARY JUDGMENT WAS TO PRESENT CONCRETE EVIDENCE OF EACH ESSENTIAL ELEMENT OF HER CLAIMS.

In her Opposition, plaintiff has not and cannot do what was required to defeat SNET's Motion for Summary Judgment: present concrete evidence from which a reasonable jury could find that she has established the essential elements of her claims. As set forth in SNET's Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Memorandum" or "Mem."), once a party moving for summary judgment has pointed out that there is an absence of evidence to support a nonmovant's claim, the nonmovant must make an "evidentiary showing" sufficient to establish an issue of fact on each essential element of that claim. Celotrex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). This is no less true in discrimination cases brought under Title VII and the FEPA than in other cases. "Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation . . . and plaintiff must still offer 'concrete evidence from which a reasonable juror could return a verdict in [her] favor.'" Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (emphasis added). In her Opposition, plaintiff has not brought forward *any* concrete evidence from which a reasonable jury could return a verdict in plaintiff's favor on any of her claims.

2

## II.    HOSTILE WORK ENVIRONMENT CLAIM

### A.    PRIMA FACIE CASE

"A Plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of [gender], or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." <u>Feingold v. New York</u>, 366 F.3d 138, 149 (2d Cir. 2004); <u>see also</u> <u>Hanson v. Cytec Industries</u>, No. 399CV86 (CFD), 2002 WL 519714 (D. Conn. March 8, 2002) (separate analysis for disparate treatment and hostile work environment claims) (copy attached).

### 1.    No Disparate Treatment Claim

In her Opposition, plaintiff provides a useful clarification by defining Counts One and Two of her Complaint as causes of action for sexual harassment on the basis of a hostile work environment.  While SNET was previously unsure whether plaintiff was asserting a disparate treatment claim and/or a hostile work environment claim, plaintiff has made clear that she is <u>not</u> proceeding on a disparate treatment theory, which would require proof of an adverse employment action.  <u>See</u> Mem. at 39-40.  As such, plaintiff does not attempt to rebut SNET's point that, with respect to her sexual harassment claim, plaintiff suffered no adverse employment

3

action. Without an adverse employment action, a disparate treatment claim fails as a matter of law. See Mem. at 38-40[2].

### 2.    Hostile Work Environment Claim

With respect to her hostile work environment sexual harassment claim, plaintiff fails to present concrete evidence to create an issue of fact with respect to at least two elements of such a cause of action: (1) that the alleged harassment was based on her gender, and (2) that the alleged harassment was sufficiently severe and pervasive to affect a term, condition or privilege of her employment. In fact, there is no such evidence in this case. Plaintiff's Opposition only serves to underscore the fact that summary judgment is appropriate with respect to these two essential elements of proof.

In an employment discrimination case, the plaintiff bears the burden of presenting sufficient evidence to create a material issue of fact on each element of the prima facie case. Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). To make out a prima facie case of sexual harassment through a hostile work environment, plaintiff must show, inter alia, that she was harassed, that the harassment was based on her gender, and that it was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment, as those terms are interpreted under Title VII. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993).

---

[2]  Plaintiff does state, "In another effort to diminish Plaintiff's claim, Defendant maintains that no adverse employment action was taken against her. Most of the facts set forth above, at least in Plaintiff's view, speak for themselves. To the extent that Defendant's argument is based upon a lack of economic impact, that would also be incorrect." Mem. at 30. This is a confusing commentary, and clearly is not a legal argument why any particular act would rise to the level of an adverse employment action under the law of this Circuit. In the absence of any argument by the plaintiff from which the Court could find an adverse employment action in this case, as that term has developed in disparate treatment cases, and in an effort to limit the length of this pleading, SNET will forego additional briefing as to why the myriad incidents plaintiff purports to describe do not constitute adverse employment actions as a matter of law, assuming this conclusion to be beyond dispute.

a.    **There Is No Nexus Between the Conduct Plaintiff Alleges**
     **and Her Gender.**

