**Unpublished Authority**

304 F.Supp.2d 314                                                                                                      Page   1
304 F.Supp.2d 314, 2004 WL 231171 (D.Conn.), 186 Ed. Law Rep. 143
**(Cite as: 304 F.Supp.2d 314, 2004 WL 231171 (D.Conn.))**
c

United States District Court,
D. Connecticut.
Patricia GREY, Plaintiff,
v.
CITY OF NORWALK BOARD OF EDUCATION,
Victor Herbert, and Greg Riccio,
Defendants.
No. 3:00CV2033 (JCH).

Feb. 4, 2004.

Background: Employee, a black female who served as Director of Curriculum and Assessment for Connecticut public school district, sued board of education, superintendent, and former deputy superintendent, asserting claims of unlawful discrimination based on race, national origin, sex and age under Title VII and Connecticut Fair Employment Practices Act (CFEPA), Fourteenth Amendment equal protection under § 1983, and common law negligent infliction of emotional distress. Defendants moved for summary judgment.

Holdings: The District Court, Hall, J., held that:
(1) Title VII and CFEPA claims could not be brought against superintendent or former deputy superintendent;
(2) age discrimination was not within scope of Title VII, and employee presented no evidence of age discrimination under CFEPA;
(3) national origin discrimination claim based on employee's being "of African descent" was exhausted, but employee failed to establish prima facie case thereon;
(4) employee presented sufficient evidence of intolerability to avoid summary judgment on constructive discharge claims on that basis, and sufficient circumstantial evidence to proceed to trial on race-based constructive discharge claims, but not on sex-based claims;
(5) employee failed to make sufficient showing of sexually hostile work environment, but survived summary judgment on her claims of racially hostile work environment;
(6) employee sufficiently alleged intent to disadvantage groups of which she was member, as required to state equal protection claim under § 1983;
(7) genuine issues of material fact precluded summary judgment as to board's liability under §

1983 for action and individual defendants' entitlement to qualified immunity; and
(8) under Connecticut law, constructive discharge qualified as termination of employment for purposes of negligent infliction of emotional distress, but conduct alleged by employee was not sufficiently unreasonable or wrongful to support that claim.
Motion granted in part and denied in part.

West Headnotes

[1] Civil Rights ⇐ 1118
78k1118 Most Cited Cases
Under *McDonnell Douglas* burden-shifting analysis, Title VII plaintiff must first establish prima facie case of employment discrimination by showing that (1) she is member of protected class, (2) she was qualified for position (3) she experienced adverse employment action, and (4) adverse action occurred under circumstances giving rise to inference of discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights ⇐ 1536
78k1536 Most Cited Cases

[2] Civil Rights ⇐ 1544
78k1544 Most Cited Cases
Prima facie case of employment discrimination creates presumption that employer unlawfully discriminated against Title VII plaintiff, and burden then shifts to employer to articulate legitimate, clear, specific and nondiscriminatory reason for its actions; if employer does so, plaintiff then has burden to establish by preponderance of evidence that employer's stated reason was merely pretext for discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights ⇐ 1113
78k1113 Most Cited Cases
Title VII claim cannot be brought against individual supervisory employees, but only against employer itself. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights ⇐ 1200
78k1200 Most Cited Cases
Age discrimination is not within scope of Title VII. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

  

304 F.Supp.2d 314     Page 2
(Cite as: 304 F.Supp.2d 314, 2004 WL 231171 (D.Conn.))

§ 2000e-2(a)(1).

[5] Civil Rights ⇐ 1513
78k1513 Most Cited Cases

[5] Civil Rights ⇐ 1516
78k1516 Most Cited Cases
Employee must raise claims of discrimination at applicable administrative agency before pursuing those claims in federal court; claim is exhausted if it was actually raised or is reasonably related to claim raised.

[6] Civil Rights ⇐ 1516
78k1516 Most Cited Cases
Non-exhausted claim of employment discrimination is "reasonably related" to exhausted claim when its omission is essentially due to loose pleading and claim is within scope of investigation which would reasonably be expected to grow out of agency claim; other situations where unexhausted claim is allowed are where unexhausted claim alleges retaliation for filing claim before agency itself and where unexhausted claim is post-agency incident of discrimination carried out in precisely same manner as action complained of to agency.

[7] Civil Rights ⇐ 1516
78k1516 Most Cited Cases
Black employee's national origin discrimination claim, arising out of same incidents as those alleged and based on her being "of African descent" was not barred for failure to exhaust administrative remedies; content of employee's Title VII allegations in complaint seemed to treat discrimination because of her national origin as identical to discrimination because of race, which was raised with Equal Employment Opportunity Commission (EEOC). Civil Rights Act of 1964, § 706, 42 U.S.C.A. § 2000e-5.

[8] Civil Rights ⇐ 1545
78k1545 Most Cited Cases
Black employee failed to establish prima facie case of national origin discrimination under Title VII, even if her statement that she was "African-American" established her membership in protected national origin class and even if she set forth prima facie case of race discrimination. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

[9] Civil Rights ⇐ 1122
78k1122 Most Cited Cases

[9] Civil Rights ⇐ 1123
78k1123 Most Cited Cases
To present prima facie case of discriminatory discharge action under Title VII, employee must show that she was either actually or constructively discharged, and that discharge occurred in circumstances giving rise to inference of discrimination on basis of membership in protected class. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[10] Labor and Employment ⇐ 826
231Hk826 Most Cited Cases
   (Formerly 255k31(2) Master and Servant)
A "constructive discharge" occurs when employer intentionally creates intolerable work atmosphere that forces employee to quit involuntarily.

[11] Federal Civil Procedure ⇐ 2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact, as to whether actions complained of by employee rose to necessary level, precluded summary judgment on employee's Title VII constructive discharge claim based on failure to show intolerability. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[12] Labor and Employment ⇐ 826
231Hk826 Most Cited Cases
   (Formerly 255k31(2) Master and Servant)
Threats of termination alone are sometimes sufficient to show constructive discharge.

[13] Civil Rights ⇐ 1555
78k1555 Most Cited Cases
African-American school administrator presented sufficient circumstantial evidence of race discrimination to proceed to trial on Title VII race-based constructive discharge claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[14] Civil Rights ⇐ 1555
78k1555 Most Cited Cases
Black female school administrator did not present sufficient circumstantial evidence of sex discrimination to proceed to trial on Title VII sex-based constructive discharge claim through repeated allegations that white males were treated differently

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




and that one white male colleague was compensated for his technology responsibilities while she was not. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[15] Civil Rights ⇐ 1147
78k1147 Most Cited Cases
Hostile work environment claim requires showing [1] that harassment was sufficiently severe or pervasive to alter conditions of victim's employment and create abusive working environment, and [2] that specific basis exists for imputing objectionable conduct to employer.

