Not Reported in F.Supp.2d
2004 WL 2106593 (D.Conn.)
**(Cite as: 2004 WL 2106593 (D.Conn.))**

Page   1

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Sarah BROWN, Plaintiff
v.
TOWN OF GREENWICH, et al., Defendants
No. Civ.A.3:02 CV 316 CF.

Sept. 15, 2004.

Marc L. Glenn, Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

Valerie E. Maze, Old Grenwich, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, J.

*1 Plaintiff Sarah P. Brown ("Brown") brings this action against her employer, the Town of Greenwich, Connecticut ("Town"), and against Town Director of Human Resources Al Cava ("Cava") and Deputy Director of Human Resources Bernadette Welch ("Welch"). Brown alleges that she was subjected to a hostile work environment and retaliated against in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*("Title VII"), and further alleges that the Town, Cava, and Welch committed the state law tort of intentional infliction of emotional distress. [FN1]

> FN1. In her initial complaint, Brown also alleged that defendants had violated her civil rights under 42 U.S.C. § 1983, and had committed the state law tort of negligent infliction of emotional distress. Those claims were dismissed pursuant to this Court's Ruling of March 3, 2003 [Doc. # 16].

Pending is Defendants' Motion for Summary Judgment [Doc. # 22].

I. Background  [FN2]

> FN2. The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Sarah Brown, an African-American, has been employed by the Town of Greenwich Human Resources Department since 1983. From 1983 until July 1, 1996, Brown served in the category of "Secretary A," a unionized job title. In 1996, Brown received a promotion to the position of Confidential Secretary. This new job classification was not unionized, but carried greater responsibility and higher pay.

Brown claims that subsequent to her promotion, she was subjected to hostility and discrimination based on her race. Brown alleges four specific incidents in support of her claim: 1) that in April 1998, she was denied training in desktop publishing software necessary to produce the Human Resources Department newsletter, while such training was provided to a white female colleague; 2) that Brown's November 1998 performance evaluation included the comment that she appeared "reluctant at times to 'think out of the box' "; 3) that in February 2000, Deputy Director of Human Resources Welch told another member of the department that Brown had "a minority chip on her shoulders"; and 4) that in December 2000, Brown wrongfully was accused by Director of Human Resources Cava of improperly maintaining petty cash receipts.

II. Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex,* 477 U.S. at 323.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
**(Cite as: 2004 WL 2106593, \*1 (D.Conn.))**

Page 2

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

**\*2** Finally, the Second Circuit has declared that a "trial court must be especially cautious in deciding whether to grant [summary judgment] in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999) (citing *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996) and *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994)). Nevertheless, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

III. Discussion

A. Title VII Claims

Title VII provides that "it shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Brown alleges that the Town violated Title VII in two ways: it subjected her to a racially hostile work environment and it retaliated against her for filing complaints with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"). [FN3] Each Title VII claim will be examined in turn.

> FN3. Brown received a right-to-sue letter from the CCHRO on August 9, 2001, and from the EEOC on November 13, 2001. She filed a complaint with this Court [Doc. # 1] on February 20, 2002. Defendants have argued that several of Brown's claims are untimely and therefore barred. The Court finds that Brown's claims fail as a matter of law, and thus it does not reach the question of their timeliness.

1. Hostile Work Environment

Conduct prohibited by Title VII includes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail in a hostile work environment claim, a plaintiff must "establish (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Richardson v. New York State Dep't of Correctional Servs.,* 180 F.3d 426, 436 (2d Cir.1999) (internal citations omitted). As to the first prong of this test, Title VII does not make actionable conduct that is merely offensive; the harassment must be sufficiently severe or pervasive that a reasonable person would find it hostile or abusive. *See, e.g., Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). This determination is based upon the totality of the circumstances. *See Harris,* 510 U.S. at 23.

The Court concludes that Brown has failed to present evidence of a hostile work environment sufficient to withstand summary judgment. The incidents Brown alleges were not sufficiently severe or pervasive to alter the conditions of her employment. Indeed, all parties agree that the November 1998 performance evaluation of which Brown complains was overwhelmingly favorable, so much so that Brown received an Outstanding Achievement award and bonus that year. Brown admits that during her employment with the Town, she has never been demoted or disciplined, she has suffered no material loss of employment benefits, and her work responsibilities have never been diminished. *See* Docs. # 24, 33. Brown's hostile work environment claim also fails as a matter of law.

2. Retaliation

**\*3** Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
**(Cite as: 2004 WL 2106593, \*3 (D.Conn.))**

Page    3

*Deravin v. Kerik,* 335 F.3d 195, 203 (2d Cir.2003).

To establish a prima facie case of retaliation, the plaintiff must show: (1) participation in a protected activity; (2) the employer knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester,* 241 F.3d 279, 282-83 (2d Cir.2001); *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134 (2d Cir.1999). Once a prima facie case is established, the burden of production shifts to the employer to show that a legitimate, nondiscriminatory reason existed for its action. *See Raniola v. Bratton,* 243 F.3d 610, 625 (2d Cir.2001).

