UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | : | |
| KIMBERLY BACHIOCCHI | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV908 (CFD) |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| Defendant. | : | APRIL 6, 2006 |

### DEFENDANT'S MOTION FOR RECONSIDERATION

The defendant, Southern New England Telephone Company ("SNET"), hereby respectfully requests that the Court reconsider its endorsement ruling of March 23, 2006 denying the defendant's Motion for Summary Judgment dated April 6, 2005. The reason for the present motion is that on the record of the case before this Court, there are <u>no</u> <u>material</u> facts in dispute that would warrant a trial of the matter. Summary judgment should be granted in favor of SNET. Plaintiff's apparent strategy of throwing every event she can think of that made her unhappy at work against the wall to "see what sticks" and presuming this strategy will result in a conclusion that there "must be a material issue of fact in there somewhere" should not be successful.

### I.    Introduction

Plaintiff seems to claim in this case that almost everyone she worked with annoyed her at some point during her employment and then offers the wholly conclusory leap that each one must have either harbored a discriminatory animus toward her because she is a woman and/or

**ORAL ARGUMENT IS REQUESTED**

2

retaliated against her because she allegedly engaged in protected activity in the workplace. These claims have no evidentiary basis in the record of this case. This case is precisely the type of case that is suited for summary judgment: plaintiff attempts, without any evidence, to convert a series of her own idiosyncratic grievances against her fellow employees into one or more legally cognizable claims. That attempt cannot succeed.

In Count One plaintiff alleges sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"); in Count Two she alleges sexual harassment in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq ("FEPA"); in Count Three she alleges unlawful retaliation under Title VII; in Count Four she alleges unlawful retaliation under the FEPA; and in Count Five she alleges violation of the federal Equal Pay Act, 29 U.S.C. § 206(d). The record is undisputed that notwithstanding plaintiff's speculative claims that her supervisors and co-workers wanted to get rid of her because she is a woman, the two supervisors about whom she complains are the individuals who interviewed her and decided to hire her knowing full well she was a woman. See SNET's Memorandum of Law in Support of Motion for Summary Judgment dated April 6, 2005 ("Memorandum" or "Mem."). The "same actor" inference is a significant factor that weighs heavily against plaintiff's claims of discrimination and retaliation in this case. See SNET's Reply to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment dated June 28, 2005 ("Reply") at 6-7. In addition, plaintiff's own summary judgment pleadings state that she was treated differently because she did more strike duty than her colleagues and because she complained about payroll and heating issues outside her department. See Reply at 6-7. These are plaintiff's judicial admissions that attribute to SNET motivations very different from unlawful discrimination because of sex or unlawful retaliation for complaining of discrimination.

3

For all of the above reasons, summary judgment is warranted on all five counts of plaintiff's Complaint.

## II.    **Equal Pay Act Claim**

In its Memorandum, SNET pointed to the absence of any evidence in the record that SNET had paid plaintiff less than any similarly situated male employee -- in short, there was no evidence that would establish plaintiff's prima facie case of a violation of the Equal Pay Act. See Mem. at 41-43. In fact, plaintiff conceded at her deposition that she does not know whether the men in her position made more money than she did or, if they did, whether they deserved it. See Memorandum at 41-43.

Plaintiff did not respond to this clear evidentiary record. Instead, she relied on a straightforwardly mistaken argument that the burden of proof on the Equal Pay Act claim rests with SNET. In fact, Plaintiff's Memorandum of Law in Opposition to defendant's Motion for Summary Judgment dated May 23, 2005 ("Opposition") relied entirely on critiques of the evidence that SNET presented to show that plaintiff was not paid less than male co-workers. Opposition at 32-33. Plaintiff did not present any evidence -- or even argument -- that any particular male technician was paid more than she was for equal work. This is the crux of an Equal Pay Act claim. Rather than offering evidence that plaintiff was paid less, plaintiff simply stated: "And it is the Defendant which carries the burden of proof on this issue." Pl. Opp. at 33. Plaintiff does not, and cannot, offer any legal support for such a statement that SNET bears the burden of proof on the question of whether plaintiff has established a prima facie case under the Equal Pay Act. The Second Circuit has laid out the burdens of proof in an Equal Pay Act claim with clarity and consistency:

4

> In order to prove a violation of the EPA, <u>a plaintiff</u> must first establish a prima facie case of wage discrimination by demonstrating that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort and responsibility; (3) the jobs are performed under similar working conditions . . . Once the plaintiff makes out a prima facie case, <u>the burden shifts</u> to the employer to justify the wage differential . . . .

