HE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
* * * * * * * * * * * * * * * * * *        *
KIMBERLY BACHIOCCHI,                       *
                                           *
                                           *
                                           *
     Plaintiff,                            *
                                           *
v.                                         *  CIVIL ACTION NO. 02-CV-908 (CFD)
                                           *
                                           *
THE SOUTHERN NEW                           *
ENGLAND TELEPHONE                          *
COMPANY,                                   *
                                           *
     Defendant.                            *  DECEMBER 1, 2006
* * * * * * * * * * * * * * * * * *        *
```

## JOINT TRIAL MEMORANDUM

Pursuant to the Joint Trial Memorandum Order of Christopher F. Droney, United States District Judge, the Form 26(f) Report of Parties' Planning Meeting and the Local Rules of Civil Procedure, the parties, Kimberly Bachiocchi (hereinafter referred to as "plaintiff"), and The Southern New England Telephone Company (hereinafter referred to as "defendant") submit their Joint Trial Memorandum.

1

1.    **Trial Counsel**

      **Counsel for Plaintiff:**
      Peter E. Gillespie, Esquire
      Federal Bar No. ct 06554
      46 Riverside Avenue
      Westport, CT  06880
      Telephone: (203) 227-7000
      Facsimile:  (203) 454-5508
      E-mail: petelaw@mac.com

      **Counsel for Defendant:**
      Lori B. Alexander, Esquire
      Tyler Cooper & Alcorn, LLP
      Federal Bar No. ct08970
      Deborah D. Cannavino
      Federal Bar No. ct08144
      Michael G. Caldwell, Esquire
      Federal Bar No. ct 26561
      205 Church Street
      New Haven, CT 06509
      Tel: (203) 784-8270
      Fax: (203) 789-2133
      E-mail: lalexander@tylercooper.com
             dcannavino@tylercooper.com
             mcaldwell@tylercooper.com

2.    **Jurisdiction**

      This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331.  The plaintiff maintains that subject matter jurisdiction is invoked pursuant to Title VII of the 1964 Civil Rights Act, 28 U.S.C. §1343(4), 42 U.S.C. §2000e-(5), and principles of supplemental jurisdiction under 28 U.S.C. §1367(a).

3.    **Jury**

      The plaintiff has demanded a jury trial.

**4.    Nature of Case**

The plaintiff brings three federal claims:

I. Sexual harassment in violation of 42 U.S.C. § 2000e-2(a)(1)

Seeking as relief: (a) affirmative relief, including, without limitation, back pay and equitable relief; (b) compensatory and punitive damages; (c) costs of this action together with reasonable attorney's fees; and (d) such other, further relief as the Court may find just and proper.

II. Retaliation in violation of 42 U.S.C. § 2000e-3(a)

Seeking as relief: (a) affirmative relief, including, without limitation, back pay and equitable relief; (b) compensatory and punitive damages; (c) costs of this action together with reasonable attorney's fees; and (d) such other, further relief as the Court may find just and proper.

III. Violation of the Equal Pay Act, 29 U.S.C. § 206(d)

Seeking as relief: (a) affirmative relief under 29 U.S.C. §§ 206(d) and 216, including without limitation, back pay and other equitable relief; (b) costs of this action together with reasonable attorney's fees under 29 U.S.C. § 216; and (c) such other further relief as the Court may find just and proper.

The plaintiff also brings two claims under Connecticut law:

I. Sexual harassment in violation of Conn. Gen. Stat. § 46a-60, et seq.

Seeking as relief: (a) money damages and equitable relief; and (b) such other, further relief as the Court may find just and proper.

II. Retaliation in violation of Conn. Gen. Stat. § 46a-60, et seq.

Seeking as relief: (a) money damages and equitable relief; and (b) such other, further relief as the Court may find just and proper.

Defendant brings four affirmative defenses:

I. Some or all of the counts of the plaintiff's Complaint fail to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). SNET's Motion for Reconsideration of the Court's ruling on its Motion for Summary Judgment is

3

currently pending as to the counts for which SNET alleges the plaintiff has failed to state a claim upon which relief may be granted.

II.  The plaintiff failed to take advantage of SNET's complaint procedures and/or failed to otherwise avail herself of corrective or preventative measures reasonably available to her.  Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

III.  The plaintiff failed to exhaust her administrative remedies as to some or all of her claims.  42 U.S.C. § 2000e-5(c), (f); Conn. Gen. Stat. § 46a-100.

IV.  Some or all of the plaintiff's claims are barred by the applicable statute of limitations.  42 U.S.C. § 2000e-5(e); 29 U.S.C. § 255(a); Conn. Gen. Stat. § 46a-82.

**5.     Stipulations of Fact and Law**

The parties stipulate to the following facts:

1.     Plaintiff Kimberly Bachiocchi is an individual who at all times material hereto has been a resident of the State of Connecticut living at 21 Silano Drive, Oxford CT 06418.

