EXHIBIT D

THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| **KIMBERLY BACHIOCCHI,** | * |
| | * |
| | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * **CIVIL ACTION NO. 02-CV-908 (CFD)** |
| | * |
| | * |
| **THE SOUTHERN NEW** | * |
| **ENGLAND TELEPHONE** | * |
| **COMPANY,** | * |
| | * |
| **Defendant.** | * **DECEMBER 1, 2006** |
| * * * * * * * * * * * * * * * * * * * | * |

## PROPOSED JURY INSTRUCTIONS

Pursuant to the Standing Order of the United States District Court for the District of

Connecticut Regarding Trial Memoranda in Civil Cases, the parties in this action attach these

proposed Jury Instructions to their Joint Trial Memorandum.

1

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

### Plaintiff's Requested Instruction No. 1

#### Federal and State Discrimination Law

In this case, the plaintiff, Kimberly Bachiocchi, makes claims that she has been subjected to hostile environment because of her sex or gender by the defendant Southern New England Telephone Company, which I will call and refer to by its initials, "SNET." The Plaintiff also claims that when complaints and efforts to change this conduct were made, SNET retaliated against her. She makes these claims based upon both federal and state statutes. I will explain more about her particular claims in a moment. However, I wanted you to understand how the federal and state statutes interact. The standards under both state and federal law are the same. The purpose of both Title VII of the Civil Rights Act ("Title VII"), the federal statute and the Connecticut's Fair Employment Practices Act ("CFEPA") is to eliminate employment discrimination against individuals on the basis of sex or gender. You need not concern yourselves with parsing any differences between the two areas of law.

SOURCE: *BRITTELL V. DEP'T OF CORR.*, 247 CONN. 164 (1998) (CONNECTICUT

ANTIDISCRIMINATION STATUTES ARE "COEXTENSIVE WITH [TITLE

VII],").

2

**Plaintiff's Requested Instruction No. 2**

## Hostile Work Environment

In this case plaintiff makes the claim under the Federal Civil Rights statutes that prohibit employers from discriminating against their employees in the terms and condition of their employment because of the employee's sex or gender.

More specifically, the plaintiff claims that she was subjected to a hostile work environment because of harassment which was directed against her because of her sex or gender. This is a form of prohibited employment discrimination.

In order to prevail n this claim, the plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the plaintiff was subjected to a hostile or abusive work environment because she was a woman. I will explain the meaning of the term "hostile or abusive work environment" shortly.

Second: That such hostile or abusive work environment was created and/or permitted by a supervisor with immediate or successively higher authority over the plaintiff; and

Third: That the plaintiff suffered damages as a proximate or legal result of such hostile or abusive environment.

A work environment is "abusive" when harassment has reached a certain level that is "sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment." .

. . To decide whether conduct rises to this level, you "must determine the existence of sexual harassment in light of the record as a whole and the totality of [the] circumstances." . . .

Within the totality of the circumstances are "the quantity, frequency and severity of the incidents

3

.   .   . factors that must be considered cumulatively, so that you may obtain a realistic view of the work environment.   .   .   . The focus of this enquiry, therefore, is "the nature of the environment itself." The totality of circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a finding that a hostile environment existed. The effect on the employee's mental and emotional well being is also relevant to determining whether the plaintiff actually found the workplace environment to be hostile or abusive; but while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

In a hostile work environment claim, the "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex."   .   .   . "Although sexual harassment is usually thought of in terms of sexual demands, it can include employer based action based on [sex or gender] but having nothing to do with sexuality. For example, a woman, entering a work environment that previously has been all male, might encounter severe, sustained hostile treatment by her male superiors and/or co-workers.   .   . . [A] hostile environment is not limited to sexual advances or even to sexual behaviour targeted at the complainant." (Internal quotations and citations omitted.) Incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination  - for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.

4

**Source:**    **Federal Jury Practice and Instructions, §171.22 at p.225-7 (West 5th ed.,**
**2001);** *Rainola v. Bratton,* **243 F. 3d 610, 617 (2d Cir. 2001);** *Alfano v. NYS*
*Department of Correctional Services,* (2d Cir. 2002).

