harassed Ms. Bachiocchi, and that they harassed her because she is a woman[5] and not for other reasons, in order to find in favor of plaintiff in this case. If you find that the employees harassed Ms. Bachiocchi but do not find that they did so because she is a woman, you must find in favor of SNET.

## B.    Deciding Whether Work Environment Was Hostile

In deciding whether plaintiff's work environment was "hostile" you must look at all of the circumstances, which may include:

1.  The severity of the allegedly offensive conduct.

2.  The frequency of the allegedly offensive conduct.

3.  Whether the conduct was pervasive.

4.  Whether the conduct was physically threatening or humiliating.

5.  Whether the conduct was merely an offensive utterance.

6.  Whether the conduct unreasonably interfered with her work performance.[6]

***Plaintiff's Objection:*** *It appears that this requested instruction is a partial quotation from* Harris. *If the Court were to adopt this enumeration of factors to consider, an additional item and caution should be included: "7.  And the effect on plaintiff's psychological well-being. No single factor is required in order to find a work environment hostile or abusive."* See Harris v. Forklift Systems, Inc., *510 U.S. 17, 23 (1993) reiterated in* Faragher v. City of Boca Raton, *524 U.S. 775, 118 S.Ct. 2275, 2283*

---

[5] Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998).

[6] Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).

21

*(1998); FEDERAL JURY PRACTICE AND INSTRUCTIONS, §171.22 AT P. 225   (WEST 5TH ED.,*
*2001).*

There are also certain actions you may not consider as creating a hostile work
environment for Ms. Bachiocchi:

**_Plaintiff's Objection_**: *Plaintiff objects to each of the three following items proposed by*
*defendant. If plaintiff is successful, the preceding sentence in defendant's proposed*
*instruction should be deleted.*

1. You may not consider any conduct or events of which Ms. Bachiocchi was not aware
during the period when she worked in the BCS Group. If Ms. Bachiocchi was not aware of an
action or remark while she worked in the BCS group, it could not have caused her to believe that
her work environment was hostile.[7]

**_Plaintiff's Objection_**: *In support for this proposed instruction defendant relies on the law*
*of the Seventh Circuit. Plaintiff respectfully submits that Defendant's citation does not*
*support its overly narrow and restrictive language.*

*In Mason v. Southern Ill. University at Carbondale, 233 F. 3d 1036 (7th Cir. 2000) the*
*plaintiff clearly made a limited claim alleging that a single supervisor created a hostile*
*environment. In that context, testimony concerning statements of co-employees made out*
*of plaintiff's presence and not relating to the alleged harasser were excluded. Here,*
*however, Bachiocchi alleges conduct by a variety of supervisors and co-workers both.*
*Evidence of discriminatory statements or conduct are relevant to show their motivation,*
*the level of hostility and the pervasiveness of the hostile environment. Even the Court in*

---

[7]   Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1046 (7th Cir. 2000).

22

*Mason noted that a "claim based upon coworker behaviour, the pervasiveness of a coworker conduct could show the employer's constructive notice of the harassment (presumably even if the plaintiff is not present)." 233 F. at 1046, n. 8. (emphasis in original). The Court also specifically concluded that the plaintiff in that case had waived his right to make such an argument.*

*Finally, this instruction seems more appropriate as an evidentiary matter for decision by the Court rather than an instruction for the jury.*

2. In deciding whether Ms. Bachiocchi's work environment was "hostile" you may not include any events that occurred before January 26, 2000, as regards her claim under the state statute, or September 24, 1999, as regards her claim under the federal statute. That is because any such events cannot be the subject of this lawsuit under the applicable time limitations.[8]

***Plaintiff's Objection****: This proposed instruction seems more appropriately treated as an evidentiary matter subject to decision by the Court. As an instruction, it serves to deflect the attention of the jury from the presentation of relevant facts and places them in the position of timekeeper or referee. Further, the instruction may not be accurate as there may be material facts outside of the limitations period which explain motive or provide admissible background information.*

3. Because Ms. Bachiocchi alleges only that she was subjected to a hostile work environment while she worked in the BCS Group, you may not consider any events that occurred at a time when she was not working in that group. Again, Ms. Bachiocchi worked in the BCS Group from June 7, 1998 to May 19, 2000 and from May 14, 2001 to June 18, 2001.

