THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

KIMBERLY BACHIOCCHI,       \*

      \*

      \*

   Plaintiff,       \*

      \*

v.       \*

      \*

      \*

THE SOUTHERN NEW       \*

ENGLAND TELEPHONE       \*

COMPANY,       \*

      \*

   Defendant.       \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

## REDACTED

CIVIL ACTION NO. 02-CV-908 (CFD)

MAY 5, 2008

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE CERTAIN TESTIMONY FROM PLAINTIFF'S WITNESS, NICHOLAS FAIELLA

The defendant, The Southern New England Telephone Company ("SNET"), hereby files its memorandum of law in support of its Motion in Limine to preclude plaintiff Kimberly Bachiocchi from offering at trial certain anticipated testimony from fact witness Nicholas Faiella. Specifically, plaintiff should be barred from offering testimony from Faiella alleging that SNET employee Robert Vallario made certain remarks of which plaintiff was unaware until after this litigation commenced, in support of plaintiff's sexual harassment claim. SNET anticipates that plaintiff intends to offer such testimony to show that SNET subjected plaintiff to sexual harassment. As demonstrated herein, the anticipated testimony is not relevant to plaintiff's claims, and therefore is inadmissible under Federal Rule of Evidence 402.

In this case, plaintiff asserts sexual harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq. Plaintiff has disclosed Nicholas Faiella, a former co-worker, as a witness supporting her claims. Based upon Faiella's deposition testimony, SNET reasonably anticipates that plaintiff intends to offer testimony from Faiella about two remarks allegedly made by co-worker Robert Vallario, despite the fact that plaintiff never heard the remarks and admittedly was unaware of them during the relevant period.

Such testimony is inadmissible because, under current law, it is not relevant to a sexual harassment claim under Title VII or CFEPA as a matter of law. Plaintiff cannot have been "harassed" by remarks of which she was unaware. Therefore, any such testimony should be excluded as inadmissible.

## I.    Relevant Facts

From June 1998 through May 2000, both plaintiff and Faiella worked as engineers in SNET's Business Communications Sales Group (the "BCS Group") at Elizabeth Street in Derby, Connecticut. Exh. 1, Deposition of Nicholas Faiella ("Faiella Dep.") 10/27/03, at 5:11-18, 52:16-54:2. During that period, the manager of the BCS Group was Kevin West. The group engineered and installed telecommunications services that SNET provided to businesses. The group was divided into two parts: an engineering unit, headed by Richard Light, in which plaintiff worked, and an installation unit, headed by Robert Vallario, in which Faiella worked. West Aff. ¶¶ 5-7. Plaintiff and Faiella were frequently assigned to work together on SNET projects. Complaint ¶ 13.

2

Starting in early 2000, West and Vallario began to receive reports from contractors and co-workers about plaintiff's interactions with Faiella. Vallario received complaints from outside contractors doing work for SNET that Faiella exhibited an inappropriately defensive attitude toward contractors who dared to criticize plaintiff's work. The situation escalated to the point of creating difficulties for the contractors, who ultimately refused to work on projects to which plaintiff and Faiella were jointly assigned. Vallario CHRO Aff. ¶¶ 3-9, attached hereto as Exhibit 3.

Plaintiff brought this action on May 24, 2002, complaining of, among other things, sexual harassment that she allegedly experienced while working in the BCS Group between June 1998 and June 2001. Plaintiff does not allege that any sexual harassment occurred after she left the BCS Group in June 2001. Complaint ¶¶ 11-34.

Plaintiff noticed a deposition for Faiella as a friendly witness in this action, and the deposition was held on October 27 and October 31, 2003. Plaintiff has listed Faiella as one of her fact witnesses in the Joint Trial Memorandum filed in this matter, stating that Faiella will testify "concerning the environment of the Elizabeth Street workplace, his interactions with both supervisors and co-workers, work assignments, and other like matters relating to his employment at SNET, his working relationship with the plaintiff and like or related issues." Joint Trial Memorandum at 11-12. These subjects are coextensive with the subjects of Faiella's deposition testimony, which dealt exclusively with plaintiff's harassment allegations, as discussed in more detail below. Thus, SNET reasonably anticipates that Faiella's deposition testimony reflects the testimony that plaintiff intends to offer from Faiella at trial.

