UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*************************************************
| | |
|---|---|
| KIMBERLY BACHIOCCHI, | * |
| | * |
| Plaintiff, | *  CIVIL ACTION NO. 3:02-CV-908 (CFD) |
| | * |
| v. | * |
| | * |
| THE SOUTHERN NEW ENGLAND | * |
| TELEPHONE COMPANY, | *  MAY 14, 2008 |
| | * |
| Defendant. | * |
| | * |

*************************************************

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
PRECLUDE THE TESTIMONY OF GARY ZACHARIAH, Psy. D.

Defendant moves to preclude the testimony of Plaintiff's treating psychologist, Dr. Gary Zachariah, Psy.D. Defendant alleges that this extreme remedy is warranted because, in Defendant's view, Dr. Zachariah spoliated records. Alternatively, Defendant claims that Dr. Zachariah is not qualified to testify to causation and other issues. Plaintiff believes that these claims are without merit and respectfully requests that Defendant's motion be denied in its entirely.

I.  THE ISSUE OF SPOLIATION

<u>Facts Concerning the Alleged Spoliation</u>  Dr. Zachariah is Plaintiff's treating psychologist.  He holds a doctoral degree in Psychology.  He practices with Psychological Health Associates in West Hartford, Connecticut.

In 2003 Dr. Zachariah was asked to produce, and did produce, <u>all</u> of Ms. Bachiocchi's records.  He did so in two steps.  First, he produced his own extensive chart, together with the rather limited chart maintained by Dr. Kellerher, the medical doctor monitoring plaintiff's medications.  Dr. Zachariah sent copies of these records to both Defendant and Plaintiff's counsel.  A few weeks later, after receiving additional authorizations, he produced the records of Marlene Chelso, an advanced practice registered nurse (APRN) who occasionally worked with Plaintiff in monitoring her medications, and Dr. Peterson.  This supplemental packet of records was sent to Defendant's attorneys, but no copy was sent to Plaintiff's counsel. These facts are set forth in Dr. Zachariah's letter of February 24, 2004, Defendant's Exhibit 3. Dr. Peterson had met Plaintiff on only one occasion in or about November, 2001. Plaintiff's Affidavit, ¶¶4-6, attached hereto as Exhibit A.

Then, in 2004, when served with a subpoena to bring another set of records to his deposition, Dr. Zachariah noted that the Chelso and Peterson records had been lost or misplaced.  As he said : "I misplaced those records in June, 2003  .  .  .  . Therefore, with the attached photocopied records along with Marlene Chelso's and Dr. Peterson's records that were sent separately in June, 2003 <u>your office has all the medical and billing records</u>  .  .  .  ."  Defendant's Exhibit 3.

2

There is more support in the record, beyond Dr. Zachariah's correspondence, to substantiate his statement that all records were, in fact, delivered to Defendant. Defendant's retained expert issued a report dated March 15, 2004. In the report <u>Dr. Kleinman notes that he has examined the records of Ms. Chelso, Dr. Kellerher and Dr. Peterson</u>. See Kleinman Report, Appendix at Items 25, 30 and 31. So, a scant three weeks after Dr. Zachariah's letter describing the trail of document submissions, receipt of those earlier submissions was confirmed by Dr. Kleinman in his report. In light of Dr. Kleinman's admission, it does not seem surprising to note that Defendant has not supplied any certification or affidavit stating that it did not receive the records in question. In fact, as Dr. Zachariah noted and Dr. Kleinman confirmed, the records at issue were sent and received. There was no spoliation.

<u>Legal Analysis of Spoliation</u>  The general definition of spoliation requires some measure of intentional conduct.

> SPOLIATION : The intentional destruction, mutilation, alteration or concealment of evidence, usu. a document • If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible
>
> Black's Law Dictionary (Thomson West 8th Ed.)

In this circuit, however, the meaning of spoliation may be somewhat more complicated, requiring a case by case analysis.

