## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KIMBERLY BACHIOCCHI,                    :

      Plaintiff,                        :

                           :    Civil Action No.:  02-CV-908 (CFD)

   v.                               :

THE SOUTHERN NEW ENGLAND          :    May 16, 2008
TELEPHONE COMPANY,

      Defendant.                        :

                           :

## SNET'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S RETAINED EXPERT STUART KLEINMAN, M.D.

The defendant, the Southern New England Telephone Company ("SNET"), hereby files its opposition to the Plaintiff's Motion in Limine to Exclude the Testimony of Defendant's Retained Expert Stuart Kleinman, M.D. dated May 5, 2008 ("Motion"). For the reasons stated below, plaintiff's motion should be denied.

**I.    Plaintiff's Argument That Dr. Kleinman's Testimony Should Be Precluded Because of An Alleged Failure To Disclose His Compensation Is Without Merit.**

Plaintiff argues that Dr. Kleinman's testimony should be precluded because SNET failed to disclose fully "the compensation to be paid for [his] study and testimony," as required by Rule 26 (a)(2)(B).  Plaintiff argues that she "believes that Dr. Kleinman's report is deficient in light of the requirements of Fed. R. Civ. P. 26(a)(2)" because the report "is completely silent on the issue of compensation, notwithstanding that a statement of the compensation to be paid to the expert is to be included in the report and the report is to be signed by the witness."  Motion at 3, 9.  This argument is

both factually inaccurate and legally unsound inasmuch as (1) SNET provided Dr. Kleinman's hourly rate for his testimony, study, and travel, and (2) even a failure to properly disclose Dr. Kleinman's compensation — if it had occurred — would not justify the wholesale exclusion of Dr. Kleinman's testimony.

Rule 26 (a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert report contain, among other things, "the compensation to be paid for the [expert's] study and testimony . . . ." Fed. R. Civ. P. 26(a)(2)(B).  By mandating specific initial disclosures, Rule 26(a) ensures that both parties are aware of "certain *basic information* that is needed in most cases to prepare for trial or make an informed decision about settlement." Fed. R. Civ. P. 26 (a), advisory committee's notes to 1993 amendments (emphasis added).

As conceded by plaintiff, SNET made timely disclosure of Dr. Kleinman's normal hourly billing rate in Dr. Kleinman's report and then voluntarily provided a more detailed breakdown of his daily and hourly compensation rates for his testimony, study, and travel time. See Motion at 9-10. These disclosures fully satisfied SNET's obligations under Rule 26(a). First, Rule 26(a) only requires "basic information" about Dr. Kleinman's compensation.[1] Second, a party cannot state the total amount paid to an expert for his testimony, study, and travel at the time the expert report is produced — and is limited to giving only an hourly rate for these activities — because testimony and travel have not yet occurred and "study" is not yet finished. Third, although plaintiff

---

[1] Plaintiff argues that SNET's mandatory disclosure under Rule 26 (a)(2)(B) should have included the number of hours that Dr. Kleinman actually spent studying and preparing his report. See Motion at 10. However, she cites no cases or other legal authority for such a proposition and there are none. The plain language of Rule 26 (a)(2)(B), as well as the comment thereto, strongly indicate the opposite. See Fed. R. Civ. P. 26 (a)(2)(B) (mandating disclosure of "the compensation *to be paid* for the [expert's] study and testimony . . ."(emphasis added)). Studying and preparing the report is only a small part of the expert's work in a case, and there is nothing in the rule to indicate such a sub-total must be provided when the report is prepared, well before the completion of the expert's work.

makes much of the fact that SNET provided additional compensation information in a supplemental filing, the fact that some of the information was included in a supplemental filing does not show at all that SNET failed to comply with Rule 26(a). See, e.g., Wechsler v. Hunt Health Sys., No. 94 Civ. 8294, 2003 U.S. Dist. LEXIS 2589, at *12-13 (S.D.N.Y. Feb. 25, 2003) (rejecting argument that expert's compensation must be in a "written report prepared and signed by the witness," noting that "courts have found that this type of additional information, to which defendants are entitled, can be provided in the form of a statement . . . and does not necessarily need to be written and prepared by the expert witness").

In addition, it is noteworthy that plaintiff herself provided *no compensation-related information* in *her* disclosure of her expert witness, Gary S. Zachariah. See Plaintiff's Disclosure of Expert dated January 21, 2003 attached to SNET's Motion in Limine to Exclude Certain Testimony from Plaintiff's Expert Witness, Gary Zachariah, and Request for Daubert Hearing. Accordingly, to the extent that SNET's expert witness is not permitted to testify for failure to provide compensation information, plaintiff's expert witness must be similarly barred.[2]

Plaintiff cites Boselli v. Southeastern Pennsylvania Transp. Auth., 108 F.R.D. 723 (E.D. Pa. 1985) for the proposition that "[d]isclosure of an hourly rate alone is not sufficient" disclosure of the compensation paid to an expert pursuant to Rule 26 (a)(2)(B). Motion at 10. However, the Boselli case does not stand for that proposition at all. In fact, Boselli involved a motion to compel responses to an interrogatory requesting compensation information and made no mention of Rule 26 (a)(2)(B)'s disclosure

---

[2]   In fact, SNET has no objection to an order by the Court that neither Dr. Zachariah nor Dr. Kleinman shall be permitted to testify in this action.

requirements. See Boselli v. Se. Pa. Transp. Auth., 108 F.R.D. at 725-727.[3]  To the

extent that the defendant in Boselli was ordered to disclose additional information about

the compensation of its expert witnesses, that order was based on the party's ability to

conduct discovery *beyond* the "basic information" that must be provided pursuant to Rule

26 (a).  See Fed. R. Civ. P. 26 (a), advisory committee's note to 1993 amendments ("The

enumeration in Rule 26(a) of items to be disclosed does not prevent a court from

requiring . . . that parties disclose additional information without a discovery request.

Nor are parties precluded from using traditional discovery methods to obtain further

information regarding these matters . . . .").  Boselli does not suggest, much less does it

hold as plaintiff suggests, that a sub-total of compensation for study and preparation of an

expert's report is *part of* the disclosure mandated by Rule 26 (a)(2)(B).

In addition to the above, plaintiff received Dr. Kleinman's Rule 26 report and the

supplemental designation over three years ago, in April 2004.  Notwithstanding this fact,

plaintiff has offered no explanation for her excessive delay in bringing this purported

issue to the court's and SNET's attention.  Moreover, plaintiff has never shown any

interest in discovering additional information about Dr. Kleinman's compensation.  She

has not deposed him, filed interrogatories related to such compensation, or filed a motion

to compel based on an argument that SNET was legally required to provide additional

compensation information in the absence of a specific discovery request.  As such, to the

extent plaintiff may now claim she is prejudiced by knowing only Dr. Kleinman's hourly

---

[3]  Likewise, neither of the other cases cited by plaintiff involved the exclusion of expert testimony, let alone  exclusion for failing to disclose an expert's compensation under Rule 26 (a)(2)(B).  See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc., 257 F. Supp. 2d 741 (S.D.N.Y. 2002) (moving to compel information beyond that required by Rule 26 (a)(2)(B)); United States v. Fell, 372 F. Supp. 2d 786 (D. Vt. 2005) (moving to excuse juror for cause where juror was predisposed to believe there was a bias on the part of a psychiatrist expert witness).  As such, these cases are wholly irrelevant.

rate of compensation for his testimony, study, and travel time but not his total

compensation for his work on this case or not a sub-total for his work in preparing his

report, any such prejudice is truly the result of her own actions.

