UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KIMBERLY BACHIOCCHI, | \* | |
| | \* | |
| Plaintiff, | \* | CIVIL ACTION NO. 3:02-CV-908 (CFD) |
| | \* | |
| v. | \* | |
| | \* | |
| THE SOUTHERN NEW ENGLAND | \* | |
| TELEPHONE COMPANY, | \* | MAY 28, 2008 |
| | \* | |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PLAINTIFF'S MEMORANDUM SUPPORTING HER
OBJECTIONS TO DEFENDANT'S PROPOSED EXHIBITS

The parties appeared before the Court on May 21, 2008 and offered argument concerning the proposed exhibits. During argument the Court raised certain questions and provided the parties with an opportunity to brief the issues discussed. This Memorandum is submitted in an effort to address the issues thus raised.

DEFENDANT'S PROPOSED EXHIBITS 7 AND 8: Defendant has proposed to offer notices of dismissal which were issued in the administrative proceedings below. The Connecticut Commission on Human Rights and Opportunities ("CCHRO") is a "local deferral agency" and it issued a Merit Assessment Review [MAR] Decision, DX

7, which was followed by the Equal Employment Opportunity Commission issuing a decision deferring to the local agency, DX 8.

Plaintiff contends any possible relevance of the dismissals was far outweighed by prejudice to the Plaintiff and, further that because she sought reconsideration of these dismissals and it was granted, these are not final decisions. Moreover, these documents, without more, are misleading in light of the later granting of reconsideration. A copy of that Decision granting reconsideration is attached as Exhibit A.

In *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60 (2d Cir. 1998), the Court considered the District Court's ruling that a finding of the CCHRO was inadmissible. The Appeals Court concluded that such findings were within the "public records" exception to the hearsay rule, Fed. R. Evid. 803(8)(C), unless there is something to indicate a lack of trustworthiness. However, the trial court nonetheless retains discretion to exclude such hearsay on other grounds, such as where probative value is substantially outweighed by the danger of unfair prejudice. The Court then held that the district court is in the best position to consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency.

Following *Paolitto* courts have shown some reluctance to admit agency findings of the type offered by Defendant. *Jackman v. Weil, Gotshal & Manges, LLP*, (E.D.N.Y. Aug. 3, 2007)(Defendant has full opportunity to present evidence and

admitting the administrative dismissal would be to suggest to the jurors that they should reach the same conclusion); *Cook v. Hatch Asso*. (W.D.N.Y. April 30, 2007)(Excluding EEOC Finding because it was not clear that any witness had been interviewed nor was the nature of the evidence reviewed clear from the finding); *Barlow v. Connecticut*, 319 F.Supp.2d 250, 258(D. Conn. 2004) (CCHRO findings excluded as unreliable, being based, in part, on hearsay and because the court has all of the same information available); *Keene v. Hartford Hosp*., 208 F.Supp.2d 238, 243 (D. Conn. 2002)("CCHRO" reasonable cause determination precluded as it describes merely what could have occurred); *Nuwersa v. Merrill, Lynch, Fenner & Smith, Inc.*, 174 F. 3d 87 at n. 4 (2d Cir. 1999) (Criticizing findings of a local deferral agency as being conclusory, describing neither the nature nor extent of investigation and failing to interview witnesses or conduct a fact-finding conference before issuing the findings.) Copies of *Jackman* and *Cook* are attached as Exhibit B.

     In light of these cases, Plaintiff believes that the two proposed exhibits should be excluded. There is nothing in Exhibit 7 to suggest that the agency ever actually contacted or interviewed witnesses, and the Decision on Reconsideration specifically notes that Mr. Faiella's testimony "will be very important." Exhibit A at p. 4. The clear implication is that he had not yet given that testimony as of the time of the dismissal. It should also be noted that the CCHRO dismissal was not a final finding.

     The CCHRO issued its "Decision on Reconsideration" on January 22, 2002. The Decision notes that the original filing was dismissed pursuant to the MAR [Merit Assessment Review] process on December 19, 2000 and that Complainant [Plaintiff]

3

filed for reconsideration on December 29, 2000, within the 15 day statutory deadline. After analysis of the claims, it was recommended that the request for reconsideration be granted. On January 22, 2002 the Executive Director of the CCHRO approved the recommendation and issued her Decision.

Defendant proposes DX 7 as final agency action. It is not. The Regulations of Connecticut State Agencies govern Complaint Dispositions at §46a-54-67a. That regulation states in relevant part:

> (d)  A complaint may be disposed of by a merit assessment dismissal pursuant to section 46a-83(b) of the Connecticut General Statutes.
>
> (1)  A merit review dismissal is deemed a commission dismissal for purposes of section 46a-94a of the Connecticut General Statutes **unless** a timely request for reconsideration is filed in accordance with section 46a-54-62a of the Regulations of Connecticut State Agencies;
>
> (2)  The executive director's rejection of a reconsideration request shall be a commission dismissal
> .   .   .   .
> (Emphasis Added.)

