1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - -x

KIMBERLY BACHIOCCHI                     :

                                        :   COPY

                                        :

                                        :

VS                                      : 02 CV

                                        : 908(CFD)

                                        :

THE SOUTHERN NEW ENGLAND TELEPHONE      :

COMPANY                                 :

- - - - - - - - - - - - - - - - - -x


    Deposition of KEVIN WEST taken pursuant to the

Federal Rules of Civil Procedure, before Jacinda A.

Grigaitis, Licensed Shorthand Reporter #00381 and

Notary Public within and for the State of Connecticut,

held at the Offices of Pullman & Comley, 850 Main

Street, 8th Floor, Bridgeport, Connecticut, on

September 18, 2003, at 10:02 a.m.



          DEL VECCHIO REPORTING SERVICES, LLC
             PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE                    100 PEARL STREET
MADISON, CT 06443                  HARTFORD, CT 06106
203 245-9583                       800 839-6867


              DEL VECCHIO REPORTING SERVICES, LLC

```
 1      Q.   Who made the decision to implement that effort?
 2      A.   Bob Vallario and Rich Light.
 3      Q.   Did they confer with you for your input on that
 4   decision?
 5      A.   They did after -- the week after.  I was out on
 6   company business for a week in Texas from the 2nd to
 7   the 12th, I believe it was.  Does that sound right?  I
 8   don't know.  There was a week in there that I was
 9   away, a full week, so I believe they made the change
10   while I was gone.  And then after, when I came back,
11   they did confer with me on it.
12      Q.   And did they explain to you why they had
13   elected to implement that measure?
14      A.   Yes, they did.
15      Q.   Would you tell me what they said?
16      A.   They brought it to my attention that there was
17   problems with the contractors, and it went as far as
18   Nick insisted that I personally call the contractors
19   and bring them in, which I did.
20      Q.   Did you bring them in or simply speak to them
21   on the phone?
22      A.   No.  They actually came into my office, into
23   the conference room, and we sat down and talked and I
24   recorded it all.
25      Q.   And I'm sorry.  This was before or after Nick
```

1    and Kim were to no longer be assigned to the same job?
2       A.  This was after.  I believe it was after.
3       Q.  And what did Mr. Faiella tell you was the
4    problem that he wanted to have investigated?
5       A.  Bob had received numerous complaints from
6    contractors stating that -- that Nick and Kim were
7    giving them -- making their jobs much harder than they
8    needed to be, and there's an outlined report in there.
9       Q.  Had contractors complained to you at any time?
10      A.  No, they did not.
11      Q.  Do you ever speak with contractors directly?
12      A.  Rarely.
13          MS. ALEXANDER:  Object to the form.
14      A.  Mr. Vallario would hire the contractors.
15   There's a policy in SNET that if you are paying the
16   person, you cannot hire them.  So I could not hire the
17   contractor and then pay them at the same time.  I
18   authorize all the pay.
19   BY MR. GILLESPIE:
20      Q.  So the complaints, the alleged complaints from
21   contractors concerning Mr. Faiella prior to their --
22   the separation of Nick and Kim at work sites, were
23   made not to you but to Vallario?
24      A.  That's correct.
25      Q.  Were any written complaints received?