UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| * * * * * * * * * * * * * * * * * <br> KIMBERLY BACHIOCCHI, | * <br> * <br> * <br> * <br> * |
| Plaintiff, | * |
| v. | * <br> * CIVIL ACTION NO. 02-CV-908 (CFD) <br> * <br> * |
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | * <br> * <br> * <br> * |
| Defendant. | * JUNE 24, 2008 |
| * * * * * * * * * * * * * * * * * | * |

**DEFENDANT'S SUPPLEMENTAL FILING
RE MOTION IN LIMINE CONCERNING TESTIMONY BY DR. GARY ZACHARIAH**

At the hearing in this matter on June 19, 2008, the Court indicated the parties could file supplemental authority and argument concerning SNET's Motion in Limine dated May 5, 2008 related to the testimony of Dr. Gary Zachariah. Although SNET argued in its motion that several pieces of Dr. Zachariah's testimony should be precluded, only his causation testimony and the spoliation issue are addressed in this supplement.

**1. Causation of Emotional Distress**

SNET does not dispute that Dr. Zachariah, as plaintiff's treating psychologist, may testify about his diagnosis of her condition, as well as statements made by plaintiff to him for purposes of her diagnosis and treatment.

However, in addition to these subjects, plaintiff has provided an expert report by Dr. Zachariah, who also intends to offer expert testimony that he concluded that sexual harassment in the workplace at SNET was the cause of plaintiff's emotional distress during the time that he treated her. It is this testimony that is improper and should be precluded.

It is well established that the District Court should play a gatekeeper function where expert testimony is concerned. See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) ("[T]he Supreme Court has made clear that the district court has a 'gatekeeping' function under Rule 702 – it is charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." (internal quotation marks omitted)); see also Fed. R. Evid. 702 advisory committee's note, 2000 amend. The trial judge must measure whether the foundation for the expert testimony is sufficiently reliable to satisfy both Rule 702 and Daubert standards. That scrutiny includes "discretion to conclude that the studies upon which the expert relied were not sufficient, whether individually or in combination, to support their conclusions" about causation. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146-47 (1997); see also Raskin v. Wyatt Co., 125 F.3d 55, 67-68 (2d Cir. 1997) (affirming exclusion of statistical report prepared by an expert because it lacked probative value and raised no inference of discrimination).

Here, Dr. Stuart Kleinman, a highly qualified forensic psychiatrist who has extensively reviewed the records in this case,[1] has testified that Dr. Zachariah's methodology for determining

---

[1] The fact that Dr. Kleinman received and reviewed additional records after his opinion was rendered which further corroborated his conclusion does not at all indicate that Dr. Kleinman's opinion is unreliable.

causation was unreliable. As Dr. Kleinman testified, in order to reach an opinion as to causation of emotional distress, a psychologist or psychiatrist should take a thorough history of the patient, use strategies to elicit information from the patient about other potential stressors, and explore those other stressors including differing perceptions of the events at issue. Dr. Kleinman testified that there exist a variety of resources to investigate whether differing perceptions exist through review of such resources as case pleadings, the deposition of the patient, other parties' depositions, investigative reports, the patient's personnel file, prior or subsequent employment records, lifetime mental health records, and pharmacological records, among other materials. Dr. Zachariah, however did not conduct any sort of review. At a minimum, Dr. Zachariah should have begun his analysis into causation through a complete patient history (Ex. 4, plaintiff's depo at 117-118), but he failed to even take that initial step. Ultimately, Dr. Zachariah relied upon the plaintiff's representations, and made no real inquiry into other possible stressors, such as prior

REDACTED

REDACTED

As admitted by Dr. Zachariah at his deposition and the hearing, his focus was on immediately treating her symptoms and as such he took a minimal history, did not inquire extensively into any potential alternative sources of emotional distress, and did not review any of the types of extrinsic materials described above. Understandably, his goal, as he described it at the hearing, was to quickly try to make plaintiff better and relieve her distress. He freely acknowledges that his conclusion that sexual harassment was the cause of plaintiff's emotional distress is an adoption of plaintiff's statements to him that sexual harassment was the cause. His focus was on treatment, and his treatment did not rely on a determination as to the objective cause of plaintiff's distress. In essence, Dr. Zachariah's testimony makes clear that he did not carry out any of the inquiries necessary to reach a reliable conclusion as to the objective cause of plaintiff's emotional distress.

As stated in the article entitled "Irreconcilable Conflict Between Therapeutic and Forensic Role" introduced as Exhibit 1 at the hearing:

> Psychologists and psychiatrists who provide patient care can usually qualify to testify as treating experts, in that they have the specialized knowledge, not possessed by most individuals, to offer a clinical diagnosis and prognosis. However, a role conflict arises when a treating therapist also attempts to testify as a forensic expert addressing the psycholegal issues in the case (e.g., testamentary capacity, proximate cause of injury, parental capacity).

