# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KIMBERLY BACHIOCCHI,           :
                                 :
           Plaintiff,            :
                                 :      Civil Action No.: 02-CV-908 (CFD)
      v.                            :
                                 :
THE SOUTHERN NEW ENGLAND    :      July 10, 2008
TELEPHONE COMPANY,            :
                                 :
           Defendant.      :
                                 :
                                 :

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

Pursuant to Rule 50 (a) of the Federal Rules of Civil Procedure, the defendant, Southern New England Telephone Company, Inc. ("SNET"), hereby files this memorandum in support of its motion for judgment as a matter of law on plaintiff's claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60 et seq. At this juncture, plaintiff has been fully heard on these claims and a reasonable jury would not have a legally sufficient evidentiary basis to find in her favor. Accordingly, SNET respectfully requests that the court enter judgment in its favor on both of these claims.

## I.    Sexual Harassment Claims Under Title VII and the Connecticut Fair Employment Practices Act ("CFEPA").[1]

### A.    The Jury Could Not Find That Plaintiff Was Subjected To A Hostile Work Environment Based On Sex.

To prevail on a hostile work environment claim, a plaintiff must demonstrate: (1) that she is a member of a protected group; (2) that she was subjected to harassment based upon her gender; (3) that the harassment affected a term, condition, or privilege of employment, and (4) a legal basis for imputing the supervisor or co-worker's actions to the employer.  See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993).  With regard to the fourth prong, "the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment."  Id.

As explained herein, there is legally insufficient evidence for a jury to find that Plaintiff was harassed because of her gender or experienced an objectively hostile work environment. Plaintiff testified that her sexual harassment claim is limited to the conduct of Richard Light, John Dunn, and Robert Vallario.  With regard to these individuals, Plaintiff's case consists almost entirely of facially-neutral incidents and circumstances.[2]  Even when the evidence is cast in the light most favorable to Plaintiff, there is a legally insufficient basis for the jury to find that these incidents constituted "harassment based on sex."  Indeed, most of the incidents raise no inference of discrimination whatsoever.

---

[1]  Plaintiff testified that no one at SNET engaged in any sexual conduct with her, and she was never propositioned or touched in an unwelcome way.  Accordingly, there is an insufficient evidentiary basis to support a finding of quid pro quo sexual harassment.  See Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (A quid pro quo sexual harassment claim requires proof that "a tangible employment action resulted from [the plaintiff's] refusal to submit to a supervisor's sexual demands.").  To the extent plaintiff has pled such a claim, it should be dismissed.

[2]  Critically, Plaintiff also testified that she cannot remember a lot of these incidents very well given her state of mind during the time prior to her leave of absence in May 2000.

Plaintiff testified repeatedly that her only reason for believing any of these acts were gender-related is the fact that she is a woman.   However, a jury could not find gender discrimination based solely on the fact that she is female and most of her coworkers were male. See Mulkey v. Hofstra Univ., No. 98-9304, 1999 U.S. App. LEXIS 12111, at *6 (2d Cir. June 10, 1999) (declaring it "irrelevant" that the plaintiff's workplace was "male[] dominated" because "[m]en are not presumed to have a discriminatory animus against women, just as women are not presumed to be free of it.") (Exh. 1, attached).   To establish her claim, Plaintiff must prove that she was intentionally discriminated against *because* of her gender.   As one court recently put it, "[h]arassment of *a woman* does not necessarily amount to *sexual* harassment; the plaintiff must show that the harassment was directed at her because of her sex."   Brant v. County of Dutchess, No. 05-CV-10590, 2008 U.S. Dist. LEXIS 10941, at *16 (S.D.N.Y. Feb. 11, 2008) (Exh. 2, attached); see also Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discrimination* . . . because of . . . sex.'").