SNET argued, supported by substantial legal authority, that plaintiff's discrimination claim fails as a matter of law because there is no concrete evidence in this case showing a nexus between plaintiff's female gender and any of the conduct about which plaintiff complains. See Mem. at 20-33. Simply put, to support a hostile work environment claim based on sex, "the discrimination must be *because of* sex." Braheney v. Town of Wallingford, No. 300CV2468(CFD), 2004 WL 721834 at *3 (D. Conn. March 30, 2004) (quoting Leibovitz v. New York City Transit Authority, 252 F.3d 179, 189 (2d Cir. 2001)) (copy attached). While plaintiff is correct that explicitly sexual conduct is not required, most gender-based hostile work environment cases do involve sexual conduct; without such conduct there must be other evidence that plaintiff's treatment was *because of the plaintiff's sex*. "Though hostile environment claims often involve . . . sexual remarks . . . the alleged harassment need not be explicitly sexual . . . , though a basis must exist for inferring that the conduct occurred *because of* the [plaintiff's] membership in the protected class." Grey v. City of Norwalk Bd. of Educ., 304 F.Supp.2d 314, 327 (D. Conn. 2004).

Plaintiff has not responded at all to SNET's assertion that there is no evidence of gender-based conduct in this case. In fact, plaintiff's Opposition is entirely devoid of any evidence -- because there is none -- of a connection between the conduct complained of and the fact that plaintiff is female.[3]

---

[3] As evident in SNET's statement of facts within its Memorandum, plaintiff's rewriting of the facts is not accurate. However, for the purposes of this Reply, SNET takes as accurate the facts for which the plaintiff has presented some evidence, but not including the distortions of the record offered in plaintiff's Opposition.

### (1)    "Same Actor" Inference

Belying plaintiff's claim of gender discrimination, the record is undisputed that the main individuals whose conduct is complained of -- Kevin West and Richard Light -- are the very individuals who hired plaintiff into their group with full knowledge that she was a woman. Mem. at 2; see Appendix[4], Bach. Dep. 12/13/04 at 82:15-83:15. Where the record shows that the person(s) who made the alleged adverse decision was the same person(s) who made the decision to hire the plaintiff, knowing the plaintiff's protected trait, "it is difficult to impute to [them] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997) cert. denied 252 U.S. 936 (1998); see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (applying this "same actor inference" to gender claims and calling it a "powerful inference"); Rand v. CF Indus., 42 F.3d 1139, 1147 (7th Cir. 1994) (finding no reasonable inference of discrimination where discharged attorney was a member of protected class when hired); Burbank v. Office of the Attorney General, 240 F.Supp.2d 167, 172 (D. Conn. 2003) (noting that plaintiff's claim of race discrimination was "further belied by the fact that the Office of the Assistant Attorney General hired him as an Assistant Attorney General in 1987").

In her Opposition, plaintiff's sole response to SNET's argument concerning the "same actor inference" was that, although the decision-makers clearly knew she was a woman when they hired her, "[m]any of the circumstances concerning Plaintiff in her employment had changed between the time of hiring in June, 1998 and . . . the Fall, 1999." Pl. Opp. at 29. Plaintiff then explains that what changed was that plaintiff had "done more rigorous strike duty

---

[4]  Testimony designated with "Appendix" appeared in SNET's Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment filed on April 6, 2005.

than many of the men in the office," and that she had "call[ed] SNET offices outside of the West group when she had questions about payroll or concerns over heating; she had refused to be silent in the face of misconduct by Light and Vallario and she complained to West about it, first in December 1999, and so forth." Pl. Opp. at 29. Plaintiff's own argument[5] that she was treated badly out of resentment for her working more strike duty than her colleagues and/or in retribution for going outside her work group to ask payroll and heating questions, clearly contradicts her claim in this case that she was treated badly because of her gender. Apparently, even she does not believe she was mistreated because she was a woman, but, rather, because of her long strike duty and/or her refusal to limit her communications to her work group. If plaintiff was in fact treated unfairly because of her actions on strike duty and/or because she discussed payroll and heat issues outside of her work group, such conduct would not violate Title VII or the FEPA.