[16] Civil Rights ⇐ 1147
78k1147 Most Cited Cases
Demonstrating that conduct was sufficiently severe to alter terms of plaintiff's employment has objective and subjective elements; misconduct must be severe or pervasive enough to create objectively hostile or abusive work environment, and victim must also subjectively perceive that environment to be abusive.

[17] Civil Rights ⇐ 1147
78k1147 Most Cited Cases
In determining whether hostile work environment exists, court must consider frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or mere offensive utterance, and whether it unreasonably interferes with employee's work performance.

[18] Civil Rights ⇐ 1147
78k1147 Most Cited Cases
In determining whether hostile work environment exists, court examines totality of the circumstances.

[19] Civil Rights ⇐ 1147
78k1147 Most Cited Cases
Plaintiff alleging hostile work environment must demonstrate either that single incident was extraordinarily severe, or that series of incidents were sufficiently continuous and concerted to have altered conditions of her working environment.

[20] Civil Rights ⇐ 1147
78k1147 Most Cited Cases

[20] Civil Rights ⇐ 1185
78k1185 Most Cited Cases
Though hostile environment claims often involve racial or sexual remarks, harassment need not be explicitly sexual or racial, though basis must exist for inferring that conduct occurred because of defendant's membership in protected class.

[21] Civil Rights ⇐ 1555
78k1555 Most Cited Cases
Black female employee failed to make sufficient showing of sexually hostile work environment for her case to go to the jury on her sex discrimination claim under Title VII through bare allegation that she was treated differently from males and her identification of one white male whom she alleged was compensated for technology responsibilities while she was not. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[22] Federal Civil Procedure ⇐ 2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact, as to whether workplace hardships black employee endured were because of her race, precluded summary judgment on her Title VII claim of racially hostile work environment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[23] Civil Rights ⇐ 1736
78k1736 Most Cited Cases
Employee cannot assert claims against individual supervisors under Connecticut Fair Employment Practices Act (CFEPA). C.G.S.A. § 46a-51(10).

[24] Courts ⇐ 96(6)
106k96(6) Most Cited Cases
Federal district court would look to federal employment antidiscrimination law for guidance in enforcing Connecticut's antidiscrimination statute. C.G.S.A. § 46a-51 et seq.

[25] Civil Rights ⇐ 1312
78k1312 Most Cited Cases

[25] Civil Rights ⇐ 1502
78k1502 Most Cited Cases
Plaintiff may plead concurrent violations of Title VII and § 1983 or, indeed, only § 1983 claims against municipal government body as long as constitutional claims allege violation of constitutional right. 42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314                                                                                                    Page   4
(Cite as: 304 F.Supp.2d 314, 2004 WL 231171 (D.Conn.))

[26] Civil Rights 1395(8)
78k1395(8) Most Cited Cases
African-American female school district employee sufficiently alleged intent to disadvantage groups of which she was member, as required to state equal protection claim under § 1983; she alleged that board of education, superintendent and deputy superintendent discriminated against her on basis of her race, national origin and sex by harassing her and ultimately causing her constructive discharge. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

[27] Civil Rights 1118
78k1118 Most Cited Cases
Employment discrimination claims brought under § 1983 are analyzed according to the same standards as used to evaluate Title VII claims. 42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[28] Civil Rights 1346
78k1346 Most Cited Cases
School board may not be held liable under § 1983 for actions of individuals solely on theory of respondeat superior. 42 U.S.C.A. § 1983.

[29] Civil Rights 1351(1)
78k1351(1) Most Cited Cases
Supervisor's acquiescence to actions of his subordinates may amount to policy or custom for purposes of imposing liability under § 1983, if subordinate's discriminatory practice is so manifest as to imply constructive acquiescence of senior policymaking officials. 42 U.S.C.A. § 1983.

[30] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact, as to whether board of education knew of and ratified alleged discrimination by superintendent and deputy superintendent against black director of curriculum and assessment for district, precluded summary judgment on director's § 1983 claim against board; director alleged that board members advised her to get lawyer because she was victim of racial discrimination and that one board member predicted all minorities would be eliminated from central office by superintendent. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983.

[31] Civil Rights 1376(2)
78k1376(2) Most Cited Cases
Government official sued in his individual capacity is entitled to qualified immunity for constitutional violation if, considering record as construed in plaintiff's favor, constitutional right in question was not clearly established at time of the conduct, or if official's action was objectively reasonable; question is what reasonable person in defendant's position should know about constitutionality of conduct.

[32] Federal Civil Procedure 2497.1
170Ak2497.1 Most Cited Cases
Genuine issue of material fact, as to whether black director of curriculum and assessment for Connecticut public school district was in fact treated differently because of her race, precluded summary judgment on claim by superintendent and deputy superintendent that they were entitled to qualified immunity from liability to director under § 1983; director's equal protection right to be free from race discrimination was well-established at time of events giving rise to suit, and reasonable official would not have thought it acceptable to treat director differently because of her race. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; 42 U.S.C.A. § 1983; U.S.C.A. Const.Amend. 14.

[33] Damages 57.52
115k57.52 Most Cited Cases
   (Formerly 115k49.10)
Under Connecticut law, constructive discharge qualifies as termination of employment for purposes of negligent infliction of emotional distress claim.

[34] Damages 57.56
115k57.56 Most Cited Cases
   (Formerly 115k49.10)
Under Connecticut law, alleged conduct of school district superintendent and deputy superintendent in connection with black employee's alleged constructive discharge was not sufficiently unreasonable or wrongful to support her negligent infliction of emotional distress claim.
*318 Anita B. Folino, Plunkett & Cooney, East Lansing, MI, Gary Edward Phelan, *319 Tammy Marzigliano, Klebanoff & Phelan, PC, West Hartford, CT, for Plaintiff.

Michael Peter McKeon, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendants.

RULING ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 38]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314     Page 5
(Cite as: 304 F.Supp.2d 314, *319, 2004 WL 231171 (D.Conn.))

HALL, District Judge.