While Brown's complaints to the CCHRO and EEOC undeniably qualify as protected activity under Title VII, Brown has presented no evidence that she suffered an adverse employment action after filing those complaints in June 2000. Brown was not terminated due to her complaints, and she still works for the Town of Greenwich. As discussed previously, Brown also admits that she has never been demoted or disciplined during her employ with the Town, nor has she experienced any diminution in her salary, benefits, or job responsibilities. Since there is neither direct nor indirect evidence of an adverse employment action taken against her, Brown has failed to establish a prima facie case of retaliation under Title VII. Accordingly, Brown's retaliation claims do not survive summary judgment.

B. Intentional Infliction of Emotional Distress Claims

The Court also concludes that no genuine issue of material fact exists as to Brown's claims for intentional infliction of emotional distress under Connecticut law.

The elements of the tort of intentional infliction of emotional distress are well-established. In order for the plaintiff to prevail, she must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (Conn.2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question of law." *Id.* Extreme and outrageous conduct has been defined as that which "goes beyond all possible bounds of decency, is regarded as atrocious, [and] is utterly intolerable in a civilized society...." *Miner v. Town of Cheshire,* 126 F.Supp.2d 184, 194 (D.Conn.2000).

**\*4** The Court concludes that the allegations made by Brown against the Town, Cava, and Welch, whether taken individually or as a whole, are insufficient to create a genuine issue of material fact as to whether the defendants' conduct was extreme and outrageous. As a matter of law, these incidents are not so outrageous in character and so extreme in degree that they may be regarded as atrocious. While the incidents may well have embarrassed Brown, they do not exceed all possible bounds of decency or tolerable social behavior. The Court therefore grants defendants' motion for summary judgment as to the claims of intentional infliction of emotional distress.

IV. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment [Doc. # 22] is GRANTED. The Clerk is directed to close the case.

SO ORDERED.

2004 WL 2106593 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d                                                Page    1
2002 WL 519714 (D.Conn.)
**(Cite as: 2002 WL 519714 (D.Conn.))**
**ₕ**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
Alva HANSON, Plaintiff,
v.
CYTEC INDUSTRIES, Defendant.
No. 399CV86(CFD).

March 8, 2002.

RULING ON MOTION FOR SUMMARY
JUDGMENT

DRONEY, District J.

*1 The plaintiff, Alva Hanson, brings this action against the defendant, Cytec Industries, alleging that the defendant discriminated against him and created a hostile work environment because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, as amended by the Civil Rights Act of 1991 ("Title VII"), and 42 U.S.C. § 1981, retaliated against him in violation of Title VII, and intentionally inflicted emotional distress in violation of Connecticut law [FN1]. The defendant has moved for summary judgment [Doc. # 40]. For the following reasons, the motion for summary judgment is GRANTED.

> FN1. In his complaint, Hanson also alleged that such actions constituted violations of the Connecticut Fair Employment Practices Act and Connecticut Constitution, as well as negligent infliction of emotional distress. On February 14, 2000, however, this Court granted the defendant's motion to dismiss those causes of action. Accordingly, only Hanson's Title VII, Section 1981, and intentional infliction of emotional distress claims remain.

I. Background [FN2]

> FN2. The relevant facts are based on the parties Rule 9(c) statements and summary judgment papers and are undisputed unless otherwise indicated.

Alva Hanson ("Hanson"), a man of West Indian descent and African-American race has been employed by the defendant, Cytec Industries ("Cytec"), as a "material handler" from 1979 to the present date. Hanson alleges that, in 1997, his supervisor, Carl Zemke ("Zemke"), engaged in the following actions, viewing the evidence presented in a light most favorable to Hanson.

On May 5, 1997, Zemke spoke to Hanson about picking up an assignment sheet. Later that day, Zemke again reminded Hanson about the assignment sheet, and Hanson responded that he was aware of his duties and would get the assignment sheet. Thereafter, Zemke began yelling at Hanson, and when Hanson told Zemke not to talk to him that way, Zemke responded: "I will talk to you any fucking way I want to, I'm your supervisor." Zemke later apologized to Hanson for using foul language, reported the issue to Cytec management, and was counseled regarding the incident. On May 6, 1997, Hanson filed a union grievance [FN3] reporting this incident-grievance # 4254.

> FN3. Hanson does not indicate the nature of his union membership in his complaint or summary judgment papers.

On July 2, 1997, Zemke called Hanson at home to see if he could work an overtime assignment that day. Hanson was not home when Zemke called, and thus, was not scheduled for the overtime. Zemke did not attempt to schedule Hanson in advance for the overtime assignment, as Hanson testified was Zemke's practice for white employees. Cytec provided Hanson with a "make-up" overtime day as a means of settling this dispute. On July 2, 1997, Hanson filed a union grievance reporting this incident-grievance # 4452.