<u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 524 (2d Cir. 1992) (emphasis added).  The

court reiterated this burden scheme seven years later:

> To prove a violation of the EPA, <u>a plaintiff</u> must first establish a *prima facie* case of discrimination by showing:  "i) the employer pays different wages to employees of the opposite sex" . . . Once a plaintiff makes out a *prima facie* case under the EPA, <u>the burden of persuasion shifts</u> to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act . . . .

<u>Belfi v. Prendergast</u>, 191 F.3d 129, 135-36 (2d Cir. 1999) (emphasis added).   This is consistent

with the typical burden structure in employment discrimination cases, in which the plaintiff

carries a "burden . . . to survive a summary judgment motion at the *prima facie* stage." <u>Belfi</u> at

139.

In plaintiff's deposition testimony, she essentially acknowledged that she has no evidence

to support an Equal Pay Act Claim.  She testified as follows:

> Q. So, again, what is the basis for your claim that your pay was different and that you received unequal pay?  Because you're a woman?
> A. I believe that.
> Q. What is the basis for that claim?  What facts do you have to support that claim?
> A. I'm a woman.
> Q. Any other facts?
> A. No.  And -- well, when I returned, Kevin changed my rating.
> Q. Okay.  But I'm not asking about changing your rating.  I'm asking what facts you have to support a claim that you were paid differently from men?
> MR. GILLESPIE: Objection.  Asked and answered.  She just answered.
> MS. ALEXANDER: You can answer it.
> THE WITNESS: I've answered it.
> MS. ALEXANDER: Answer it again.
> A. Because I'm a woman.
> BY MS. ALEXANDER:
> Q. Anything else?

A.    No.

Bach. Dep. 6/1/04 at 32-33 (attached to SNET's Reply).

In her Opposition, like her deposition, plaintiff was unable to point to any evidence of any kind that SNET ever paid a similarly situated male employee higher wages than it paid plaintiff for the same work. Plaintiff cannot meet her burden on her Equal Pay Act claim simply by asserting that it is "difficult, if not impossible" for plaintiff to analyze the evidence presented by SNET to show the absence of a wage disparity.  The evidence SNET presented in its Memorandum, showing that plaintiff was not paid less than male employees in her position, is the only evidence before the Court.[1]  Because plaintiff has not created a material issue of fact as to whether she has made out a prima facie case under the Act, summary judgment on her Equal Pay Act claim is appropriate.

## III.    Discrimination/Hostile Work Environment Claim

"A Plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of [gender], or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); see also Hanson v. Cytec Industries, No. 399CV86 (CFD), 2002 WL 519714 (D. Conn. March 8, 2002) (separate analysis for disparate treatment and hostile work environment claims) (copy attached to defendant's Reply).

---

[1]  For example, SNET presented evidence that in 2000, plaintiff's base salary of $56,124.35 was nearly identical to the mean base salary of the men who also worked as "Engineer PTS" (the title used for plaintiff's job during that year), which was $57,144.68.  In 2001, plaintiff's salary of $58,856.98 was higher than the mean salary of the men who also worked as Analyst Technical Sales (Engineering) in West's department, which was $57,102.76.  Moffett Aff. ¶¶ 6-8 (in Appendix of Exhibit in Support of Motion for Summary Judgment dated April 6, 2005).  Plaintiff's highest raises in her 21-year career with the company were given to her by Kevin West while she worked in West's department, the period of time about which she complains.  See Memorandum at 4 and citations therein.

First, there is no genuine issue of fact that plaintiff suffered any tangible adverse employment action. She did not argue that she suffered an adverse employment action, and she certainly presented no evidence in her summary judgment papers that she suffered an adverse employment action. See Memorandum at 38-40. An adverse employment action in the Second Circuit is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998). "A tangible employment action in most cases inflicts direct economic harm." Id. at 762. Here, there is not even an allegation that plaintiff was ever fired, demoted, or reassigned to significantly different responsibilities. See Complaint. Further, plaintiff made clear in her summary judgment pleadings that she is not proceeding on a theory that she suffered an adverse job action. See SNET's Memorandum at 39-40.