2.     Defendant Southern New England Telephone Company is and was at all relevant times a corporation conducting business in the State of Connecticut and having an office at 310 Orange Street, New Haven, Connecticut and, among others, a facility at 90 Elizabeth Street, Derby, Connecticut.  The defendant is subject to Title VII, the Connecticut law governing employment discrimination and the federal Equal Pay Act.

3.     The plaintiff has been employed by the defendant since July 1984 in a variety of positions, and is currently employed by the defendant.

4.     The plaintiff was employed in the defendant's Business Communications Sales ("BCS") Group from June 1998 to June 2001.  In or about June 1998, the plaintiff was offered and accepted a position in the BCS Group at SNET's facility located at 90 Elizabeth Street, Derby, Connecticut.  The department manager was Kevin West.

5.     Richard Light oversaw the engineering functions of the department.  Initially, the plaintiff reported to Mr. Light who, in turn, reported to Mr. West.  Mr. Light retired from the company in mid-November, 2000.  The plaintiff's job title was Analyst Technical Sales (Engineering).

6.    The plaintiff's duties, like those of other Analysts Technical Sales, consisted of designing, documenting and pricing voice and data communications platforms for businesses in Connecticut. She would contact customers and go to job sites to assess job requirements. She would then lay out the job, develop a materials and labor list, and determine the price of the job.

7.    The plaintiff, who lived in the New Haven area, was frequently assigned to engineer jobs in that area. Nicholas Faiella, an Analyst Technical Sales (Installation), also lived in the New Haven area, and also frequently was assigned to jobs in the New Haven area. Faiella was sometimes the installation technician for jobs that Bachiocchi had engineered.

8.    The plaintiff received paid medical leave from the defendant from May 19, 2000 to mid-May, 2001. During that period, she did not attend work or do work for the defendant, with the exception of one day on January 18, 2001. For the first six months of this period, she received her full base pay. She received 60% of her base pay thereafter until her return.

> *Plaintiff's Objection: Both parties agree and stipulate that this is a correct statement of fact. Plaintiff, however, believes that medical leave payments are an insurance benefit and therefore are not relevant. On that basis she objects to the reference to "paid" medical leave in the first sentence as well as to the inclusion of the final two sentences of this paragraph.*

9.    The plaintiff is currently employed by the defendant as a Service Executive.

10.    On July 24, 2000, the plaintiff filed complaints against the defendant with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), Complaint #0130048, and the U.S. Equal Employment Opportunity Commission, Charge #16aa03399.

11.    On June 21, 2001, the plaintiff filed complaints against the defendant with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), Complaint #0130598, and the U.S. Equal Employment Opportunity Commission, Charge #16aa13352.

12.    The plaintiff filed the present action on May 28th, 2002.


**6.    Plaintiff's Contentions**

The plaintiff was employed at the defendant's facility on Elizabeth Street, Derby, Connecticut. She alleges that she was subjected to a hostile environment because of her sex or gender. The plaintiff complained about her treatment, filed a Charge of Discrimination, and assisted another individual employee with respect to a Charge of Discrimination which he had filed. The plaintiff also alleges that she was subject to retaliation by the defendant and its employees as the result of her activities.

On the basis of the facts stated above, the plaintiff has filed this case asserting separate causes of action as follows: In Counts One and Two she alleges discrimination on the basis of sex, in the terms, conditions, and privileges of employment in violation of Title VII of the 1964 Civil Rights Act, 28 U.S.C. §1343(4), 42 U.S.C. §2000e-(5) ("Title VII), and the Connecticut General Statutes Section 46a-51 *et seq*, as amended ("State of Connecticut Human Rights Law"). In Counts Three and Four the plaintiff alleges retaliation because of her involvement in protected activities, again relying on Federal law and State law. Finally, in Count Five the plaintiff alleges that she was paid less than other similarly situated men for performing substantially similar work, a violation of the Equal Pay Act, 29 U.S.C. Sect. 206(d).

The plaintiff suffered damages as a result of the defendant's actions. The plaintiff has requested the following relief for her injuries from the Court: (1) issue a declaratory judgment that the defendant's acts, policies, procedures, and practices violated Title VII and Conn. Gen. Stat. §46(a)-60 *et seq.*, (2) permanently enjoin the defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment policy or practice which discriminates against any employee or applicant for employment on the basis of sex or because of their participation in asserting such rights, (3) order the defendant to make the plaintiff whole by providing for lost pay, pension, benefits, experience, training, and other benefits in an amount to be proved at trial, (4) award the plaintiff compensatory damages for the injuries suffered as result of the defendant's violations of Title VII, (5) award the plaintiff compensatory damages for the injuries suffered as result of the defendant's violations of Conn. Gen. Stat. §46(a)-60 *et seq.*, (6) award the plaintiff punitive damages as a result of the defendant's conduct, (7) award to the plaintiff the costs in this action and reasonable attorneys' fees as provided by § 706(k) of Title VII; 42 U.S.C. §2000e-5(k); Conn. Gen. Stat. §46a-104; 29 U.S.C. Sect. 206, and (8) grant such additional relief as this Court deems necessary and proper.