*Defendant's Objection: This instruction fails to include all the elements that
plaintiff must prove to show a hostile work environment. For example, it fails to
mention the requirement that the harassment be unwelcome. Federal Jury
Practice & Instructions § 171.22 (5th ed. 2001); Cosgrove v. Sears, Roebuck &
Co., 9 F.3d 1033, 1042 (2d Cir. 1993). Also, it fails to include a useful
explanation to the jury that the plaintiff must prove that the workplace was
permeated with discriminatory intimidation, ridicule and insult based on gender
that was sufficiently severe to create an abusive working environment. Harris v.
Forklist Sys., 510 U.S. 17, 21 (1993). This is a fundamental requirement of any
hostile work environment claim. Third, it does not provide adequate guidance to
the jury in its explanation of the means by which the jury may find a work
environment to be hostile. The better approach, suggested in defendant's
proposed jury instruction I(B), is to list the factors laid out by the Supreme Court
in Harris v. Forklist Sys., 510 U.S. 17, 23 (1993), such as "whether the conduct
was physically threatening or humiliating" and "whether the conduct was merely
an offensive utterance." Also, useful guidance would include explaining to the
jury certain conduct that it may not take into account, such as conduct of which
the plaintiff was unaware or that is time-barred, as discussed in defendant's
proposed jury instruction I(B). See also Mason v. S. Ill. Univ. at Carbondale, 233*

5

*F.3d 1036, 1046 (7th Cir. 2000) (conduct of which the plaintiff was unaware*
*cannot contribute to a hostile work environment). Last, plaintiff's proposed*
*instruction that, "For example, a woman, entering a work environment that*
*previously has been all male, might encounter severe, sustained hostile treatment*
*by her male supervisors and/or co-workers . . ." is not a neutral instruction; it*
*suggests to the jury that in cases where plaintiff's co-workers and predecessors*
*have been mostly male, like in the present case, it is likely that the plaintiff will*
*encounter a hostile work environment. This "illustrative" example is too similar*
*to the present case to be a neutral example to aid the jury in understanding the*
*law.*

## Plaintiff's Requested Instruction No. 3

### Hostile Environment – Liability for Conduct

When a hostile or abusive work environment is created by the conduct of a supervisor
with immediate or successively higher authority over the plaintiff, the defendant employer is
responsible under the law for such behavior and the resulting work environment.

When a hostile or abusive work environment is created and carried on by non-supervisory
fellow workers of plaintiff, the defendant, as plaintiff's employer, will be responsible or liable
for permitting such behavior only if plaintiff proves by a preponderance of the evidence that the
plaintiff's supervisor or successively higher authority knew (that is, had actual knowledge), or
should have known (that is, had constructive knowledge), of the hostile or abusive work
environment and permitted it to continue by failing to take remedial action.

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §171.22 AT P.227      (WEST 5TH ED., 2001)

> **_Defendant's Objection:_** *The instruction does not accurately describe the law when it states that the defendant is responsible for supervisor conduct, implying a sort of strict liability. It omits the defendant's affirmative defense to liability for supervisor conduct. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The affirmative defense is described in defendant's proposed jury instruction I(C).*

### Plaintiff's Requested Instruction No. 4

#### Hostile Environment - Reasonable Person Standard

In determining whether a hostile environment existed, you must consider the evidence from the perspective of a reasonable person. This is an objective standard and requires you to look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. Instead, you must consider the totality of the circumstances and determine whether the alleged harassing behaviour could be objectively classified as the kind of behaviour that would seriously affect the psychological well-being of a reasonable person.

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §171.45 AT P. 263      (WEST 5TH ED., 2001)

**Plaintiff's Requested Instruction No. 5**

### Hostile Environment – Damages

If you find that plaintiff has proved her claim, you must then determine the amount of damages that the plaintiff has sustained.

In considering the issue of plaintiff's damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury – tangible and intangible. Thus, no evidence of the value of such intangible things such as emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate the plaintiff for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others:

a. Net lost wages and benefits, if any, to the date of trial;

b. Expenses incurred, if any, as the result of defendant's conduct;

c. Pain, Suffering and emotional harm; and

8

d.      Punitive damages.

**SOURCE:  FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 171.22 AT P. 229  (WEST 5TH ED., 2001)**

*__Defendant's Objection:__ Defendant does not object to the first two paragraphs of Instruction 5.  Defendant does object to the inclusion of "net lost wages and benefits, if any, to the date of trial" among the damages available for plaintiff's hostile work environment claims.  Back pay is not available for a claim of a hostile work environment that did not end in a constructive discharge.  Spencer v. Wal-Mart Stores, Inc., Nos. 05-2143, 05-3436, 05-3471, 2006 U.S. App. LEXIS 28952 at \*12 (3d Cir. Nov. 22, 2006); Bonner v. Guccione, No. 94-Civ.-7735, 1997 U.S. Dist. LEXIS 11382 at \*5 (S.D.N.Y. Aug. 6, 1997 ), partially rev'd on other grounds Bonner v. Guccione, 178 F.3d 581 (2d Cir. 1999); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 571 n. 6 (2d Cir. 2000) ("[n]or does Cruz's hostile work environment claim affect her claim for backpay"). Plaintiff in this case continues to work for SNET and has been successively promoted. Defendant also objects to the inclusion of punitive damages.  Punitive damages are available under Title VII only if a managerial employee of SNET's acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual, and if SNET itself did not act in a good-faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536-46 (1999).  As noted below in plaintiff's instruction on punitive damages, plaintiff offers no evidence whatever to meet this standard.  Even if plaintiff offered such evidence, the Court should not instruct the jury*