---

[8] Conn. Gen. Stat. § 46a-82; 42 U.S.C. § 2000e-5(e)(1).

23

*__Plaintiff's Objection__: This proposed instruction seems more appropriately treated as an evidentiary matter subject to decision by the Court. As an instruction, it serves to deflect the attention of the jury from the presentation of relevant facts and places them in the position of timekeeper or referee. Further, the instruction may not be accurate. For example, while on leave Plaintiff called the office and was told that "Carol is in the men's room." The incident with the company's dirty, smelly company car delivered to her parked blocking the street precedes May 14, the date selected by defendant. Plaintiff's interactions with Kevin West concerning her return in May, 2001 also precede the date selected by defendant. While Plaintiff was on leave Robert Vallario solicited employee statement inpugning her character, facts which would be excluded under the terms of this proposed instruction. There are doubtless other examples of legitimate proofs which would be rejected if defendants narrow, inflexible formulation were adopted.*

If any of the above elements has not been proved by a preponderance of the evidence, your verdict must be for SNET and you need not proceed further in considering this claim.

Plaintiff's expert witness, Dr. Gary Zachariah, has testified regarding his treatment of plaintiff. You have heard him testify that plaintiff was also treated by three other treaters in his clinic, Dr. John Kelleher, Dr. Gregory Peterson, and Ms. Marlene Chelso. You have also heard him testify that he personally lost, and perhaps shredded, the treatment notes from plaintiff's visits to Dr. Peterson and Ms. Chelso. Because Dr. Zachariah, who is plaintiff's witness, admits that he failed to preserve those treatment notes, you should infer that if the notes were available, the evidence that they contain would be unfavorable to Dr. Zachariah's and plaintiff's position.

24

Under the law, the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation is called "spoliation," and the spoliation of evidence supports an inference that the evidence would have been unfavorable to the party responsible for its loss or destruction.[9] Since Dr. Zachariah lost or destroyed Dr. Peterson's and Ms. Chelso's treatment notes, you should draw the inference that the treatment notes contained evidence that would undermine Dr. Zachariah's testimony about his treatment of plaintiff, and that such evidence would have been favorable to SNET.

*Plaintiff's Objection: First, the factual assumption of Defendant's requested instruction is not supported by the record and is premature unless and until appropriate facts are developed. Dr. Zachariah testified the records were lost and he did not know what happened to them. He had been shredding other confidential documents during that time period and he stated that he could not rule out the possibility of inadvertent shredding, nor could he confirm it. He also stated that he thought he had sent copies of the records in an earlier submission. So, the inference of nefarious conduct is completely unwarranted. Happily, we can avoid even that dispute.*

*When one examines the forensic report of Defendant's disclosed expert, Dr. Kleinman includes an appendix setting forth his sources of data. The Appendix includes progress notes by Dr. Zachariah for 95 separate dates, 13 letter from Dr. Zackariah to Diane Deny, R.N. of SNET's medical department, additional treatment and billing materials supplied by Dr. Zachariah and, most importantly, the appendix includes the following:*

---

[9] Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001).

*"25. Records of Marlene Chelso, A.P.R.N. of December 7, 2000; May 24, 2001."*

*"30.  Records of John Kellerher, M.D. including progress notes of: June 8, 2000; June 29, 2000; July 28, 2000; July 29, 2000; August 24, 2000; September 20,2000."*

*"31.  Records of Greg Peterson, M.D. including the progress notes of: June 8, 2000; June 29, 2000; July 27, 2000; August 24, 2000; September 20, 2000;"*

*Based upon this information it seems most likely that it is the Defendant which lost track of the relevant notes after they were sent to Defendant's expert.  In any event, in light of these facts the effort by Defendant to besmirch and malign Dr. Zachariah does not seem appropriate.*

*Plaintiff does wish to reserve the right to ask for a similar instruction at trial, depending on the proofs relating to certain lost and altered business records of Defendant, most specifically a sign-out log for Plaintiff's former workplace.*

## C.    First Affirmative Defense to Hostile Work Environment Claim: Failure to Complain

If you find that the elements have been proved, then you must consider SNET's affirmative defenses.  I will instruct you now on the elements of the defendant's first affirmative defense.