It is undisputed that plaintiff was unaware of either of these remarks until the time of Faiella's deposition, more than two years after the end of the period during which plaintiff worked in the BCS Group and was allegedly subjected to sexual harassment. Faiella testified as

> Q. Was Ms. Bachiocchi with you at the time it occurred?
> A. No.
> Q. Did you tell her about it?
> A. No.
> Q. You never told her about it?
> A. No.
> Q. So as far as you know, she didn't know that that comment was made until you've just testified about it here today?
> A. I believe so.

Exh. 2 at 39:21-40:6. As to the second alleged remark, Faiella testified as follows:

> Q. And did you tell Ms. Bachiocchi about that comment?
> A. No.
> Q. So, as far as you know, the first time she's heard about it is today?
> A. Yes.

Exh. 2 at 44:3-8. Plaintiff has offered no evidence to contradict Faiella's assertion that plaintiff was never told about either of these remarks before Faiella testified about them in October 2003.

In addition, Faiella testified that no other woman heard either of the alleged remarks either. He stated,

> Q. Who else was present when Mr. Vallario made that comment to you?
> A. No one.
> Q. So only you heard it?
> A. Yes.

Faiella Dep. 10/31/03 42:15-19.

## II.  **Discussion**

### A.  **Standard for Admission of Evidence under Rule 402**

Under Rule 402 of the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible." Under Rule 401, "relevant evidence" means "evidence having any tendency to make any fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence." Thus, any testimony from Faiella which cannot, as a matter of law, be relevant to any of plaintiff's claims in this action cannot be admitted at trial.

### B.  **The Law is Clear That Remarks of Which a Plaintiff Was Unaware Are Not Relevant to Her Sexual Harassment Claims.**

Plaintiff's admissions in her opposition to SNET's motion for summary judgment establish that plaintiff's causes of action for sexual harassment under Title VII and CFEPA are based on the claim that SNET subjected her to a hostile work environment. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 26-31. The testimony at issue will be offered, if at all, to support plaintiff's claim that she was subjected to a hostile work environment. However, because these remarks are not legally relevant to the issue of whether plaintiff was subjected to a hostile work environment, Faiella's testimony about

them is inadmissible. Simply put, remarks of which plaintiff was unaware at the time of the alleged hostile work environment could not have contributed to any feeling on her part that her work environment was hostile.

To show that she was subjected to a hostile work environment, a plaintiff must show that her employer's conduct was sufficiently severe and pervasive to "create an abusive working environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).[1] The abusiveness of the work environment must necessarily be viewed as an aspect of the work environment that was perceived by the employee. "[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Harris v. Forklift Sys., 510 U.S. 17, 21-22 (1993).

For this reason, several circuit courts have held that remarks or events of which a plaintiff was unaware cannot support the plaintiff's claim that she experienced a hostile work environment. "A Title VII plaintiff may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment." Cottrill v. MFA, Inc., 443 F.3d 629, 636 (8th Cir. 2006) (internal punctuation and citation omitted). "Mean-spirited or derogatory behavior of which a plaintiff is unaware, and thus never experiences, is not 'harassment' of the plaintiff (severe, pervasive, or other). Thus, for alleged incidents of racism to be relevant for showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them." Mason v. S. Ill. Univ. at Carbondale, 233 F.3d 1036, 1046 (7th Cir. 2000); see also Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir. 2000) (affidavits about harassing behavior submitted by other employees were

---

[1] Connecticut follows the interpretation of equivalent federal statutes when interpreting CFEPA. Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96, 103 (1996). Therefore, the following analysis applies equally to plaintiff's sexual harassment claims under both Title VII and the CFEPA.

disregarded because there was no evidence that plaintiff was aware of that behavior at the time of the alleged harassment); Hirase-Doi v. U.S. West Commc'ns, Inc., 61 F.3d 777, 782 (10th Cir. 1995) (plaintiff could rely only on evidence relating to harassment of which she was aware).

The Second Circuit has implicitly accepted this rule. In Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997), the Second Circuit held that evidence of remarks made outside the presence of the plaintiff should have been considered by the factfinder to determine whether the plaintiff suffered a hostile work environment because they "allegedly were relayed to [the plaintiff] by [co-workers]" at the time of the alleged harassment. In Schwapp, the plaintiff alleged a racially hostile work environment. In its decision granting the employer's motion for summary judgment, the district court excluded evidence of eight racial remarks that were made outside the plaintiff's presence but of which the plaintiff was aware. The Second Circuit, reversing the grant of summary judgment, held that "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor can also impact the work environment."[2] Id.