In <u>Reilly v. Natwest Markets Group, Inc</u>., 181 F.3d 253, 267 (2d Cir. 1999). the Court considered a request for a jury instruction concerning an adverse inference to be drawn because spoliation had occurred. In that context, the Court discussed the issue of spoliation, stating:

> The law in this Circuit regarding the level of fault
> necessary for an adverse inference instruction is unsettled.
> In <u>Kronisch v. United States</u>, 150 F.3d 112 (2d Cir. 1998)
> it is suggested that district courts must find that a party
> intentionally destroyed evidence before giving an adverse
> inference instruction. . . . Similarly in <u>Berkovich v. Hicks</u>,
> 922 F.2d 1118, 1124 (2d Cir. 1991), we affirmed a district
> court's refusal to grant a plaintiff an adverse inference
> instruction, noting that "absent any evidence of bad faith,"
> plaintiff was not entitled to such an instruction. <u>Berkovich</u>,
> however, avoided announcing a *per se* rule; instead it ex-
> plicitly limited its holding to "the facts of this case," thereby
> leaving open the possibility that, in certain circumstances,
> an adverse witness instruction would be appropriate even
> without a finding of bad faith.
>
>     *    *    *
>
> Our case by case approach to the failure to produce
> evidence seems to be working. Such failures occur
> "along a continuum of fault  -  ranging from innocence
> through the degrees of negligence to intentionally.
> Trial judges should have the leeway to tailor sanctions
> to insure that spoliators do not benefit from their wrongdoing
>  - a remedial purpose that is best adjusted according to the
> facts and evidentiary posture of each case.
>
> <u>Reilly</u>, 181 F.3d 253, 267.

Defendant relies upon <u>Byrnie v. Town of Cromwell Bd. of Educ</u>., 243 F. 3d 93 (2d Cir. 2001). The Bernie Court, which cited <u>Reilly's</u> case-by-case approach with approval, dealt with the intentional destruction of numerous relevant and material records by a party. Further, the moving party in <u>Byrnie</u> , established the relevance and materiality of the records in question. All of these facts distinguish <u>Byrnie</u> from the instant matter.

Further, in all of the cases cited by Defendant, the party seeking a remedy had been deprived of access to the evidence in question.  In this matter, however, Defendant seems to gloss over the fact that the **records alleged to have been destroyed had actually been sent to defendant and reviewed by its retained expert.**

The caselaw makes clear that even if spoliation has occurred, "the determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge   .   .   .   and is assessed on a case by case basis." *Fujitsu Ltd. V. Federal Exp. Corp*., 247 F. 3d 423, 436 (2d Cir. 2001).

Taking these standards into account, we must first note that there has been no failure to produce evidence.  The documents were lost <u>after</u> they had been sent to Defendant.  The number of documents lost was an extremely small fraction of Plaintiff's treatment records overall.  Plaintiff's interaction with Dr. Peterson concerned only one visit <u>after</u> she had returned to full-time employment.  Nurse Chelso's records would have been limited to a small number of meetings for the purpose of adjusting medications.  Moreover, any loss of records resulted from Dr. Zachariah's innocent error.

To the extent that Defendant's motion is based upon a claim of spoliation, Plaintiff believes that the claim is without merit.  Further, even if the claim had merit, the extraordinary remedy of complete exclusion of Plaintiff's treating psychologist is far too extreme under the circumstances of this case.

II. EXPERT QUALIFICATIONS AND CONCLUSIONS

Defendant also claims that Doctor Zachariah is not qualified to testify as to causation and other issues.

Gary Zachariah, Psy.D. is a doctor of psychology. He has an undergraduate degree in Psychology with honors; a masters degree in Clinical psychology and a doctoral degree. See Deposition transcript attached as Exhibit B at pp 46, 48 and 49. He worked in an internship and did post-doctoral work in a structured program. Exhibit B at pp. 51-2. He is licensed in Connecticut and has taken both national and state examinations to gain that license. Exhibit B at p.65. He is a member of the American Psychology Association. Exhibit B at p. 57.

Dr. Zachariah is plaintiff's treating psychologist. His notes show that by the conclusion of 2000 he had met with her and counseled for a total of 25 sessions. By October 16, 2001 they had met for an additional 27 counseling sessions.