Based on circumstances very much like the one at hand, several courts have in

fact *refused* to preclude an expert's testimony, even where the expert's report *clearly*

failed to satisfy one or more of Rule 26(a)'s requirements.   For example, in Brick v. CSX

Transp., Inc., No. 06CV622, 2007 U.S. Dist. LEXIS 65207, at *10-11 (W.D.N.Y. Sept. 4,

2007), the District Court denied a party's motion to exclude expert testimony despite the

party's wholesale failure to submit an expert report at all as required by Rule 26 (a)).  In

Atkins v. County of Orange, 372 F. Supp. 2d 377, 396-97 (S.D.N.Y. 2005), the District

Court denied a motion to exclude expert testimony based on a claimed inadequate expert

report where (1) the moving party never filed an objection or a motion to supplement to

the expert's report; (2) any prejudice was "a result of their tactical decision to wait a few

months before trial to seek preclusion;" and (3) a supplementary declaration cured the

deficiencies in the report; see also Darling v. Indymac Bank, F.S.B., No. 06-123-B-W,

2007 U.S. Dist. LEXIS 88931, at *7-8 (D. Me. Dec. 3, 2007) (denying motion to exclude

expert's testimony because the court "[could] discern no prejudice to the defendants from

the mere fact that they do not yet know what, if any compensation [the expert] will

receive from his litigation-related services.  This failure of disclosure does not

independently warrant the exclusion of [the expert's] opinions"); Murphy v. Gallery

Model Homes, Inc., No. H-04-0621, 2005 U.S. Dist. LEXIS 45033, at *2-3 (S.D. Tex.

Feb. 18, 2005) (denying motion to exclude expert report and testimony for failure to

comply with Rule 26 (a)(2)(B) where "[d]efendant did not challenge these alleged

deficiencies until the eve of trial" and "fail[ed] to specify the nature of the prejudice occasioned by the alleged Rule 26 violations."); Forrest v. Beloit Corp., No. 00-CV-5032, 2003 U.S. Dist. LEXIS 19851, at *7-10 (E.D. Pa. Oct. 8, 2003) (denying motion to exclude expert testimony for failure to comply with Rule 26 (a)(2)(B) where party did not provide certification stating that he had made reasonable efforts to resolve the dispute).

Equally important, courts have deemed a failure to disclose the compensation paid to an expert to be "harmless" where the opposing party was not unfairly prejudiced. See Fed. R. Civ. P. 37 (c)(1); Huang v. All Crematory Corp., No. 1:00-CV-566, 2002 U.S. Dist. LEXIS 28271, at *3-4 (N.D. Ohio Aug. 22, 2002) (holding failure to disclose expert's curriculum vitae and compensation was curable, and therefore constituted "harmless error" that did not warrant exclusion of the expert's report); see also Hein v. Cuprum, S.A., 53 Fed. Appx. 134, 136-37 (2d Cir. 2002) (affirming trial court's denial of motion to exclude expert's testimony where the court took steps to ensure that no prejudice resulted from the failure to disclose certain testimony in the expert's report).  In this case, SNET supplemented its initial expert report with additional information regarding Dr. Kleinman's billing rates and fully complied with Rule 26(a)(2)'s disclosure requirements.

For all of the above reasons, there is no legal or factual basis for excluding Dr. Kleinman's testimony on the ground that his expert report failed to fully disclose his compensation structure.  Accordingly, plaintiff's motion to exclude his testimony on this ground should be denied.

II.    **Plaintiff's Claim That Dr. Kleinman Seeks to Testify Outside His Area of Expertise is Incorrect and Unsupported.**

Plaintiff states that she "believes that Dr. Kleinman's report establishes that he will seek to testify outside of his area of expertise; that his testimony is of very limited relevance with respect to the material issues in this matter and that any potential relevance is far outweighed by the potential for prejudice to the Plaintiff." Motion at 3. Plaintiff's claims are incorrect and unsupported.

A.    **Dr. Kleinman's Expert Opinions**

SNET has disclosed Dr. Kleinman as an expert witness solely for the purpose of testifying as to the proper methodologies for determining the cause of emotional distress in a clinical setting, and further testifying about the ways in which plaintiff's treating psychologist, Dr. Gary Zachariah, failed to follow a reliable methodology to determine what caused plaintiff's alleged emotional distress in this case. Such testimony will be presented in a Daubert hearing on SNET's motion to preclude Dr. Zachariah's testimony on the issue of causation. If SNET's motion to preclude were to be denied and Dr. Zachariah permitted to testify as to causation at trial, SNET will introduce Dr. Kleinman's expert testimony at trial concerning the unreliability of Dr. Zachariah's methodology for determining causation.

Dr. Kleinman's opinions expressed in his report are as follows:

1. Dr. Zachariah did not use an adequate methodology to determine causation — within the legal context he did so — to a reasonable degree of psychiatric/psychological certainty of Ms. Bachiocchi's mental state. See Dr. Kleinman's Report, attached hereto as Exh. A at 3. In fact, the methodology Dr. Zachariah used in reaching his opinion concerning the cause of plaintiff's emotional distress creates substantial risk of error.

2.  Despite there being significant controversy regarding what transpired, Dr. Zachariah made a determination of fact regarding the nature of Ms. Bachiocchi's former workplace relying solely, or virtually solely, upon her own reporting.

3.  Even if Ms. Bachiocchi had reported forthrightly and forthcomingly to Dr. Zachariah, she could not have fully and accurately conveyed what transpired given the influence of life experiences and psychiatric conditions on a patient's reporting of workplace events.

4.  Dr. Zachariah did not made the type of standard inquiries necessary to detect causes of distress independent of Ms. Bachiocchi's former workplace.

5.  Although it is generally accepted forensic psychiatric/psychological practice to make an effort to obtain independent corroboration of the patient's reporting of workplace events and/or to determine the presence and impact of non-workplace stressors, Dr. Zachariah failed to carry out any such activities prior to rendering his opinion as to causation.

**B.      Dr. Kleinman Is Well Qualified to Render a Forensic Psychiatric Opinion.**

Dr. Kleinman has been a practicing forensic psychiatrist since 1989.  This special field within psychiatry focuses on "the application of psychiatric knowledge and understanding to legal issues and questions." Exh. A at 8.  The question of causation of emotional distress within the context of a legal action is a subject of forensic psychiatric analysis.