Where a request for reconsideration is made and granted, however, there is, by the clear language of the regulation, no dismissal. Instead, upon granting reconsideration, the case file is returned to the appropriate regional office for further investigation or other action consistent with the executive director's decision. Regulations Connecticut State Agencies, §46a-54-62a(g).

In this case, the Decision on Reconsideration makes clear that a timely request for reconsideration was made and granted. Exhibit A. As a result, the

proposed dismissal, DX 7, was not a commission dismissal. Filing of the request for reconsideration stayed that result. Then, when the request was granted, Plaintiff's administrative action was returned to the appropriate regional office for further processing.

EMPLOYEE STATEMENTS  Defendant has also proposed a series of writings as exhibits. Plaintiff has objected on the ground that such writings are hearsay and noted, in argument, that some of the writings have no identification. See, e.g. DX 32, 34, 36.

Defendant argues that these proposed exhibits are within the business records exception to the hearsay rule, Fed. R. Evid. 803(6). As an alternate ground, Defendant asserts that because these proposed exhibits are not being offered to establish the truth or falsity of the matters asserted therein, they are not hearsay at all; instead they are proffered to show that Mr. West was given notice of certain matters and that notice forms the factual predicate for Mr. West's later actions, although Defendant does not specify any particular action undertaken on that basis. Plaintiff disagrees with Defendant's assertions.

A.  There is no Foundation for These Documents As Business Records. Three employees wrote and signed statements concerning alleged physical contact involving Plaintiff and Mr. Faiella. DX 1, 37 and 40. Supervisor Vallario, however, spoke with each of the employees and told them that "if they felt they were uncomfortable seeing this **they should** send a memo to you [West]." DX 38.

(Emphasis added).  During argument, Defendant's counsel characterized this as an instruction.

Business records are made "at or near the time  . . .  kept in the course of a regularly conducted business activity," and are a "regular practice."  The three employee statements, written as instructed in November, 2000, concern events of early May, approximately six months earlier.  Further, because Mr. Vallario had to tell the three employees that they "should send a memo" these statements appear to be outside the regular course of business record-keeping.  Were it otherwise, no instruction would have been necessary – the records would have been regularly, automatically written[1].

Mr. Vallario's statement, DX 38 itself raises the same foundational issues.  The statement starts by recounting that he has been "seriously thinking over statements  . . .  over the past few weeks."  Well, if this was a regularly and routinely kept business record, what was there to think over.  As part of normal practice the statement would have been made and logged.  However, that clearly did not occur in this instance.

DX 38 makes clear that the decision to memorialize the information was anything but routine.  "**I have decided**," said Vallario, " to share them with you."  (Emphasis added.)

---

[1] Defendant suggested that these statements would constitute business records within the framework of its Sexual Harassment Policy, set forth as the fifth to last page of Plaintiff's Proposed Exhibit 4-A.  However, that policy requires employees to make such reports "immediately," not six months after the incident.

6

If it had actually been a routine business record, no decision would have been necessary.

Similar issues arise with respect to the two employee affidavits proposed by Defendant, DX 2 and 3. These statements, made three months following the signed statements of Dursza and Boulet, DX 1 and 37, clearly cannot be business records. No claim was made that Defendant ordinarily and regularly keeps its records in the form of affidavits.

In explaining the rationale for the business records exception, it has been said:

> Such records are reliable because they are routinely made by those charged with the responsibility of making accurate entries, because the very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision, and because they are relied upon in the course of doing business, so that there is a motive for accuracy.

32A C.J.S. Evidence § 907.

The employee statements and affidavits simply do not have the aura of reliability which springs from the routine nature of business recordkeeping.

Defendant also seeks to offer notes of Kevin West, kept in the form of a log, DX 31. During argument Defendant noted that Mr. West testified at deposition that he normally kept notes as part of his work routine.

A similar version of DX 31 was submitted by Defendant to the CCHRO during its defense of the Charge of Discrimination brought by Mr. Faiella. A copy of the submission from the Faiella case is attached as Exhibit C.

Comparison of DX 31 with Exhibit C shows that these two writings, expected to be identical, have significant differences. The entry for 11/15/99 in DX 31 has material not contained in that same entry date as set forth in Exhibit C and differs in some of the wording used. Similarly, DX 31 has two entries for 5/16/00, but in Exhibit C there is only one longer entry for that date. Again DX 31 has some material in addition to that contained in Exhibit C and some different wording. Plaintiff does not know if DX 31 constitutes an expanded version of Exhibit C, or if Exhibit C is a pared down version of DX 31. However, if these are true business records - the product of routine which gives rise to reliability -  they should not vary at all.

Further, beginning at page 2, DX 31 recounts conversations between Mr. West and some contractors. However, Mr. West testified at his deposition that he normally does not speak with contractors.  A copy of an excerpt from his deposition is attached as Exhibit D. As he testified :

    Q.    Do you ever speak with contractors directly ?

    A.    Rarely.

    Mr. Vallario would hire the contractors. There's a policy in SNET that if you are paying the person, you cannot hire them. So I could not hire the contractors and then pay them at the same time. I authorize all pay.