There is no question that one approach to treatment — and possibly an accepted approach — is to focus on relieving symptoms and to rely on the patient's perceptions of the cause of her emotional distress. This is what Dr. Zachariah did. While this methodology may be acceptable for treatment purposes, it is not acceptable for offering an opinion as to the objective cause (i.e., not merely the patient's perception of the cause) of her emotional distress. It is when the treater steps outside this role to offer testimony as to causation of the injury that his testimony is

4

unreliable in the absence of a proper methodology for determining such causation. Because, as Dr. Kleinman has testified, Dr. Zachariah did not use an adequate methodology to make a reliable determination as to causation, this Court should exercise its gatekeeper function and preclude such causation testimony.

2. **Spoliation**

Based on the testimony at the hearing, SNET's argument regarding spoliation of evidence is primarily directed to a request for an adverse inference jury instruction.[2] SNET will not pursue its request to preclude Dr. Zachariah's testimony in its entirety on the basis of spoliation of evidence.

Spoliation includes "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Doe v. Norwalk Cmty. Coll., 248 F.R.D. 372, 375 (D. Conn. 2007) (internal quotation marks omitted). The Second Circuit has made clear that "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without an intent [to breach a duty to preserve it] or *negligently*." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002) (internal quotation marks omitted) (gross negligence will frequently suffice to support a finding that the missing or destroyed evidence would have been harmful to that party). The Second Circuit has further explained that "the sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence." Id. As the Second Circuit noted, the inference "is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have

---

[2] Defendant has included an adverse inference instruction in its proposed jury instructions previously filed with the Court.

been detrimental rather than favorable should fall on the party responsible for its loss." Id.; see also Pace v. AMTRAK, 291 F. Supp. 93, 99 (D. Conn. 2003) (relying on Residential Funding and giving adverse inference jury instruction where party negligently destroyed evidence).

Here, Dr. Zachariah first appeared at his deposition without his file, although the notice of his deposition was accompanied by a document request for his complete file. When asked if a copy could be faxed over, he responded that it was unavailable because it was locked up and he had the only key.[3]

Following the deposition, a subpoena for documents was served on the Keeper of Records at Psychological Health Associates; documents were received in response to the subpoena. At the next day of Dr. Zachariah's deposition, he admitted that he had responded to the Keeper of Records subpoena himself, even though he is not the Keeper of Records. At the deposition, it became clear that the billing records related to plaintiff were missing from the file. In addition, after Dr. Zachariah had stated forcefully that he was "absolutely" sure there were no other documents missing from the file, it became clear that at least the records of Dr. Peterson and nurse Marlene Chelso were also missing.

SNET then requested a written representation from the real Keeper of Records that all responsive documents that existed had been provided in response to the subpoena. That representation was not provided.

SNET then served a deposition and document subpoena on the Keeper of Records. To our surprise, Dr. Zachariah showed up for the Keeper of Records deposition and did not bring any original documents with him. At that point, he indicated that, as for the Peterson and Chelso

---

[3] At her later deposition, the Keeper of Records, Patricia Morrisse, testified that a key to the files was kept in a central location in the office.

6

files, he "must have either put them somewhere else or accidentally shredded them" and could not find them at that time. Shortly thereafter, SNET served another deposition subpoena on the Keeper of Records, still attempting to get a complete copy of the Behavioral Health Associates files concerning plaintiff, who finally did appear for her deposition and stated she had never seen the prior two subpoenas.

Under these circumstances, Dr. Zachariah either destroyed documents or lost them at a time when he had a duty to preserve them. In fact, he apparently shredded them at a time he was specifically responding to a subpoena for the complete files served on the Keeper of Records and clearly knew he had a duty to preserve the documents. Under these circumstances, an adverse inference jury instruction is warranted.

Dated at North Haven, Connecticut this 24th day of June, 2008.

        THE DEFENDANT,

        SOUTHERN NEW ENGLAND TELEPHONE COMPANY


        By:   /s/ Deborah DeHart Cannavino
            Deborah DeHart Cannavino
            Federal Bar No. CT08144
            Lori B. Alexander
            Federal Bar No. CT08970
            Littler Mendelson, P.C.
            110 Washington Avenue
            North Haven, Connecticut  06473
            Tel.:  203.234.6344
            Fax:  203.234.6345
            E-Mail: dcannavino@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2008, a copy of the foregoing was filed electronically on all parties to this action. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

                                                /s/ Deborah DeHart Cannavino
                                                Deborah DeHart Cannavino
                                                Federal Bar No.: CT08144