After excluding the incidents that support no inference of sex-based discrimination, the only evidence left is Light's alleged comment that he had once terminated a black woman, and Vallario's alleged comment that "I would go for you myself if I were younger."[3]   There is also Faiella's testimony that Dunn had sexually suggestive cartoons, although Plaintiff herself never mentioned them during her two days of testimony.   As a matter of law, two comments and some sexually suggestive cartoons could not have constituted harassment that was sufficiently "severe

---

[3] Plaintiff testified at one point that West called women "broads," "bitches," and "knuckleheads," and said they "did not know what they were doing."   Later in her testimony, she clarified that she overheard West say that a female UConn representative "couldn't remember anything and it was a woman thing," and overheard him say on another occasion that "he would like to choke the bitch and she was nothing more than a knucklehead."   However, Plaintiff testified that she is *not* claiming West sexually harassed her; her sexual harassment claim is limited to Vallario, Light, and Dunn.

and pervasive" to have "altered a term or condition of plaintiff's employment." Moreover, there is insufficient evidence to support a finding that SNET's explanations were false and a pretext for sex discrimination. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) (noting employer's proffered "reason cannot be proved to be a 'pretext' *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason").

### 1. There Is Insufficient Evidence That The Facially-Neutral Incidents Constituted "Harassment Because Of Sex."

Plaintiff testified about various perceived slights that occurred during her three years with the West group. However, she offered no evidence that these facially neutral acts and events occurred *because of her sex.* <u>See</u> <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."). The lack of evidence showing that these facially-neutral incidents were gender-motivated means that she cannot use them to support her claim of sexual harassment. <u>See</u> <u>Alfano v. Costello</u>, 294 F.3d 365, 377 (2d Cir. 2002) ("[T]o the extent that the plaintiff relies on facially neutral incidents to create the quantum of proof necessary to survive a Rule 50 motion for judgment, she must have established a basis from which a reasonable fact-finder could infer that those incidents were infected by discriminatory animus.").

Furthermore, the Supreme Court has stated that "[a]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 148 (2000). Here, Plaintiff has offered insufficient evidence from which

4.

the jury could infer that SNET's legitimate explanations were false *and* that SNET engaged in intentional sex discrimination.  <u>Belfi v. Prendergast</u>, 191 F.3d 129, 140 (2d Cir. 1999) ("Something is still needed when the employer's reasons for its actions are shown to be pretextual . . . it must also be shown that not only was the reason offered false, but that the real reason was discrimination.").  Thus, SNET is also entitled to judgment as a matter of law because there is no evidence of either discriminatory intent or pretext.

> **a.     <u>Richard Light</u>**

**Telling Plaintiff Not To Call Anyone Outside the BCS Group.**  Plaintiff testified that on two occasions, West and Light told her not to make calls to people outside of the BCS group. She claims that the second time, she was told she would not receive compensation and other incentives if it happened again.

There is no evidence that Light discriminated against her by giving these instructions. Plaintiff did not testify that other employees in the engineering unit were treated differently by Light.  Although Faiella testified that no one spoke to him for calling outside the office, Faiella was not a part of the engineering unit, and Light was not his supervisor.  Accordingly, there is no evidence that Light's actions were sex-based, or the result of animus toward Plaintiff as a woman.

**Printing Out Directions To Her House.**  Plaintiff testified that on one occasion, Light left directions to her house in the shared office printer.  However, she acknowledged Light's explanation that he had heard Plaintiff had a nice house, and wanted to see it for himself.  There is no evidence that this act was borne out of anything other than sheer curiosity and, more importantly, no evidence that it was related to Plaintiff's gender.

> **b.     <u>Bob Vallario</u>**

**Criticism of Plaintiff's Work.** Plaintiff and Faiella also testified that Robert Vallario, a co-worker and supervisor in another department, unfairly criticized her work. Even taking this allegation as true, there is no evidence that Vallario's actions were motivated by gender animus or by the fact that Plaintiff is a woman. Neither she nor Faiella testified that Vallario directed unfair criticisms only at her and not at other employees.