### (2)    The Incidents Plaintiff Alleges Have No Nexus to Gender.

Plaintiff apparently made a strategic decision to avoid a clear statement anywhere in her Opposition of precisely what conduct she claims constituted a hostile work environment. Instead, her counsel refers to "innumerable slights" and "[t]hese and the other items set forth more fully in the statement of fact," P. Opp. at 28, referring to plaintiff's 25-page narrative of purported facts, many of which are wholly unsupported by the record or any evidence in the case. Again, plaintiff's strategy to amass every single annoying work-related incident she can think of, describe them in the most expansive way possible, and toss them at the Court in a jumbled narrative with the expectation that the Court will not wish to embark on the exercise of

---

[5]  Plaintiff's statements in her Opposition are judicial admissions and binding on her. Purgess v. Sharrock, 33 F.3d, 134, 144 (2d Cir. 1994).

sorting them, should not be condoned and certainly should not be successful. With apologies to the Court for the length of this Reply, and with all effort to summarize each one, SNET must respond with what the record contains, if anything, to link the conduct to gender. It has done so in its discussion of individual allegations at pp. 11-22, infra.

In fact, plaintiff's sole basis for her claim of gender discrimination seems to be that she was one of two women in Kevin West's work group at the time.[6] Organization Chart, attached hereto as Exhibit 1. Plaintiff's Opposition underscores the lack of support for her claim of gender-based conduct by failing to present, or even identify, any evidence that any of the conduct about which she complains was based on her gender.

Under the analysis established by relevant case law, there is not sufficient evidence in this case of a nexus between SNET's purported conduct and plaintiff's gender to withstand summary judgment. By way of example, this District Court granted summary judgment for the employer in Oliveira v. State Dept. of Children & Families, No. 3:97CV412(CFD), 2000 WL 565489, at *5 (D. Conn. Mar. 29, 2000) (copy attached), finding that the plaintiff's hostile work environment claim failed for a lack of evidence of a nexus between the conduct alleged and plaintiff's protected class, Indian. In Oliveira, the evidence indicated that the plaintiff's supervisor

> (1) repeatedly yelled at her in front of her co-workers, calling her "incompetent" and the "worst worker [her supervisor] had ever come across in her life," and telling her "there are no jobs out there" for people "like her"; (2) commented that she did not know how to "deal with the class of clients served by DCF"; (3) ordered her to perform menial tasks that interfered with her duties as a social worker; (4) lied to other DCF officials about having conducted supervisory conferences with her; (5) ordered her to visit a child at school without the child's parent's permission, which her supervisor knew would not be permitted by the

---

[6] This case has been pending for over three years. If there were evidence of gender bias with respect to Ms. Bachiocchi -- and there is not -- plaintiff had an obligation to present such evidence to the Court.

school and would humiliate her; (6) directed her to redo various work assignments; and (7) retained her deficient work in her employment file in order to create a `paper trail' that would serve as a basis for terminating her employment.

Id. at *3. The Court held that while these incidents may very well have been uncomfortable or even insulting to the plaintiff, they did not convey "the tinge of [national origin] discrimination." This was true even when considered together with other speech and conduct that specifically referred to plaintiff's Indian origin.[7] Id. at *4. See also Kasper v. Middletown, 352 F.Supp.2d 216, 231 (D. Conn. Jan. 13. 2005) (as to hostile work environment claim, plaintiff's claim that an official repeatedly called her "babe" and responded to her complaints about male union management by asking, "What do you want us to do, buy pantyhose?," along with other alleged conduct, was not sufficient to withstand summary judgment).

> **b.    Plaintiff's Allegations of Stray Remarks Do Not Constitute Severe and Pervasive Conduct That Can Support a Hostile Work Environment Claim.**

SNET's Memorandum pointed out that the only two allegations in plaintiff's Complaint that could relate to gender do not nearly rise to the level of conduct that courts consider sufficiently severe and pervasive to alter the terms of a plaintiff's employment. This alleged conduct consists of (1) Vallario's "You're not so bad" remark, and (2) references to women in disparaging terms, which plaintiff conceded in her deposition testimony to be very mild and few in number. See Mem. at 33. Plaintiff acknowledged at her deposition that these references