**1 Plaintiff Patricia Grey asserts claims of unlawful discrimination based on Title VII (42 U.S.C. § 2000e et seq.) the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a-60(a)(1) ("CFEPA"), and 42 U.S.C. § 1983, and common law negligent infliction of emotional distress. Defendants City of Norwalk Board of Education ("Board"), Superintendent Victor Herbert, and now-former Deputy Superintendent Greg Riccio (hereinafter referred to as "defendants") move for summary judgment. For the following reasons, the motion is granted in part and denied in part.

I. BACKGROUND

Plaintiff Patricia Grey, PhD, an African-American female, served as the Norwalk Public Schools' Director of Curriculum and Assessment from July 1994 until September 1999. She contends that she suffered in a hostile work environment and was ultimately constructively discharged from her position with the District because of a series of incidents between July 1998 and her resignation in September 1999. Grey describes the series of incidents detailed below. [FN1]

> FN1. On this motion for summary judgment, the court views the evidence in the light most favorable to the plaintiff.

Herbert became the District Superintendent in July 1998. Soon after, the position of Deputy Superintendent became available. Grey approached Herbert about the job, but Herbert told her "she should not apply for the position." Aff. of Patricia Grey, Pl.'s Rule 56(a)(2) Statement, Ex. B, ("Grey Affidavit") at ¶ 5 [Dkt. No. 39]. Herbert placed her on probation for not meeting her job responsibilities. Id. at ¶ 22. Caucasians with fewer responsibilities, which were not being met, were not put in any type of a probationary process. Id.

Herbert hired Riccio during the fall of 1998. Shortly after Riccio took over the Deputy Superintendent position, he approached Dr. Grey and told her that she should "look out for yourself" and start trying to find a Superintendent position at another school district or with a private corporation. Id. at ¶ 13. In January 1999, Riccio told Grey that her position was being eliminated at the end of the 1998-99 school year. Id. at ¶ 28.

On or about January 25, 1999, Grey learned that Herbert had asked his secretary to type a letter notifying Grey that she was being terminated. When Grey confronted Herbert, he denied the charge. Id. at ¶ 30.

Grey claims that the administration also gave her the responsibilities of three supervisors who were eliminated or had assignments removed from them, but did not give her extra secretarial support even though two of those supervisors had worked with full-time secretaries. Id. at 1; Grey Aff. at ¶ 2.

In a meeting on January 26, 1999, Herbert eliminated all of Grey's responsibilities except oversight for elementary education. Id. at ¶ 20. Herbert said that "perhaps [Grey] could do that one thing well." Aff. at ¶ 21. He said in a January *320 27, 1999 memo that he did this in response to her concerns that she had too much to do. 1/27/99 Memo from Herbert to Grey, Pl.'s Rule 56(a)(2) Statement, Ex. D [Dkt. No. 39]. Grey responded on January 29, asserting that she "never complained about and never asked to be relieved of any of my 16 responsibilities or other initiatives, projects, and partnership. Although I have said that I have a lot to do and need sufficient staff support to accomplish everything to the degree the district expects." 1/29/99 Memo. from Grey to Herbert, Pl.'s Rule 56(a)(2) Statement, Ex. A at 2 [Dkt. No. 39].

**2 In March, Riccio interrupted a meeting of district principals chaired by Grey and demanded to discuss an item not on the agenda. Grey saw this as a usurpation of her authority in front of her subordinates. Id. at ¶ 31. These actions never occurred with white male administrators in the district. Id. at ¶ 31.

During the time from January to June 1999, Herbert also sent Grey petty reprimands that were not sent to white male employees. Id. at ¶ 34. Grey received a positive evaluation in June 1999, with a few noted areas for improvement. Riccio, "Cabinet Self-Evaluation," Defs' Local Rule 9(c)(1) Statement [Dkt. No. 36], Ex. E.

Many people, including Board of Education President Rosa Murray, advised Grey to contact an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314            Page 6
(Cite as: 304 F.Supp.2d 314, *320, 2004 WL 231171, **2 (D.Conn.))

attorney, suspecting that she was the victim of racial discrimination. When a special Board meeting was scheduled in June 1999, about 50 community members fearing termination of Grey appeared at the meeting to support her. Herbert cancelled the meeting. Grey Aff. at ¶ 35.

Grey further alleges that she was the only one of her colleagues not allowed to "cross-train secretaries" for different responsibilities and that she was not compensated for extra technology-related responsibilities, though a white, male colleague was. *Id.* at ¶ 11.

Herbert informed Grey on July 15, 1999, that he wanted to buy out her contract. *Id.* at ¶ 42. Herbert said to consider herself "finished" and not to come to work. Grey insisted on remaining at work until a separation agreement was reached. *Id.* at ¶ 42, 46.

Herbert suggested on July 28, 1999, that she prepare a letter of resignation and outline proposed separation terms for the Board. *Id.* at ¶ 44. Grey refused to prepare the letter, *id.*, but did compose a memo setting forth proposed separation terms. Defs.' Local Rule 9(c)(1) Statement, Ex. K [Dkt. No. 36].

The Board refused to accept a separation proposal at its August 31, 1999 meeting, in which the Board met with Herbert while Grey remained outside. Grey Aff. at ¶ 45. Afterwards, Board President Murray told Grey that the Superintendent had told the Board that Grey had approached him and proposed the buyback, and had also not shared his memos of July 15 and July 28 with the Board. *Id.* at ¶ 45.

In September, Grey contends that the aggregation of these events pushed her to the point of being physically and emotionally unable to return to work at Norwalk. She provided the Board with notice on September 16, 1999. *Id.* at ¶ 46.

Grey filed an EEOC claim on March 8, 2000, alleging discrimination based on race, color, sex, and age. Pl.'s Mem. and Rule 56(a)(2) Statement, Ex. M [Dkt. No. 39]. She also filed claims with the CHRO. *Id.* at 15; Defs.' Local Rule 9(c)(1) Statement, Ex. N [Dkt. No. 36].

Grey filed this action on October 20, 2000, alleging race, national origin, sex, and age discrimination in violation of Title *321 VII; race, national origin, sex, and age discrimination in violation of the Connecticut Fair Employment Practices Act; violation of her fourteenth amendment right to equal protection of the laws, brought under 42 U.S.C. § 1983; and negligent infliction of emotional distress.

II. DISCUSSION

A. Standard

**3 The role of the court on summary judgment is "not to try issues of fact, but only to determine whether there are issues of fact to be tried." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 243, 253 (2d Cir.2002).