In July 1997, Zemke requested that Hanson sweep up a section of the work floor while Hanson was working overtime. The sweeping assignment was not appropriate for an employee in Hanson's job classification. Thus, after Zemke's request, Hanson went to his union representative, Gary Silva ("Silva"), and spoke with him about the sweeping assignment. Silva then met with Hanson and Zemke and told Zemke that the sweeping assignment was outside of Hanson's job classification. Zemke did not subsequently ask Hanson to perform the sweeping assignment. Hanson did not file a union grievance concerning this incident.

On August 21, 1997, Zemke asked Hanson to take

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
**(Cite as: 2002 WL 519714, *1 (D.Conn.))**

an early lunch break. According to Hanson, it was not Zemke's practice to schedule break times for white employees. Hanson went to Silva regarding Zemke's request and Silva told him to go on his lunch break. On the same day, Zemke handed Hanson an assignment while Hanson was eating his lunch in the break room, though it was common practice for supervisors to leave work assignments in the office. Zemke had never previously given an assignment sheet to Hanson in the lunchroom. Later that day, David Gymrek, a Production Superintendent, met with Hanson, Zemke, and Silva and told Zemke and Hanson that they needed "to respect each other" and resolve their differences. That night, Zemke assigned Hanson to a different overtime assignment than his daytime assignment, though it was common practice to assign employees the same job duties for overtime as they had worked in their regular shift. Zemke assigned the overtime assignment for the position that Hanson had been working on during the day-extruder operator-to a white male, Vernon Eldred, who was not designated as overtime personnel for that day. Hanson filed a union grievance concerning the incidents of August 21, 1997 on that day-grievance # 4257.

*2 On August 22, 1997, Hanson filed a complaint with the Commission on Human Rights and Opportunities ("CHRO"), alleging race and national origin discrimination. After Cytec answered the complaint and submitted a position statement, the CHRO conducted a fact-finding hearing. On October 20, 1998, the CHRO dismissed the complaint, ruling that there was no reasonable cause to believe that discriminatory acts had occurred. Hanson then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in August 1997, and obtained a "Notice of Right to Sue" from the EEOC on November 2, 1998. He filed the present action on January 15, 1999. As noted above, on February 14, 2000, this Court granted the defendant's motion to dismiss Hanson's Connecticut Fair Employment Practices Act, Connecticut Constitution, and negligent infliction of emotional distress claims. Accordingly, only Hanson's Title VII, Section 1981, and intentional infliction of emotional distress claims remain.

II. Discussion

A. *Title VII and Section 1981 Disparate Treatment Claims*

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), a plaintiff alleging disparate treatment based on race and national origin in violation of Title VII and Section 1981 [FN4] must first establish a prima facie case of discrimination [FN5]. The burden then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its actions, and the plaintiff must then show that the defendant's stated reason is mere pretext for discrimination.

> FN4. No cause of action exists under section 1981 for national origin discrimination *See Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998). Accordingly, to the extent Hanson is claiming such, summary judgment shall enter to Hanson's § 1981 national origin discrimination claim.

> FN5. The Second Circuit has held that the *McDonnell Douglas* burden-shifting framework applies to Section 1981 claims of race discrimination. *See Hudson v. International Business Machines Corp .,* 620 F.2d 351, 354 (2d Cir.1980), *cert. denied* 449 U.S. 1066 (1980).

To establish a prima facie case of discrimination based on race and national origin, a plaintiff must show (1) membership in a protected class, (2) qualification for continued employment, (3) an adverse employment action, and (4) circumstances that give rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802.

The parties do not dispute whether Hanson has established the first two factors of his prima facie case. The defendant maintains, however, that Hanson has not demonstrated that he suffered any adverse employment action and even assuming he had established such action, that the action occurred under circumstances giving rise to an inference of discrimination [FN6].

> FN6. As noted at the hearing on the motion for summary judgment, the defendant has withdrawn its alternate means of attacking this claim on the basis of res judicata based on the CHRO's dismissal of the plaintiff's claims of race and national origin discrimination.

Viewing the evidence presented in a light most favorable to Hanson, Hanson has set forth the following-which are set forth above in more detail-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
**(Cite as: 2002 WL 519714, \*2 (D.Conn.))**

as his claims of "adverse employment action":
 1) On May 5, 1997, Zemke used profanity with Hanson and had also done so on a previous occasion with another man of Jamaican descent and African-American race.
 2) On July 2, 1997, Zemke called Hanson at home to see if he could work an overtime assignment that day, rather than scheduling him in advance as Hanson testified was his practice for white employees.
 3) In July 1997, Zemke assigned a sweeping duty to Hanson, which was not within Hanson's job classification.
 4) On August 21, 1997, Zemke assigned a white person as overtime extruder operator when normal practice is to schedule the employee who had worked regular shift as extruder operator for that overtime (in this case, Hanson).
 \*3 5) Also on August 21, 1997, Zemke scheduled a break for Hanson, while, Hanson testified, it was not his practice to schedule breaks for white employees.
 6) Also on August 21, 1997, Zemke left an assignment sheet for Hanson in the lunchroom, rather than the usual place-the third floor office. [FN7]

> FN7. In his complaint, Hanson specifies only one of these occasions and refers to "other instances of harassment, discrimination and disparate treatment" without further description. His deposition testimony and opposition to the defendant's motion for summary judgment, however, set forth these incidents as the relevant instances of adverse employment action.