With respect to her hostile environment sexual harassment claim, plaintiff clearly bore the burden of presenting sufficient evidence in response to summary judgment to create a material issue of fact. She bore the burden of presenting admissible evidence that she was harassed, that the harassment was based on her gender, and that she suffered harassment that was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993). Plaintiff wholly failed to present concrete evidence to create an issue of fact with respect to at least two elements of such a cause of action: (1) that the conduct she alleged to be harassing was based on her gender, and (2) that the conduct she alleged to be harassing was sufficiently severe or pervasive to affect a term, condition or privilege of her employment. In SNET's summary judgment pleadings, it carefully analyzed each of her factual allegations and pointed out how her

prima facie case for a hostile work environment failed with respect to each one. See SNET's Memorandum at 20-33; Reply at 14-31.

Plaintiff did not respond at all to this analysis or the fact that there is no evidence of gender-based conduct in this case. In fact, plaintiff's Opposition papers are entirely devoid of any evidence – because there is none – of a connection between the alleged conduct complained of and the fact that plaintiff is female.

SNET also set forth the legitimate business reasons and evidentiary support for each action about which she complains,[2] and in most cases such legitimate business reasons were supported by plaintiff's own testimony. Plaintiff did not rebut this evidence with contradictory evidence of a gender-based motive. Instead, plaintiff has essentially admitted that she relied on her own feelings (i.e., speculation) to conclude that various co-workers and supervisors all had a gender-based motive in their conduct. See SNET's Reply at 31-32.

Moreover, while plaintiff's Opposition is admittedly replete with long renditions of alleged "facts," such facts are not material to a claim of hostile work environment. SNET has analyzed each one, both with respect to an alleged gender-based motive and with respect to severity and pervasiveness. See SNET's Memorandum at 20-33; Reply at 4-31. It is not proper for a Court to deny summary judgment because there are disputed facts unless the disputed facts are also material, which is not the case here. Fed. R. Civ. Proc. 56(c). On facts much more compelling than any even alleged in the present case, District Courts both within Connecticut and in other jurisdictions have routinely granted summary judgment for employers on hostile work environment claims. See SNET's Memorandum at 35-38.

---

[2]  The sheer volume of alleged incidents plaintiff has strategically placed before the Court should not dissuade the Court from granting summary judgment in favor of SNET upon analysis of each one within the framework of the applicable discrimination laws.

## IV.    Retaliation Claim

The Court's ruling on plaintiff's retaliation claim should be reconsidered because plaintiff presented absolutely no evidence in her summary judgment papers either (1) that she suffered an adverse employment action or (2) that there was a causal connection between any adverse employment action and protected activity by the plaintiff.  See SNET's Reply at 33-35.  In fact, in her Opposition, plaintiff devoted only one page to the retaliation claim and cited no evidence to support such a claim.

## V.    Statute of Limitations Defense

In addition to the failures of plaintiff's prima facie proof as noted above, SNET has raised the statute of limitations as a complete defense with respect to several of the purported incidents about which plaintiff complains.  These include, for example, the printing of Mapquest directions to her house by Richard Light.  See SNET's Memorandum at 23.

Following both the submission of SNET's Motion for Summary Judgment, The Honorable Mark R. Kravitz issued a decision in Coudert v. Janney Montgomery Scott, LLC, No. 3:03 CV 324 (MRK), 2005 WL 1563325 (D. Conn. July 1, 2005), which is instructive with respect to the statute of limitations defense.  The plaintiff in Coudert, like Ms. Bachiocchi in the present case, was advancing a claim, among others, for hostile work environment under Title VII of the Civil Rights Act of 1964, as amended.  Coudert alleged that

> on account of her age and gender she was: (1) subjected to harsh treatment at the hands of her supervisor at Defendant's Darien office – Mr. Jack Engelskirger – from February 1995 to December 1996; (2) transferred from the Darien to the Fairfield office in early 1997; (3) denied the assistance of a sales aide at the Fairfield office form march 1997 to March 1999; (4) denied a private office at the Fairfield office from March 1997 until November 1999; (5) verbally berated by a branch manager "emeritus" at the Fairfield office, Mr. John Fortuna, in September 1999; (6) paid a reduced commission rate while working at the Fairfield office

9

from 1998 until her termination in January 2002; and (7) terminated on January 11, 2002.