## 7.    Defendant's Contentions

1.    The plaintiff was not subjected to a hostile work environment while she worked in the BCS Group.

2.    The plaintiff did not suffer any adverse employment action from the defendant.

3.    The actions claimed by the plaintiff as contributing to a hostile work environment either did not occur as alleged or were not related to her gender, were carried out for legitimate business reasons, and were not inappropriate actions.

4.    The actions described by the plaintiff as gender discrimination either did not occur as alleged or were not related to her gender, were carried out for legitimate business reasons, and were not inappropriate actions.

5.    Neither the defendant nor its employees retaliated against the plaintiff for her charges to CHRO or the EEOC, which were the only protected activities in which she engaged.

6.      The actions described by the plaintiff as retaliatory, to the extent that they occurred, were not related to her CHRO or EEOC charges or to any other protected activity, but instead were appropriate business decisions for which the defendant and its employees had legitimate non-discriminatory reasons.

7.      During the relevant period, the plaintiff's pay was the same as that of any male employees who did the same work that she did.

8.      At no time while she was employed by the defendant was the plaintiff's pay affected by her gender.

9.      Several of the alleged incidents about which plaintiff complains are barred because plaintiff failed to exhaust her administrative remedies as to claims concerning those incidents.

10.  Plaintiff failed to take advantage of SNET's internal complaint procedure and therefore her claims of discrimination and retaliation are barred.


**8.      Legal Issues**

1.      Did the defendant's employees subject the plaintiff to a hostile work environment because of her gender as defined by Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act?

2.      Has the defendant satisfied the affirmative defense to liability for any such hostile work environment under <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)?

3.      Did the defendant take any adverse employment actions against the plaintiff in retaliation for any protected activities in violation of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act?

4.      Did the defendant pay the plaintiff less than the average of specific similarly situated male employees in violation of the Equal Pay Act?

5.      Did the plaintiff fail to exhaust her administrative remedies with respect to some or all of her claims?

6.      Are some or all of the plaintiff's claims barred by the applicable statute of limitations?

9.     **Voir Dire Questions**

*Proposed by Both Parties:*

The following witnesses may testify in this case: [to be designated at the pretrial conference]. Do you know any of these people?

*Proposed by Plaintiff:*

1.     Do you feel, for any reason, that you could not fairly decide this case?

2.     Have you or any member of your family ever served as a juror in any case?  If so, where, when and what type of case (civil or criminal)?

3.     Are you or any members of your family related to any of the parties to this action or the lawyers representing them?

4.     Do you know any of the lawyers in this action:  Peter Gillespie, Lori Alexander, Deborah Cannavino, Michael Caldwell, or any lawyer affiliated with the firm called Tyler, Cooper & Alcorn?

5.     The plaintiff in this case is Kimberly Bachiocchi of Oxford, Connecticut.  To the best of your knowledge, are you or any member of your family acquainted with the plaintiff in any way?

6.     The defendant in this case is the Southern New England Telephone Company.  To the best of your knowledge, are you or any member of your family employed by the defendant or, in any other material way, except of course having telephone service, involved in its business?

7.     Do you have any particular feelings concerning people who bring lawsuits or pursue claims because of discrimination or civil rights violations?

8.     Does your spouse hold a full time job?

9.     Are there any women in your immediate family who are employed on a full time basis ?

10.     Do you have any particular feelings concerning people who bring lawsuits or pursue claims against their employers?

11.     Have any of you or anyone you know been discriminated against on the basis of sex or gender?

12.     Have any of you or anyone you know been subjected to a hostile working environment?

13.     Have any of you or anyone you know been retaliated against because they tried to pursue or enforce legal rights?

14.     Have you or anyone you know been accused of creating a hostile environment in the workplace?

15.     Have you or anyone you know ever been accused of sexual harassment?

16.     Have you or anyone you know ever been accused of discrimination based upon sex or gender?

17.     Have you filed a lawsuit or brought a claim for money damages?  If so:
    (a) What was the nature of the lawsuit?
    (b) How was the lawsuit resolved?

18.     Are you able to follow the judge's instruction on what you have to do or consider in deciding this case?

19.     Do you feel that an employer and/or company cannot do something wrong?

20.     Assuming that the plaintiff proves her case, would you have any problem awarding her reasonable, fair, and just damages?