9

*that it "should consider punitive damages," as plaintiff requests. Furthermore, the instruction is confusing as to the relationship between the categories of damages alluded to in this instruction and those alluded to in the following instruction.*

### Plaintiff's Requested Instruction No. 6

#### Compensatory Damages

If you find defendant unlawfully subjected plaintiff to a hostile environment because of her sex or gender, then you must determine an amount that is fair compensation for her damages. You may award compensatory damages only for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct.

You may award damages for any pain, suffering or mental anguish that plaintiff experienced as a consequence of defendant's improper conduct. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation or guess work. On the other hand, the law does not require plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 171.90 AT P. 285 (WEST 5TH ED., 2001)**

*__Defendant's Objection:__ This instruction does not provide enough guidance to the jury by stating specifically that plaintiff bears the burden of proving compensatory damages by a preponderance of the evidence. Sands v. Runyon, 28 F.3d 1323, 1329 (2d Cir. 1994). It further omits the rule that plaintiff must prove actual damages in order to be entitled to an award of damages. Also, this instruction omits reference to the rule that limits nominal damages to one dollar if a plaintiff proves liability but fails to prove actual injury. Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001); Bonner v. Guccione, 178 F.3d 581, 600 (2d Cir. 1999). Finally, defendant objects to the Court giving an instruction that refers to "defendant's improper conduct" as if the Court had concluded that SNET had acted improperly, and further objects to this portion of the instruction because damages may only be awarded for unlawful conduct in violation of the statutes alleged, not for any "improper conduct."*

**Plaintiff's Requested Instruction No. 7**

**Punitive Damages**

Plaintiff Kimberly Bachiocchi claims the acts of defendant SNET were done with malice or reckless indifference to her rights so as to entitle Ms. Bachiocchi to an award of punitive damages in addition to compensatory damages.

In some cases punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However,

an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees when those acts by such employees are contrary to the employer's own good-faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

An award of punitive damages would be appropriate in this case only if you find for plaintiff Kimberly Bachiocchi, and then further find by a preponderance of the evidence:

First: that a higher management official of SNET personally acted with malice or reckless indifference to Ms. Bachiocchi's's protected rights, and

Second: that SNET itself had not acted in a good-faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

If you decide to award punitive damages, you should take into account the following considerations:

First: the degree of wrongfulness of the conduct,

Second: the amount of time during which defendant conducted itself in this manner;

Third: the attitudes and actions of defendant's top managerment after the misconduct was discovered; and

Fourth: The effect of the damages award on defendant's financial condition and its overall revenues.

**Source:** *Federal Jury Practice and Instructions* **(West 5th ed. 2001 and 2004 Supp. Notes) § 171.94**

*Defendant's Objection: Defendant objects to the inclusion of a punitive damages instruction in the jury instructions. Punitive damages are available under Title VII only if a managerial employee of SNET's acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual, and if SNET itself did not act in a*

12

*good-faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536-46 (1999). Plaintiff offers no evidence whatever that any managerial employee of SNET's acted with malice or reckless indifference to her rights, or that SNET itself did not act in a good-faith attempt to comply with the law. In the absence of any evidence that would support a jury verdict granting punitive damages, the inclusion of such an instruction is improper.*

## Plaintiff's Requested Instruction No. 8

### Retaliation

Plaintiff claims that defendant discriminated against her because she opposed a practice made unlawful by Title VII of the Civil Rights Act of 1964.

In order to prevail on this claim, plaintiff must show all of the following:

First : Plaintiff engaged in conduct protected by Title VII of the Civil Rights Act of 1964;

Second : Plaintiff was subjected to an adverse employment action at the time or after, the protected conduct took place; and

Third : Defendant took an adverse employment action against plaintiff because of her protected conduct.