SNET brings an affirmative defense by asserting that it is not liable for any harassment of Ms. Bachiocchi by its supervisors that may have occurred because, as a company, it made a reasonable attempt to prevent any such harassment.  You must find for SNET if you find that

26

SNET has proved both of the following elements of this defense by a preponderance of the evidence:

First: SNET exercised reasonable care to prevent harassment in the workplace on the basis of gender, and also exercised reasonable care to promptly correct any harassing behavior that did occur.

Second: Ms. Bachiocchi unreasonably failed to take advantage of any preventive or corrective opportunities provided by SNET.[10]

Proof of the following four items would be enough to establish the first element that I just referred to, concerning prevention and correction of harassment:

1. SNET has established an explicit policy against harassment in the workplace on the basis of gender.

2. That policy was communicated to employees.

3. That policy provided a reasonable way for Ms. Bachiocchi to make a claim of harassment to higher management.

4. Reasonable steps were taken to correct any problem raised by Ms. Bachiocchi.[11]

On the other hand, proof that Ms. Bachiocchi did not follow a reasonable complaint procedure provided by SNET will be enough to establish that Ms. Bachiocchi unreasonably

---

[10] Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

[11] From a jury instruction approved by the Third Circuit Court of Appeals in Robinson v. City of Pittsburgh, 120 F.3d 1286, 1304 (3d Cir. 1997); see Model Civil Jury Instructions for the District Courts of the Third Circuit (2006 ed.) at 287-88.

27

failed to take advantage of a corrective opportunity.[12] In that event, you must find in favor of

SNET on its affirmative defense.

> ***Plaintiff's Objection***: *This concluding paragraph should also be subject to a standard of*
>
> *reasonableness. For example, perhaps it should state, in opening: "proof that Ms.*
>
> *Bachiocchi negligently failed to follow a reasonable complaint procedure  .    .    .    ."*
>
> *The proofs in the case show that Ms. Bachiocchi had repeatedly been cautioned not to*
>
> *make reports to SNET employees outside of the West Group.*

## D.    Second Affirmative Defense to Hostile Work Environment Claim: Failure to Exhaust Administrative Remedies

I will now instruct you on the elements of the defendant's second affirmative defense,

which is SNET's claim that plaintiff failed to exhaust her administrative remedies.

Here, I instruct you that the law is that plaintiff may only pursue discrimination and

retaliation claims in Court based on conduct that she previously raised with the Connecticut

Commission on Human Rights and Opportunities (which I will refer to as the "CHRO") and/or

the Equal Employment Opportunity Commission (which I will refer to as the "EEOC"), or

conduct occurring after she made her complaints to the public agencies that is reasonably related

to the conduct that she raised with the public agencies. In this case, plaintiff does not allege any

conduct occurring after she made her complaints on June 21, 2001. Thus, you should restrict

---

[12] See Model Civil Jury Instructions for the District Courts of the Third Circuit (2006 ed.) at 287-88.

your attention to whether she previously raised the conduct she complains of with the public agencies.[13]

Now, it's not your role to question that law or the reasons behind it, although I will tell you that plaintiffs are required to raise their discrimination claims with these public agencies first, so that they will have a chance to resolve them before they go to Court. Defendant claims that several of the events about which she complains in this case were not raised with the CHRO or the EEOC and therefore you may not consider them in deciding whether she was subjected to a hostile environment. I instruct you that, to the extent that you find any of plaintiff's claims were not raised before either of these agencies – and you have in evidence the complaints made to both agencies – you may not consider those events in making your decision on this claim.