The Second Circuit held similarly three years later. In Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000), the Second Circuit found that the District Court erred in finding that incidents occurring outside the presence of the plaintiff were per se immaterial, and specifically cited Schwapp for the principle that "the fact that a plaintiff learns second-hand" of the incident "also can impact the work environment." Whidbee at 71 (emphasis added). Again, the Court emphasized that evidence of remarks or incidents outside the plaintiff's presence is probative if the plaintiff was aware of them at the time of the alleged harassment.

---

[2]    By contrast, in the present case, plaintiff did not personally hear the alleged remarks or learn about them second-hand until the deposition of Faiella in this case.

District Courts in this circuit have also applied the rule that conduct of which a plaintiff was unaware is not relevant to the plaintiff's claim of a hostile work environment. One District Court granted summary judgment on a plaintiff's claim of a racially hostile work environment because the only acts of harassment alleged were statements made "behind his back." Calhoun v. Mastec, Inc., No. 03-CV-386, 2006 U.S. Dist. LEXIS 70374 at *27-28 (W.D.N.Y. Sept. 28, 2006). "[F]atal to Plaintiff's hostile work environment claim is his admission that he was unaware of this activity while he worked at [the defendant's workplace]." Id. at *28. Another District Court accepted this rule when it adopted a magistrate judge's recommended ruling granting summary judgment on a plaintiff's claim of a hostile work environment based on his national origin. Sundaram v. Brookhaven Nat'l Labs., 424 F.Supp.2d 545, 581 n.22 (E.D.N.Y. 2006), adopted by Sundaram v. Brookhaven Nat'l Labs., 424 F.Supp.2d 545, 555 (E.D.N.Y. 2006). The magistrate judge excluded evidence of incidents of which the plaintiff was unaware. "The plaintiff cites other incidents in his argument concerning retaliation and harassment, but since he learned about these incidents only during discovery and was unaware of them while he was still employed at [the defendant's workplace], they do not constitute harassment leading to a hostile work environment." Id. at 581 n. 22. Another District Court dismissed a multiple-plaintiff complaint of a hostile work environment based on gender because it failed to allege that any of the plaintiffs were aware of any of the incidents of harassment alleged. Gibson v. Jacob K. Javits Convention Ctr. of N.Y., No. 95-CV-9728, 1998 U.S. Dist. LEXIS 3717 at *25-28 (S.D.N.Y. Mar. 23, 1998). The Court noted, "I fail to see how a plaintiff can claim that conduct of which she was unaware somehow caused her to experience a hostile environment." Id. at *27-28.

8

The only incidents at issue in this motion are two alleged remarks by Vallario and any other remarks made about plaintiff outside of plaintiff's presence and about which she knew nothing until this litigation. The sole evidence that these remarks were ever made is Faiella's testimony. As noted above, Faiella himself testified that plaintiff never became aware of these alleged remarks until she heard Faiella's deposition testimony about the subject, seventeen months after she commenced this action and twenty-eight months after she left the BCS Group, where she claims the sexual harassment occurred. Thus, under the cases discussed above, evidence about these remarks cannot be relevant to plaintiff's claim that she was subjected to a hostile work environment.

Since the remarks plaintiff seeks to introduce through Faiella's testimony are not relevant to any matter at issue in this action, such testimony should be excluded from evidence under Rule 402.

**III.    Conclusion**

As shown above, plaintiff should be precluded from offering any testimony concerning any purported remarks by Vallerio

In addition, plaintiff should be precluded from offering testimony through Faiella concerning anything Vallerio or others said about plaintiff outside of plaintiff's hearing and without her knowledge during the relevant time. SNET respectfully requests that the Court grant the motion in limine restricting Faiella's testimony.

Dated at North Haven, Connecticut this 5th day of May, 2008.

THE DEFENDANT,
THE SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By _____

    Lori B. Alexander
    Federal Bar No. CT08970
    Littler Mendelson, P.C.
    110 Washington Avenue
    North Haven, Connecticut  06473
    Tel. (203) 234-6344
    Fax (203) 234-6345
    E-Mail: lalexander@littler.com

# EXHIBIT 1

# EXHIBIT 2

# EXHIBIT 3

# AFFIDAVIT OF ROBERT VALLARIO

The following is based on my own personal knowledge.