In his early sessions with Plaintiff Dr. Zachariah met her and took a brief history. Exhibit B at p. 118. Although his experience and first hand observations led him to conclude that Plaintiff's distress was caused by the environment in her workplace, he did have knowledge of her background issues and her brief earlier history of therapy. Exhibit B at pp 113-4, 117. He enquired as to whether there was any history of domestic violence and asked about her relationship with her husband. Exhibit B at pp 123, 125. Dr. Zachariah knew of the illness and death of Plaintiff's step-father, Exhibit B at p.129, and the incarceration of her brother.

Now relying heavily on the opinions of its own expert, Defendant seeks to exclude or limit Dr. Zachariah's testimony, most especially as to causation. Defendant claims that Dr. Zachariah's methodology is flawed, essentially because he did not undertake an independent investigation.

Although Defendant cites liberally to the report of its retained expert, it fails to note Dr. Kleinman's admission concerning the accepted standard of treatment. Dr. Kleinman acknowledges the proper methodology used in treatment, stating:

> The treater ordinarily accepts information offered by a patient as generally accurate, and does not – nor according to generally accepted practice is expected to – attempt to independently corroborate or investigate this information.

Kleinman Report at p. 2

In light of this admission, Plaintiff fails to see what is inadequate with Dr. Zachariah's methodology. Perhaps Defendant believes that he could have done more; or that his conclusion as to the causation of distress in this case is wrong. If so, let them cross-examine. Preclusion is not appropriate.

Treating physicians can describe what they have seen, describe and explain the diagnosis and treatment, and may offer opinions and expert inferences based upon their observations gained in treatment. In this way treating physicians commonly consider the cause of the conditions which they treat. _Riddick v. Washington Hospital Center, et al_., 183 F.R.D. 327, 330 (D. D.C. 1998).[1]

---

[1] Even if precluded as an expert, it appears that as a treating psychologist, Dr. Zachariah could testify as a fact witness to his conclusions concerning diagnosis, treatment and causation. _Perkins v. Origin Medsystems, Inc._, 299 F.Supp. 2d 45 at n18 (D. Conn. 2004).

Defendant's call for a *Daubert* Hearing seems excessive. As noted, Dr. Kleinman's report concedes that the treatment method used by Dr. Zachariah was correct, conventional, and medically acceptable. While Dr. Kleinman, acting in his forensic capacity, would do more, the worst he can say about Dr. Zachariah's conclusion is there may be a risk that Dr. Zachariah's finding of causation is incorrect. If so, perhaps Defendant can use this information to challenge Dr. Zachariah, but not to preclude him.

The import of the *Daubert* case was discussed extensively by Judge Underhill in *Perkins v. Origin Medsystems Inc.*, 299 F.Supp 2d 45 (D. Conn. 2004). Assuming that the expert is qualified (an issue apparently conceded by Defendant) the Court must then determine whether the evidence is relevant and has a reliable foundation.

In *Perkins*, as here, Defendant argued that testimony of the treating physician as to causation should be precluded because the treater's reasoning and methodology were flawed. The Court rejected this contention, noting:

> Although an expert is not required to eliminate every potential cause in order for his or her opinion to be admissible under *Daubert*, the expert is required to employ either standard diagnostic techniques to eliminate obvious alternative causes or, if the defendant suggests some likely alternative cause of the plaintiff's condition, the expert is required to offer a reasonable explanation why he or she still believes that the defendant's action or product was a substantial factor in bringing about the plaintiff's condition. . . . A strong temporal relationship . . . can certainly assist a physician in offering a reasonable explanation. . . . Moreover, the court affords great weight to the testimony of treating physicians.

\*     \*     \*

> Origin criticizes Dr. Metzger for failing to account for physical or sexual abuse as a cause . . . Dr. Metzger testified that although it is helpful to be aware of a patient's history of physical or sexual abuse, such information is of only limited potential use because approximately 25% of her patients report incidents of childhood sexual abuse . . . about the incidence of childhood sexual abuse in the general population. . . . [I]t is not her practice to rely solely on such information if there are other obvious causes of the pain.