In 1987, Dr. Kleinman completed a Program in Forensic Psychiatry at the University of Pennsylvania School of Medicine, Center for Legal Studies. Exh. A at 35. In 1988, he completed a fellowship in Law and Psychiatry at the New York University

Medical Center. Exh. A at 35. Dr. Kleinman is currently a fellow in Forensic Psychiatry

at Columbia University College of Physicians and Surgeons – Cornell Weill Medical

College. Exh. A at 27. He teaches classes in the Assessment of Employment

Discrimination and Harassment, Emotional Distress Claims and other courses in forensic

psychiatry. Exh. A at 28. He worked for five years in New York City at the Bellevue

Hospital Forensic Psychiatry Clinic and was an Attending Psychiatrist for six years in the

Forensic Psychiatry Clinic for the Criminal and Supreme Courts of Manhattan. He has

received accreditation from the American Board of Psychiatry and Neurology in Forensic

Psychiatry. Exh. A at 29. He has published and presented extensively on various topics

in Forensic Psychiatry. Exh. A at 32-35. Thus, Dr. Kleinman's special area of expertise

is in forensic psychiatry, or the application of psychiatry to legal principles and

conclusions. Conclusions about the causes of emotional distress are a clearly defined

area of forensic psychiatry. As indicated in his resume and will be evident in his

testimony, Dr. Kleinman is in fact a leading expert in the proper methodology for

determining the cause of an individual's emotional distress.

     Dr. Kleinman's testimony will not be offered to critique Dr. Zachariah's diagnosis

or treatment of plaintiff. It will be offered to establish that Dr. Zachariah has not used a

reliable methodology to reach his alleged conclusion that the cause of plaintiff's

emotional distress during the time that he treated her was workplace harassment at SNET.

Dr. Zachariah's treatment method, by his own admission, was simply to rely on his "gut"

feeling about the plaintiff and his belief that usually people in therapy usually tell the

truth. At his deposition, Dr. Zachariah responded to the question "why did you come to

the conclusion in your opinion that she was telling you the truth?" as follows: "I've

never seen anybody — I mean, she was genuinely tearful. She was genuinely shaky. She was genuinely looking depressed." Exh. 6 to SNET'S Memorandum of Law in Support of Defendant's Motion in Limine to Preclude Certain Testimony From Plaintiff's Expert Witness, Gary Zachariah, and Request for Daubert Hearing ("Exh. 6") dated May 5, 2008, at 25:15-20. He asserted that, "[t]ypically, people don't come to therapy not telling the truth," but later conceded that patients sometimes lie to him. Exh. 6 at 27:10-14. He testified that he has never been wrong trusting his "gut" about whether a patient was telling the truth. Exh. 6 at 28:12-20. He stated that his "gut" is always right: "I've never been wrong if my gut's told me everything is kosher, is all right." Exh. 6 at 28:22-24. This is not "reliable scientific methodology" and is certainly not sufficient to support an expert opinion as to causation, as Dr. Zachariah is prepared to state to the jury.

In the Motion at issue, plaintiff demonstrates her misunderstanding of the purpose of Dr. Kleinman's testimony when she asserts that, "Dr. Kleinman never questions that the treating professional adhered to the ordinary, medically accepted method of treatment. It just happens that Dr. Kleinman believes that where a legal claim exists, a different standard should be imposed." Motion at 4. As stated above, Dr. Kleinman is not judging Dr. Zachariah's treatment methods. Dr. Zachariah's testimony should be limited to his diagnosis and treatment of plaintiff. However, to the extent that plaintiff intends to offer Dr. Zachariah's testimony in accordance with his report that he reached an opinion that her emotional distress was caused by workplace harassment, such testimony is not based on a reliable methodology and is inadmissible as an expert opinion. Plaintiff's assertion that Dr. Kleinman's "opinion is being directed to legal issues and standards — areas beyond his training and expertise" or areas that are

irrelevant to this case is incorrect. Plaintiff herself has indicated she intends to present

expert testimony on the cause of her emotional distress, and the application of legal

issues such as causation to psychiatric principles is precisely what forensic psychiatry is

all about.

Dated at North Haven, Connecticut this 16th day of May, 2008.


THE DEFENDANT,

SOUTHERN NEW ENGLAND TELEPHONE
COMPANY


By _____
   Lori B. Alexander
   Federal Bar No. CT08970
   Littler Mendelson, P.C.
   110 Washington Avenue
   North Haven, Connecticut 06473
   Tel. (203) 234-6344
   Fax (203) 234-6345
   E-Mail: lalexander@littler.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV908(CFD) |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| Defendant. | : | APRIL 12, 2004 |

## DEFENDANT'S DESIGNATION OF EXPERT WITNESS

Pursuant to Rule 26(A) (2) of the Federal Rules of Civil Procedure, the defendant, the Southern New England Telephone Company ("defendant"), hereby designates Dr. Stuart Kleinman as its expert witness in this matter. Dr. Kleinman, a forensic psychiatrist, will testify concerning the opinions set forth in the attached report. A copy of Dr. Kleinman's CV is also attached. Dr. Kleinman's hourly rate for testimony is $500.00 an hour.

Dated this 12th day of April, 2004 at New Haven, Connecticut.


THE DEFENDANT,
SOUTHERN NEW ENGLAND
TELEPHONE COMPANY


By: _____
Deborah DeHart Cannavino  (CT 08144)
TYLER COOPER & ALCORN, LLP
One Landmark Square
Stamford, CT  06901-2501
Telephone: (203)348-5555
Fax: (203) 348-3875
Cannavino@TylerCooper.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent facsimile and mailed first class mail, postage prepaid, to all counsel and pro-se parties of record this 12th day of April, 2004:

Peter E. Gillespie, Esq.
46 Riverside Avenue
P.O. Box 3416
Westport, CT 06880

Deborah DeHart Cannavino

3

**STUART B. KLEINMAN, M.D.**

**315 CENTRAL PARK WEST**

**SUITE 9N**

**NEW YORK, NY  10025**

**TELEPHONE (917) 441-7500**

## FORENSIC PSYCHIATRIC REPORT:

Regarding Kimberly Bachiocchi,

date of birth, September 22, 1964,

prepared at the request of Debbie Cannavino, Esq.,

and Lori Alexander, Esq.,

on March 15, 2004.

**STUART B. KLEINMAN, M.D.**

**315 CENTRAL PARK WEST**

**SUITE 9N**

**NEW YORK, NY 10025**

**TELEPHONE (917) 441-7500**

**FORENSIC PSYCHIATRIC REPORT:** Regarding Kimberly Bachiocchi, date of birth, September 22, 1964, prepared at the request of Debbie Cannavino, Esq., and Lori Alexander, Esq., on March 15, 2004.

**FORENSIC PSYCHIATRIC ISSUE:**

Did Dr. Zachariah employ - **within the legal context he did so** – methodology which permits reliable determination of causation of the distress Ms. Bachiocchi has reported?

**SOURCES OF DATA**: (See Appendix, p. 6)

**FORENSIC PSYCHIATRIC FORMULATION**:

Considerations in Legal Settings:

Forensic psychiatry is the application of psychiatric knowledge and understanding to legal issues and questions. The American Board of Psychiatry and Neurology recognizes forensic psychiatry as an 'official' specialty of psychiatry.