Exhibit D at p. 119.

Based upon Mr. West's testimony which establishes that it was not part of his regular routine or the normal course of his business to communicate with contractors and also, in light of the differences in the text of Exhibit C and DX 31, Plaintiff

believes that this exhibit is imbued with a lack of trustworthiness and should not be admitted pursuant to Fed. R. Evid. 803(6).

Plaintiff is unaware of any foundation which would support a conclusion that DX 32. 33, 34, or 36 are business records. Plaintiff believes that all of these employee statements suffer from another defect as well.

The timing of the creation of these records is also suspect, especially DX 1, 2, 3, 37, 38, and 40. It is difficult to understand why they came to be written when they did. All of the enumerated exhibits deal specifically with allegations of inappropriate physical contact between Plaintiff and Mr. Faiella. Yet the alleged conduct took place in early May, 2000 and the statements are written in November, 2000 and February, 2001. If the mere fact of delay isn't enough to call these statements into question, it should also be noted that Plaintiff had been out on leave since May, 2000 and had not returned to the workplace. DX 34 says that Mr. Faiella had also been out of the workplace since he was "away (on benefits)." There is, however, a way to explain the timing of these documents.

B.  These Proffered Exhibits Were Made In Contemplation of Litigation  On August 31, 2000 Mr. Faiella filed an internal complaint of sexual harassment with SNET. Plaintiff's Proposed Exhibit 18. Plaintiff believes that Defendant's exhibits, prepared while Ms. Bachiocchi's first CCHRO Charge was pending and after Mr. Faiella had filed his internal complaint, were prepared in contemplation of litigation. Mr. Faiella also filed his own Charge of Discrimination with the CCHRO. It was docketed in December, 2000. In defense of that Charge, Defendant submitted the

9

affidavits, (DX 2 and 3), some of the written employee statements, (DX 1, 37, 40) and some of the notes or logs (DX31 and 33 for example). It is well established that records prepared for litigation are not business records.

In *Palmer v. Hoffman*, 318 U.S. 109 (1943) a document was concluded not to qualify as a business record. In that case there had been a railroad accident. Two days after the accident, following the railroad's normal business practice, the engineer of the train made a written statement. At the time the statement was made there was no pending lawsuit. The Court, referring to the engineer's statement, said:

> It is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording it employees' versions of their accidents does not put those statements in the class of records made "in the regular course" of the business . . . .
>
> \*    \*    \*
>
> [T]hose reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.
>
> *Palmer,* 318 U.S. at 113.

Palmer remains good law. See e.g. *Certain Underwriters t Lloyd's v. Sinkovich*, 232 F. 3d 200 at n. 2

The primary use for all of the employee statements proposed as exhibits by Defendant seems for be for litigating. These documents are not business records and they should not be admitted under that exception.

C. Prejudice To Plaintiff  Even assuming that Defendant can meets its burden and offer a proper foundation for the business records exception, the likelihood of prejudice to Plaintiff outweighs any potential probative value that these exhibits may have. Defendant has stated its intention to call Messrs. West, Vallario, Light, Dursza and Boulet. If so, they will all be there to testify and be subject to cross-examination. Admitting these documents, however, is likely to prejudice Plaintiff with respect to the explosive factual content therein, while also potentially depriving her of the ability to cross-examine and to get at the truth.

D. Exhibits As Scene Setters  Finally, Defendant makes an argument that these various exhibits are merely meant to "set the scene" so as to explain actions taken by Mr. West. However, Defendant never says exactly what actions will be explained by these documents. The only action taken by Mr. West as to Plaintiff during any period of time even remotely close to the creation of Plaintiff's exhibits was that he prepared an evaluation of Plaintiff. See Plaintiff's proposed Exhibit 2. At page 2 of that exhibit Mr. West makes reference to complaints from two (2) un-named contractors, not four. Cf. DX 31 which chronicles four complaints. And the evaluation, written in mid-January, 2001, is completely silent as to any alleged inappropriate behavior with Mr. Faiella. In any event, the evaluation was never given

to Plaintiff, and so Mr. West never acted on any of the information set forth in Defendant's exhibits, Defendant's claims notwithstanding.

For all of the foregoing reasons, Plaintiff respectfully requests that her objections to Defendant's exhibits containing employee statements be sustained.

          THE PLAINTIFF
          KIMBERLY BACHIOCCHI

By: *[signature]*
Peter E. Gillespie  (ct06554)
46 Riverside Avenue
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508
Email: petelaw@mac.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 28, 2008 a copy of this Opposition was filed and served by first class post upon anyone unable to accept electronic filing (as noted where applicable). Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Lori B. Alexander, Esq.
Litter Mendelson
110 Washington Avenue – 3rd Floor
North Haven, CT 06473

By: _____