**Insinuations That Plaintiff And Faiella Were Having An Affair.** Plaintiff testified that Vallario made statements insinuating that she was having an affair with Faiella. She testified that Vallario asked her, "what's up with you and Nick?" He also allegedly told her that "I could take Nick out with one punch to the gut," and commented about Faiella's wife being ill. Plaintiff testified that she never heard Vallario say these types of things to anyone else.

Faiella testified that Vallario also had asked him if he was having an affair with Plaintiff. He testified that Vallario made innuendos and, asked him whether Plaintiff was a good lover and if her breasts were real.

Commenting about an actual or perceived affair between Plaintiff and Faiella is not, by itself, sexual harassment. See Brown v. Henderson, 257 F.3d 246, 255-56 (2d Cir. 2001) (affirming grant of summary judgment because "behavior touch[ing] on matters of sexuality, i.e. [the plaintiff's] purported sexual relationship with [a co-worker]" is not harassment "because of sex"); DeCintio v. Westchester County Med. Ctr., 807 F.2d 304, 306 (2d Cir. 1986) (noting that sex discrimination claims under Title VII must be "based on a person's sex, not on his or her sexual affiliations"); Dellefave v. Access Temporaries, Inc., No. 99 Civ. 6098, 2001 U.S. Dist. LEXIS 97, at *19 (S.D.N.Y. Jan. 11, 2001) ("Courts have never held that workplace harassment . . . is automatically discrimination because of sex merely because the words used have sexual content or connotations.") (Exh. 3, attached). To the contrary, it is well settled that "[e]ven if

6.

embarrassing or even humiliating, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex *absent some additional showing*, such as that the plaintiff was singled out for such comments because of his or her gender." <u>Dellafave v. Access Temporaries, Inc.</u>, 2001 U.S. Dist. LEXIS 97, at *19 (emphasis added) (Exh. 3, attached); <u>Brant v. County of Dutchess</u>, No. 05-CV-10590, 2008 U.S. Dist. LEXIS 10941, at * (S.D.N.Y. Feb. 11, 2008) ("Comments by coworkers about an extramarital affair do not inherently constitute conduct motivated by gender animus.") (Exh. 2, attached).

Here, that "additional showing" is missing: Plaintiff has proffered no evidence suggesting that Vallario made those statements to her because of her gender, or that the statements were discriminatory on the basis of gender.[4]   Vallario commented about the alleged affair to both Plaintiff and Faiella.   The comments themselves were gender-neutral and pertained equally to both individuals.   Faiella admitted that the comments were not evidence of gender discrimination since they were about both of them.   As the Seventh Circuit observed in affirming a grant of summary judgment against a plaintiff who claimed he was sexually harassed by virtue of rumors of an office affair, "[s]uch rumors spread, irrespective of the truth, for any number of reasons having nothing to do with gender discrimination." <u>Pasqua v. Metro. Life Ins. Co.</u>, 101 F.3d 514, 517 (7th Cir. 1996).

**Commenting That She Should "Find Another Job."**   Plaintiff testified for the first time on redirect examination that Vallario told her to "find another job."   She stated that the comment occurred at a seminar in Sturbridge, MA, and was made because of contractor complaints about her and Faiella working together on projects.   Assuming the comment was

---

[4] Similarly, even if Carl Lorentzen was assigned by someone to "break up the Nick and Kim thing," that action would apply equally to both parties.  Therefore, it does not evidence of an intent to discriminate based on sex.

made, there is no basis for inferring that it made because of her gender.

### c.    John Dunn

**Email Suggesting He Took "Great Pleasure" In Plaintiff's Transfer From BCS.** Plaintiff offered into evidence a June 19, 2001 email from John Dunn that was sent to the BCS group after her transfer from the unit. The email contained a revised contact list and stated, "It is with great pleasure that I send these updated sheets."