---

[7] More significant than plaintiff's claim in this case that she heard the word "broad" in the workplace and that one employee told her, "I'd date you myself if I were younger," the plaintiff in Oliveira presented evidence that her supervisor "(1) stated that people from foreign countries should return to their own countries after gaining experience in the United States; (2) failed to respond when the plaintiff asked her whether she was being treated poorly because she was from India; and (3) treated other non-Indian employees better than she treated the plaintiff, for example, by giving them more resources to perform their work and by not requiring them to perform various menial tasks." Id. at *4. The Court held that, even in light of the above evidence, plaintiff 's hostile work environment claim failed since these events were not sufficiently severe and pervasive and the other events about which she complained were neutral as to national origin. Id. at **4-5. Similar reasoning applies to the present case.

amounted to no more than two occasions on which West referred to other women (never including plaintiff) as "broads," and a remark by West that "he wasn't interested in women's sports because it was just women, no big deal." Id. This conduct, even if it occurred,[8] is far less severe or pervasive than any conduct found in this Circuit to be insufficiently "severe and pervasive" to support a hostile work environment claim. See Mem. at 34-38.[9]

c.    **All of Plaintiff's Evidence Together Does Not Establish Severe and Pervasive Conduct.**

Even if plaintiff had presented evidence to establish a nexus between her gender and the other conduct about which she complains -- which she has not -- summary judgment should still be granted because the evidence does not support plaintiff's threshold showing: a workplace permeated with gender-based intimidation, ridicule or insult that was severe and pervasive.

Hostile work environment harassment is actionable "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "As a general matter, isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with regularity that can reasonably be termed pervasive." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (emphasis added, citations and internal quotation marks omitted).

---

[8]   SNET denies that this conduct occurred at all as described, but this is not a material issue that would preclude summary judgment.
[9]   In fact, courts have found that uses of the term "broads" to refer to women, together with gender-related comments more severe than any alleged in this case, did not rise to the "severe and pervasive" level. Cowan v. Prudential Ins. Co. of Am., 141 F.3d 751, 756-57 (7th Cir. 1998) ("dizzy broads"); DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 594-96 (5th Cir. 1995).

In essence, plaintiff appears to base her claim of hostile work environment gender discrimination on the following: (1) complaints by co-workers of inappropriate conduct between plaintiff and Nicholas Faiella; (2) printing of directions from the Internet (Mapquest) to plaintiff's house by Richard Light; (3) the tone of installation supervisor Robert Vallario; (4) exclusion from conversations (not specifically identified) by supervisor Kevin West; (5) West's responses to plaintiff's questions and telephone calls while she was on a leave of absence and not working; (6) the assignment of plaintiff's accounts during her 4-week return to work after her leave; (7) West's "I am in charge" remark; (8) decisions about leave time and overtime; and (9) West's instruction about customer contact.

### Kevin West:

Notably, plaintiff expressly testified that she is not claiming Kevin West harassed her because of her gender. She testified as follows:

> Q.   How about Kevin West, how was your relationship with Kevin West?
> A.   I didn't have to deal with Kevin too often.
> Q.   I'm not sure that that answers my question. How was your relationship with Kevin West?
> MR. GILLESPIE: Objection. At what point in time?
> BY MS. ALEXANDER:
> Q.   During the time you worked with Kevin West, how was your relationship with him?
> A.   It was fine.
> Q.   And do you claim that Kevin West discriminated against you because you're a woman?
> A.   Yes.
> Q.   And do you claim that he harassed you because you're a woman?
> A.   Kevin did not, no.

Bach. Dep. 7/24/03 at 147:8-24 (attached).

11

*Reference to a Female Customer as a "Broad"*

It is undisputed that Kevin West was in charge of plaintiff's work group and was her second-level manager. Pl. Opp. at 5. Plaintiff alleges that "Mr. West himself set the tone for the group, frequently referring to women as "broads." Pl. Opp. at 5. The evidence plaintiff presents does not support her proposition. The first citation, "DX-10[10] Para. 17,"[11] does not mention "broad" and is plaintiff's own complaint to the EEOC which is clearly inadmissible as self-serving hearsay. The second citation refers to testimony of plaintiff's co-worker, Nick Faiella, testifying that he heard Kevin West once refer to an abrasive woman in charge of communications for the State of Connecticut as a "broad." Pl. Opp. at 5 (citing PX-B). Mr. Faiella does not testify that plaintiff ever heard the comment, that it was made more than once, or that it was even made during the time plaintiff worked in West's group. See PX-B Tr. 20. The third and fourth citations, "PX-C, Tr. 148, 172" are not included in plaintiff's appendix. The actual evidence that plaintiff has submitted indicates that co-worker Chris Manouse, who sat next to plaintiff, testified that he never heard anyone refer to women as "broads" in the office. PX-E at 46.