The plaintiffs, however, cannot escape summary judgment merely by asserting that unspecified disputed material facts exist or through conjecture or speculation. *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223-24 (2d Cir.1994). Disputed facts that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314            Page 7
(Cite as: 304 F.Supp.2d 314, *321, 2004 WL 231171, **3 (D.Conn.))

are not material to the issues in the case may not defeat summary judgment. *Hemphill v. Schott*, 141 F.3d 412, 416 (2d Cir.1998). *See also Anderson*, 477 U.S. at 247-48, 106 S.Ct. 2505 (the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").

B. Title VII Claims

Grey claims that the defendants discriminated against her based on her race, sex, age, and national origin, in violation of Title VII. The defendants argue that (1) age discrimination is not cognizable under Title VII; (2) that the actions complained of do not support an inference of constructive discharge; (3) that the harassment alleged by Grey is insufficient to support a hostile work environment claim; and (4) that Grey did not exhaust her national origin claim.

[1][2] Under Title VII, a claim for employment discrimination is governed by the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This analysis requires the plaintiff to first establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred *322 under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). This prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff, and the burden then shifts to the employer to "articulate a legitimate, clear, specific and nondiscriminatory reason" for its actions. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer does so, the plaintiff then has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

1. Proper Title VII Parties (Individual Defendants)

**4 [3] As an initial matter, the court notes that a Title VII claim cannot be brought against individual supervisory employees, but only against the employer itself. *See, e.g., Looby v. City of Hartford*, 152 F.Supp.2d 181, 184 (D.Conn.2001) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314-17 (2d Cir.1995), abrogated on other grounds, *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). As a result, summary judgment is granted on the Title VII claims against Herbert and Riccio.

2. Age Discrimination/Title VII (Board)

[4] Next, the court agrees with the defendants that age discrimination is not within the scope of Title VII. That statute makes it "an unlawful employment practice" for an employer to "discharge or otherwise discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). *See also* Barbara Lindemann and Paul Grossman, Employment Discrimination Law 5 (3rd ed.1996). The Age Discrimination in Employment Act, 29 U.S.C. § 621-34 ("ADEA"), prohibits age discrimination, but Grey does not reference the ADEA in her complaint or papers. Thus, summary judgment is granted on Grey's Title VII age discrimination claim.

3. National Origin Discrimination/Title VII (Board)

a. Exhaustion

[5] The Board argues that Grey's claim of discrimination on the basis of national origin is barred because she failed to raise it before the EEOC. A plaintiff must raise claims of discrimination at the applicable administrative agency before pursuing those claims in federal court. A claim is exhausted if it was actually raised or is "reasonably related" to a claim raised. *Butts v. City of New York Dep't of Housing Preserv. and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993), superseded on other grounds by statute as stated in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir.1998).

[6] The Second Circuit has recognized three

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




situations in which a claim is "reasonably related." First, a non-exhausted claim is "reasonably related" when its omission is essentially due to "loose pleading," and when the claim is within the scope of the investigation which would reasonably be expected to grow out of the agency claim. *Butts,* 990 F.2d at 1402. The second type of allowed, related claim is one alleging retaliation for filing a claim before the agency itself. *Id.* The third is where the unexhausted claim is a post-agency incident of discrimination carried *323 out in precisely the same manner as the action complained of to the agency. *Id.*

[7] Because Grey's unexhausted national origin claim arises out of the same incidents as those alleged, suggesting a different basis for those same events, only the first type of "related" claim could be at issue here. Grey raised discrimination on the basis of sex, race, age, and color with the EEOC. Pl.'s Mem. and Rule 56(a)(2) Statement, Ex. M [Dkt No. 39]. In her complaint in this action, Grey states that she is "of African descent" and that the defendants also discriminated against her on that ground.

**5 While "race" and "color" are somewhat related to "national origin," they are distinct bases for discrimination. While the investigation into her claim would have encompassed the way she was treated versus non-black employees, male employees, or younger employees, a national origin claim would in theory entail an investigation into how other employees of non-African descent were treated.

The content of Grey's Title VII allegations in the complaint, however, seems to treat discrimination against her because of her national origin as identical to discrimination against her because of her race. *See* Compl. at ¶ 38 ("The City of Norwalk Board of Education treated the Plaintiff differently than other similarly situated white male administrators and younger administrators"). Fact-wise, this would make the claims related. *See Forbes v. State Univ. Of New York at Stony Brook,* 259 F.Supp.2d 227, 233-34 (E.D.N.Y.2003) (plaintiff's ethnicity claim was reasonably related to her EEOC allegations of race, color, and sex discrimination because they were "essentially the same claim"). For purposes of this motion, the court concludes there was exhaustion of the national origin claim.

b. Prima Facie Case

[8] However, Grey does not present any evidence to support a prima facie case of national origin discrimination. All Grey alleges is that she is of "African descent"; she then presents evidence that she was discriminated against because of her race. *See, e.g.,* Grey Aff. at ¶ 10, 11, 22, 31, 34 ("caucasian male," "white male"). Even if the court assumes that her statement that she is "African-American," *id.* at ¶ 22, establishes her membership in a protected "national origin" class, and even if it does set forth a prima facie case of race discrimination, it does not set forth circumstances giving rise to an inference of discrimination on the basis of "national origin." Without any evidence to support that basis, summary judgment on the plaintiff's Title VII national origin claim is granted.

4. Constructive Discharge/Title VII (Board)

The defendants also argue that the actions of which Grey complains did not rise to the level of intolerability necessary to establish constructive discharge. The court disagrees and denies summary judgment on this claim.

[9] To present a prima facie case of discriminatory discharge action under Title VII, Grey must show that she was either actually or constructively discharged, and that "the discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in a protected class." *Terry v. Ashcroft,* 336 F.3d 128, 152 (2d Cir.2003). [FN2]

> FN2. Proof of such a causal connection can be established through "evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Terry,* 336 F.3d at 152.

*324 a. Constructive Discharge Showing

[10] Constructive discharge occurs when an employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Id.* at 151-152 (citing *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 161 (2d Cir.1998), *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996)). "The effect of adverse

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




conditions is cumulative." *Id.* at 90.