The Second Circuit has defined an "adverse employment action" for purposes of a Title VII disparate treatment claim as a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ,* 202 F.3d 636, 640 (2d Cir.2000) (internal quotation marks omitted). To be "materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). "Such a change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Weeks v. New*

*York State (Division of Parole.*) 273 F.3d 76, 84 (2d Cir.2001) (internal quotation marks omitted).

The Court concludes that the evidence presented by Hanson regarding the above-described actions fails to establish as a matter of law that Hanson suffered "adverse employment action." First, the defendant's actions do not fall within the classic examples of "adverse employment action," that is, Hanson has not presented evidence that he has been terminated, transferred or reassigned from his position, or turned down for a promotion. Nor does the evidence suggest that Hanson's duties, responsibilities, or benefits have been significantly changed in any way. When considered individually, or as a whole, the incidents do not appear to have materially adversely affected Hanson's employment, but rather appear to be mere "alteration[s] of job responsibilities," *Galabya,* 202 F.3d at 640, or with regard to Zemke's use of profanity, an isolated, albeit upsetting, incident. *See Browne v. New York State Office of Mental Health,* No. 00-9124, 2001 WL 533609, at \* \*1 (2d Cir. May 17, 2001) (upholding district court finding that plaintiff had failed to establish adverse employment action in spite of her claims that (1) she was improperly directed to prepare an assignment after the time by which such assignment should have been prepared, (2) her employer improperly discussed her past performance record at an administrative hearing, and (3) her employer improperly prepared her employee evaluation); *Henriquez v. Times Herald Record,* No. 97-9637, 1998 WL 781781, at \* \*1 (2d Cir. Nov. 6, 1998) (holding that plaintiff's allegations that the defendants (1) increased her workload, (2) shortened her deadlines, (3) required her to work on weekends, (4) disciplined her for making minor errors, (5) requested medical information from her when she was on a medical leave of absence, and (6) demanded that she meet her deadlines after learning that she allegedly suffered from carpal tunnel syndrome, failed to state materially adverse changes in the terms and conditions of her employment). As the Court concludes that Hanson has failed to establish "adverse employment action," he has not set forth a prima facie case of discrimination. Accordingly, his Title VII and § 1981 disparate treatment claims must fail.

*B. Title VII Retaliation Claim*

\*4 The order and allocation of burdens of proof in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
**(Cite as: 2002 WL 519714, \*4 (D.Conn.))**

retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas* and *Burdine. See Davis v. SUNY,* 802 F.2d 638, 642 (2d Cir.1986). Hanson bears the burden of establishing a prima facie case of retaliation based on protected activity. Hanson must show that he engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse employment action against him, and that a causal connection exists between the protected activity and the adverse action. *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). However, Hanson has also failed to establish that he was subjected to "adverse employment action" by the defendant for purposes of his Title VII retaliation claim for the same reasons set forth in the preceding section. *See Weeks,* 273 F.3d at 84-87 (applying the same "adverse employment action" standard for Title VII disparate treatment and retaliation claims); *cf. Hicks v. Rubin,* No. 00-6079, 2001 WL 273831, at \* \*3 (2d Cir. March 20, 2001) (holding that supervisor's concealment from the plaintiff of a memorandum critical of the plaintiff, giving the plaintiff short notice before performing a workload review, and transferring her from one training group to another, did not constitute "adverse employment action" sufficient to support a claim of retaliation under Title VII) [FN8]. Accordingly, Hanson has failed to establish a prima facie case of retaliation under Title VII [FN9].

> FN8. While in *Phillips v. Bowen,* 278 F.3d 102, 109-111 (2d Cir.2002), the Second Circuit held that a plaintiff may prove "adverse employment action" for purposes of First Amendment retaliation claims either by presenting evidence of the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, *see Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999), or by showing that "(1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Phillips,* 278 F.3d at 109, the Second Circuit has not indicated that the second, more expansive standard also applies to Title VII retaliation claims.

> FN9. As the Court finds that Hanson's claim of retaliation under Title VII fails on the merits, it need not reach the defendant's alternate means of

attacking this claim on the basis of Hanson's alleged failure to raise this claim with the CHRO or EEOC.