Id. at *3.  While the underlying facts were essentially undisputed as to each event, the root cause of the events was hotly disputed, the plaintiff claiming that they occurred because of her age and gender and the employer claiming that poor work performance was the reason for most of them. Id. at *4.  In determining which – if any – of the alleged acts were properly before the Court, Judge Kravitz compared the dates of the alleged events with the dates of filing her charge of discrimination with the EEOC.  Based on the 300-day time bar for Title VII claims, only two of her claims – those related to her termination on January 11, 2002 and her receipt of a reduced commission rate just prior to her termination – were timely and the others were barred unless an exception applied.

In analyzing the applicability of the continuing violation doctrine to the facts of the case, Judge Kravitz correctly concluded that neither of the timely events could be used to pull in the otherwise time-barred acts under that doctrine.  Referring to National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), the District Court noted that the Supreme Court had "observed that Title VII `explains in great detail the sorts of actions that qualify as [u]nlawful employment practices and includes among such practices numerous discrete acts."  It further noted that in analyzing the statutory language of Title VII, the Supreme Court had unanimously held that "[t]here is simply no indication that the term `practice' [in 42 U.S.c. § 2000e-2(a)] converts *related discrete acts* into a single unlawful practice for the purposes of timely filing."  Id. at *4 (quoting Morgan, 536 U.S. at 111).  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113.

10

> "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." In order for the time period to commence with the discharge, "[a plaintiff] should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of his employment." [A plaintiff] could not use a termination that fell within the limitations period to pull in the time-barred discriminatory act. Nor could a time-barred act justify filing a charge concerning a termination that was not independently discriminatory.

Id. at *4-5 (quoting Morgan, 536 U.S. at 112-13). The District Court then noted that the Second Circuit had recently explained that "an employer performs a separate employment practice each time it takes adverse action against and employee, even if the action is simply a periodic implementation of an adverse decision previously made." Id. at *5 (quoting Elmenayer v. ABF Freight System, Inc., 318 F.3d 130 (2d Cir. 2003)). Applying these principles, the Coudert Court held that each of the acts about which plaintiff complained were discrete acts, none of which could be made timely by considering them a "continuing course of conduct" with plaintiff's termination from employment. Id. at *5. Similarly, in the present case, the untimely events cannot be made timely by plaintiff's attempt to claim a continuing course of conduct.

## VI.    Conclusion

The United States Supreme Court has made it clear that a party moving for summary judgment does not have the burden of producing evidence showing the absence of a genuine issue of material fact. Celotex Corp. v Cattrett, 477 U.S. 317, 325-26 (1986). The moving party may prevail "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the [nonmovant's] case." Id. at 325. A defendant moving for summary judgment need not negate the plaintiff's claims by submitting evidence that refutes them. Id. at 323. Instead, the moving party may merely point out the lack of evidence supporting the opposing party's position and need not "support its motion with affidavits or other

11

similar materials negating the opponent's claim." Id. By contrast, a party opposing summary judgment "may not rest upon the mere allegations or denials of the pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). The facts must be submitted in the form of admissible and significantly probative evidence. Celotex, 477 U.S. at 322-23.

Thus, "in order to defeat a defendant employer's motion for summary judgment, a plaintiff employee must offer 'concrete evidence from which a reasonable juror could return a verdict in his favor' and may not demand a trial simply because the central issue is the defendant employer's state of mind." Peters v. City of Stamford, No. 3:99-CV-764(CFD), 2003 WL 1343265 (D. Conn. Mar. 17, 2003) (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)) (internal quotations omitted) (copy attached to SNET's Reply). Because plaintiff in this case has wholly failed to meet this burden on each count of her Complaint, SNET respectfully requests that the Court reconsider its prior ruling on SNET's Motion for Summary Judgment and grant summary judgment on all counts in its favor.

THE DEFENDANT,

SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By _Lori B. Alexander_

Lori B. Alexander
Federal Bar No. CT08970
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut  06509
Tel. (203) 784-8200
Fax No. (203) 789-2133
E-Mail: alexander@tylercooper.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2006, a copy of the foregoing Defendant's Motion for Reconsideration was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

Lori B. Alexander
Federal Bar No.: CT08970

13