21.     Do you consider yourself as a person who has common sense?

22.     Would you be willing to apply your common sense in making this decision?

23.     Are you an attorney or married to an attorney?  If so, what type of law do you or your spouse practice?

24.     Are you related to an attorney?

25.     Do you have any professional legal experience such as working for an attorney or law firm or the courts?

26.     Do you, or anyone you know work within the insurance industry dealing with liability claims?

27.     Do you, or anyone you know work in a human resources department?

**The defendant objects to Questions 7, 19, and 20 of plaintiff's Proposed Voir Dire Questions. It also objects to Questions 11-14 as duplicative and unfairly emphasizing plaintiff's position in this case.**

### *Proposed by Defendant:*

1.      SNET, the local phone company, is the defendant in this case.  Have you ever been employed by SNET, SBC or AT&T?

2.      Have you ever been employed by any telephone or telecommunications company?

3.      Have any of your family members or acquaintances ever been employed by SNET, SBC or AT&T?

4.      Do you have any feelings about SNET, i.e., the telephone company, positive or negative?

5.      Do you have any preconceived notions about whether there is discrimination based on sex in telecommunications companies in general, or at SNET in particular?

6.      Could you be impartial in a dispute between a company and an individual?

7.      Could you be impartial in a dispute between SNET and one of SNET's employees?

8.      Have you or any of your family members or acquaintances ever felt harassed by co-workers or bosses at work?

9.      Have you or any of your family members or acquaintances ever felt you were treated unfairly by your employer, your supervisors, or your co-workers because of your sex?

10.      Have you ever changed jobs or asked to be transferred to a different location because you felt you were being treated unfairly or in a hostile way?

11.      Have you ever made a complaint regarding discrimination or harassment in the workplace either to your employer or outside the organization?

12.      Have you ever been an employer or a supervisor in the workplace?

13.      Has anyone ever accused you or a family member or acquaintance of harassing or discriminating against another person in the workplace?

14.    Has anyone ever made a legal claim against you or one of your family members, or have you ever made a legal claim against anyone else?

15.    Have you ever been out of work on a medical leave of absence?  How long was the leave and for what purpose?

16.    Have you ever had trouble getting along with a manager or supervisor at work?  What was the problem?

17.    Do you have any notion that just because SNET is being sued, it must have done something wrong?

18.    Do have any preconceived notion that just because a female employee is the only woman in a particular job for an employer, then she is likely to be discriminated against because of her sex?

19.    Do you have any feeling that you could have a problem being a juror in an employment case, or that you might be anything but impartial in weighing the evidence as it is presented to you?

20.    Would you be able to put aside sympathy in this case and decide the case on the facts and the law as presented to you by the Court?

21.    Please describe any engineering or sales experience that you have.

**The plaintiff objects to Questions Nos. 16 and 21 as vague, ambiguous, intrusive and irrelevant.**

## 10.    List of Witnesses

### Plaintiff's Fact Witnesses:

1.    Kimberly Bachiocchi, 21 Silano Drive, Oxford, CT 06478.  Ms. Bachiocchi will testify concerning her background, her employment and the course of conduct giving rise to this suit.

*Defendant's objection:*  Defendant objects to so much of Ms. Bachiocchi's testimony as is not based on her personal knowledge, Fed. R. Evid. 602 and to the extent it concerns any discrimination plaintiff alleges she suffered at SNET prior to joining the BCS group.  Defendant will file a Motion in Limine on this subject..

2.    Nicholas Faiella, 536 Totoket Road, Northford, CT 06472.  Mr. Faiella will

11

testify concerning the environment of the Elizabeth Street workplace, his interactions with both supervisors and co-workers, work assignments, and other like matters relating to his employment at SNET, his working relationship with the plaintiff and like or related issues.

     *Defendant's objection:*  Defendant objects to so much of Nicholas Faiella's testimony as concerns remarks allegedly made concerning the plaintiff which the plaintiff did not hear and was not aware of while she worked in the BCS Group.  Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1046 (7th Cir. 2000); Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir. 2000).  Defendant will file a Motion in Limine on this subject.

     3.  Christopher Manouse, 8 Roughwing Road, Naugatuck, CT 06770.  Mr. Manouse is expected to testify about the office environment at the Elizabeth Street facility, his working relationship with Ms. Bachiocchi, the flow of work in the BCS group, and other like matters touched upon at his deposition.

     4.  Janice Vereb, 241 Charter Road, Rocky Hill, CT 06067.  Ms. Vereb will testify about her own job and her business dealings with SNET, her working relationship with Kim Bachiocchi, her interactions with Carl Lorentzen and like or related issues.

     *Defendant's objection:*  Defendant objects to so much of Ms. Vereb's testimony as is not based on her personal knowledge.  Fed. R. Evid. 602.

     * Plaintiff reserves the right to call additional individuals for rebuttal and/or impeachment and also reserves the right to call individuals set down on defendant's witness list.

     *Defendant's objection concerning all of plaintiff's fact witnesses:*  Defendant objects to all testimony by the above-referenced witnesses concerning events that are barred by the applicable statutes of limitations in this case or for which plaintiff had failed to exhaust her administrative remedies.  Defendant will file a Motion in Limine on this subject.