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §171.24 AT P. 250 (WEST 5TH ED., 2001)

13

*__Defendant's objection:__* *This instruction omits one of the elements that plaintiff must prove to prevail on her retaliation claim: that "the employer was aware of the plaintiff's participation in the protected activity."* Raniola v. Bratton, *243 F.3d 610, 624 (2d Cir. 2001). In addition, this instruction omits the rule that the jury must find for the defendant if it had a legitimate, non-pretextual reason for any alleged adverse employment action.* Richardson v. N.Y. State Dep't of Corr. Serv., *180 F.3d 426, 443 (2d Cir. 1999). Moreover, as noted in defendant's proposed jury instruction II, it will be useful to the jury to be reminded that the only actions it may consider as retaliatory are those that occurred before July 24, 2000, the date of the first alleged protected activity.*

## Plaintiff's Requested Instruction No. 9

### Direct and Indirect Evidence

Generally speaking there are two types of evidence that are generally presented during a trial – direct evidence and indirect evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect evidence" is proof of a chain of facts and circumstances indicating the existence or non-existence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or indirect evidence. Nor is a greater degree of certainty required of indirect evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and indirect.

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §171.45 AT P. 264 (WEST 5TH ED., 2001)

14

*Defendant's Objection:* *Defendant objects to this instruction as unnecessary and not likely to assist the jury in its deliberations. As the instruction itself establishes, the distinction between direct and indirect evidence does not play any role in this case.*

### Plaintiff's Requested Instruction No. 10

#### Equal Pay Act Violation

In order for plaintiff to prevail on her claim against defendant for violation of the Equal Pay Act, plaintiff must prove all of the following elements by a preponderance of the evidence:

> First : Defendant has employed plaintiff and a member or members of the opposite sex in jobs requiring substantially equal skill, effort and responsibility;
> Second : That the jobs are performed under similar working conditions; and
> Third : Plaintiff was paid a lower wage than a member of the opposite sex doing equal work.

In determining whether Plaintiff and a member or members of the opposite sex have been employed on jobs requiring substantially equal skill, effort and responsibility, you must compare the jobs and not the individual employees holding those jobs. It is not necessary that the two jobs be identical; the Equal Pay Act only requires proof that the performance of the two jobs demands "substantially equal" skill, effort and responsibility. Insignificant, insubstantial, or trivial differences do not matter and may be disregarded. Job classifications, descriptions, or titles are not controlling. It is the actual work performance requirements of the two jobs that is important.

15

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §174.20 AT P. 584 (WEST 5TH ED., 2001)

*Defendant's objection: Defendant first objects to any instruction on the Equal Pay Act other than a direction to the jury to enter a verdict in favor of the defendant on this claim, since plaintiff has failed to meet her burden of proof on the claim. Plaintiff had indicated in response to SNET's discovery requests in this case and her sworn deposition testimony that she is not aware of any male employee who did work substantially simlar to the work she performed but were paid more. Second, defendant objects to the wording of the third element that plaintiff must show. In the context of this case, the statement that plaintiff must show that she was paid a lower wage than "a member" of the opposite sex is likely to confuse the jury. In this case, there were, at various times, between three and five male employees who were employed in the plaintiff's job category. The use of the phrase "a member of the opposite sex" implies that plaintiff may prevail by showing that a single male employee in her comparison group was paid more than she was, even though other male employees in her comparison group were paid less than she was. The better approach in such a case is to compare a plaintiff's wages to the average wages of the male comparators, taking into account differences in the employees' educational experience, certifications, qualifications, and training. Melanson v. Rantoul, 536 F.Supp. 271, 291 (D.R.I. 1982). The less confusing wording would refer to the average male employee doing equal work, as noted in defendant's proposed jury instruction IV.*

**Plaintiff's Requested Instruction No. 11**

## Equal Pay Act – Pretext

Plaintiff introduced evidence claiming to show that she received lower wages than male employees performing substantially similar work. Defendant has presented evidence to show that plaintiff was paid a lower wage because of a factor other than sex.

Plaintiff has the opportunity to show that the defendant's claimed justification is just a pretext for sex-based discrimination. Plaintiff may do so by presenting evidence that the claimed explanation is not true or by suggesting that discriminatory intent was the motivating factor for the lower wage.

In determining whether the defendant's explanations are true or not, you must consider all the evidence and determine whether the true basis for the wage difference was the plaintiff's sex. If you find that plaintiff's sex is a reason why she received a lower wage, you should find for plaintiff.