> *Plaintiff's Objection: This requested charge is unduly narrow, seems to overlook*
> *the appropriate sweep of conduct fairly falling within the CHRO charge, even*
> *assuming that it was not specifically enumerated, and is premature in the absence*
> *of an evidentiary hearing.  Plaintiff respectfully interposes this objection with*
> *respect to each occurrence on which defendant raises this theory.*

## II.    RETALIATION CLAIMS

In this case, plaintiff also makes claims for retaliation under Title VII and the Connecticut Fair Employment Practices Act.  These statutes prohibit an employer from retaliating against an employee for complaining of illegal discrimination.  Ms. Bachiocchi claims that SNET retaliated against her because she filed discrimination charges against SNET with federal and state agencies on July 24, 2000.

---

[13] Wilson v. Fairchild Republic Co., 143 F.3d 733, 739 (2d Cir. 1998).

To prevail on this claim, Ms. Bachiocchi must prove all of the following by a preponderance of the evidence:

First: Plaintiff must show that she filed discrimination charges against SNET with the federal and state agencies. To satisfy this first element, Ms. Bachiocchi must also prove that when she made the discrimination charges, she was acting under a good faith, reasonable belief that her right to be free from discrimination on the basis of gender was violated.[14]

Second: Plaintiff must prove the individuals she claims retaliated against her were aware she had complained of discrimination.

Third: Plaintiff must prove that SNET subjected her to what is known as an "adverse employment action" after she filed the discrimination charges. An "adverse employment action" is a materially adverse change in the terms and conditions of Ms. Bachiocchi's employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits or other conditions that is "harmful to the point that it could well dissuade" the plaintiff from complaining of discrimination.[15]  An action by one of Ms. Bachiocchi's supervisors or co-workers cannot count as an adverse employment action if did not make a significant change in her employment status, even if it annoyed or frustrated her.

*__Plaintiff's Objection__: Defendant's proposed instruction seems too strongly worded and inflexible under the law of this circuit. See __Morris v. Lindau__, 196 F. 3d 102, 100 (2d Cir. 1999).*

---

[14] Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 210 (2d. Cir. 2006).

[15] Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999); Burlington Northern & Santa Fe Railway Co. v. White, No. 05-259, 2006 U.S. LEXIS 4895 at *8 (June 22, 2006) .

Fourth: Plaintiff must prove there was a causal connection between the adverse employment action and the discrimination charges. That is, plaintiff must prove by a preponderance of the evidence that SNET subjected Ms. Bachiocchi to the adverse employment action <u>because</u> she filed the discrimination charges.[16] To prove this, plaintiff must prove that her discrimination charges were a substantial, motivating factor for an adverse employment action against her by SNET.[17]

If there was a legitimate reason, other than retaliation, for SNET's actions, then you may not find there was a causal connection between her complaint of discrimination and an adverse action. In other words, if you find that SNET's reasons for the alleged tangible adverse employment action or actions were legitimate, you must find in favor of SNET on these retaliation claims.[18]

The causal connection element also means that you may not consider any actions by SNET or its employees that occurred before July 24, 2000. That is because Ms. Bachiocchi made her first charge of discrimination to state agencies on July 24, 2000. By definition, no action by SNET or its employees could have been retaliation for Ms. Bachiocchi's charges of discrimination if it occurred before that date.

---

[16] Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001).

[17] Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).

[18] Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999).

31

## A.     First Affirmative Defense to Retaliation Claim: Failure to Complain

If you find that the elements of the retaliaion claim have been proved, then you must consider SNET's affirmative defenses. I will instruct you now on the elements of the defendant's first affirmative defense.

Like the hostile work environment claim, on this claim, yu must find for SNET if you find that SNET has proved both of the following elements of this defense by a preponderance of the evidence:

First:  SNET exercised reasonable care to prevent retaliation in the workplace, and also exercised reasonable care to promptly correct any retaliatory behavior that did occur.