1. I am over the age of 18 and I believe in the obligations of oath.

2. I am currently 62 years old.

3. Until mid-November 2000, I was a Technical Sales Consultant (installation) in the Business Communication Sales (BCS) department at SNET and reported to Kevin West, manager, Technical Sales Support. In mid-November 2000, I retired from SNET.

4. As a Technical Sales Consultant (installation), I was responsible for selecting contractors to perform the installations of voice and data telecommunications platforms for businesses in Connecticut.

5. Each project usually started with an Analyst Technical Sales (Engineering), such as Kim Bachiocchi, contacting the customer and going to the job site to assess the job requirements. Then the Analyst Technical Sales (engineering) determined the specifications for the job, developed a materials and labor list, determined the price of the job, and ordered the materials.

6. Upon completion of these responsibilities the engineer turned the job over to me to select the outside contractor. I assigned one of the Analysts Technical Sales (installation), such as Nick Faiella, to supervise the installation work. An Analyst Technical Sales (installation) is responsible for assuring that the work done by the outside installation contractors meet SNET's standards and are in compliance with all building and electrical codes.

7.  Nick Faiella who also lives in the New Haven area was also frequently assigned jobs in the New Haven area.  Kim Bachiocchi who lived in the New Haven area often did  the engineering work for jobs in the New Haven area.  Thus, Nick Faiella was often the installation supervisor for jobs that Kim Bachiocchi had engineered.

8.  I have worked with Nick Faiella at SNET since 1988.  Nick has always been had somewhat short-fused and has used coarse language at work.  However, over the course of 1999, I began receiving a number of reports of inappropriate comments and verbal disagreements with others.  On one occasion I witnessed Faiella verbally attack Richard Light.  I then had a meeting with Light and Faiella to resolve the underlying cause of Faiella's verbal attack.  During this meeting, Faiella denied ever making these inappropriate comments even after I told him that I heard them.

9.  Throughout 1999, in a series of conversations, I advised Faiella that such behavior needed to stop.

10.  On or about February 3, 2000, I received a call from Judy Attianese, who handles customer complaints for SNET.  Ms. Attiannese informed me that SNET received a complaint from a Mrs. E. (pseudonym used) that a man in his 50's driving a SNET truck with the license plate #580CZR cut her off and almost caused an accident.  Then, Mrs. E stated that the man pulled up along side and started cursing at her.  Based on the license plate number, Ms. Attianese determined that the vehicle was assigned to Nick Faiella and Ms. Attianese asked me to contact Mrs. E.  I then spoke with Mrs. E who repeated to me what she told to Ms. Attianese and informed me that the incident was witnessed by another passenger in the car with her.  I spoke to Mr. Faiella about this incident but he denied that it happened.

11. Over the course of the first five months of 2000, I received at least four complaints from contractors regarding incidents in which Mr. Faiella acted belligerently towards them.

12. On May 2, 2000, Joe Bordieri, one of the outside contractors doing work for SNET, came over to my house at night because he was extremely upset about a problem he was having on a job. Bordieri said that had recently found himself on a SNET job that was engineered by Kim Bachiocchi and that he found himself needing more wire. He asked Nick Faiella for more wire but that Faiella refused to listen, became very angry, and accused him of wasting wire, which was not the case. Bordieri also explained to me that being short of wire this frequently happens on his jobs for SNET that are engineered by Bachiocchi, and that as a result he loses time and money.

13. On or about May 9, 2000, I discussed the matter involving Joe Bordieri with Faiella and Bachiocchi. Faiella admitted that he had accused Bordieri of wasting wire and that he got angry with the contractor because "he was making it look like it was Kim's fault." I pointed out to Faiella that I had received complaints from other contractors about the engineering work done by Bachiocchi. These contractors also complained that whenever they have had a problem with or disputed any of the engineering work done by Bachiocchi, Faiella would become very defensive of Bachiocchi and antagonist and belligerent towards the contractors, which they said was straining their relationship with SNET. Faiella asked which other contractors had made such comments and I told him: LeMay Communications, Northeast Communications, and A.J. Communications.