*Perkins* at 61.

The parallels between *Perkins* and the instant case are clear. According to Dr. Kleinman, Dr. Zachariah used the standard methodology. Defendant's alternate suggestions as to potential causative factors seem widely scattered and not necessarily linked to any actual facts in this matter. Even so, Dr. Zachariah should be permitted to offer a reasonable response to any <u>likely</u> alternative cause[2].

Here, contrary to *Perkins*, Defendant seems determined that Dr. Zachariah should have considered <u>every potential</u> cause no matter how far afield or unlikely. Defendant goes so far as to speculate, for example, on investigating the possible influence of whether "she has ever had miscarriages or given up a child." Defendant's Memorandum at p. 17. Who would ever think to ask such a question randomly. And who would ask such a question in this case, **knowing that Plaintiff had never miscarried or given up any child?** Exhibit 1 at ¶2.

---

[2] Defendant may not be able to identify any likely alternative cause because it has never retained any expert to examine Plaintiff or opine on the cause of her distress.

In both Defendant's Memorandum and the Kleinman report, Defendant asserts that financial causes for distress should have been considered. However, what facts support that contention? The Kleinman report issued on March 15, 2004. In June, 2004, however, Defendant served a subpoena seeking, for the first time, Plaintiff' investment records. A copy of the subpoena is attached as Exhibit C.[3]

Similarly, Defendant raises a question as to trauma during childhood. Who knows what this means ? Neither Dr. Kleinman's report or Defendant's memorandum specify the facts giving rise to this question. If they are referring to some form of childhood abuse, Dr. Zachariah testified that 20% - 30% of his own patients have such a history. Exhibit B at p.10. He, like Dr. Metzger, tends to focus on a plausible cause with a real time relationship to the harm he sees.

Defendant maintains that Dr. Zachariah "never considered alternative sources or explanations" concerning causation. Defendant's Memorandum at p. 15. However, as the facts demonstrate, he did inquire about, *inter alia*, a history of domestic violence, her marital relationship, the illness and death of her step-father, and the incarceration of her brother. He also discussed a brief earlier course of therapy. To claim that he never considered any of it is inaccurate. Perhaps he did not inquire as thoroughly as Defendant believes he should, but he did inquire and he made a good faith judgment based upon his training and his established clinical skills.

---

3
One of the reasons urged by Plaintiff for excluding Defendant's expert is the speculative nature of some of his inquires which are not tethered to the real facts of this case. Such inquiries, potentially, cause pain and embarrassment while having no relevance to this matter. The cited issues are prime examples of the fact that Plaintiff's concerns are well founded.

Dr. Zachariah's Personal Observations About SNET

Defendant also seeks to limit Dr. Zachariah's testimony concerning his personal observations. In this respect, Defendant's posture is puzzling.

Defendant spends much of its brief contending that Dr. Zachariah should have sought out extrinsic sources in an effort to determine causation. The record shows that he did contact at least one extrinsic source : SNET. Yet the moment he seeks to state what he found, Defendant tries to preclude that testimony as well. In a separate motion, Defendant also opposes the admittance of Dr. Zachariah's correspondence with SNET.

Assuming, *arguendo*, that Dr. Zachariah's personal observations are not the subject of expert opinion, they certainly remain the proper testimony of a fact witness, see n 1, *infra*. The testimony is based upon personal experience; further, the correspondence between SNET and Dr. Zachariah to which Defendant now objects was sent and received in the normal and regular course and conduct of Dr. Zachariah's treatment work.

Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that Defendant's motion to preclude or limit Dr. Zachariah be denied in its entirety.

THE PLAINTIFF
KIMBERLY BACHIOCCHI


By:_____
Peter E. Gillespie  (ct06554)
46 Riverside Avenue
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508
Email: petelaw@mac.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 14, 2008 a copy of this Opposition was filed and served by first class post upon anyone unable to accept electronic filing (as noted where applicable). Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Lori B. Alexander, Esq.
Litter Mendelson
110 Washington Avenue – 3rd Floor
North Haven, CT 06473

By: _/s/ Peter E. _____