The methodology used in treatment settings to evaluate causation of emotional distress differs in fundamental ways from that used in legal settings to assist courts in resolving legal issues. **Unless appropriate forensic psychiatric/psychological methodology is used to assess causation of claimed distress in legal settings, there is a substantial risk of forming erroneous conclusions.**

Kimberly Bachiocchi
Mar. 15, 2004

In treatment settings, there is an implicit (and sometimes explicit) understanding that the "patient" desires help with a psychological problem, and that to obtain such assistance she/he must be fully forthcoming and forthright with her/his treater. Predicated on the assumption that the patient's sole motive for participating in treatment is the wish to relieve a 'mental' problem, the treater relies upon the patients honestly - at least as to how she/he perceives events, and fully - to the extent she/he is not inhibited by embarrassment/shame, discussing her/his mental state and life.

The treater ordinarily accepts information offered by a patient as generally accurate, and does not - nor according to generally accepted practice is expected to - attempt to independently corroborate or investigate this information. For example, except for certain medical or mental health treatment records, the treater does not typically obtain material regarding a patient's past. Nevertheless, the treater does not - and should not - reflexively accept as accurate a patient's explanation for her/his problems. Just as an individual may present to an internist complaining of stomach pains and diarrhea requesting antibiotics for "food poisoning", but upon careful evaluation be found to instead have diverticulitis, an individual may present for therapy with an explanation for her/his distress/'dysfunctional' behavior which careful evaluation demonstrates to be only partly, if at all, accurate. The treater 'trusts' the patient's reporting, yet also must independently - using appropriate methodology - make the type of inquires/gather the type of information needed for accurate assessment. Patients, particularly those with significant insight, may reasonably correctly recognize the cause or causes of their difficulties. However, when they do not - and the treater accepts their formulation and/or does not conduct a sufficient evaluation which would reveal otherwise - psychotherapy is likely to, at best, be of limited utility. Psychopharmacological (i.e. medication) treatment, because it largely targets

2

Kimberly Bachiocchi
Mar. 15, 2004

overt phenomena/symptoms rather than causes, is less likely — as long as a condition is correctly diagnosed — to be compromised by inaccurate or partly accurate understanding of causation.

Treatment of those actively involved (or contemplating becoming actively involved) in civil or criminal litigation contains an invisible 'third party' which may fundamentally influence, including distort, how an individual presents her/his mental state and reports information.

In civil matters, this 'third party' is typically a claim for money (and/or a[n] [unconscious] desire for revenge/retaliation).   In criminal matters, it is typically potentially losing or obtaining freedom.   Individuals in legal settings may, for example, intentionally exaggerate distress they (genuinely) experience, and/or not reveal information which may - or at least they believe may - harm their legal interest. Forensic psychiatrists possess special expertise - and employ particular methods - to address these potentially 'contaminating' factors.

### Ms. Bachiocchi:

Ms. Bachiocchi presented to Dr. Zachariah complaining of emotional distress which she attributed to maltreatment in her workplace.  Dr. Zachariah concluded - and testified - she was, **in fact**, harassed at her workplace, and that the (alleged) harassment she suffered caused the condition (Major Depression) he diagnosed.  **The voluminous data reviewed (see Sources of Data) indicate that Dr. Zachariah did not use adequate methodology to determine causation — within the legal context he did so - to a reasonable degree of psychiatric/psychological certainty of Ms. Bachiocchi's mental state.**

3

Case 3:02-cv-00908-CFD     Document 230-2     Filed 05/05/2008     Page 8 of 38

Kimberly Bachiocchi
Mar. 15, 2004

### Dr. Zachariah's Methodology:

1. Despite there being significant controversy regarding what transpired, Dr. Zachariah has made a determination of fact regarding the nature of Ms. Bachiocchi's former workplace relying solely, or virtually solely, upon her reporting.

   Even if fully forthrightly and forthcomingly Ms. Bachiocchi reported to Dr. Zachariah, she could still have not (fully) accurately conveyed what transpired. Certain psychiatric conditions and adverse life experiences, e.g. childhood trauma, may influence, including distort, how an individual perceives events. Minimally, Dr. Zachariah should have (demonstrated he):

   a. reasonably considered 'all sides' of the 'story' regarding alleged workplace events, and

   b. investigated whether Ms. Bachiocchi suffered childhood trauma, and, if so, whether it affected her perception and reporting of alleged, traumatic workplace events.

2. Dr. Zachariah has not made the type of standard inquiries sufficient to detect causes of distress independent of Ms. Bachiocchi's former workplace. Even in a treatment setting entirely free of associated legal issues, not making such inquiries would risk formation of significant misunderstanding of causation. Examples of areas of inadequate inquiry include:

   a. The nature of Ms. Bachiocchi's marriage, particularly her history of documented marital difficulties. Marital problems are a well-recognized cause of depression and anxiety.

4

Case 3:02-cv-00908-CFD    Document 230-2    Filed 05/05/2008    Page 9 of 38

Kimberly Bachiocchi
Mar. 15, 2004

   b.  Ms. Bachiocchi's financial well-being, which documentation indicates should be specifically examined. Money difficulties are a well-recognized cause of depression and anxiety.

   c.  Ms. Bachiocchi's acknowledged exposure to trauma during childhood. It is well-recognized that trauma during childhood may affect individuals during adulthood in many ways.

   d.  Ms. Bachiocchi's psychiatric history, including documented history of mental health treatment. An individual's mental health history is directly relevant - be it in a treatment or legal setting - to assessing causation, prognosis and resolution (of a condition).

3.  Dr. Zachariah has not obtained or tried to obtain materials:

   a.  To attempt to independently corroborate Ms. Bachiocchi's reporting of workplace events.

   b.  To determine the presence – and impact – of non-workplace stressors. It is generally accepted forensic psychiatric/psychological practice (to make an effort) to obtain such materials when addressing causation in such legal settings.

## FORENSIC PSYCHIATRIC CONCLUSION:

The methodology Dr. Zachariah has used creates substantial risk of erroneous understanding of the basis for the distress Ms. Bachiocchi claims in her litigation with SNET.

5

Kimberly Bachiocchi
Mar. 15, 2004

## **APPENDIX:**

### SOURCES OF DATA:

1. Depositions of Gary Zachariah, Psy.D. of:

     October 24, 2003;

     January 16, 2004;

2. Deposition of James Sarfeh, M.D. of September 2, 2003;

3. Records from Southford Falls Pharmacy:

     January 1, 2000 through April 5, 2001;

     April 4, 2001 through August 8, 2003;

4. Records of Thomas Moran, M.D., including treatment notes of:

     March 26, 2002;

     April 12, 2002;

     June 11, 2002;

     January 8, 2003;

     January 31, 2003;

     March 5, 2003;

     May 28, 2003;

5. Depositions of Kimberly Bachiocchi of:

6



Kimberly Bachiocchi
Mar. 15, 2004

May 12, 2003;

May 24, 2003;

6. Records of Gary Zachariah, Psy.D., including:

Registration Form of May 22, 2000;

Intake Summary of May 22, 2000;

Treatment Plan of May 22, 2000;

Billing Summary - Defendant's Exhibit 9;

Letters by Gary Zachariah, Psy.D. addressed "To Whom It May Concern" of:

May 31, 2000;

June 15, 2000;

July 7, 2000;

Attending Physician's Statement of Disability, Mental Health, and Substance Abuse, completed by Gary Zachariah, Psy.D., July 7, 2000;