Neither the circulation of email, nor its underlying suggestion that Dunn took "great pleasure" in Plaintiff's departure, evidences an intent to discriminate based on gender. It is settled that rudeness is not the legal equivalent of harassment. See Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007) ("Title VII aims to eradicate discrimination on the basis of sex, not enact a general civility code on the American workplace." (internal quotation marks omitted)); Minor v. Ivy Tech State College, 174 F.3d 855, 858 (7th Cir. 1999) ("It is not enough that a supervisor or co-worker fails to treat a female employee with sensitivity, tact, and delicacy, uses coarse language, or is a boor. Such failures are too commonplace in today's America, regardless of the sex if the employee, to be classified as discriminatory."); see also Joens v. John Morrell & Co., 354 F.3d 938, 941 (8th Cir. 2004) ("Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." (internal quotation marks omitted)).

### 2.    The Incidents, Even Taken Together, Are Legally Insufficient To Establish A Finding Of A Hostile Work Environment.

To show a "hostile" work environment, Plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). "Whether an environment is

'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).

In hostile work environment cases especially, the Second Circuit has emphasized the importance of "exclud[ing] from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personal appeals." Alfano v. Costello, 294 F.3d at 377; Martinez v. N.Y. City Dep't of Educ., No. 04 Civ. 2728, 2008 U.S. Dist. LEXIS 41454, at *29 (S.D.N.Y. May 27, 2008) (same) (Exh. 4, attached). Even construing the evidence in the light most favorable to Plaintiff, there is no evidence from which a jury could infer that any of the facially-neutral incidents were in fact gender-related. Indeed, several of them – like Light's printing of directions to plaintiff's house, Vallario's criticism of her work, and Dunn's email-- support no inference of harassment or mistreatment whatsoever since there is no evidence that other employees were treated more favorably. At bottom, they constitute the sort of "isolated acts" that cannot support a hostile work environment claim. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) ("Isolated acts, unless very severe, do not meet the threshold of severity or pervasiveness.").

After excluding the clearly gender-neutral incidents listed above; Alfano v. Costello, 294 F.3d at 377; the entirety of plaintiff's case rests on Light's alleged comment that he had once terminated a black woman,[5] Vallario's alleged comment that "I would go for you myself if I

---

[5] Plaintiff testified that during her interview, Light said "out of the blue" that he once had to terminate a black woman. Plaintiff admitted that she did not know why Light made that remark. Although she believes the comment meant that Light wanted to fire women, she admitted that she was hired based on Light's recommendation. Moreover, it is undisputed that West originally hired Plaintiff, when he was clearly aware that she was a woman. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (calling it "highly relevant that the supervisor originally hired plaintiff when he was clearly aware she was a woman because it "strongly suggests that invidious

were younger," and some sexually suggestive cartoons. Given the three year time frame, they could not have created a workplace "permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). As a matter of law, these two comments were simply not "sufficiently severe or pervasive to [so] as to alter the conditions of the [plaintiff's] employment and create an abusive working environment." Id.; see Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007) ("[A] few off-color comments including references to 'office bitches' and 'Brooklyn bimbettes' by [the plaintiff's] supervisor. . . do not rise to the level of an objectively hostile work environment."); Guerrero v. Lowe's Home Ctrs., Inc., 254 Fed. Appx. 865, 867 (2d Cir. 2007) ("[W]here the sex-related conduct complained of was principally name calling . . . the alleged harassment [was not] sufficiently severe to meet the threshold for a hostile work environment."); Baron v. Winthrop Univ. Hosp., 211 Fed. Appx. 16, 17 (2d Cir. 2006) (holding a "series of remarks about women" that showed gender bias on the part of the plaintiff's supervisor were not sufficiently severe and pervasive).