*Payroll and Heating Questions*

Plaintiff claims that after she posed a payroll question to the payroll department, Mr. West "express[ed] [his] displeasure, and was told that all members of the group were not to pose questions to others outside of the group." Pl. Opp. at 6. Not only is this purported comment extremely petty, but it also is not discriminatory by plaintiff's own account, as she was allegedly told that all members of the group were subject to this rule. Pl. Opp. at 6. Moreover, this

---

[10] "PX" and "DX" refer to plaintiff's exhibits filed with her Opposition.
[11] By plaintiff's numbering system, this apparently refers to SNET's Exh. 10 in its Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment dated April 6, 2005.

purported event was not pervasive, as plaintiff testified she asked the payroll question once in

June 1999, and she asked the heating question once in October 1999. Bach. Dep. 6/1/04 at

49:12-19; 50:8-13 (attached); Pl. Opp. at 6-7.

### *Sports Talk*

Presumably in support of her hostile work environment claim, plaintiff states,

Frequently, West Group members would talk about sports. Mr. West would often interject that he had no use for female athletes, either amateur or professional. The UConn Huskies female basketball team was an object of frequent scorn. DX-9, Para. 14.

First, it is not unlawful discrimination to talk about sports at work. Second, "DX-9," which is

cited for the allegation, is plaintiff's own complaint to the Commission on Human Rights and

Opportunities. This is plaintiff's self-serving statement and is not admissible or probative

evidence. Moreover, what was actually said at the page cited of plaintiff's complaint was that

"[I]t seemed as though talking about sports was not enough, one had to be able to put down

women's sports." DX-9 at Para. 14. There is no reference to the UConn Women's basketball

team, no indication of what was said, who said it, or when it was said. This vague allegation,

supported only by plaintiff's own self-serving statement to the CHRO, it not severe or pervasive,

and is far too vague and speculative to support a gender-based hostile work environment claim.

Moreover, it does not in any respect indicate a negative attitude toward plaintiff or women in the

workplace.[12]

### *Paper Incident*

Plaintiff claims that Mr. West "battered" her by grabbing a piece of paper out of her hand

on June 1, 2001, shortly before she left the Business Communications Sales group. However,

---

[12]    Actually, there are many men who do not care to watch women's sports, but that is no indication at all of a iscriminatory animus toward women in the workplace.

plaintiff admits that her only basis for believing this occurred because she was a woman was that she had never seen Mr. West argue with any male employee. Bach. Dep. 6/1/04 at 85 (attached). This is far too slender a reed upon which to base a gender discrimination claim.

## *Single Day of Re-Acclimation During Leave of Absence*

Plaintiff claims that on January 18, 2001, when her doctor cleared her to return to the office for a single day to re-acclimate herself, "there was not one other regular full-time employee in the office." Pl. Opp. at 19. First, this is not true, as it is undisputed that Kevin West was in the office all day. See Pl. Opp. at 19. In addition, it is undisputed that there were several temporary and part-time employees present. SNET has set forth at length the legitimate business reasons why several of plaintiff's co-workers were out of the office on that date, Mem. at 9-10, and plaintiff has produced no evidence to call that evidence into question. Because there is no genuine that any co-workers were absent because of plaintiff's gender (which is ludicrous), this purported incident does not support a claim of hostile work environment gender discrimination. Moreover, plaintiff admits that her sole basis for believing others were out of the office because she was a woman was that she thinks when her co-worker, Nick Faiella, returned to work after his leave of absence, there was a "full office." Bach. Dep. 6/1/04 at 85 (attached). However, plaintiff admits that she has no idea when Mr. Faiella had his leave of absence, when he returned to work, whether she was working in West's group at the time, who his supervisor was, or whether he was coming for a single day as she did. Bach. Dep. 6/1/04 at 85-87 (attached). In essence, she knows no details of Mr. Faiella's return, and other those circumstances, this allegation cannot support a discrimination claim.