**\*\*6** [11] Grey presents a variety of circumstances that, combined, she argues made her situation "intolerable," including: the repeated threat that her position would be eliminated; a rumored letter announcing her termination; Riccio's public usurpation of her authority in front of her subordinates; the administration's manipulation of her curricular responsibilities; petty reprimands; and Herbert's suggestion that the District buyback her contract and his subsequent comment that she should consider herself "finished." Together, these circumstances support a reasonable inference of constructive discharge. On Grey's version of the facts, the fact-finder could determine that it was reasonable for her to assume that she was "compelled to leave." *Id.*

[12] Moreover, threats of termination alone are sometimes sufficient to show constructive discharge. *See Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987). Here, Riccio told Grey to "watch out for herself," and warned her that her job would be eliminated at the end of the year. This also supports an inference of constructive discharge, especially when combined with the other actions that Grey alleges. *See Chertkova,* 92 F.3d at 90 (supervisor's comment to plaintiff that she would not "be around" supported finding of constructive discharge); *Terry,* 336 F.3d at 153 (supervisor's comments to plaintiff that "your days are numbered" and that his "life's over with" and "you're going to be brought up on more charges" would allow a reasonable person to infer that he was not wanted as an employee and that he was going to be forced out). [FN3]

> FN3. The defendants argue that Grey's contentions are belied by language in letters from Herbert to Grey and by the fact that he signed her contract for the 1999-2000 school year. Those differences create an issue of material fact, however, and go to the weight of the evidence, not its sufficiency. *See Kirsch,* 148 F.3d at 162.

Grey's version of the facts, if believed, would also establish that the Board deliberately sought to compel her to leave her position. *See Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 361 (2d Cir.1993) . For instance, Grey alleges that Herbert approached her about a contract buyback, then lied to the Board when he presented her proposal, representing instead that she had initiated the buyback. This occurred after she had been told several times that her position would be eliminated and warned to watch out for herself.

b. Inference of Discrimination

[13] 1. *Race.* Grey presents a variety of facts to support her racial discrimination claim. She alleges, and attests in her affidavit, that Riccio usurped her authority at a meeting with her subordinates, and that she discussed the issue of racial discrimination with him then. She further contends that the Board of Education treated her differently than other similarly situated white male administrators. She alleges that during the period January through June 1999, she received support from Board of Education members and **\*325** employees, who expressed their belief that Dr. Grey was the victim of discrimination and advised her to contact and attorney, including Board of Education President Rosa Murray. Grey further draws the court's attention to a September 2000 CHRO decision finding the City of Norwalk Board of Education liable for race, color, and age discrimination in its decision to deny a Norwalk teacher, John Saunders, promotion to assistant principal in 1997. Pl.'s Rule 56(a)(2) Statement, Ex. K [Dkt. No. 39]. Grey also claims that she was not given extra compensation for her technology-related duties, though a white, male colleague was. Grey Aff. at ¶ 11. Finally, Grey's affidavit recounts numerous conversations with Norwalk officials, acknowledging the discrimination that she was suffering, including one Board Member, Rick Fuller, who commented that "he predicted that all minorities would be eliminated from the Central Office by Victor Herbert." *Id.* at ¶ 39.

**\*\*7** "[D]irect evidence of discrimination is not necessary." *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir.2001) (citing *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir.1998)). "If there is sufficient circumstantial evidence on which to build a case, it is for the jury to determine what inferences can be drawn from that evidence." *Id.* Indeed, circumstantial evidence is common in discrimination suits, because "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Norton,* 145 F.3d at 119 (quoting *Rosen v. Thornburgh,* 928 F.2d 528, 533

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




(2d Cir.1991)). Grey has thus presented evidence that satisfies her prima facie burden. The Board does not appear to offer an alternative, legitimate reason to explain the events she describes; as a result, especially given the fact-intensive inquiry that questions of employer intent involve, Grey has presented ample evidence to proceed to trial on her Title VII race discrimination constructive discharge claim.

[14] 2. *Sex.* Grey's sex discrimination claim presents more difficulty. As with race discrimination, the initial burden in a sex discrimination claim is on the plaintiff to establish a prima facie case of discrimination. *Weinstock,* 224 F.3d at 42.

Grey has not come forward with evidence to support a prima facie case of sex discrimination. She repeatedly alleges that "white males" were treated differently and points out that a white male colleague was compensated for his technology responsibilities while she was not. She gives no additional evidence to support her case and provides no comments based on sex. "[A] plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *See Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 246 (S.D.N.Y.2001). The evidence that Grey presents regarding one male colleague, who is white, without further information regarding those circumstances or any other evidence regarding sex discrimination, is insufficient for a jury to draw the inference of sex discrimination. Thus she has not met even the "de minimus" burden required of her at this stage. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203-04 (2d Cir.1995).

c. Board's Liability

As the discussion above suggests, there is also a sufficient basis for holding the Board liable under Title VII for the discrimination, though the defendants have not raised this issue. Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce ..., and any agent of such person." 42 U.S.C. § 2000e(b) (emphasis added); *see *326 also Levendos v. Stern Entm't, Inc.,* 909 F.2d 747, 751 (3rd Cir.1990) (the action of supervisors is imputed to the employing entity through agency principles). "The term 'agent' is not defined by Title VII, but has been interpreted by courts as an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803 (6th Cir.1994) (internal citations omitted).

**8 Here, Grey alleges discriminatory conduct by the District's top officials, the Superintendent and Deputy Superintendent. She further alleges that Board members, including the Board President, told her that they thought she was a victim of discrimination and that she should get a lawyer, and that they were aware that Herbert had lied to them about the circumstances of the buyback. By Grey's facts, then, the Board was explicitly aware of the discrimination and allowed it to continue, then ratified her constructive discharge. *See also infra* at 330-31 (discussing Board's liability under § 1983).

For all these reasons, summary judgment on Grey's Title VII constructive discharge claim against the Board is denied with regard to race discrimination; granted with regard to sex, age, and national origin discrimination.

5. Title VII Hostile Work Environment Claim (Board)

[15] The Board also seeks summary judgment on Grey's hostile work environment claim. "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002).

a. Hostile Work Environment Showing

[16][17] Demonstrating that conduct was sufficiently severe to alter the terms of the plaintiff's employment has "objective and subjective elements: the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Terry,* 336 F.3d at 128 (internal quotations omitted). The court must consider "the frequency of the discriminatory conduct; its severity; whether it is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314 Page 11
(Cite as: 304 F.Supp.2d 314, *326, 2004 WL 231171, **8 (D.Conn.))

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

[18][19] As with constructive discharge, the court examines the totality of the circumstances. *Id.* (quoting *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir.1999)). While this is a case-by-case analysis, "a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano,* 294 F.3d at 373 (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000)) (internal quotation marks omitted). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris,* *327 510 U.S. at 21, 114 S.Ct. 367 (internal quotations omitted).