C. *Title VII and Section 1981 Hostile Work Environment Claims*

In order to prevail on a hostile work environment claim brought pursuant to Title VII or Section 1981 , Hanson "must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000) (internal quotations omitted). To withstand summary judgment, Hanson "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of h[is] working environment." *Id.* at 570 (internal quotations omitted). "Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment." *Edwards v. State of Connecticut Dep't. Transportation,* 18 F.Supp.2d 168, 175 (D.Conn.1998). Hanson must also show "the conduct creating that atmosphere actually constituted discrimination because of race." *Hicks,* 2001 WL 273831, at \* \*3 (internal quotations, alterations omitted). The Court concludes that Hanson has failed to present evidence of a hostile work environment to withstand summary judgment. The actions he was subjected to, while admittedly embarrassing or frustrating to Hanson, do not rise to the level of discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the terms and conditions of his working environment. His supervisor's use of profanity on one occasion, failure to call him in advance for an available overtime assignment, assignment of a one-time duty outside his job classification, failure to assign him to an overtime assignment to which he may have been entitled, scheduling of a work break on one occasion, and leaving him an assignment in a different location than usual, even assuming a trier of fact could find that they were racially motivated, are simply insufficient as a matter of law to constitute a hostile work environment under Title VII. *Compare Williams v. County of Westchester,* 171 F.3d 98, 101-02 (2d Cir.1999) (holding that plaintiff's evidence that a file containing racist material was found near his office and that plaintiff

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2002 WL 519714, *4 (D.Conn.))

Page   5

was consistently given menial tasks and was told by some of his fellow criminal investigators to "go wash and gas the boss's car" did establish a hostile work environment for the purposes of TVII claim), *with Whidbee v. Garzarelli Food Specialities, Inc.,* 223 F.3d 62, 68, 70-72 (2d. Cir.2000) (finding a hostile work environment where plaintiffs were subjected to "a stream of racially offensive comments over the span of two to three months," including statement that supervisor "should go out and buy a truck and drag someone by the truck who is black"), and *Schwapp v. Town of Avon,* 118 F.3d 106, 110-12 (2d Cir.1997) (holding that question of material fact existed as to hostile work environment claim where plaintiff was subjected to at least ten "racially-hostile incidents" and two incidents reflecting racial bigotry during his 20 months employment by the defendants). Accordingly, Hanson's hostile work environment claim also fails as a matter of law.

### D. *Intentional Infliction of Emotional Distress Claim*

**\*5** The Court also concludes that no genuine issue of material fact exists as to Hanson's claim for intentional infliction of emotional distress under Connecticut law.

In order for the plaintiff to prevail in a case for ... intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Board of Educ. of Town of Stonington,* 757 A.2d 1059, 1063 (Conn.2000) (internal quotation marks and alterations omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question of law." *Id.*

Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community.

*Id.* (internal citations, quotation marks, and alterations omitted).

The Court concludes that the incidents alleged by Hanson, individually or as a whole, are insufficient to create a genuine issue of material fact as to whether the defendant's conduct was extreme and outrageous. As a matter of law, these incidents are not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious. Again, while the incidents may have been distressing and hurtful to Hanson, they are not matters which can be considered utterly intolerable in a civilized community *See Appleton,* 757 A.2d at 1063; *Emanuele v. Baccaccio & Susanin,* No. CV900379667S, 1994 WL 702923, at \*2 (Conn.Super.Ct. Dec. 1, 1994) (allegations that employer made false statements regarding plaintiff's work performance, and used coercion, threats, and intimidation to force her to sign a document against her will, all for the purpose of depriving her of benefits and compensation did not constitute "extreme and outrageous conduct"); *Lucuk v. Cook,* No. CV950050210S, 1998 WL 67412, at \*5 (Conn.Super.Ct. Feb. 11, 1998) ("[C]ourts appear to agree that mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct even when they include obnoxious activity like threats, insults, or taunts."). Consequently, Hanson's claim for intentional infliction of emotional distress also fails as a matter of law [FN10].

FN10. As the Court finds that Hanson's claim of intentional infliction of emotional distress fails on the merits, it need not reach the defendant's alternate means of attacking this claim on the basis that it is pre-empted by Section 301 the Labor Relations Management Act, and on the basis that claims of intentional infliction of emotional distress in the employment context are only viable when they arise out of the termination process.

### III. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment [Doc. # 40] is GRANTED. The Clerk is directed to close the case.

2002 WL 519714 (D.Conn.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.





Not Reported in F.Supp.2d
**(Cite as: 2002 WL 519714, \*5 (D.Conn.))**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2004 WL 721834 (D.Conn.)
**(Cite as: 2004 WL 721834 (D.Conn.))**
c

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Cynthia BRAHENEY, Plaintiff,
v.
TOWN OF WALLINGFORD, et al., Defendants.
No. 300CV2468CFD.

March 30, 2004.
John R. Williams, Williams & Pattis, William
Sylvester Palmieri,New Haven, CT, for Plaintiff.

Alexandria L. Voccio, Michael J. Rose, Howd &
Ludorf, Hartford, CT, for Defendants.

*RULING ON MOTION FOR SUMMARY
JUDGMENT*

DRONEY, J.