    *Plaintiff's Expert Witnesses*:

     1.  Gary Zachariah, Psy.D.,345 No. Main Street - Ste. 302, West Hartford, CT 06117. Dr. Zachariah will testify as to his treatment of the plaintiff, including his observations of her, his diagnosis, his prognosis and her response to treatment.  He will also testify concerning his interactions with defendant as well as other like or related matters.    Dr. Zachariah's CV is attached as Exhibit A.

     *Defendant's Objection:*  Defendant objects to Gary Zachariah's testimony in total based on principles of spoliation of evidence, inasmuch as Dr. Zachariah has admitted that he lost, and perhaps shredded, office notes and documents related to his treatment of Ms. Bachiocchi while litigation between Ms. Bachiocchi and SNET was pending.  In addition, defendant further objects

to any testimony from Gary Zachariah regarding: (1) the causation of the plaintiff's alleged emotional distress, (2) his perception of what occurred in the SNET workplace based on anything other than his personal observation; (3) the actions of the defendant or any of its employees, or (4) his emotions toward the plaintiff, the defendant, or the defendant's employees, and further objects to any testimony in which he employs legal terms such as "harassment" or "sexual harassment." Defendant will file a Motion in Limine regarding such testimony. The plaintiff will respond to the motion after it is filed.

      2. James Sarfeh, M. D., 422 Highland Avenue, Cheshire, CT 06410. Dr. Sarfeh will testify as to his treatment of the plaintiff for a bruise to her wrist and the manifestation of bruises as well as other like or related matters arising from his treatment of the plaintiff. Dr. Sarfeh's CV is attached as Exhibit B.

      *Defendant's Objection:*  Defendant objects to so much of Dr. Sarfeh's testimony as is not relevant to the issues in this case. Fed. R. Evid. 402.


### Defendant's Fact Witnesses:

1. Kevin West, 5 Jane Street, Beacon Falls, Connecticut 06403

Anticipated testimony:  Mr West, who was the plaintiff's manager in the BCS Group, will testify about the process by which the plaintiff was hired into the BCS Group, events during the plaintiff's period in the BCS Group, and incidents alleged by the plaintiff to have occurred involving himself. His testimony will include his investigation of complaints about the plaintiff from contractors and co-workers, his decisions involving the plaintiff's use of overtime, leave time, vacation time, and other issues, his decision about the plaintiff's compensation rating after her return from medical leave, the atmosphere in the Derby office and interactions among its workers, complaints about the plaintiff and Nicholas Faiella by co-workers, his decisions involving the plaintiff's assignments after her return from medical leave, and the June 4, 2001 incident that led to the plaintiff's decision to transfer to another department, among other matters.

2. Richard Light

Anticipated testimony: Mr. Light, who supervised the plaintiff's work during part of her time in the BCS Group, will testify about the process by which the plaintiff was hired into the BCS Group, events during the plaintiff's period in the BCS Group, the atmosphere of the Derby office and interactions among its workers, the plaintiff's work performance, and incidents alleged by the plaintiff to have occurred involving himself.  His testimony will include the alleged incident involving the printing of directions to the plaintiff's house and remarks that he is purported to have made to the plaintiff, among other matters.

3. Laurie Moffett, AT&T Corp., 6 Devine Street, North Haven, Connecticut 06473

Anticipated testimony: Ms. Moffett, who was the human resources manager of the BCS Group throughout the period when the plaintiff worked there, will testify about plaintiff's compensation and the compensation of other employees, complaints about the plaintiff and Nicholas Faiella from co-workers, the process by which the plaintiff was transferred from the BCS Group to another department, the plaintiff's current position and compensation as an employee of the defendant, and relevant human resource policies and practices of SNET, among other matters.

    4.  Robert Vallario, 125 Rutledge Road, Wethersfield, Connecticut 06109

Anticipated testimony: Mr. Vallario, who was the head of the BCS Group's installation unit during part of the period when the plaintiff worked there, will testify about his interactions with the plaintiff, the plaintiff's work performance, the atmosphere at the Derby office and interactions among its workers, complaints about the plaintiff and Nicholas Faiella from co-workers, and his involvement in investigations of complaints made about the plaintiff's conduct by contractors and co-workers, among other matters.

    5.  Christopher Manouse, AT&T Corp., 6 Devine Street, North Haven, Connecticut 06109

Anticipated testimony: Mr. Manouse, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, the plaintiff's work performance, and the atmosphere in the Derby office, among other matters.

    6.  Carl Lorentzen, 25 Westridge Drive, Bolton, Connecticut 06043

Anticipated testimony: Mr. Lorentzen, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, the plaintiff's work performance, and the atmosphere in the Derby office, among other matters.

    7.  Joseph Bordieri, 150 Broad Street, Wethersfield CT 06109

Anticipated testimony: Mr. Bordieri, who was an outisde contractor for SNET, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, the plaintiff's work performance, and interactions with Nicholas Faiella concerning the plaintiff, among other matters.