SOURCE: FEDERAL JURY PRACTICE AND INSTRUCTIONS, §174.21 AT P. 592   (WEST 5TH ED., 2001)

*Defendant's Objection: First, for the reason set forth above, defendant objects to any jury instruction on the Equal Pay Act claim other than a direction to enter a verdict in favor of the defendant. This instruction is further objectionable for several reasons. First, plaintiff will not introduce evidence showing that she received lower wages than male employees performing similar work, so the first sentence is incorrect. Second, this instruction omits mention of proof that any wage discrepancy was not the result of a bona fide seniority or merit system. 29 U.S.C. §§ 206(d)(ii), (iv). See defendant's proposed*

17

*jury instruction IV. Last, plaintiff's statement that she must prove only that her "sex is a reason why she received a lower war" (1) is not an accurate statement of the law, and (2) implies that the Court has found plaintiff actually did receive a lower wage than male employees, which is not correct.*

## DEFENDANT'S PROPOSED JURY INSTRUCTIONS

### I.    SEXUAL HARASSMENT CLAIMS

In this case, Kimberly Bachiocchi makes sexual harassment claims under a federal statute, known as Title VII, and a state statute, known as the Connecticut Fair Employment Practices Act, both of which prohibit an employer from discriminating against an employer on the basis of her gender.[1] More specifically, Ms. Bachiocchi claims that SNET subjected her to a hostile work environment on the basis of her gender while she worked in its Business Communications Sales (BCS) Group from June 7, 1998 to May 19, 2000 and from May 14, 2001 to June 18, 2001. SNET denies that Ms. Bachiocchi was discriminated against in any way or subjected to a hostile work environment.

I will now instruct you more fully on the issues you must address regarding these hostile work environment claims.

#### A.    Elements

Ms. Bachiocchi claims that she was subjected to harassment by her supervisors and/or co-workers, and that this alleged harassment was motivated by her gender.

---

[1] 42 U.S.C. § 2000e-2(a)(1); Conn. Gen. Stat. § 46a-60 et seq.

18

SNET may be liable for sexual harassment by supervisors if Ms. Bachiocchi proved to you by a preponderance of the evidence, all three of the following elements:

First: Ms. Bachiocchi must prove she was subjected to unwelcome harassment by a supervisor.

Second: Ms. Bachiocchi must prove the supervisor's conduct was motivated by Ms. Bachiocchi's sex, that is, the fact that she is a woman.

Third: Ms. Bachiocchi must prove she was subject to harassment that was so severe and pervasive as to affect a term, privilege, or condition of Ms. Bachiocchi's employment. That is, to succeed on a hostile work environment claim, a plaintiff must prove that the workplace was permeated with discriminatory intimidation, ridicule, and insult based on gender that was sufficiently severe or pervasive to alter the condition of her employment and create an abusive work environment.[2]

Because plaintiff's co-workers did not have supervisory authority over her, even if plaintiff proved that she was subjected to sexual harassment by them, SNET would be liable for the actions of those co-workers on this claim only if Ms. Bachiocchi proves all of the following four elements by a preponderance of the evidence:

First: Ms. Bachiocchi was subjected to unwelcome harassment by her co-workers.

Second: The co-workers' conduct was motivated by Ms. Bachiocchi's sex.

Third: Ms. Bachiocchi was subjected to harassment that was so severe and pervasive as to affect a term, privilege, or condition of her employment. That is, to succeed on her claim, a

---

[2] Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993); see also Harris v. Forklist Sys., 510 U.S. 17, 21 (1993). Throughout, federal law is cited for CFEPA as well as Title VII. See Levy v. Comm'n on Human Rights & Opportunities, 35 Conn. App. 474, 480 (1994).

19

plaintiff must prove that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the condition of her employment and create an abusive work environment.[3]

> **_Plaintiff's Objection_**_: The standard set forth in this proposed instruction is unduly limited, springing from older precedents.. Plaintiff urges the Court to adopt a totality of the circumstances instruction consistent with Raniola v. Bratton, 243 F. 3d 610, 617 (2d Cir. 2001); Alfano v. NYS Department of Correctional Services, 294 F. 3d 365, 374 (2d Cir. 2002). Please see Plaintiff's Requested Instruction No. 2._

Fourth: Plaintiff must prove that management-level employees knew, or should have known, of the co-workers' conduct, but failed to take appropriate remedial action.[4] Management-level employees should have known of the conduct if (1) the employee complained to management-level personnel enough to raise a probability of gender-based harassment in the mind of the manager, or if (2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

Whether you are considering conduct by plaintiff's supervisors or by her co-workers, the third element that I described above was that the conduct must have been motivated by Ms. Bachiocchi's sex, that is, the fact that she is a woman. Ms. Bachiocchi is bringing these charges under laws that forbid discrimination on the basis of sex and alleging that she was discriminated against because she is a woman. Thus, you would have to find both that SNET employees

---

[3] Kunin v. Sears, Roebuck & Co., 175 F.3d 289, 294 (3d Cir. 1999).

[4] Petrosini v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004).

20