Second:  Ms. Bachiocchi unreasonably failed to take advantage of any preventive or corrective opportunities provided by SNET.[19]

Proof of the following four items would be enough to establish the first element that I just referred to, concerning prevention and correction of retaliation:

1.  SNET has established an explicit policy against retaliation in the workplace on the basis of gender.

2.  That policy was communicated to employees.

3.  That policy provided a reasonable way for Ms. Bachiocchi to make a claim of retaliation to higher management.

---

[19]  Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

4. Reasonable steps were taken to correct any problem raised by Ms. Bachiocchi.[20]

On the other hand, proof that Ms. Bachiocchi did not follow a reasonable complaint procedure provided by SNET will be enough to establish that Ms. Bachiocchi unreasonably failed to take advantage of a corrective opportunity.[21] In that event, you must find in favor of SNET on its affirmative defense.

*Plaintiff's Objection: This concluding paragraph should also be subject to a standard of reasonableness. For example, perhaps it should state, in opening: "proof that Ms. Bachiocchi negligently failed to follow a reasonable complaint procedure . . . ." The proofs in the case show that Ms. Bachiocchi had repeatedly been cautioned not to make reports to SNET employees outside of the West Group.*

## B. Second Affirmative Defense to Hostile Work Environment Claim: Failure to Exhaust Administrative Remedies

I will now instruct you on the elements of the defendant's second affirmative defense, which is SNET's claim that plaintiff failed to exhaust her administrative remedies.

Here, I instruct you that the law is that plaintiff may only pursue discrimination and retaliation claims in Court based on conduct that she previously raised with the Connecticut Commission on Human Rights and Opportunities (which I will refer to as the "CHRO") and/or the Equal Employment Opportunity Commission (which I will refer to as the "EEOC"), or conduct occurring after she made her complaints to the public agencies that is reasonably related

---

[20] From a jury instruction approved by the Third Circuit Court of Appeals in Robinson v. City of Pittsburgh, 120 F.3d 1286, 1304 (3d Cir. 1997); see Model Civil Jury Instructions for the District Courts of the Third Circuit (2006 ed.) at 287-88.

[21] See Model Civil Jury Instructions for the District Courts of the Third Circuit (2006 ed.) at 287-88.

to the conduct that she raised with the public agencies. In this case, plaintiff does not allege any
conduct occurring after she made her complaints on June 21, 2001. Thus, you should restrict
your attention to whether she previously raised the conduct she complains of with the public
agencies.[22]

Now, it's not your role to question that law or the reasons behind it, although I will tell
you that plaintiffs are required to raise their discrimination claims with these public agencies
first, so that they will have a chance to resolve them before they go to Court. Defendant claims
that several of the events about which she complains in this case were not raised with the CHRO
or the EEOC and therefore you may not consider them in deciding whether she was subjected to
a hostile environment. I instruct you that, to the extent that you find any of plaintiff's claims
were not raised before either of these agencies – and you have in evidence the complaints made
to both agencies – you may not consider those events in making your decision on this claim.

## III.    DAMAGES FOR DISCRIMINATION OR RETALIATION

If you determine that SNET discriminated or retaliated against Ms. Bachiocchi in
violation of Title VII and the Connecticut Fair Employment Practices Act, then you must decide
whether she is entitled to damages. You should not infer that Ms. Bachiocchi is entitled to
recover damages because I am instructing you on damages. It is exclusively your function to
decide the issue of liability outlined above, and I am instructing you on damages only so that you
will have guidance should you decide that she is entitled to recovery.

---

[22] Wilson v. Fairchild Republic Co., 143 F.3d 733, 739 (2d Cir. 1998).

It is Ms. Bachiocchi's burden to prove her damages; it is not SNET's burden to disprove them.[23]

If you find that SNET discriminated or retaliated against Ms. Bachiocchi in violation of federal or state law, you may consider whether she is entitled to compensatory damages.[24] The term "compensatory damages" means an amount of money that would fairly compensate Ms. Bachiocchi for the injuries that she actually sustained and that were caused by SNET's actions.[25] Ms. Bachiocchi has the burden of proving compensatory damages by a preponderance of the evidence. You may award compensatory damages only for injuries that Ms. Bachiocchi proves were caused by unlawful actions by SNET. If you award damages, they must be fair compensation, no more or less.