14. I then told Faiella that this type of behavior toward SNET contractors was

3

unacceptable. I informed him that I was going to assign Faiella to jobs on which Bachiocchi had not done the specifications. Upon hearing this decision to reassign him, Nick became very angry and shouted at me inappropriately.

15. Subsequently, a test was conducted on the job on which Joe Bordieri worked. A device which measures the distance between the jack and the data equipment confirmed that hat Bachiocchi had not ordered enough wire for the job.

16. On or about May 17, 2000, Faiella asked to meet with Kevin West and me about why he was no longer working on jobs that Bachiocchi had done the specifications. West explained that a Technical Analyst Sales (installations) is not assigned to specific region but is expected to cover the entire state. We explained to Nick that whenever possible jobs are assigned so that supervisors can cover projects close their homes, however, under the circumstances, it was best for the company if he no longer worked on Bachiocchi's jobs in order to maintain good relations with contractors.

17. Nick went out on medical leave from June 7 to August 29, 2000.

18. Prior to Nick coming back to leave on August 30, Kevin West informed me that he planned to put Nick on a performance plan. When Faiella came back to work on August

19. I informed Faiella that he was going to be put on a performance plan and that Kevin would provide him with the details.

20. Faiella became very angry when I told him about the performance plan. He stayed in the office at most 2 hours that day. When he left, he said to me that he was going to see his lawyer and then his doctor.

4

21. West was unable to provide Faiella with the details of the performance plan because the next day, Faiella went out on medical leave and was still out when I retired in mid-November 2000.

22. With regard to the allegation in paragraph 8 of the complaint, Faiella never had a conversation with me in which he accused me of sexually harassing behavior towards Ms. Bachiocchi. I categorically deny that I ever engaged in such behavior towards Ms. Bachiocchi or any other female in the workplace. I have never made a comment like "I thought you were one of the guys." In fact, I have witnessed Faiella inappropriately touching Bachiocchi by rubbing her neck and arm while on the job. Ronald Dursza, Yvan Boulet, and Bill Volkert have also related to me that they had witnessed Nick engaging in similar inappropriate touching with Kim in the workplace.

23. With respect to the allegation in paragraph 8 that I "frequently" had Mr. Faiella fill in for me when I was away, all the Analysts (installation), including Mr. Faiella, have filled in for me in my absence and have done so more or less on an equal basis.

24. With respect to the allegations in paragraph 8 about giving Faiella fine reviews, I never formally reviewed Faiella's work. Kevin West conducted all performance reviews of Faiella.

26. With respect to the allegations in paragraph 8 that I promised Faiella my job after I left, this is not true. First, I did not know that I was leaving SNET until an early-retirement offer was made during the Fall 2000. Second, any decision with regard to filling my position would have come from Kevin West, and certainly not from a me as I was about to leave the company. In fact, when I did leave the company, the decision on who should replace me in my position was made by Kevin West.

27. With respect to the allegations in paragraph 9, I deny that during a meeting in mid-May 2000, I pointed my finger at Faiella and said, "Don't you threaten me."

28. With respect to the allegations in paragraph 10 of the complaint, I deny that I harassed Faiella after he was reassigned. In addition, I never said to Carl Lorentzen that I had moved Nick to "break up the Kim and Nick thing."

29. With respect to the allegations in paragraph 13 of the complaint, I categorically deny that I have ever threatened to retaliate against Faiella for making a complaint with SNET's EEO office.

30. With respect to the allegations in paragraph 24 of the complaint, I never told Mr. Faiella that he was in line for my job. I never told Bachiocchi that Faiella would never get my job because he was too old and SNET wanted someone younger. I myself was about 50 years old when I was promoted to supervisor and about 57 years ago when I was promoted to manager.

The foregoing statements are true and correct to the best of my knowledge and belief.

_Robert Vallario_
Robert Vallario

Sworn and subscribed this 16ᵗʰ day of _February_, 2001.

_Rosalie C. Ness_
Notary Public

ROSALIE C. HESS
NOTARY PUBLIC
MY COMMISSION EXPIRES DEC. 31, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2008, a copy of the foregoing was filed electronically on all parties to this action. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

**Plaintiff's Counsel:**

Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

_____
Lori B. Alexander
Federal Bar No.: CT08970