Attending Providers Report of Cognitive Functional Capacity, July 7, 2000;

Letters by Gary Zachariah, Psy.D. to Diane Deny, R.N., Medical Department SNET, of:

July 7, 2000;

July 28, 2000;

August 15, 2000;

August 24, 2000;

September 15, 2000;

7

8

Kimberly Bachiocchi
Mar. 15, 2004

October 6, 2000;

November 28, 2000;

January 4, 2001;

January 19, 2001;

February 17, 2001;

March 14, 2001;

March 19, 2001;

April 18, 2001;

Letter by Lorraine Mattei, Manager Medical Services, to Gary Zachariah, Pys.D. of January 23, 2001;

Letter by Gary Zachariah, Psy.D. to Lorraine Mattei, Manager Medical Services, of January 28, 2001;

Letter by Lorraine Mattei, Manger, Medical Services, SNET to Kimberly Bachiocchi of February 19, 2001;

Letter by Gary Zachariah, Psy.D. to Lori Moffet, Human Resources, SNET, of June 5, 2001;

Progress notes of:

May 22, 2000;

May 26, 2000;

May 31, 2000;

June 7, 2000;

June 8, 2000;

June 15, 2000;

8

⑨

Kimberly Bachiocchi
Mar. 15, 2004

June 26, 2000;

July 10, 2000;

July 19, 2000;

July 28, 2000;

July 29, 2000;

August 11, 2000;

August 18, 2000;

August 24, 2000;

August 25, 2000;

September 8, 2000;

September 18, 2000;

September 20, 2000;

September 22, 2000;

September 29, 2000;

October 6, 2000;

October 13, 2000;

October 20, 2000;

November 3, 2000;

November 14, 2000;

November 22, 2000;

December 8, 2000;

December 15, 2000;

December 22, 2000;

January 3, 2001;

January 12, 2001;

January 17, 2001;

January 18, 2001;

9

Kimberly Bachiocchi
Mar. 15, 2004

January 19, 2001;

January 23, 2001;

January 24, 2001;

January 26, 2001;

January 30, 2001;

February 2, 2001;

February 9, 2001;

February 16, 2001;

February 25, 2001;

March 9, 2001;

March 16, 2001;

March 22, 2001;

March 28, 2001;

March 30, 2001;

April 6, 2001;

April 20, 2001;

May 11, 2001;

May 14, 2001;

May 15, 2001;

June 1, 2001;

June 4, 2001;

June 5, 2001;

June 6, 2001;

June 15, 2001;

June 22, 2001;

July 6, 2001;

July 15, 2001;

10

Kimberly Bachiocchi
Mar. 15, 2004

July 31, 2001;

August 7, 2001;

September 11, 2001;

September 17, 2001;

October 16, 2001;

October 26, 2001;

November 1, 2001;

November 6, 2001;

December 4, 2001;

January 14, 2002;

January 18, 2002;

February 5, 2002;

February 15, 2002;

February 26, 2002;

March 12, 2002;

April 12, 2002;

May 22, 2002;

June 3, 2002;

June 25, 2002;

July 12, 2002;

July 23, 2002;

August 9, 2002;

August 20, 2002;

September 5, 2002;

September 27, 2002;

October 11, 2002;

October 25, 2002;

11

Kimberly Bachiocchi
Mar. 15, 2004

December 9, 2002;

January 7, 2003;

February 4, 2003;

February 26, 2003;

March 13, 2003;

April 8, 2003;

May 17, 2003;

December 22, 2003;

Records from Psychological Health Associates Billing Records

7. Records of James Sarfeh, M.D., including:

Progress notes of:

April 25, 2001;

June 4, 2001;

October 25, 2001;

November 3, 2001;

March 3, 2002;

April 5, 2002;

September 23, 2002;

October 4, 2002;

December 11, 2002;

January 31, 2003;

March 7, 2003;

April 25, 2003;

Following are seemingly also by Dr. Sarfeh:

12

13

Kimberly Bachiocchi
Mar. 15, 2004

November 6, 2003;

November 20, 2003;

December 12, 2003;

Laboratory/X-ray Reports of:

April 16, 1996;

April 30, 1998;

May 11, 1998;

December 21, 1998;

December 29, 1998;

September 1, 1999;

January 10, 2000;

May 11, 2000;

May 12, 2000;

May 1, 2001;

May 30, 2001;

March 12, 2002;

March 15, 2002;

October 1, 2002;

December 29, 2002;

February 4, 2003;

April 12, 2003;

November 25, 2003;

November 28, 2003;

December 3, 2003;

Thyroid uptake scan of December 4, 2003;

13

Kimberly Bachiocchi
Mar. 15, 2004

Report of ultrasound of thyroid of December 4, 2003;

Report of cytology of December 24, 2003;

Surgical pathology report of December 26, 2003;

December 30, 2003;

January 8, 2004;

Letter by James Sarfeh, M.D. addressed "Dear Chris [Randolff]";

Letter by James Sarfeh, M.D. addressed "Dear Tom" of December 12, 2003.

Letter by James Sarfeh, M.D. addressed "Dear Dr. Roman" of January 4, 2004.

8. Records of Jeffrey Alter, M.D., including:

Patient Registration Medical History of April 12, 2000;

Medical History Updates of:

April 12, 2000;
October 18, 2000;
April 24, 2001;
October 29, 2001;
May 1, 2002.

Treatment notes of:

14

(15)

Kimberly Bachiocchi
Mar. 15, 2004

December 14, 2000;

March 26, 2003;

9. Record of Anna Tirado, M.D., including:

Anatomic Pathology Report of July 8, 1999;

Laboratory results of September 3, 1999;

Report of Mammogram of February 1, 2000;

Operative Report regarding cone biopsy surgery of April 9, 2002;

Treatment notes of:

September 22, 1999;

November 10, 2000;

February 8, 2002;

July 16, 2002;

October 9, 2002;

February 28, 2003;

Surgical Pathology Report of April 12, 2002;

Gynecological Cytology Reports of:

December 29, 1999;

November 20, 2000;

December 6, 2001;

February 11, 2002;

April 12, 2002;

15

16

Kimberly Bachiocchi
Mar. 15, 2004

July 25, 2002;

October 24, 2002;

March 9, 2003;

10. Records of Robert Rauch, D.D.S., including:

Progress notes of:

April 7, 1999;

April 12, 2000;

April 24, 2000;

May 15, 2000;

October 18, 2000;

April 24, 2001;

May 17, 2001;

October 29, 2001;

October 30, 2001;

May 1, 2002;

November 2, 2002;

11. Records of Christopher Randolph, M.D., including:

Skin test record;

Laboratory Report of December 29, 2002;

Letter by Christopher Randolph, M.D. to James Sarfeh, M.D. of October 31, 2002;

Chart note of December 30, 2002.