Even taking all of Plaintiff's allegations together would yield insufficient evidence to support a finding that plaintiff was subjected to a hostile work environment. The conduct occurred over three years and was fairly mild; it simply does not meet the legal threshold to state a claim for sexual harassment in this Circuit. See, e.g., Augustin v. Yale Club, No. 06-5078-cv, 2008 U.S. App. LEXIS 8775, at *3-4 (2d Cir. Apr. 23, 2008) (affirming summary judgment where plaintiff allegedly endured "episodes of name-calling [including 'black bitch' and 'fucking negrita'], inappropriate behavior by a supervisor, and other perceived slights" over five years) (Exh. 5, attached); Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (directing verdict for employer where plaintiff, over four years, was the subject of three sexual comments and

discrimination was unlikely.") Accordingly, there is no evidentiary basis for a jury to conclude that this comment evidenced discriminatory animus toward Plaintiff as a woman.

pranks involving carrots, received an informal counseling from a supervisor, and was sent a vulgar cartoon depicting a subordinate with whom plaintiff allegedly had inappropriate physical conduct); Cioffi v. Allen Prods. Co., No. 3:98CV857, 2000 WL 33180448, *10-12 (D. Conn. Sept. 29, 2000) (granting summary judgment for employer where over three and a half years, the president allegedly spread rumors of an affair between plaintiff and a coworker; a coworker waved a page containing sketches of penises in front of plaintiff and frequently left off-color jokes on co-workers' desks; managers and co-workers told off-color jokes "on numerous occasions;" a coworker often read the newspaper while leaning against the wall behind plaintiff's desk; and a coworker laughed at another co-worker's statement to plaintiff that had a sexual connotation/double meaning) (Exh. 6, attached); see also Baron v. Winthrop Univ. Hosp., 211 Fed. Appx. 16, 17 (2d Cir. 2006); Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004); Hamilton v. Bally of Switz, No. 03 Civ, 5685, 2005 U.S. Dist. LEXIS 9319, at *18-32 (S.D.N.Y. May 17, 2005) (Exh. 7, attached).

## II.    Retaliation Claims Under Title VII and CFEPA

"In order to establish a claim for retaliation, an employee must demonstrate that (1) she was engaged in protected activity; (2) the employer was aware of the employee's participation in the protected activity; (3) the employer took action that a reasonable employee would have found materially adverse; and (4) a causal connection existed between the employee's protected activity and the adverse action taken by the employer." Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007).

Plaintiff testified that her retaliation claim is based on the conduct of two individuals, Kevin West and Ron Durza.[6]    However, there is no evidentiary basis for finding a causal

---

[6] It should also be noted that Plaintiff testified that the only "illegal" thing done by West was grabbing her

connection between Plaintiff's protected activity, and the actions of those individuals.[7]  There is no evidence of a retaliatory motive, and no evidence that the proffered explanations were pretextual.  Furthermore, none of the actions taken were "materially adverse" as a matter of law.

**A.    There Is No Causal Link Between SNET's Actions And Plaintiff's Protected Activity.**

**1.    Events Subsequent To Her July 24, 2000 Charge Of Discrimination.**

Plaintiff filed her first CHRO charge on July 24, 2000, while she was on medical leave.  Accordingly, her retaliation claim cannot be based on any events or circumstances that occurred prior to that time, including any incidents involving Light or Vallario.[8]  See Bakalova v. Maimonides Med. Ctr., 83 Fed. Appx. 372, 375 (2d Cir. 2003).

Plaintiff testified that the absence of many coworkers from the office on January 18, 2001 was the result of retaliation against her.  However, that day was almost six months after she filed her charge of discrimination with the CHRO.  She therefore cannot claim that the timing alone supports an inference of causation.  See, e.g., Chamberlin v. Principi, 247 Fed. Appx. 251, 254 (2d Cir. 2007) (affirming there was no inference of causation where the adverse action occurred five months after the protected activity); Ancheril v. State of Conn., Dep't of Mental Retardation, No. 3:06-cv-1019, 2008 U.S. Dist. LEXIS 43207, at *18-19 (D. Conn. May 30, 2008) (granting summary judgment on retaliation claim because "[n]o reasonable trier of fact could conclude that a five month gap . . . could support an inference that there was a causal connection between [the plaintiff's] complaints and the subsequently complained of actions.") (Exh. 8, attached).  Furthermore, there is no other evidentiary basis for inferring the existence of a causal link between the two events.

---

wrist.

[7] Plaintiff testified that her retaliation claim is limited to the actions to West and Durza.