*Reassignment of Work During Leave of Absence*

There is no question that plaintiff's customer accounts had to be re-assigned during her year-long leave of absence. SNET explained at length its legitimate business reasons for not immediately moving the accounts back to her immediately during the four-week period she returned to work in the Business Communications Systems group. See Mem. at 28-29. Plaintiff has not presented any evidence to rebut these legitimate, non-discriminatory reasons. Since it is undisputed on the records of this case her accounts were re-assigned for legitimate reasons, this alleged incident cannot support a claim of gender-based discrimination.

## Richard Light:[13]

*Plaintiff's Interview in 1998*

Plaintiff states that, during her interview with Richard Light in 1998, Mr. Light made a comment that he had successfully terminated a black female. Opp. at 2. It is unclear whether this purported incident is part of her claim. First, plaintiff's testimony on this issue does not use the word "successfully." She claims Mr. Light told her "a story" of how he had terminated a black female. PX A, p. 17. She could not recall how it came up or what the question was that caused him to mention this. PX A at 17-18. Based on this evidence, which is the sole evidence in the record as to this purported incident, as to severity and pervasiveness, this incident happened at most once. It is clearly an ambiguous comment that plaintiff herself believes marked a racial bias. See Pl. Opp. at 27 (this "would seem to be a racial reference more than a

---

[13] It is undisputed that Mr. Light was plaintiff's supervisor during the period before her leave of absence. Pl. Opp. at 3, 4. He retired from the company in late 2000.

15

sex-based reference"). Plaintiff cannot rely on this comment, even if made, to support a claim of gender discrimination.

## *MapQuest Directions to Her House*

Plaintiff claims that on December 16, 1999, Richard Light printed out directions to her home from MapQuest and inadvertently left them in the printer of the office where she discovered them. Pl. Opp. at 9-10. When she asked who had done this, Mr. Light explained to her that he had heard from co-workers she lived in a nice house and wanted to ride by it. Pl. Opp. at 10. Plaintiff alleges this happened on one occasion. She admits that the thought crossed her mind that he may have been motivated by a desire to ride by her house during work hours to check to see if she was at home when she should be working. Bach. Dep. 6/1/04 at 35:1-4 (attached). She further admits that the directions were from MapQuest, which the public can access, that Light never sexually propositioned her in any way, that Light was married (and so was she), and that six of the other co-workers in the office had in fact recently visited her house. Bach. Dep. 6/1/04 at 34-36 (attached).

When asked whether plaintiff believed he printed the directions because of her gender she responded that she did not know why Mr. Light printed the directions. Bach. Dep. 6/1/04 at 37 (attached). This alleged event cannot support a gender discrimination claim.

### Robert Vallario:

Robert Vallario was not plaintiff's supervisor or in her chain of command, although he did hold a supervisory position under Kevin West. Pl. Opp. at 4. It is undisputed that the work of Vallario's group was "separately organized and separately supervised" from plaintiff's group. Pl. Opp. at 4.

### Questions About Her Relationship With Nick Faiella

Plaintiff claims that Bob Vallario asked a co-worker (outside of plaintiff's hearing), whether he was having an affair with plaintiff, and also stated to her, "You're not so bad. I'd go out with you myself if I was younger." Pl. Opp. at 11. Even if made, such comments are not the type of severe and pervasive conduct that might support a hostile work environment claim. Moreover, it is undisputed that Mr. Vallario asked Mr. Faiella questions about a purported affair, like plaintiff claims he did to her. Appendix, Faiella Dep. 10/27/03 at 17:4-18:2, 10/31/03 at 33:22-34:13,43:20-44:7. Thus, if it occurred, Mr. Vallario, a supervisor,  equally questioned Faiella and Bachiocchi, and thus the conduct cannot be considered gender-based.