**9 The Second Circuit recently clarified the showing necessary for establishing a hostile work environment claim in *Terry v. Ashcroft,* 336 F.3d 128 (2d Cir.2003). The Circuit cautioned, "While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse." Id.* at 148 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 (2d Cir.2000)) (internal quotation marks omitted) (emphasis in original).

Grey alleges that her supervisors harassed her in several ways that altered her job for the worse. She claims, among other things, that Herbert and Riccio manipulated her responsibilities, undermined her in front of her subordinates, sent her petty reprimands, and did not allow her the customary secretarial support for her duties, trying to set her up to fail. While this type of harassment may be different than, for instance, that alleged in *Richardson,* 180 F.3d at 438-40, where the plaintiff claimed, among other things, that co-workers had put hair in her food and shot rubberbands at her, it nonetheless created circumstances in which the conditions of Grey's employment were altered for the worse. *See Terry,* 336 F.3d at 148.

[20] Grey's claims also differ from many hostile work environment claims because she does not allege any explicitly racial or sexist remarks as part of her evidence. Instead, she Grey merely alleges that she was treated differently from white, male supervisors. Though hostile environment claims often involve racial or sexual remarks, *see, e.g., Richardson,* 180 F.3d at 434, the alleged harassment need not be explicitly sexual or racial, though a basis must exist for inferring that the conduct occurred *because of* the defendant's membership in the protected class. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485 n. 6 (3d Cir.1990); *Ricks v. Conde Nast Publ'n, Inc.,* 92 F.Supp.2d 338, 349 (S.D.N.Y.2000), *aff'd,* 6 Fed.Appx. 74 (2d Cir.2001). The Supreme Court has explicitly held that these inferences can be established by direct comparative evidence. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace, [but] ... must always prove that the conduct at issue ... actually constituted "discrimina[tion] ... because of ... sex."); *see also Ricks,* 92 F.Supp.2d at 349 (it is an "open question" whether plaintiff's sole proof of intent that she was treated differently from the non-African-American account managers was sufficient to support hostile work environment claim).

b. Inference of Discrimination

**10 [21] 1. *Sex.* As discussed above, Grey's bare allegation that she was treated differently from males and her identification of one white male whom she alleges was compensated for technology responsibilities while she was not is insufficient support for her case to go to the jury on sex discrimination. *See supra,* 325-26. She provides no additional evidence to support her case, provides no comments based on sex, and does not even identify the other similarly situated "males" who were treated differently. As a result, she has not created

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314   Page 12
(Cite as: 304 F.Supp.2d 314, *327, 2004 WL 231171, **10 (D.Conn.))

an issue of fact on this claim.

*328 [22] 2. *Race*. Also as discussed above, Grey does present sufficient support for her case that the workplace hardships she endured were because of her race. *See supra*, 324-25. The court recognizes that questions of employer intent, like those in this case, involve "an assessment of individuals' motivations and state of mind," *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001), an assessment better left to the trier of fact than to the court on summary judgment. Moreover, Grey presents evidence that others commented on the discrimination, and attributed mistreatment of her to her race. *See, e.g.*, Grey Aff. at ¶¶ 38-41.

As a result, the defendants' motion for summary judgment on Grey's Title VII hostile work environment claim against the Board is denied as to race discrimination, and granted as to sex, age, and national origin discrimination. [FN4]

> FN4. The actions of Riccio and Herbert are also attributable to the Board, though the defendants have not raised this issue with regards to Grey's Title VII hostile work environment claim. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 745, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 127-28 (2d Cir.2003). Where there is no tangible employment action, the employer may impose certain affirmative defenses, including that the employer exercised reasonable care to prevent and promptly correct the behavior. *See id.* at 127. Here, Grey alleges among other things that the Board President advised her that she was being discriminated against and should get a lawyer, yet the Board took no action to remedy the situation.

C. Connecticut Fair Employment Practices Act

1. Individual Claims

[23] As with Title VII, Grey cannot assert claims against individual supervisors under CFEPA. *See Perodeau v. City of Hartford*, 259 Conn. 729, 792 A.2d 752 (2002). As a result, Grey's individual CFEPA claims against Herbert and Riccio are dismissed.

2. Claims Against the Board

The defendants argue that summary judgment should also be granted on Grey's CFEPA claims against the Board. They content that, as with Grey's Title VII claims, she has failed to show constructive discharge, and has also "failed to establish that she suffered from discriminatory harassment sufficient to alter the conditions of her workplace." Defs.' Mem. In Supp. Of Summ. J. at 2.

[24] The court looks to federal employment anti-discrimination law for guidance in enforcing Connecticut's anti-discrimination statute. *See Brittell v. Dept. of Corr.*, 247 Conn. 148, 717 A.2d 1254 (1998) (relying on Second Circuit's opinion in *Chertkova*); *Levy v. Comm'n on Human Rights and Opportunities*, 35 Conn.App. 474, 646 A.2d 893 (1994). As discussed above, Grey has presented sufficient evidence from which a reasonable trier of fact could infer that she was constructively discharged. *See supra* 324. Summary judgment on Grey's constructive discharge race discrimination claim against the Board is thus denied.

Grey has also, for the reasons discussed above in relation to her Title VII claims, produce sufficient evidence to proceed to trial on her race discrimination hostile work environment claim. Thus the defendants' motion for summary judgment on that CFEPA hostile work environment race discrimination claim is also denied.

**11 Grey has not presented sufficient evidence to create a prima facie case on her *329 sex discrimination claim. As discussed above in relation to Title VII, Grey must come forward with sufficient evidence to support a jury's reasonable inference that she was discriminated against because of her sex. She has not done so. *See supra* at 325-26. The court thus grants summary judgment on Grey's CFEPA sex discrimination claim.

Unlike under Title VII, age discrimination is actionable under CFEPA. *See* Conn. Gen.Stat. § 46a-59. However, the plaintiff has presented absolutely no evidence on that claim: no evidence from which a jury could infer that any action of the defendants was based even in part on age, and only one repeated bare allegation that younger employees were treated differently. Compl. at ¶ 38. As a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




result, summary judgment on Grey's CFEPA age discrimination claims is granted.

Finally, for the reasons discussed above in relation to Title VII, Grey has not made the required prima facie showing as to national origin discrimination. *See supra* at 323. (discussing national origin showing required by Title VII to state a prima facie case). Summary judgment is granted on that claim.