**\*1** The plaintiff, Cynthia Braheney ("Braheney"),
brought this action against the defendants, Town of
Wallingford ("Town"), Wallingford Fire
Department ("Fire Department"), and Wayne
Lefebvre ("Lefebvre"), alleging violations of the
Fourteenth Amendment to the United States
Constitution, 42 U.S.C. § 1983, Title VII of the
Civil Rights Act, Amendment XXI of the
Constitution of the State of Connecticut,
Connecticut General Statutes §§ 46a-58(a), 46a-
60(a)(1), (4), (5), and (8), and state law claims of
negligent and intentional infliction of emotional
distress. [FN1] Specifically, Braheney, a former
female firefighter with the Wallingford Fire
Department, alleges that the defendants harassed her
and imposed punishment upon her that was not
commensurate with that meted out to similarly
situated male Wallingford firefighters because of her
sex. The defendants have filed a motion for
summary judgment [Doc. # 30].

> FN1. In the complaint, Plaintiff also asserted
> disability discrimination and retaliation claims,
> however, Plaintiff is no longer pursuing those
> claims. In the Plaintiff's Brief in Opposition to
> Motion to Summary Judgment, Plaintiff stated that
> she "agrees that there is insufficient evidence" to
> support those claims and "does not pursue those
> claims further."

I. Factual Background  [FN2]

> FN2. Except where otherwise noted by citation to
> another source, the following facts are taken from
> the parties' Local Rule 9(c) Statements. They are
> either undisputed or considered in a light most
> favorable to the non-moving party, Braheney.

Braheney was the first female firefighter for the
Town of Wallingford. She was hired by the
Wallingford Fire Department on January 21, 1991.
Over the course of her employment, she has
received counseling or warnings on the following
occasions: (1) on July 1, 1991, she was issued a
counseling memo for her involvement in a motor
vehicle accident; (2) on December 6, 1995, she
received counseling regarding her use of sick time;
(3) on June 23, 1996, she was absent without leave
and received a verbal warning; (4) on July 1, 1996,
she was issued a written warning, which was
reduced to a verbal warning, for her excessive use of
sick time; (5) on September 17, 1997, a counseling
meeting was held regarding her absenteeism and
pattern of sick leave; and (6) on November 15,
1998, she was charged with committing a dispatch
error and received counseling.

Braheney has also been suspended from her job on
four occasions: (1) on November 25, 1996, she was
suspended for four weeks and docked eleven and
one half hours because she left work after receiving
an order to stay; (2) on November 3, 1997, she was
suspended for two weeks for misrepresenting the
truth in order to secure time off from work; (3) on
February 18, 1999, she was suspended for four days
as a result of committing a second dispatch error,
less than two months after the first dispatch error;
and (4) in September 1999, she was suspended for
six weeks for again misrepresenting the truth in
order to secure time off from work.

Braheney's federal claims under Title VII and 42
U.S.C. § 1983 appear to be based on alleged sex
discrimination both as to "tangible adverse
employment actions" and "hostile work
environment." The defendants' motion for summary
judgment will first be considered as to these federal
claims.

II. Discussion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.





A. Standard

 In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c) ; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (internal quotation marks and citation omitted). In ruling on a motion for summary judgment, however, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

B. Braheney's Title VII Claims Against Town of Wallingford and Wallingford Fire Department

1. Adverse Employment Actions

 **\*2** Braheney was suspended on four occasions, on November 25, 1996, November 3, 1997, February 18, 1999, and in September 1999. To the extent that these were discrete acts, even if Braheney could establish at trial that she was suspended based on her sex, her claim under Title VII for three of the suspensions is time barred. [FN3]

> FN3. In addition to the counseling and warnings set forth in Section I of this opinion, Braheney alleges that she had to go first in all the daily training exercises, that she was not allowed to complete her medic paperwork before participating in training, that one of the captains recommended that she perform additional training at night with the rookies, that she was asked to justify her use of sick time, that she was not invited to a co-worker's wedding, that she was never assigned to the ladder truck, that

she was never allowed to drive the fire truck, and that she was asked harder questions on the pump test than the male firefighters. However, none of these instances constitutes an "adverse employment action." *See Sanders v. New York City Human Resources Admin.,* 361F.3d 749, 2004 WL 504603, \*4 (2d Cir.2004) ("adverse employment action" is a " 'materially adverse change' in the terms and conditions of employment"); *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" to be "materially adverse," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation"); *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 446 (2d Cir.1999).

 A Title VII claim based on a "discrete act" must be filed with the Equal Employment Opportunity Commission (EEOC) within the "300-day time period after the discrete discriminatory act occurred." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *See also* 42 U.S.C. § 2000e-5(e)(1). On March 14, 2000, Braheney filed an affidavit of illegal discriminatory practice with the Connecticut Commission on Human Rights and Opportunities, which was simultaneously filed with the EEOC.

 Therefore, Braheney cannot bring a claim based on a discriminatory act that took place more than 300 days prior to March 14, 2000, the date in which she filed her charge with the EEOC. The 300th day preceding Braheney's complaint with the EEOC is May 18, 1999. Therefore, her claims based on the first three suspensions are time barred.

 The Court will next address the merits of Braheney's claim based on the fourth suspension in September 1999 from the perspective required for summary judgment analysis. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the burden shifting analysis for claims brought under Title VII.

 Under that framework, the initial burden is on the plaintiff to establish a prima facie case. To establish

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2004 WL 721834, *2 (D.Conn.))