    8.  Ronald Dursza

Anticipated testimony: Mr. Dursza, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

9. Carol Stanevich, Porter Avenue, Middlebury, Connecticut

Anticipated testimony: Ms. Stanevich, who was a co-worker of the plaintiffs in the BCS Group, will testify about her interactions with the plaintiff, interactions between the plaintiff and other employees, her own treatment in the Derby office, and the atmosphere in the Derby office, among other matters.

10. Ivan Boulet

Anticipated testimony: Mr. Boulet, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

11. Walter Czapor

Anticipated testimony: Mr. Czapor, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

12. Wayne Handefield

Anticipated testimony: Mr. Handefield, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

13. William Volkert

Anticipated testimony: Mr. Volkert, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

14. Keith Casey

Anticipated testimony: Mr. Casey, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

15. Frank Andrews

Anticipated testimony: Mr. Andrews, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

16. John Dunn

Anticipated testimony: Mr. Dunn, who was a co-worker of the plaintiffs in the BCS Group, will testify about his interactions with the plaintiff, interactions between the plaintiff and other employees, and the atmosphere in the Derby office, among other matters.

17. Lorraine Mattei

Anticipated testimony: Ms. Mattei, who was a nurse in the SNET medical department during the relevant period, will testify concerning plaintiff's medical leave of absence from 2000-2001, her return to work on January 18, 2001, and SNET's policies and practices, among other matters.

> *Plaintiff's Objections to Defendant's Fact Witnesses*: It seems from the descriptions set forth above that a great deal of the anticipated testimony is based on hearsay. For example Mr. West relating the statements allegedly made to him by contractor's and employees or some employees as well as employee testimony as to the statements of others. Further, there does not seem to be any viable exception to support such testimony, such as admissions against interest. Also, given the number of witnesses set down by Defendant it would appear that some of the testimony is likely to be unnecessarily duplicative. Plaintiff will file a motion in limine regarding such testimony. Defendant will respond to the motion after it is filed.

**Defendant's Expert Witness:**

1. Stuart B. Kleinman, M.D., 315 Central Park West, Suite 9N, New York NY 10025

Opinion to be expressed:   Dr. Kleinman will testify concerning the fact that Dr. Zachariah's report, conclusions and anticipated testimony regarding the causation of the plaintiff's emotional distress are not (1) based upon sufficient facts or data, or (2) the product of reliable principles and methods, and other matters reflected in his expert report..

Basis of the opinion: Expertise in the causation of emotional distress; review of Dr. Zachariah's report; review of Dr. Zachariah's testimony

Materials on which will rely:  Dr. Zachariah's report and testimony

Area of expertise:  Forensic psychiatry

Dr. Kleinman's CV is attached as Exhibit C.

16

*Plaintiff's Objection to Defendant's Witness:*

1. It is plaintiff's current intention to object to the testimony of Stuart B. Kleinman, M.D., Defendant's disclosed expert. Fed. R. Civ. Pro. 26(a)(2)(B) requires, inter alia, the disclosure of "the compensation to be paid for the study and testimony." Defendant's disclosure states only that Dr. Kleinman's hourly rate for testimony is $500.00 an hour. Since the Rule requires disclosure of all compensation, defendant's disclosure is inadequate. See Moore's Federal Practice 3d Sect. 26.23[2][b][ii]. Plaintiff will also object to any testimony to be offered which is beyond the scope of the witness' stated area of expertise. Plaintiff will file a motion in limine concerning this testimony. Defendant will respond to the motion after it is filed.

Initial discussion between the parties, however, has raised the possibility that this issue concerning disclosure of compensation may be resolved and the objection on that issue withdrawn before the pretrial conference.


**11.       Exhibits**

Pursuant to this Court's Trial Management Order, the parties will file objections to designated exhibits except as to relevance not later than three days prior to the pretrial conference.

***Plaintiff's exhibits:***

1.       Excerpts of sign-out log for January 18, 2001.

2.       An evaluation form relating to the plaintiff and signed by Messrs. West and Manouse in January, 2001.

3.       Official weather reports concerning Fairfield County locations in mid-January, 2001.

4.  SNET's Policies

      -Non-Discrimination Policy
      -Disability Plan
      -Code of Conduct

5.  Slides from a power point presentation on workplace violence.

6.  Correspondence between Dr. Zachariah and SNET.

7.  Charge of Discrimination in Case No. 0130048.

8.  SNET's response to Case No. 0130048.

9.  Charge of Discrimination in Case No. 0130598.

10. SNET's response to Case No. 0130598.

11. Affidavit of Kim Bachiocchi given in support of Mr. Faiella's CCHRO Case No. 0130268

12. Mr. Faiella's CCHRO Complaint in Case No 0130268

13. Vallario memorandum dated November 14, 2000, marked as Exhibit 5 at Bachiocchi Deposition of July 24, 2003.

14. Chris Manouse notes of office meetings.

15. Fishing trip photographs

16. A circular for a training opportunity

17. Mr. Faiella's sketch of the Elizabeth Street office interior.

18. Mr. Faiella's written complaint to Ms Macri.

19. Email packet showing various distributions of address and telephone lists, including email from Mr. Dunn announcing new mailing list after Ms. Bachiocchi's departure from the West Group.