You may not award damages for lost wages or benefits on plaintiff's hostile work environment claim. Because plaintiff had not proved lost wages or benefits on her retaliation claim, you may not award lost wages or benefits as damages on her retaliation claim either.

*Plaintiff's Objection: At a minimum, this instruction fails to take into account Plaintiff's state law claims.*

If you find for Ms. Bachiocchi, you may award as compensatory damages an amount for emotional distress, pain and suffering, humiliation or mental anguish that Ms. Bachiocchi experienced as a result of SNET's conduct.[26] To recover emotional distress damages, Ms.

---

[23] Sands v. Runyon, 28 F.3d 1323, 1329 (2d Cir. 1994).

[24] 42 U.S.C. § 1981a; Conn. Gen. Stat. § 46a-104 (definition of remedies available under CFEPA)..

[25] Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir. 2001).

[26] Dailey v. Societe Generale, 108 F.3d 451, 454 (2d Cir. 1997).

Bachiocchi must prove, by a preponderance of the evidence, that she suffered emotional distress. In determining the amount of damages that you may decide to award for emotional distress, you should be guided by dispassionate common sense. You may not award damages based on sympathy, speculation or guesswork.[27]

***Plaintiff's Objection****: To juxtapose the final sentence with an instruction concerning only emotional damages is, in plaintiff's view, likely to be misleading. Plaintiff respectfully refers the Court to her Requested Instructions Nos. 5, 6 and 7.*

Compensatory damages do not include damages regarding Ms. Bachiocchi's salary, bonuses or benefits.[28] I direct you that damages for salary, bonuses or benefits should not be awarded, as there has been no proof of such damages in this case. In assessing compensatory damages, you must not consider attorney's fees or the costs of litigating this case. Attorney's fees and costs, if relevant at all, are for the judge and not the jury to decide.[29] Therefore, attorney's fees and costs should play no part in your calculation of any damages.

If you return a verdict for Ms. Bachiocchi on her discrimination or retaliation claims, but Ms. Bachiocchi has failed to prove actual injury and therefore is not entitled to compensatory damages, then you may award no damages at all or nominal damages not to exceed one dollar.[30]

---

[27] Schanzer v. United Techs. Corp., 120 F.Supp.2d 200, 219 (D. Conn. 2000); Pouliot v. Paul Arpin Van Lines, Inc., 235 F.R.D. 537, 545 (D. Conn. 2006).

[28] 42 U.S.C. § 1981(b)(2); Pollard v. E.I. DuPont de Nemours & Co., 532 U.S. 843, 848-54 (2001).

[29] 42 U.S.C. § 1988 (attorney's fees under Title VII are for the court to award).

[30] Bonner v. Guccione, 178 F.3d 581, 600 (2d Cir. 1999) (nominal damages available in TitleVII actions); Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001) (nominal damages not to exceed one dollar).

Nominal damages of one dollar are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

## IV.   EQUAL PAY ACT CLAIM

Alternative #1: Plaintiff has failed to present a prima facie case of a violation of the Equal Pay Act, and therefore I direct you to enter a verdict in favor of SNET on that claim.

Alternative #2: In this case, Ms. Bachiocchi has also made a claim under the Equal Pay Act, a statute that prohibits an employer from paying women less than men for the same work.[31] Specifically, Ms. Bachiocchi claims that SNET paid her less than male employees even though she performed substantially equal work. SNET claims that it paid plaintiff the same compensation that it paid to male employees who performed substantially equal work, and that any male employees who were paid higher wages were so paid for legitimate business reasons.

For Ms. Bachiocchi to prevail on her claim against SNET for violation of the Equal Pay Act, Ms. Bachiocchi must prove all of the following elements by a preponderance of the evidence:

First: Ms. Bachiocchi must prove that SNET employed her and any male employee she claims earned more money than she did in jobs requiring substantially equal skill, effort and responsibility;

Second: Ms. Bachiocchi must prove that the jobs were performed under similar working conditions; and

---

[31] 29 U.S.C. § 206(d).