16

Kimberly Bachiocchi
Mar. 15, 2004

12. Records of Joseph Wu, M.D., including:

Report of MRI of November 14, 2001;

Progress notes of:

October 11, 2001;
November 5, 2001;
November 26, 2001;
January 7, 2002;
January 28, 2002;
February 4, 2002;
March 4, 2002;

13. Letter by Samuel Friggers, M.D. to Julie DeRose of February 7, 2002;

14. Calendar entries of Kimberly Bachiocchi of:

January 1, 2000 through December 31, 2001;
February 5 and February 6, 2002;

15. Report by Stephen Flagg, M.D. to Julie DeRose, Claims Examiner, of December 18, 2001;

16. Letter by Carole Wilder, Senior Counsel, SNET, to Robert J. Brothers, Jr. Esq., Acting Regional Manager, Connecticut Commission on Human Rights and Opportunities, of August 3, 2001;

17. Affidavit of Laurie Moffet of August 3, 2001;

18. Affidavits of Kevin West of:

17

(18)

Kimberly Bachiocchi
Mar. 15, 2004

September 14, 2000;

August 1, 2001;

19. Investigative Report by Robert Ellis of June 21, 2001;

20. Statement of Kevin West to Robert Ellis of June 19, 2001;

21. Affidavit of Illegal Discriminatory Practice by Kimberly Bachiocchi of June 8, 2001;

22. Complaint by Peter Gillespie, Esq. to Femi Bogle-Assegai, Regional Manager, CCHRO, of June 8, 2001;

23. Statement of Kimberly Bachiocchi to Robert Ellis of June 6, 2001;

24. Derby Police Department Incident Report of June 4, 2001;

25. Records of Marlene Chelso, A.P.R.N. of

December 7, 2000;

May 24, 2001.

26. Personnel file of Kimberly Bachiocchi, including:

Probation period evaluations for:

December 29, 1986;

January 21, 1987;

Letter (unsigned) to Kimberly Strobino of April 13, 1987;

18

Case 3:02-cv-00908-CFD    Document 230-2    Filed 05/05/2008    Page 23 of 38

Kimberly Bachiocchi
Mar. 15, 2004

Student Evaluation Form, Technical Training Department, for attendance dates:

> July 11 through July 15, 1988;
> July 28, 1988;

Letter by F. Alex Tredinnick, III to James Cassidy, Jr., Director of Customer Service, of August 29, 1991;

Letter by Melissa Buckley to A. Thomas Kelly, President, SNET Systems, Inc., of May 28, 1991;

Letter by John Moran, Staff Accountant/Office Manager, to A. Thomas Kelly, President, SNET Systems, Inc., of November 12, 1991;

Letter (signature of writer illegible) to Kimberly Bachiocchi of December 31, 1991;

Absence and Tardiness Record for:

> 1984;
> 1985;
> 1986;
> 1989;
> 1990;
> 1991;
> 1992;
> 1993;
> 1994;

19

Kimberly Bachiocchi
Mar. 15, 2004

Letter by T. H. Cole, Manager-Government Accounts, to G.D. Connor of January 6, 1994;

Learning Center Performance Reports of:

> May 12, 1989;
>
> August 19, 1991;
>
> November 8, 1991;
>
> January 17, 1992;
>
> March 15, 1993;
>
> March 29, 1993;
>
> July 26, 1994;

Letter by Jim Garrett, Games Operation Manager, addressed "Dear Kim" of November 28, 1994;

Requests to examine personnel file of:

> July 1, 1992;
>
> February 1, 1995;

1996 Goals - January through December 1996 Review Worksheet;

Process Performance Management - signed by Kimberly Bachiocchi, February 13, 1996;

New SNET Award Form, signed by C. R. Peples, October 1, 1996;

Special Impact Contribution - 1997;

Leadership Skills - 1997;

20

Kimberly Bachiocchi
Mar. 15, 2004

Performance Appraisals for:

> 1996 - signed by Kimberly Bachiocchi, March 10, 1997;
>
> 1997 - signed by Kimberly Bachiocchi, March 13, 1998;

SNET - Network Learning Center Performance Review - signed by Kimberly Bachiocchi, November 4, 1998;

Management Performance Record for 1998 - signed by Kimberly Bachiocchi, January 6, 1999;

Achievement and Development Goals, unsigned, January 10, 2001;

Customer Comment Cards by:

> Dr. Burns, City Center for Chiropractic;
>
> Timothy McGaughey, Director of Finance, Lexitech, Inc.;
>
> Thomas Colville;
>
> T. F. Claypoole, V.M.D.;
>
> Rocco Torrenti;
>
> Samuel Dixon;
>
> Maria Acampora;
>
> George Baxter;

27. Letter by Peter Gillespie, Esq. to Femi Bogle-Assegai, Regional Manager, CCHRO, of December 29, 2000;

28. Merit Assessment - Notice of MAR Dismissal - by Kathleen Bowden Garassino of December 19, 2000;

21

(22)

Kimberly Bachiocchi
Mar. 15, 2004

29. Letter by Carole Wilder, Senior Counsel, SNET, to Femi Bogle-Assegai, Regional Manager, CCHRO, of September 20, 2000;

30. Records of John Kelleher, M.D., including progress notes of:

 June 8, 2000;

 June 29, 2000;

 July 28, 2000;

 July 29, 2000;

 August 24, 2000;

 September 20, 2000;

31. Records of Greg Peterson, M.D., including progress notes of:

 June 8, 2000;

 June 29, 2000;

 July 27, 2000;

 August 24, 2000;

 September 20, 2000;

32. Affidavit of Robert Vallario of September 19, 2000;

33. Affidavit of Richard Light of September 15, 2000;

34. Affidavit of Carl Lorentzen of September 14, 2000;

35. Records of Bhupinder Lyall, M.D., including:

 Letter by Mark Schwartz, M.D. to Bhupinder Lyall, M.D. of September 16, 1999;

22

Note by Nina Horowitz, M.D. to Anna Tirado, M.D. of March 19, 2000;
Laboratory Reports of:

    September 2, 1999;
    January 10, 2000;
    May 12, 2000.

Progress notes of:

    October 13, 1999;
    October 18, 1999;
    January 12, 2000;
    May 19, 2000.

36. E-mail by Carl Lorentzen to Bob Vallario of May 15, 2000;

37. Records of Nina Horowitz, M.D., including:

   Notes of:

    February 8, 2000;
    August/March (not fully legible) 2, 2000;

38. Letter by Samuel Briggers, M.D. to Mark Schwartz, M.D. of December 15, 1999;

39. Records of Michael Kligfeld, M.D., including progress notes of:

    August 28, 1997;
    September 3, 1997;
    September 10, 1997;

23

(24)

Kimberly Bachiocchi
Mar. 15, 2004

October (date illegible), 1997;

October 23, 1997;

October 29, 1997;

December 12, 1997;

40. Records of Jeffrey Sumner, M.D., including progress notes of:

January 25, 1994;

February 8, 1994;

February 15, 1994;

March 8, 1994;

April 5, 1994;

May 3, 1994;

June 7, 1994;

August 1, 1994;

February 13, 1995;

February 27, 1995;

March 27, 1995;

April 11, 1995;

June 27, 1995;

November 26, 1996;

January 14, 1997;

41. EEO file of Kimberly Bachiocchi, including:

Letter by Margaret Heath, Staff Assistant-Counseling, to Frank Iovne, Staff Manager-Labor Relations, regarding meeting with Kim Strobino, Communications Equipment Technician, of July 12, 1988;

24

(25)

Kimberly Bachiocchi
Mar. 15, 2004

Handwritten notes of:

July 13, 1993 - (10 pages) titled "Kimberly Bachiocchi";

August 17, 1993 - (5 pages) titled "Darby Coners";

August 25,

August 26,

Undated - (3 pages) titled "Allegations"

One untitled, undated - containing dates:

August 3, (no year);

August 4, (no year);

August 6, (no year);

Typed document - (two pages) untitled, undated - signed by Varley Connor;

42. Summary of Treatment for Kimberly Bachiocchi by Gary Zachariah, Psy.D. (undated);

43. Records of Dr. Horwitz;

44. Records of Stephen Flagg, M.D.;

45. Records of John O'Brien, M.D.;

46. Records of Mark Schwartz, M.D.;

47. SNET medical file of Kimberly Bachiocchi.

26

Stuart B. Kleinman, M.D.