[8] Light and Vallario retired before Plaintiff's one-day return from medical leave in January, 2001.

Plaintiff admits that she does not know who had retired by that date, or where everyone was on that day. The only basis for her belief that it was not coincidental are the different entries for Thursday and Friday on her photocopy of the sign-out log for that week. Even taking as true Plaintiff's claim that she did not photocopy the log on Thursday (which would explain why the Monday through Wednesday entries are the same), there is simply no basis to conclude that several employees conspired to be out of the office that day in retaliation for plaintiff's charge of discrimination almost six months earlier. Indeed, there is no evidentiary basis for concluding that any of her coworkers even knew about the charge.

## 2. Events Subsequent To Plaintiff's March 21, 2001 Affidavit In Support Of Mr. Faiella's Charge Of Discrimination.

Plaintiff filed an affidavit in support of Faiella's charge of discrimination on March 21, 2001, and claims that the retaliation began when she tried to return to work on May 7, 2001. There is insufficient evidence to support a finding that the incidents in May and June 2001 were the result of her filing an affidavit in support of Faiella's administrative charge. Indeed, there is no evidence that Durza and her other coworkers even *knew* about her affidavit or charge of discrimination.[9] See Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007) (affirming grant of summary judgment on employee's retaliation claim where there was no evidence of causation and "[p]laintiff provide[d] no evidence to establish that the supervisor who allegedly retaliated against her . . . knew about her complaint"). Finally, there is insufficient evidence to support a finding of a retaliatory motive on the part of West, Durza, or any other SNET employee.

---

[9] Plaintiff testified that one basis for her retaliation claim was the fact that the office was "cold" and "nonresponsive," and no one except Manouse spoke to her. Yet, she conceded she didn't know if her coworkers were aware of her affidavit, or her own charge of discrimination ten months earlier. Moreover, she testified on cross-examination that her coworkers were retaliating against her for "several reasons" but she did not know whether her complaint was one of them. (On redirect, however, Plaintiff testified that "the only thing" she could think of for her coworkers' "being so mean" was the complaint and affidavit she filed with the CHRO).

**Receiving A Week Of Paid Time Off In Lieu Of Returning To Work On May 7, 2001.**[10] Plaintiff claims that receiving a week of paid time off from work in lieu of returning on May 7, 2001 was retaliatory. However, she offers no basis for concluding that this was an adverse action other than her disappointment that she was unable to return on May 7, 2001. She admitted that West told her the delay was due to his weeklong vacation in Las Vegas. There is no evidence that refutes his explanation.

**Durza's Manner of Dropping Off The SNET Vehicle.** Plaintiff testified that Durza retaliated against her when he brought a dirty SNET vehicle to her house and parked it perpendicularly to the street. Yet, she testified that she did not know whether Durza was aware of her affidavit or charge of discrimination. See Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. at 110. She acknowledged that neither Durza nor SNET were required to bring the vehicle to her house, and admitted she does not believe that someone intentionally dirtied the car to harass her. She also conceded that SNET employees were responsible for cleaning their own vehicles, and she did not know who should have cleaned the vehicle before giving it to her.

Therefore, based on Plaintiff's own testimony, there is no evidentiary basis from which a jury could infer that this was an act of retaliation.

**Failure To Reassign Her To the Cingular Wireless Account.** Plaintiff testified that when she returned from her leave of absence, she was not reassigned to the Cingular Wireless account. She admitted, however, that West and Manouse had discretion as supervisors to determine work assignments. There is no evidence that the accounts she received were in any

---

[10] Plaintiff also testified that West and Manouse completed her yearly evaluation on January 10, 2001, without her knowledge. However, she did not assert this as one of her grounds for retaliation, and there is no evidence that it was done in retaliation for filing her July 24, 2000 charge of discrimination.

way inferior to the Cingular account. Furthermore, there is no evidence that Plaintiff was not returned to that account because of her affidavit or charge of discrimination. She testified that Manouse and West both denied her request for reassignment. Accordingly, there is no evidence upon which a jury could find that Plaintiff's assignment was discriminatory.