### Review of Plaintiff's Work

Plaintiff claims that "Vallario had been criticizing Ms. Bachiocchi's jobs as they passed over his desk" and "[s]he felt that the frequency and level of this criticism was unfounded." Pl. Opp at 12. However, plaintiff's subjective belief that criticism of her work was "unfounded" is not evidence and is not sufficient to raise a genuine issue of fact. Plaintiff has not responded at all to SNET's evidence and argument concerning this claim on pages 24-26 of its Memorandum, including plaintiff's lack of factual support for any criticism of her work being related to gender. To the extent plaintiff presents her own deposition testimony that Carl Lorentzen told her "he had been instructed [by an unidentified person] to find and document everything that was wrong with her jobs and to break up the Nick and Kim thing," Pl. Opp. at 14, such "evidence" is clearly inadmissible hearsay and cannot be considered on the pending motion. Plaintiff has not submitted an affidavit or other testimony of Mr. Lorentzen. Moreover, plaintiff admits that Mr.

17

Lorentzen never told her he was asked to lie about her work or find problems that did not exist.

Bach. Dep. 7/24/03 at 80:12-17 (attached).

### *Other Co-Workers*

Again, it is not clear whether plaintiff alleges this as part of her claim, but she describes

that co-worker John Dunn

> liked to tell jokes and he was good for one per day. PX-E, Tr. 44-45. Frequently
> his jokes dealt with sexually charged material taken, apparently, from the internet.
> PX-C, Tr. 60-61; PX-B, Tr. 19.

Plaintiff does not mention such an allegation in her complaint in this case. First, Mr. Dunn was a

co-worker, not a supervisor. Second, there is no dispute that plaintiff never complained of such

conduct. Third, the record does not at all support plaintiff's characterization. In the first citation,

which is to co-worker Chris Manouse's testimony, Mr. Manouse testified simply that Mr. Dunn

had a joke to tell about every day. Mr. Manouse did <u>not</u> testify in any respect that the jokes were

sexual or inappropriate in any way. See PX-E. Tr. 45-46. The second citation, to PX-C does not

describe sexually charged jokes, and PX-B, Tr. 19, contains only Nick Faiella's testimony that he

heard Dunn shared some "off color" jokes <u>with him</u>; he did not testify that plaintiff was present

when the jokes were made, or even that plaintiff was in the work group at the time. Nor does he

discuss the substance of any "off-color" joke. This is the only testimony or evidence plaintiff

offers, which clearly does not support the statements by counsel that Dunn told sexually charged

jokes daily, from "material, apparently, from the internet."

Moreover, when plaintiff herself testified concerning Mr. Dunn's humor, she admitted

that she cannot recall a single inappropriate sexual joke that was stated in her presence. Bach.

Dep. 7/24/03 60:2-11 (attached). Her own testimony is clear that she does not recall anyone but

Dunn telling jokes. Bach. Dep. 7/24/03 60:19-25 (attached). The law is clear that jokes that a plaintiff cannot recall may not be used to support a discrimination claim. In <u>Hayes v. Lowe's Food Stores, Inc.</u>, No. Civ. 1:04CV00178, 2005 WL 1258932 at *6 (M.D.N.C. May 26, 2005), the District Court granted a defendant's motion for summary judgment on a hostile work environment claim, because the only allegations that were not time-barred were allegations that plaintiff's supervisor had cursed and told sexual jokes. The court found the cursing insufficient, and said, "[a]s for [the supervisor's] jokes, Plaintiff could not recall the details of any joke, but stated that they often referred to a woman's breasts or buttocks ... the scant detail provided by Plaintiff suggests that [the supervisor's] jokes were not severe and humiliating enough to amount to more than a mere offensive utterance." Thus, the jokes could not support a hostile work environment claim. <u>See also</u> <u>Berkowitz v. County of Orange</u>, 120 F.Supp.2d 386, 400-01 (S.D.N.Y. 2000) (plaintiff could not remember substance of "Jewish jokes"); <u>Dunn v. Medina Gen'l Hosp.</u>, 917 F.Supp. 1185, 1194 (N.D.Ohio 1996) (plaintiff in age discrimination suit could not remember any of the "old" jokes allegedly made by co-workers).

### *Not Speaking*

Plaintiff claims that co-worker Ron Dursza would not acknowledge or speak to her. However, she testified he regularly said hello and otherwise spoke to Carol Stanevich, the other woman in the office. Bach. Dep. 6/1/04 at 28 (attached). Plaintiff has produced no evidence of a gender motivation, and this undisputed fact belies any such motivation. Moreover, there is no evidence that she complained of such conduct, that thus it cannot be imputed to SNET in any event.

19