D. Section 1983 Claims

The defendants also move for summary judgment on Grey's § 1983 claims in Count 3 of the Complaint, arguing that she has failed to allege that the defendants intentionally sought to discriminate against the class of plaintiffs of which she is a part. The defendants further argue that, in any case, Grey has not demonstrated that the Board was involved in the discrimination such as to be held liable under § 1983, and that Herbert and Riccio are entitled to qualified immunity.

1. Pleading Requirements

The defendants claim that Grey has not properly pled her § 1983 equal protection violation claim, and that as a result it must fail. This argument is without merit.

[25] A plaintiff may plead concurrent violations of Title VII and § 1983 (or, indeed, only § 1983 claims) against a municipal government body as long as the constitutional claims allege the violation of a constitutional right. *See Annis v. County of Westchester*, 36 F.3d 251, 255 (2d Cir.1994); *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994). There is a long-recognized constitutional right to be free from sex discrimination in public employment. *See Annis*, 36 F.3d at 254 (citing *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)). Similarly, Grey also has a constitutional right to be free from discrimination based on her race or national origin. *See, e.g., Hazelwood School Dist. v. United States*, 433 U.S. 299, 316 n. 3, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

The defendants argue that Grey has failed to allege an "intent to disadvantage all members of a class that includes plaintiff," as required to state an equal protection claim. *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 151 (2d Cir.2002). However, the plaintiff in *Weixel* did not allege that the school had discriminated against her because of an intent to disadvantage a class of which she was a member, or allege anything else that would state an equal protection claim. Instead, the complaint, as described by the district court, alleged only that the "[d]efendant ... failed to afford [the plaintiff child] 'equal treatment under the law as other children were evaluated academically before deciding on class placement.'" *Weixel v. Board of Educ. of City of New York*, 2000 WL 1100395 at *7 (S.D.N.Y. August 7, 2000). The district court concluded *330 that the equal protection claim had to be dismissed because, among other things, the plaintiff did not "allege that the school discriminated against a particular class of students when it failed to test [plaintiff] or place [plaintiff] in her eighth grade class." *Id*. The Second Circuit affirmed this portion of the opinion. *Weixel*, 287 F.3d at 151.

**12 [26] Here, however, Grey *does* allege an intent to disadvantage the groups of which she is a member. She alleges at the beginning of her complaint that she was "discharged after several months of race, sex, age and national origin discrimination," Compl. at ¶ 1, and in her support of her equal protection claim, alleges that the "three Defendants discriminated against Plaintiff on the basis of her race, national origin, and sex by harassing her and ultimately causing her constructive discharge from the school district in September 1999." Compl. at ¶ 49. This and the rest of Grey's § 1983 pleading is sufficient.

2. § 1983 Race Discrimination Claim

Grey claims that the defendants discriminated against her because of her race, in violation of the fourteenth amendment to the Constitution. "A state and its instrumentalities may not deny 'any person within its jurisdiction the equal protection of the laws.'" *Sound Aircraft Servs., Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir.1999) (quoting U.S. Const. Amend. XIV). "At its core, equal protection prohibits the government from treating similarly situated persons differently." *Id*.

[27] Employment discrimination claims brought under § 1983 are analyzed according to the same standards as used to evaluate Title VII claims. *See Jessamy v. City of New Rochelle, New York*, 292

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314 Page 14
(Cite as: 304 F.Supp.2d 314, *330, 2004 WL 231171, **12 (D.Conn.))

F.Supp.2d 498, 511 n. 15 (S.D.N.Y.2003) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000); *Sorlucco v. N.Y. City Police Dep't*, 888 F.2d 4, 7 (2d Cir.1989)). This analysis requires the plaintiff to first establish a prima facie case of discrimination. *See, e.g., Weinstock*, 224 F.3d at 42.

As the court concluded with regard to the Title VII claims, Grey presents sufficient facts in support of her racial discrimination claim to state a prima facie case. *See supra* at 324-25. Grey has thus presented ample evidence to proceed to trial on her equal protection claim of race-based discrimination.

a. § 1983/Race (Board)

[28][29] The Board may not be held liable under § 1983 for the actions of individuals solely on a theory of respondeat superior. *Jeffes v. Barnes*, 208 F.3d 49, 56-57 (2d Cir.2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The Second Circuit has found that a municipality may be held liable under § 1983 when the injury was inflicted by its "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Jeffes*, 208 F.3d at 57. Additionally, a supervisor's acquiescence to the actions of his subordinates may amount to a policy or custom, if the subordinate's "discriminatory practice [is] so manifest as to imply the constructive acquiescence of senior policy-making officials." *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 137 (2d Cir.1999) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992)). When a subordinate's decision is subject to review by the municipality's authorized policy makers, "their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). *331 Grey may thus hold the Board liable under § 1983 for discriminatory treatment by Herbert and Riccio, if she can demonstrate that the Board "knew of and ratified the discrimination." *Looby*, 152 F.Supp.2d at 187 (citing *Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018).

**13 [30] Here, Grey alleges that Board members advised her to get a lawyer because she was a victim of racial discrimination, and that one member commented that "he predicted that all minorities would be eliminated from the Central Office by Victor Herbert." Grey Aff. at ¶ 39. The Board failed to act to remedy the discrimination, and eventually ratified what Grey claims was her constructive discharge. These facts, if proven to the jury, are a sufficient basis to find the Board liable for Herbert's and Riccio's conduct under § 1983.

b. Qualified Immunity/ § 1983/Race (Riccio and Herbert)

[31] Finally, the defendants argue that Riccio and Herbert are entitled to qualified immunity on Grey's § 1983 race discrimination claim. [FN5] A government official sued in his individual capacity is entitled to qualified immunity for a constitutional violation if, considering the record as construed in the plaintiff's favor, the constitutional right in question was not "clearly established" at the time of the conduct, or if the official's action was objectively reasonable. *See Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65- 66 (2d Cir.1999). The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999) (citation omitted).

> FN5. The court only considers qualified immunity on the race discrimination claim because it is the only remaining § 1983 discrimination claim.

[32] Grey's right to be free from discrimination because of her race was well-established at the time of the events that gave rise to this suit. *See, e.g., Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 316 n. 3, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977) (fourteenth amendment forbids racial discrimination even before enactment of Title VII). Nor would a "reasonable" official, especially in light of the long-established and well-known law on the subject, have thought that it was acceptable to treat Grey differently because of her race. *Looby*, 152 F.Supp.2d at 189. Rather, the essence of what the defendants raise is a dispute of fact about whether Grey was in fact treated differently. This is properly left to the jury.