Page    3

a prima facie case, a claimant must show that: 1) she belonged to a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See id.; Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003). Once the prima facie case has been established, the burden then shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. *See id.* Finally, if the defendant does offer a non-discriminatory reason for its decision, the burden again shifts to the plaintiff to show that the defendant's stated reason is a mere pretext for discrimination. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000), *cert. denied* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24, 2003 WL 1988534 (Oct. 6, 2003). To survive summary judgment, the plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." ' *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994)).

Braheney has the initial burden of showing that she was suspended in September 1999 under circumstances that give rise to an inference of sex discrimination. In September 1999, Braheney was suspended for six weeks for misrepresenting the truth, for the second time, in order to secure time off from work. Braheney's suspension stemmed from an incident in which she had reported that she needed a shift off from work in order to act as a pall bearer at a funeral; however it is undisputed that she did not act as a pall bearer. [FN4] At that point in time, all of Braheney's sick time had been expended.

> FN4. Although Braheney concedes she was not a pall bearer, she stated that she attended the funeral for a child of close friends. *See* Plaintiff's Local 9(c)(2) Statement, ¶ 16.

*3 Braheney alleges that she has been subjected to punishment significantly more harsh than that imposed on male firefighters for the same or similar offenses. Braheney's bare allegation that she was treated differently from males is insufficient support for this claim to go to the jury. She provides no evidence to support this claim, provides no comments based on sex, and does not even identify one other similarly situated male who was treated differently. As a result, she has not established a prima facie case of sex discrimination based on the suspension in September 1999.

Even if Braheney had established a prima facie case, however, the defendants have provided non-discriminatory reasons for suspending Braheney. Braheney agrees with the defendants that she was suspended for misrepresenting the truth, for the second time, in order to secure time off from work. The defendants also contend that they are not aware of any other firefighters who have admitted or been caught lying in order to secure time off from work. Thus, the defendants have offered a legitimate, non-discriminatory rationale for their actions.

While Braheney maintains that if the same acts had been committed by male firefighters, they would not have been disciplined as harshly as she was, this is not sufficient to show that the defendants' non-discriminatory rationale was pretext. Braheney has offered no evidence from which a reasonable juror could conclude that the defendants' stated reasons for the suspension were pretextual. Accordingly, Braheney's Title VII claim based on the suspension in September 1999 does not survive summary judgment.

### 2. Hostile Work Environment

To the extent that Braheney's four suspensions, together with other disciplinary actions and alleged workplace practices singling her out, constitute a hostile work environment, that claim is not time barred. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Morgan,* 536 U.S. at 117. In order to meet the timely filing provision of 42 U.S.C. § 2000e-5(e)(1), as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* The United States Supreme Court specifically stated that "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
**(Cite as: 2004 WL 721834, \*3 (D.Conn.))**

time period." *Id.* Since Braheney's suspension in September 1999 is within the filing period, Braheney's hostile work environment claim is not time barred. Accordingly, the Court will consider the merits of Braheney's hostile work environment claim from the perspective required for summary judgment analysis.

In order to establish a claim of hostile work environment, there must be evidence showing that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations omitted). "A plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." ' *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002) (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000)). *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.") In addition, the work environment must be both subjectively and objectively hostile. *Harris,* 510 U.S. at 21-22. *See also Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (emphasizing that "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position"). In determining whether an environment is "hostile," district courts consider the totality of the circumstances in each case, including (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; (4) and whether the conduct unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23. "Finally, the discrimination must be *because of* sex." *Leibovitz v. New York City Transit Authority,* 252 F.3d 179, 189 (2d Cir.2001) (citing *Oncale,* 523 U.S. at 80).

**\*4** Braheney alleges that she was subjected to greater scrutiny than male firefighters in every

aspect of her employment and that she was unfairly and disproportionately punished for using her sick time and other accrued leave time to which she was entitled. While Braheney admits that she was suspended four times for the reasons listed above, she maintains that if the same acts had been committed by male firefighters, they would not have been disciplined as harshly. In particular, she contends that she is aware of two male firefighters who each committed a dispatch error and were not disciplined in a similar fashion. Braheney also alleges that she was one of the few employees who did not use her sick time for a longer vacation, to work a second job, or to have the weekends off. In addition, she claims that there was a notice on a bulletin board in the Captain's office stating "If Cindy [Braheney] calls, make sure to check it, see if she has the time."

Braheney's representations that she has been treated differently from male firefighters is not sufficient to survive summary judgment. Braheney has not presented evidence that creates a material issue of fact that the disciplinary actions taken against her were sufficiently severe or pervasive to create an objectively hostile work environment. Braheney was suspended four times between November 1996 and September 1999. These suspensions were not a series of incidents sufficiently continuous and concerted to constitute a hostile work environment. Neither the suspensions, the other discipline she received, nor the alleged workplace practices singling her out show that Braheney's workplace was permeated with discriminatory intimidation, ridicule, or insult.