20. Photographs and accompanying hand-written log showing West Group employees at the Elizabeth Street facility in or about February, 2001.

21. Dr. Sarfeh's treatment notes.

22. Forensic Psychiatric Report of Stuart B. Kleinman, M.D.

23. Affidavits and depositions as necessary to refresh or impeach witnesses.

* Plaintiff reserves the right to use any of the Defendant's listed exhibits as her own exhibits.

### Defendant's exhibits:

1. Memorandum from Ronald Durza to Kevin West, 11/09/00, re Inappropriate Behavior in a Business Environment

2. Affidavit of Ivan Boulet to CHRO

3. Affidavit of Ron Dursza to CHRO

4. Affidavit of Illegal Discriminatory Practice filed by Nicholas Failla on 12/13/00, CHRO No. 0130268

5. Email from Carl Lorentzen to Robert Vallario, 5/15/00

6. Absence and Tardiness Record-2001 for Kimberly Bachiocchi

7. Notice of MAR Dismissal, CHRO Charge 0130048, 12/19/00

8. Dismissal and Notice of Rights, EEOC Charge 16aa03399, 5/25/01

9. Attendance Record, BCS Group, Week of 1/15/01

10. Derby Police Department Incident Report, 6/04/01

11. SBC Summary Plan Description for Disability Income Plan, 3/99

12. SBC/SNET Equal Employment Opportunity Policies, 9/99

13. SBC/SNET Discrimination Policies

14. Keith Casey performance documents

15. Ron Dursza performance documents

16. Frank Andrews performance documents

17. Chris Manouse performance documents

18. Chris Manouse certifications

19. Co-worker performance documents

20. Kim Bachiocchi performance documents

21. Kim Bachiocchi wage records during leave of absence

22. Kim Bachiocchi other wage records

23. SBC Leave of Absence Policy

24. January 23, 2001 letter from Lorraine Mattei to Gary Zachariah

25. Weather reports for January 18, 2001

26. Sign-out log for week of January 15, 2001

27. Pages from Bachiocchi personal calendar

28. SNET Asset Protection-Security Investigative Report, June 2001, and exhibits thereto

29. Draft statements from Kim Bachiocchi to SNET Asset Security

30. Final statement from Kim Bachiocchi to SNET Asset Security

31. Memorandum entitled "Documentation: Nick Faiella by Kevin West Manager PTS"

32. Richard Light Log re Nick Faiella

33. Robert Vallerio Log re Nick Faiella and Kim Bachiocchi

34. Notes regarding December 5, 2000 meeting with Nick Faiella

35. Kevin West email regarding December 5, 2000 meeting with Nick Faiella

36. Memorandum regarding December 5, 2000 meeting with Nick Faiella

37. Memorandum from Yvan Boulet dated November 14, 2000

38. Memorandum from Robert Vallario dated November 14, 2000

39. Memorandum from Ronald Dursza dated November 14, 2000

40. Memorandum from William Volkert, Jr. dated November 14, 2000

41. Letter dated February 19, 2001 from Lorraine Mattei to Kim Bachiocchi

42. Kim Bachiocchi Absence and Tardiness Record - 2000

43. Kim Bachiocchi Absence and Tardiness Record - 2001

44. Kim Bachiocchi Absence and Tardiness Record - 1994

45. Return to work note from Jeffrey Sumner

46. SNET Standards of Conduct

47. Kim Bachiocchi acknowledgment of receipt of Standards of Conduct and sign-in sheet re Code of Business Conduct review

48. EEO Review Sign-In Sheet

49. Kim Bachiocchi 1998 performance evaluation

50. Kim Bachiocchi earnings records 2002

51. Kim Bachiocchi earnings records 2003

52. Kim Bachiocchi earnings records 2004

53. Kim Bachiocchi earnings records 2005

54. Kim Bachiocchi earnings records 2006

55. Kim Bachiocchi 2002 performance evaluation

56. Kim Bachiocchi Employee Orientation Check List

57. Wage record for Kim Bachiocchi for hire date

58. Documentation of disability benefits received 2000-2001

59. Gary Zachariah consultation notes for 2004-2006

60. Email dated June 13, 2001 from Kim Bachiocchi to Laurie Moffett

61. Email dated June 18, 2001 from Kim Bachiocchi to Patty Companick

62. Laurie Moffett September 24, 2001 note to file

63. Kim Bachiocchi resume

64. Candidate Selection Form re Manager, Sales Support, June 18, 2001

65. Kim Bachiocchi tax records

66. Inspection sheets and supporting documents for PO # 0006597

67. Records of disability leave 1985

68. Records of disability leave 1989

69. Records of disability leave 1992

70. Records of disability leave 1994

71. Records of disability leave 1994-1995

72. Medical note dated April 11, 1995 from Dr. Sumner