37

Third:  Ms. Bachiocchi must prove that she was paid a lower wage than the male employees doing substantially equal work.[32]

You should note that "skill," "effort" and "responsibility" constitute separate tests, each of which Ms. Bachiocchi must meet in order to prove her case.[33]

Also, you should note that you may find for Ms. Bachiocchi on her Equal Pay Act claim only if you find that the difference in her compensation was not the result of any factor other than her gender.  On this item, you may consider whether another higher-paid employee had more extensive experience, background, certifications, or training than plaintiff had.  If you find that any difference in plaintiff's compensation was the result of a factor other than her gender, such as the person's skills, qualifications, or length of service, you must find for SNET in the Equal Pay Act claim.[34]

Likewise, Ms. Bachiocchi must show that any difference in her pay was not the result of the operation of a bona fide merit or seniority system by SNET.  First, SNET contends that, if there was any difference between Ms. Bachiocchi's total compensation and the average total compensation of the male employees who did the same work, it was because SNET had a legitimate practice of giving employees "compensation ratings" based on their performance, and further claim that SNET legitimately gave Ms. Bachiocchi a lower compensation rating in some years than it gave some male employees because her performance was not quite as good as theirs was.  In other words, SNET contends that it operated a bona fide merit system.  A bona fide merit

---

[32] Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).

[33] 29 C.F.R. § 1620.14(a).

[34] 29 U.S.C. § 206(d)(iv).

system is an organized and structured procedure under which employees are systematically evaluated according to established standards that are designed to determine the relative merits of the employees. To be a bona fide merit system, the system must reward employees because they performed better. If you find that any difference in Ms. Bachiocchi's overall compensation was the result of a bona fide merit system, your verdict on the Equal Pay Act claim must be for SNET.[35]

Second, SNET contends that, if Ms. Bachiocchi's total compensation was less than that of some particular male employee who did the same work that she did, it was because that employee had more seniority than she did. That is, SNET contends that some differences were the result of the operation of a bona fide seniority system. In order to establish that a seniority system exists, SNET must show that is uses a system that pays employees more the longer they word for SNET. If you find that any difference in pay was the result of a bona fide seniority system, your verdict must be for SNET.[36]

## V.    DAMAGES UNDER EQUAL PAY ACT

If you find that Ms. Bachiocchi has proved by a preponderance of the evidence that she was paid less than male employees for performing substantially equal work and that this was because she's female, and you find that SNET has failed to show that the difference was based on performance or seniority, you must award damages to Ms. Bachiocchi. Ms. Bachiocchi has the burden of proving the amount of these damages by a preponderance of the evidence.

---

[35] 29 U.S.C. § 206(d)(ii).

[36] 29 U.S.C. § 206(d)(i).

39

If you find in favor of Ms. Bachiocchi on this claim, you must award her the amount of money that compensates her for the difference between her compensation and the average compensation of the male employees who were performing substantially equal work, during the period that she was paid as a member of the BCS Group, which was from June 7, 1998 to June 18, 2001.[37]  In assessing damages under the Equal Pay Act, you must not consider any other category of damages such as compensatory damages (i.e., emotional distress damages), punitive damages, attorney's fees, or the costs of litigating this action.

> THE PLAINTIFF,
> KIMBERLY BACHIOCCHI
>
> By: /s/ Peter E. Gillespie
>    Peter E. Gillespie
>    Federal Bar No. ct06554
>    46 Riverside Ave
>    P.O. Box 3416
>    Westport CT 06880
>    Tel. (203) 227-7000
>    Fax. (203) 454-5508
>    Email:  petelaw@mac.com

---

[37]  29 U.S.C. § 216(b) (damages available is amount of underpayment); Melanson v. Rantoul, 536 F.Supp. 271, 291 (D.R.I. 1982) (use of average male salary). .

THE DEFENDANT,
SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By: /s/ Lori B. Alexander

Lori B. Alexander
Federal Bar No. ct08970
Michael G. Caldwell
Federal Bar No. ct26561
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06509
Tel. (203) 784-8200
Fax No. (203) 789-2133
E-Mail: lalexander@tylercooper.com
E-Mail: mcaldwell@tylercooper.com

41