315 Central Park West
Suite 9N
New York, New York 10025
(917) 441-7500


## WORK EXPERIENCE

| 1994 – 1999 | Bellevue Hospital Forensic Psychiatry Clinic |
|---|---|
| 1989 – Present | Independent Consultant, Crime Victims Compensation Board of New York State |
| 1988 - 1996 | Medical Director, Crime Victims Center, Brooklyn, New York |
| 1988 - 1994 | Attending Psychiatrist, Forensic Psychiatry Clinic for the Criminal and Supreme Courts of Manhattan |


## ACADEMIC APPOINTMENTS

| 2003 2004 | Associate Clinical Professor of Psychiatry, Columbia University College of Physicians and Surgeons |
|---|---|
| 1990 - 2003 | Assistant Clinical Professor of Psychiatry, Columbia University College of Physicians and Surgeons |
| 1988 - 1990 | Instructor in Clinical Psychiatry, Columbia University College of Physicians and Surgeons |
| 1989 - Present | Adjunct Instructor in Psychiatry, New York University School of Medicine |



## HOSPITAL APPOINTMENTS

1990 - Present Assistant Attending Psychiatrist, Columbia Presbyterian Medical
       Center - New York Presbyterian Hospital

1988 - 1990  Assistant Psychiatrist, Columbia Presbyterian Medical Center

## TEACHING EXPERIENCE

1999 - Present Columbia University College of Physicians and Surgeons - Cornell
       Weill Medical College, Fellowship in Forensic Psychiatry
       Subjects taught includes/have included:
          (1) Post Traumatic Stress Disorder
          (2) Assessment    of      Employment
       Discrimination/Harassment,
           Emotional Distress Claims

1992 - 1994  Instructor, Certified Trauma Curriculum, International Association
of

       Trauma Counselors, Jersey City College

1991 - 1996  Columbia University College of Physicians and Surgeons,
       Course Director, Elective in Forensic Psychiatry and Victimology

1988 - Present Bellevue - Tri-State Chapter American Academy of Psychiatry and
the

       Law, Course in Forensic Psychiatry
       Subjects taught includes/have included:
          (1) Assessment    of      Employment
       Discrimination/Harassment,
           Emotional Distress Claims
          (2) Traumatic Stress/Memory/Dissociative Conditions
          (3) 'Victimology'



2

## SPECIALTY BOARDS

| | |
|---|---|
| 1994 | Added Qualifications in Forensic Psychiatry, American Board of Psychiatry and Neurology |
| 1993 | Certified Trauma Counselor, International Association of Trauma Counselors |
| 1989 Neurology | Diplomate in Psychiatry, American Board of Psychiatry and |

## LICENSURE

| | |
|---|---|
| 2000 | Connecticut |
| 1987 | New York |

## ACADEMIC HONORS AND AWARDS

| | |
|---|---|
| 1982 | Alpha Omega Alpha |
| 1980 | Phi Beta Kappa |

## PROFESSIONAL ORGANIZATIONS

| | |
|---|---|
| 2003 | Association of Threat Assessment Professionals |
| 2003 - 2005 | Treasurer - Northeast Chapter |
| 1999 - 2001 | The Association of the Bar of the City of New York Science and Law Committee - Adjunct member |
| 1996 - 2001 | New York State Psychiatric Association |
| 1996 - 1999 | Committee on Psychiatry and the Law |



3

<u>PROFESSIONAL ORGANIZATIONS</u> - (Continued)

| | |
|---|---|
| 1984 - Present | American Psychiatric Association |
| 1996 - 1997 | New York County District Branch Study Group on Disaster |
| 2001 - Present | New York County District Branch - Task Force on Disaster |
| | |
| 1986 - Present | American Academy of Psychiatry and the Law |
| 1988 - Present | Chair, Committee on Trauma and Stress (formerly Victimology) |
| 1992 - 1993 | Chair, Learning Resources Committee |
| | |
| 1987 - Present | Tri-State Chapter |
| 1996 - 1998 | President |
| 1994 - 1996 | Vice President |
| 1992 - 1994 | Secretary |
| 1991 - 1992 | Councilor |
| 1992 | Program Chair, Annual Meeting, "Trauma, Children and the Law" |
| 1991 | Program Chair, Annual Meeting, "Stress Response Syndromes and the Law" |
| | |
| 1988 - Present | International Society for Traumatic Stress Studies |
| 1991 - Present | New York Chapter |
| 1993 - 1995 | President |
| 1992 - 1993 | Treasurer |
| | |
| 1989 | Ad Hoc Task Force on Interpersonal Victimization Disorders |

## PRESENTATIONS (PAST TEN YEARS)

October, 2003          "The Use and Misuse of Psychological Tests@, Panel Presentation, Annual Meeting, American Academy of Psychiatry and the Law, San Antonio, Texas

May, 2003             "A Terrorists Competency to Stand Trial: Assessing Amnesia",
Panel

                      Presentation, Annual Meeting, American Psychiatric Association, San
                      Francisco, California

November, 2002        "The Insanity and Related Defenses", Conference, New York State Association of Criminal Defense Lawyers, Brooklyn, New York

January, 2002         "Forensic Psychiatric Assessment of Claims of Harassment and Disability Discrimination", Panel Presentation, Annual Meeting, Tri-State Chapter American Academy of Psychiatry and the Law, New York, New York

January, 2002         "How Can They Do It: Dynamics of Those Who Commit
Terrorism",

                      Society for Liaison Psychiatry, Beth Israel Hospital, New York, New York

November, 2001        "Psychological First-Aid for Terror Victims", Coalition of Voluntary Mental Health Agencies, New York, New York

October, 2001         "Treatment of Traumatic Stress Disorders: Acute Interventions in Response to the World Trade Center Attack", Columbia University Mental Health Training Project, New York State Psychiatric Institute,
                      New York, New York

<u>PRESENTATIONS (PAST TEN YEARS)</u> - (Continued)

October, 2001        "Fibromyalgia Controversies: Diagnosis Dilemmas and the Americans with Disabilities Act", Panel Presentation, Annual Meeting, American Academy of Psychiatry and the Law, Boston, Massachusetts

September, 2001      "Terrorism and its Aftermath", Grand Rounds (with Randall Marshall,
                     M.D.) Columbia University College of Physicians and Surgeons,
        New
                     York, New York