**West's Instruction Regarding Contact With Janice Vereb.**[11] Plaintiff claims that West retaliated by telling her that if she contacted Janice Vereb again, he would have her disciplined for insubordination. However, Plaintiff admits that she was in contact with Vereb prior to West's instruction. She admits that West told her not to contact Vereb again. Contacting Vereb after West told her not to would, in fact, be insubordinate behavior.

As such, there is no evidence that West's statement was inappropriate or discriminatory in any respect.

**West's Denial Of Her Request For Overtime And Yelling At Her.**[12] Plaintiff testified that West denied her request to work overtime to complete her work and yelled at her over the phone, "there will be no overtime for you Kim." There is no evidence that West allowed other employees to work overtime to complete their work. Most importantly, there is insufficient evidence from which a jury could find that West denied the request for overtime and allegedly yelled at her because of her protected activities.

**Requirement That Plaintiff's Work Be Approved By Manouse or West.** Plaintiff testified that West told her either he or Manouse had to review and approve her work before it

---

[11] Similarly, Plaintiff testified for the first time on redirect examination that West told her that she "could not record any meeting" after she asked to tape record their conversation. Given the context in which the comment was made, there is no evidence that it was inappropriate or discriminatory in any respect.

[12] Plaintiff testified that West told her she might not receive all of her requested vacation time depending on the workload. There is no evidentiary basis for inferring that this statement was the result of her affidavit, rather than a desire to treat all employees fairly and equally. She also testified that West was "agitated" and "made it sound as if [she] was asking too much" when he granted her time off to attend a funeral. Again, there is no basis for finding a causal connection between his response and her affidavit in support of Faiella's charge.

15.

left the office. She testified that West did not say whether this procedure was typical of that for other employees. However, there is no evidence that it was *atypical*, as required to establish differential treatment. Furthermore, there is no basis for inferring that this instruction was the result of a retaliatory motive on the part of West.

**Exclusion From A Fishing Trip.**[13]  Plaintiff claims that she was "excluded" from a fishing trip that was sponsored by a SNET client in spring 2001. However, she never identified the person or persons who allegedly excluded her. Accordingly, there is no evidence that the person who excluded her knew about her affidavit at the time.[14]

Plaintiff admitted that she was invited to, and went on, one fishing trip. She also admitted that she did not know whether there was a fishing trip in spring 2001. Based on this ambiguous and incomplete evidence, a jury could not find that she was not invited on a fishing trip in spring 2001 because she filed an affidavit in support of Faiella's charge of discrimination.

**West's Grabbing Plaintiff's Wrist And Taking Papers Out Of Her Hand.**  Plaintiff testified about an incident where West allegedly grabbed her wrist and took a form out of her hand. Yet even taking her account as true, there is still no inference that this act was done in retaliation for her filing an affidavit almost three months earlier. A reasonable jury could conclude that West did not like Plaintiff personally, especially in light of her repeated attempts to undermine his authority by taping their conversations, and requesting that he sign cover sheets. However, acting out of personal dislike is different from acting out of retaliation for protected

---

[13] Plaintiff also testified generally that she was "excluded" and "omitted" from meetings with supervisors. However, she admitted that she did not know what the meetings were about. Assuming the meetings occurred, there is no evidence that they pertained to Plaintiff, or that Plaintiff was not included because she is female. Furthermore, Plaintiff has not demonstrated that her lack of participation affected any aspect of her employment.

[14] For the same reason, Plaintiff cannot claim retaliation based on the fact that her initials were omitted from an invitation to attend a seminar. (See Pl.'s Exh. 16.) She never identified who wrote the initials on the invitation, and therefore cannot claim that he or she knew about her earlier filing of an affidavit and charge of discrimination.

16.

activity.

Here, the causal nexus between West's actions and Plaintiff's gender is wholly absent. There is no basis from which a jury could infer that West bore hostility toward Plaintiff because of her protected activity, rather than mere hostility toward her personally.