3. § 1983 Sex and National Origin Discrimination (All Defendants)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314                                                                                                          Page 15
**(Cite as: 304 F.Supp.2d 314, \*331, 2004 WL 231171, \*\*13 (D.Conn.))**

As discussed above, the plaintiff has not put forward sufficient evidence to support a prima facie case of sex discrimination or national origin discrimination. *See supra* at 322-23, 325-26. Summary judgment is thus granted on Grey's § 1983 national origin and sex discrimination claims.

E. Negligent Infliction of Emotional Distress (All Defendants)

The defendants also move for summary judgment on Grey's negligent infliction of emotional distress claim in Count Four of the Complaint, arguing that the Connecticut Supreme Court's decision in *Perodeau v. City of Hartford*, 259 Conn. 729, 792 A.2d 752, 764-73 (2002), bars claims for negligent infliction of emotional distress arising out of conduct occurring in the *332 context of a continuing employment relationship, as opposed to conduct that occurs in the process of a termination of employment.

\*\*14 [33] The defendants argue that Grey's Count Four allegations do not reference her claim of constructive discharge. However, paragraph fifty-four, the first paragraph in Count Four, incorporates "the allegations contained in paragraphs 1 through 53 of the Complaint as though restated herein word for word," thus incorporating Grey's constructive discharge claim into Count Four. The question presented, then, is whether constructive discharge qualifies as termination of employment for purposes of a negligent infliction of emotional distress claim.

The application of constructive discharge to a claim of negligent infliction of emotional distress presents a novel issue in light of *Perodeau*. By limiting the scope of the negligent infliction of emotional distress tort to conduct occurring in the process of termination, the *Perodeau* court aimed to limit the reach of the tort. *Perodeau*, 259 Conn. at 756, 792 A.2d 752 ("[t]he problem for the law is to limit the legal consequences of wrongs to a controllable degree"). The court explained that its combination of the termination requirement with its prior decisions to allow a negligent infliction of emotional distress claim made sense because, "[i]mplicit in this conclusion is a recognition that emotional distress that might result in illness or bodily harm is a foreseeable consequence of particularly egregious conduct involving a termination, which would, in turn, give rise to a duty to avoid such conduct." *Id.*

at 755, 792 A.2d 752. The court further acknowledged that "individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." *Id.* at 757, 792 A.2d 752. The court noted that making such distress actionable in the context of continuing employment would have several negative consequences:

[E]mployees who fear lawsuits by fellow employees may be less competitive with each other, may promote the interests of their employer less vigorously, may refrain from reporting the improper or even illegal conduct of fellow employees, may be less frank in performance evaluations, and may make employment decisions such as demotions, promotions and transfers on the basis of fear of suit rather than business needs and desires. All of this conduct would contribute to a less vigorous and less productive workplace.
*Id.* at 758, 792 A.2d 752.

Allowing an employee alleging constructive discharge to assert a negligent infliction of emotional distress claim does not implicate these concerns. In a constructive discharge case such as the one alleged by Grey, the employment relationship is already terminated, allegedly involuntarily. As a result, the effect of allowing the claim is no different than if the plaintiff had been actually discharged: there is none of the additional "chilling," or "fear" that motivated the Connecticut Supreme Court to preclude the tort from being asserted in ongoing employment relationships. Moreover, in Connecticut, a "constructive discharge is effectively the legal equivalent of a discharge." *Kilduff v. Cosential, Inc.*, 289 F.Supp.2d 12, 18 (D.Conn.2003) (quoting *Seery v. Yale-New Haven Hosp.*, 17 Conn.App. 532, 554 A.2d 757 (1989)). Thus allowing a constructive discharge to form the basis of a negligent infliction of emotional distress claim is consistent with Connecticut constructive discharge law. *Accord Gupta v. City of Norwalk*, 221 F.Supp.2d 282, 295 n. 6 (D.Conn.2002) \*333 (Thompson, J.) (noting without deciding that a constructive discharge claim would support a negligent infliction of emotional distress claim).

\*\*15 [34] However, the alleged conduct is not sufficiently unreasonable or wrongful to support the negligent infliction of emotional distress claim. Indeed, wrongful motivation is not enough to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




304 F.Supp.2d 314        Page 16
(Cite as: 304 F.Supp.2d 314, *333, 2004 WL 231171, **15 (D.Conn.))

sustain the claim: "[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88-89, 700 A.2d 655. Instead, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Id.* at 88, 700 A.2d 655 (internal quotation marks omitted); *Perodeau,* 259 Conn. at 750, 792 A.2d 752.

Here, Grey alleges that Herbert lied to the Board about Grey's buyback, telling them that it had been her proposal; that he had his secretary type her termination letter and then denied its existence; that Herbert told her she was "finished" and not to report to work, even though the buyback was not yet approved and completed. Moreover, Grey claims that these and other actions were based on her race. The allegations against Riccio involve warnings that her job would be eliminated, an accusation that he usurped her authority in front of her subordinates, and that he manipulated her curricular responsibilities and the associated funds so as to impede her job. The Board allegedly knew of the wrongfulness of their actions and ratified them. These activities, while wrongful, are not "sufficiently wrongful that the defendant should have realized that its conduct involved an *unreasonable* risk of emotional distress." *Perodeau,* 259 Conn. at 751, 792 A.2d 752; *see also Morris v. Hartford Courant Co.,* 200 Conn. 676, 680, 513 A.2d 66 (Conn.1986) (false accusations were not outrageous where plaintiff did not allege that employer knew they were false or made the accusations with reckless disregard) (emphasis added). Summary judgment is granted on Count 4.

III. CONCLUSION

For the reasons discussed above, the defendants' motion is GRANTED: on the First Cause of Action as to all claims against Herbert and Riccio, individually; on the age discrimination claim, national origin discrimination claim, and sex discrimination claim as to all defendants; on the Second Cause of Action, as to all claims against Herbert and Riccio individually, and as to Grey's sex discrimination claim, age discrimination claim, and national origin discrimination claim as to all defendants; on the Third Cause of Action as to the sex discrimination claim and national origin discrimination claims against all defendants; and on the Fourth Count against all defendants. The remainder of the motion is DENIED. Claims remain against Riccio and Herbert for race discrimination in violation of the fourteenth amendment, pursuant to § 1983; and against the Board for constructive discharge and hostile work environment race discrimination in violation of Title VII and of the fourteenth amendment, pursuant to § 1983.

SO ORDERED

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