Braheney also does not claim any explicitly sexual remarks as part of her evidence. In that respect, the facts of this case resemble the facts in *Grey v. City of Norwalk Board of Education,* 2004 WL 231171 (D.Conn.2004). Similar to the plaintiff in *Grey,* Braheney only alleges that she was treated differently from male co-workers. "Though hostile environment claims often involve ... sexual remarks, the alleged harassment need not be explicitly sexual ..., though a basis must exist for inferring that the conduct occurred *because of* the [plaintiff's] membership in the protected class." *Grey,* 2004 WL 231171 at \*9 (citations omitted). Braheney provides no evidence that the suspensions or any other disciplinary actions by the defendants were motivated by a discriminatory intent. She has




Not Reported in F.Supp.2d
(Cite as: 2004 WL 721834, *4 (D.Conn.))

not presented any evidence that male firefighters were treated more favorably than she because of their sex. In addition, there is no basis upon which to infer that Braheney was disciplined as she was because of her sex. Moreover, the totality of the circumstances in this case does not show that Braheney's work environment was hostile--Braheney has presented no evidence that the alleged discriminatory conduct was severe, that it was physically threatening or humiliating, or that it negatively affected her work performance. Therefore, the defendants' motion for summary judgment is granted with respect to Braheney's Title VII hostile work environment claim.

C. Braheney's Section 1983 Claims Against Town of Wallingford, Wallingford Fire Department, and Wayne Lefebvre

**\*5** Braheney also alleges that the defendants discriminated against her on account of her sex in violation of her right to equal protection, as guaranteed by the Fourteenth Amendment.

1. Adverse Employment Actions

In contrast to the 300-day time period to file a Title VII claim with the EEOC, Section 1983 claims based on a violation of the equal protection clause are subject to a three-year statute of limitations. "In section 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." *Pearl v. Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (internal quotation and citation omitted). "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998). In this case, Braheney filed her complaint on December 27, 2000. Thus, any claim based on a discrete act that occurred prior to December 27, 1997, is time-barred. Since two of Braheney's suspensions occurred on February 18, 1999 and September 1999, Braheney's Section 1983 claim based on those two suspensions is not time-barred. Accordingly, the Court will consider the merits of Braheney's Section 1983 claim from the perspective required for summary judgment analysis.

Employment discrimination cases under § 1983 are subject to the same burden shifting analysis set forth

by the Supreme Court in *McDonnell Douglas* for claims brought under Title VII. *See Sorlucco v. New York City Police Dep't,* 888 F.2d 4, 7 (2d Cir.1989) ("The Supreme Court has outlined a three-step analysis of factual issues in Title VII.... By analogy, the same analysis applies to claims under § 1983.").

As discussed above, with respect to Braheney's fourth suspension in September 1999, Braheney has failed to establish a prima facie case of sex discrimination and has offered no evidence to show that the defendants' non-discriminatory reasons for the suspension were pretextual.

As to Braheney's third suspension in February 1999, Braheney's Section 1983 claim does not survive summary judgment. On February 18, 1999, Braheney was suspended for four days as a result of committing a second dispatch error, less than two months after the first dispatch error. The suspension stemmed from an incident on January 16, 1999, in which Braheney received a 911 call requesting a transport to the hospital. The caller reported that her husband had been diagnosed with pneumonia and was having difficulty breathing. A complaint of difficulty breathing constitutes an emergency situation that warrants the sending of a Town of Wallingford ambulance, but Braheney did not send an ambulance.

Braheney has provided no evidence that the suspension occurred under circumstances giving rise to an inference of sex discrimination. Braheney alleges that two other male firefighters each committed a dispatch error and were not disciplined as harshly. However, there is no evidence that those firefighters were similarly situated to Braheney--that the dispatch errors were similar in kind or that either of those firefighters had previously committed dispatch errors. Braheney's bare allegation is not enough to establish a prima facie case.

**\*6** However, even if Braheney had established a prima facie case, the defendants have provided non-discriminatory reasons for suspending Braheney. The defendants contend that she was suspended for violating Wallingford Fire Department Regulations. In addition, they contend that Braheney had committed another dispatch error on November 15, 1998 and had been counseled for that dispatch error. Braheney has provided no evidence showing that these reasons were mere pretext for discrimination.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Accordingly, the defendants' motion for summary judgment is granted with respect to Braheney's Section 1983 claim based on the two suspensions.

2. Hostile Work Environment

A hostile work environment claim brought under Section 1983 is analyzed by the same standards as under Title VII. *See Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000). As discussed above, Braheney has not created a genuine issue of material fact that the disciplinary actions taken against her were severe or pervasive enough to constitute a hostile work environment. Therefore, the defendants' motion for summary judgment is granted with respect to Braheney's Section 1983 hostile work environment claim.

D. State Law Claims

The Court further declines to exercise supplemental jurisdiction over Braheney's state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ; *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of ...."), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

III. Conclusion

Defendants' Motion for Summary Judgment [Doc. # 30] is GRANTED. The Clerk is directed to close the case.
 SO ORDERED.

2004 WL 721834 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