73. Medical note dated September 16, 1997 from Dr. Kligfeld

74. Medical note dated July 13, 1998 from SNET

75. Medical records of Anna Tirado

76. Medical note dated January 21, 2000 from Dr. Lyall

77. Medical note dated June 8, 2000 from Dr. Kelleher

78. Offer of early retirement package

79. Medical note dated November 10, 2000 from Dr. Tirado

80. Records of October 15, 2001 - October 31, 2001 from Dr. Wu and Lisa Cyr

81. Medical report dated February 1, 2002 from Dr. Bridgers

82. Gary Zachariah notes during litigation

83. Medical note dated January 31, 2003 from Dr. Sarfeh

84. Letter dated June 30, 2003 from Dr. Kligfeld

85. Medical record of St. Mary's Hospital dated December 23, 2003

86. Letter dated January 8, 2004 from Dr. Roman

87. Letter dated February 24, 2004 from Gary Zachariah

88. Documents related to tests on Joe Bordieri job

89. Excerpts from Bachiocchi videotape

90. Harry Kurtz Department of Public Safety Records

91. Harry Kurtz Accurint Report

92. Jeff Kurtz Criminal Record

93. Nick Faiella Absence Record - 2000

94. Nick Faiella Absence Record - 2001

95. Affidavit of William Volkert, Jr. to CHRO

96. Kevin West notes regarding Kim Bachiocchi, June 2000

97. Kevin West May 31, 2001 notes of meeting

98. Kevin West June 1, 2001 notes of meeting

99. Email dated may 21, 2001 from Kim Bachiocchi to Janice Vereb

100. Richard Light notes of engineering meeting on March 6, 2000

101. Bachiocchi family photographs and Christmas card

102. Kim Bachiocchi UBS Painewebber records

103. Kim Bachiocchi personal log

104. Email, Kim Bachiocchi to Chris Manouse, 3/04/02 10:42 AM

105. Time line

106. Report of Stuart Kleinman

107. Affidavits and transcripts of depositons as needed for impeachment or rebuttal

* Defendant wishes to reserve the right to use any of the plaintiff's listed exhibits and to introduce additional exhibits as rebuttal documents, at the time of the trial of this matter.

12.        **Deposition Testimony**

*Plaintiff's deposition testimony:*

No witnesses are currently expected to testify by deposition at trial.

*Defendant's deposition testimony:*

No witnesses are currently expected to testify by deposition at trial.

13.        **Jury Instructions**

See Proposed Jury Instructions, attached hereto as Exhibit D. Also, please see Proposed Jury Verdict Form, attached hereto as Exhibit E, Proposed Jury Interrogatories, attached hereto as Exhibit F, and Proposed Statement to Jury Panel, attached hereto as Exhibit G.

14.        **Anticipated Evidentiary Problems**

The parties will  file objections to each other's exhibits no later than three days prior to the pretrial conference. The parties have listed their objections to each other's witnesses above. The parties intend to file separately their Motions in Limine as to both testimony and exhibits, and will file such Motions no later than fourteen days before the pretrial conference.

15.        **Proposed Findings and Conclusions**

N/A [non-jury cases only]

16.        **Trial Time**

The parties estimate ten to fourteen trial days will be needed.

17.        **Further Proceedings Prior to Trial**

1.        The Court has yet to rule on Defendant's Motion for Reconsideration of Ruling on Motion for Summary Judgment. This motion, Docket #183, was filed on April 6, 2006 and relates to a Motion for Summary Judgment dated April 6, 2005.

2.    The Court has yet to rule on Plaintiff's Objection to Rulings of the Magistrate Judge Concerning Plaintiff's Claim of Lawyer/Client Privilege.  This objection, Docket # 136, was filed on October 4, 2004.

## 18.    Election for Trial by Magistrate

The parties have not agreed to have the case tried by a United States Magistrate Judge.

THE PLAINTIFF,
KIMBERLY BACHIOCCHI


By: /s/ Peter E. Gillespie
Peter E. Gillespie
Federal Bar No. ct06554
46 Riverside Ave
P.O. Box 3416
Westport CT 06880
Tel. (203) 227-7000
Fax. (203) 454-5508
Email:  petelaw@mac.com



THE DEFENDANT,
SOUTHERN   NEW   ENGLAND   TELEPHONE
COMPANY


By /s/ Lori B. Alexander
     Lori B. Alexander
     Federal Bar No. ct08970
     Michael G. Caldwell
     Federal Bar No. ct26561
     Tyler Cooper & Alcorn, LLP
     205 Church Street
     New Haven, Connecticut  06509
     Tel. (203) 784-8200
     Fax No. (203) 789-2133
     E-Mail: lalexander@tylercooper.com
     E-Mail: mcaldwell@tylercooper.com