April, 2001          "Understanding Psychiatric Disabilities Law: The Challenges of the ADA", Symposium, The Association of the Bar of the City of New York, New York, New York

March, 2001          "Sexual Harassment", NYU-Bellevue, Tri-State        Chapter
American
                     Academy of Psychiatry and the Law Review Course, New York,
        New
                     York

October, 2000        "PTSD: Research, Evaluation and the Law", Panel Presentation, Annual Meeting, American Academy of Psychiatry and the Law, Vancouver, Canada

May 01, 1999         "Domestic Violence and Child Custody", Panel Presentation, Annual Meeting, Women's Bar Association of the State of NY, Tarrytown, NY

March 18, 1999       Trauma - Forensic Psychiatric Considerations, Panel Presentation, Meeting, New York County District Branch, American Psychiatric Association, New York, New York

October 23, 1998     "'Hypersensitivity' and Sexual Harassment Claims", Chair, Panel Presentation, Annual Meeting, American Academy of Psychiatry and the Law, New Orleans

(32)

<u>PRESENTATIONS (PAST TEN YEARS)</u> - (Continued)

| | |
|---|---|
| February 20, 1997 | "Prisoners of Fear: Survivors Of Terrorism", Annual Meeting, American Academy of Forensic Sciences, New York, New York |
| February 18, 1997 | "The Psychologic Impact of Terrorism", Panel Presentation – Multidisciplinary Symposium on the Uses of Forensic Science – "Forensic Science Responds to Mass Disaster/Terrorism", Annual Meeting, American Academy of Forensic Sciences, New York, New York |
| November, 1995 Eastern | "Recovered Memories: Therapists Wounds", Annual Meeting, Group Psychotherapy Association, New York, New York |
| October, 1995 | "Forensic Psychiatric Evaluation in Sexual Harassment Cases", Human Resources Center, New York, New York |
| June, 1995 Presentation, | "Medication Management of Traumatic Stress", Panel Conference on Traumatic Stress, New York State Psychologic Association, Hofstra College, New York |
| October, 1994 | "The Victim Debate: Can Trauma Induced Disorders Be Used to Exculpate Criminal Behavior", Panel Presentation, Annual Meeting, American Academy of Psychiatry and the Law, Maui, Hawaii |
| May, 1994 Disorder", | "Psychopharmacologic Treatment of Post Traumatic Stress Annual Meeting, New York State Psychologic Association, Lake George, New York |
| May, 1994 | "Criminal Behavior and Dissociation", Faculty Seminar, Columbia University, New York, New York |

(33)

PRESENTATIONS (PAST TEN YEARS) - (Continued)

March, 1994          "Dissociation, Victimization and Violent Behavior", Faculty
Seminar,

                  Mt. Sinai School of Medicine, New York, New York


PUBLICATIONS

Peer Reviewed Journals

Kleinman, S., "Managing the Managers: Supporting Functioning of Employees Facing Threats of Terrorism", *Psychiatric Services, Frontline Report*, 53 (10):2002;1340-1341

Kleinman, S., "Terror at Sea: Vietnamese Victims of Piracy", *American Journal of Psychoanalysis*, 50(4):1990;351-362

Kleinman, S., "Liberty and Tardive Dyskinesia: Informed Consent to Antipsychotic Medication in the Forensic Psychiatric Hospital", *Journal of Forensic Sciences*, 35(5):1990;1155-1162

Kleinman, S., "A Terrorist Hijacking: Victims' Experiences Initially and Nine Years Later", *Journal of Traumatic Stress Studies*, 2(1):1989;
49-58

Book Chapters

Kleinman, S., APsychiatric-Legal Considerations in Providing Mental Health Assistance to Disaster Survivors@, in *Psychiatric Clinics of North America,* S. Barth, ed., Philadelphia: W.B. Saunders Company, in production

Kleinman, S., Egan, S., "Trauma Induced Psychiatric Disorders and Civil Law", Second Edition, in *Principles and Practice of Forensic Psychiatry*, R. Rosner, ed., New York: Chapman and Hall, 2003

Kleinman, S., 1998, "Psychopharmacological Management of        Traumatic        Stress and Aggression", in *Violence in Our Lives: Impact on Workplace, Home and Community*, E. Carll, Massachusetts: Allyn and Bacon



PUBLICATIONS - (Continued)

Kleinman, S., 1994, "Trauma Induced Psychiatric Disorders and Civil Law", in *Principles and Practice of Forensic Psychiatry*, R. Rosner, ed., New York: Chapman and Hall

Kleinman, S., 1994, "Trauma Induced Psychiatric Disorders in Criminal Court", in *Principles and Practice of Forensic Psychiatry*, R. Rosner, ed., New York: Chapman and Hall

Book Reviews
Kleinman, S., 1994, Review of "Trauma and Recovery: The Aftermath of Violence From Domestic Violence to Political Terror", J. Herman, New York: Basic Books in *Bulletin of American Academy of Psychiatry and the Law*

## TRAINING

Fellowship
1987 - 1988    New York University Medical Center, Program in Law and
Psychiatry

1986 - 1987    The University of Pennsylvania School of Medicine, Center for
Social-
            Legal Studies, Program in Forensic Psychiatry

Residency
1984 - 1987    The Institute of Pennsylvania Hospital

Internship
1983 - 1984    Pennsylvania Hospital

## EDUCATION

1979 - 1983    Medical College of Pennsylvania

1977 - 1979    B.A., Magna Cum Laude, Lehigh University
            (B.A. - M.D. six year accelerated program)



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV908(CFD) |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| Defendant. | : | APRIL 27, 2004 |

## DEFENDANT'S SUPPLEMENTAL DESIGNATION OF EXPERT WITNESS

Pursuant to Rule 26(A) (2) of the Federal Rules of Civil Procedure, the defendant, the Southern New England Telephone Company ("defendant"), hereby supplements its designation of expert witness in the above-captioned matter. Dr. Stuart Kleinman's rate for deposition and court testimony is $4,000 a day (for up to a maximum of 8 hours). After 8 hours, Dr. Kleinman bills at his hourly testimony appearance rate of $500.00 an hour. His travel time is charged at $400.00 an hour. Dr. Kleinman was paid at a rate of $400.00 for his study. A signed copy of his report is attached. In addition, a listing of the other cases in which Dr. Kleinman has testified as an expert at trial or by deposition within the preceding four years is also attached.

Dated this 27th day of April, 2004 at Stamford, Connecticut.


THE DEFENDANT,
SOUTHERN NEW ENGLAND
TELEPHONE COMPANY


By: _Debbi Cannavino_

Deborah DeHart Cannavino  (CT 08144)
TYLER COOPER & ALCORN, LLP
One Landmark Square
Stamford, CT  06901-2501
Telephone: (203)348-5555
Fax: (203) 348-3875
Cannavino@TylerCooper.com

2

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, a copy of the foregoing was filed

electronically on all parties to this action.  Notice of this filing will be sent by e-mail to

all parties by operation of the court's electronic filing system.  Parties may access this

filing through the court's CM/ECF System.

Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880


Lori B. Alexander
Federal Bar No.: CT08970