**B.    There Is No "Materially Adverse Action" Or Evidence Of Pretext.**

"The Supreme Court emphasized in [Burlington N. & Santa Fe Ry. v. White] that '*material* adversity' is 'important to separate significant harms from trivial harms.'" Chang v. Safe Horizons, 254 Fed. Appx. 838, 839 (2d Cir. 2007).   In keeping with the "materially adverse" standard, several courts have recognized that "[p]etty slights, minor annoyances, personality conflicts that generate antipathy, snubbing, the sporadic use of abusive language, or a simple lack of good manners, often experienced at work, do not rise to the level of actionable conduct in a Title VII retaliation claim." Martinez v. New York City Dep't of Educ., No. 04 Civ. 2728, 2008 U.S. Dist. LEXIS 41454, at *40 (S.D.N.Y. May 27, 2008) (Exh. 4, attached); see Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

After discounting everything that occurred prior her first CHRO charge, Plaintiff is left with (1) the fact that many of her coworkers happened to be out of the office on January 18, 2001; (2) West and Manouse completing her yearly evaluation on January 10, 2000 without her knowledge; (3) her receipt of a week of paid time off in lieu of returning to work; (4) a "cold" and "unresponsive" office when she returned, where no one spoke to her except Manouse; (5) Durza's manner of dropping off the SNET vehicle at Plaintiff's house; (6) the failure to reassign her to the Cingular Wireless account; (7) West's statement that Plaintiff would be disciplined for insubordination if she contacted Janice Vereb again; (8) West's denial of her request for overtime and yelling at her; (9) the requirement that Plaintiff's work be approved by West or

Manouse; (10) Plaintiff's exclusion from a fishing trip; (11) West's statement that Plaintiff "could not record any meeting;" (12) West's statement that she might not receive all of her requested vacation time depending on the workload; (13) the omission of Plaintiff's initials from an invitation to attend a seminar; (14) Plaintiff's exclusion or omission from meetings with supervisors; and (15) West's grabbing Plaintiff's wrist and taking papers out of her hand.  All of these incidents exemplify the sorts of "petty slights, minor annoyances, [and] personality conflicts" that cannot constitute materially adverse actions as a matter of law.  See Martinez v. New York City Dep't of Educ., No. 04 Civ. 2728, 2008 U.S. Dist. LEXIS 41454, at *40 (S.D.N.Y. May 27, 2008); see also Chang v. Safe Horizons, 254 Fed. Appx. 838, 839 (2d Cir. 2007) (holding that a supervisor's questioning and issuance of oral and written warnings "do not constitute 'materially adverse' actions in the view of a 'reasonable employee.'"); Mutts v. S. Conn. State Univ., 242 Fed. Appx. 725, 727 (2d Cir. 2007) (holding that transferring plaintiff custodian to the residence halls, and thereby exposing her to cleaning agents and chemicals in a poorly ventilated area; asking her to clean up mold on one occasion; and assigning her an increased workload due to hiring freezes are not "materially adverse" actions); Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 205 Fed. Appx. 858, 861 (2d Cir. 2006) (affirming district court's conclusion that unfavorable scheduling is not an adverse employment action).  There is insufficient evidence to support a finding that any of these incidents were the result of her protected activity several months before.  Moreover, there is insufficient evidence to support a finding that SNET's explanations for these actions are pretextual.

The evidence, which does not support a finding of a materially adverse action, retaliatory motive, or pretext, underscores the lack of foundation for a jury to find that Plaintiff was retaliated against in this case.  Accordingly, judgment should be entered in SNET's favor on this

claim as well.

THE DEFENDANT,

SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By: _____
Jennai S. Williams (Federal Bar No. CT27762)
LITTLER MENDELSON, P.C.
110 Washington Avenue, Third Floor
North Haven, CT 06473
Tel:  203.234.6344
Fax:  203.234.6345
JSWilliams@littler.com

19.