UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KIMBERLY BACHIOCCHI,** : | |
| Plaintiff, : | Civil Action No.: 02-CV-908 (CFD) |
| v. : | |
| **THE SOUTHERN NEW ENGLAND** : | July 11, 2008 |
| **TELEPHONE COMPANY,** : | |
| Defendant. : | |

### DEFENDANT'S MEMORANDUM SUPPORTING THE ADMISSIBILITY OF PORTIONS OF WEST'S RECORD OF CUSTOMER COMPLAINTS

The defendant, Southern New England Telephone Company, Inc. ("SNET"), files its supplemental memorandum addressing the admissibility of the portions of Defendant's Exhibit 31 ("Def. Exh. 31"), Kevin West's record pertaining to meetings with Nicholas Faiella and underlying customer complaints about plaintiff and Faiella's conduct. A copy of the exhibit at issue is attached to this memorandum.

**A.      The Notes Are Business Records.**

Rule 803 of the Federal Rules of Evidence provides that records "made at or near the time by . . . a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the [document], all as shown by the testimony of the custodian or other qualified witness, shall be admissible as an exception to the hearsay rule," unless the source of the information or the method of preparation indicates a lack of trustworthiness. Fed. R. Evid. 803(6). Here, Kevin West has testified that Exh. 31 was prepared in the normal course of his business activities, that it was in the normal

course of his activities to prepare such records of meetings and conversations regarding personnel issues, and that the record was prepared at or about the time the events reflected in them occurred. Therefore, Def. Exh. 31 is admissible under the business records exception to the hearsay rule.

B.   **The Statements Made by the Four Contractors to West Are Not Offered for a Hearsay Purpose.**

The Court has allowed the parties to submit briefs concerning whether the substance of the complaints made by the contractors contained within Def. Exh. 31 are admissible or whether they are inadmissible as double hearsay. These portions of West's record are not double hearsay, first, because they are not offered for the truth of the matters asserted within them but rather to show West's state of mind, which is highly relevant to his motive in affirming Vallario's decision in May 2000 to assign plaintiff and Faiella to separate jobs. West is accused in this case of engaging in conduct toward plaintiff that she claims was unlawful retaliation, including the reassignment of Faiella away from her jobs. Thus, his intentions are directly in issue and a key focus in the case. It does not matter for this purpose whether the statements made by the contractors were true or false, but instead what matters is that West understood them to be true at the time and made decisions based on them. Because the complaints by the contractors are being offered to prove West's state of mind, rather than the truth or falsity of the complaints themselves, they are not inadmissible as hearsay under Rules 801 and 802.

Faiella testified that in May 2000, West and Vallario stopped assigning him and plaintiff to the same jobs and removed him from existing jobs where plaintiff was the engineer. According to Faiella, these decisions were part of a pattern of "harassment" and retaliation that both the plaintiff and he were subjected to at the time.

West testified at the trial that his affirmation of the reassignment by Bob Vallario was a rational business response to complaints Vallario received and West confirmed by four customers about Faiella and plaintiff. To substantiate the reasons for West's decision to affirm the separation of Faiella and plaintiff, SNET offered West's notes of his discussions with the contractors into evidence. See Def.'s Exh. 97, attached. The record reflects and corroborates West's state of mind and the legitimate, non-retaliatory decisions he made thereafter. They are important to SNET's defense to plaintiff's claim that West was motivated by a desire to unlawfully retaliate against plaintiff and Faiella.

Because it is offered to prove West's state of mind rather than their truth or falsity, the record is not hearsay within the meaning of Rule 801(c). See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.")

Several Circuit Courts have explicitly held that "[d]ocuments containing customer complaints, which are not offered to prove the truth of the matter contained within them but rather to show the state of mind of the employer who made the decision . . . are not hearsay and are admissible." Blanks v. Waste Mgmt., 31 F. Supp. 2d 673, 680 (E. D. Ark. 1998). "[A] customer complaint offered to show, for example, that a decisionmaker had notice of the complaint, rather than to prove the specific misconduct alleged in the complaint, is not barred by the hearsay rule." Kelley v. Airborne Freight Corp., 140 F.3d 335, 345-46 (1st Cir. 1998); see also Wolffe v. Brown, 128 F.3d 682, 685 (8th Cir. 1997) ("In employment discrimination cases, internal documents relied upon by the employer in making an employment decision are not hearsay as that term is defined in Fed. R. Evid. 801(c) . . . . Rather, such documents are relevant and admissible because they help explain (or may help explain) the employer's conduct."); Brill

v. Lante Corp, 119 F.3d 1266, 1271 (7th Cir. 1997) (affirming that customer complaints about the plaintiff are not hearsay because "[t]he question is not whether [the plaintiff] actually referred to a client as an 'idiot' and suggested that he be shot; what is important is [the supervisor's] honest belief that she said those things.").

    Although the Second Circuit has not spoken about customer complaints specifically, it has ruled that employee complaints are admissible when offered for the same purpose, i.e., to show the state of mind of the employer in its subsequent actions against the employee. See Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 348 (2d Cir. 1999) ("The witnesses' testimonial reports of the third parties' statements . . . were admitted to assist the [supervisors] in seeking to demonstrate that they were motivated by [the plaintiff's] behavior, and not by his comments on politically sensitive issues. They were therefore not hearsay. See Fed. R. Evid. 801(c)."); Cameron v. Cmty. Aid For Retarded Children, Inc., 335 F.3d 60, 65 n.2 (2d Cir. 2003) (affirming district court's consideration of coworker complaints about the plaintiff "[b]ecause these statements are not used to prove the truth of the matter asserted, but to establish [the decisionmaker's] state of mind, they are not hearsay as [the plaintiff] contends" and "[t]he inaccuracy of those reports does not matter if [her supervisor] believed them"); Wong v. Lenox Hill Hosp., No. 99-9420, 2000 U.S. App. LEXIS 14119, at *4 (2d Cir. June 14, 2000) (affirming admission of supervisor's testimony about a complaint made against the plaintiff because "[t]hese statements formed part of the basis for [the defendant's] decision to terminate [the plaintiff]. As such, these statements were properly admitted not for their truth, but to establish [the defendant's] state of mind.").

    It is immaterial whether the third-party complaint was from a customer or a coworker if the complaint formed the basis for the supervisor's subsequent actions. Here, West investigated

four customer complaints about plaintiff and Faiella, and decided that plaintiff and Faiella should no longer work together based on the results of his investigation. Because the complaints are being used to establish the legitimacy and genuineness of West's belief that he needed to separate plaintiff and Faiella — and to contradict plaintiff's assertions that West and Vallario were motivated by a retaliatory or discriminatory animus — the substance of the complaints are not hearsay and are admissible as non-hearsay evidence.

D. **In Addition, What the Contractors Told West Is Admissible As a Prior Consistent Statement by West Under Rule 801(d)(1)(B).**

Under Rule 801(d)(1)(B) of the Federal Rules of Evidence, a statement is not hearsay if the declarant testifies at trial and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed. R. Evid. 801(d)(1)(B). The statements made by the contractors to West are admissible for their truth because West is testifying at the trial of this matter, the statements are consistent with West's direct testimony concerning the nature of the complaints from the contractors, and Faiella previously testified on behalf of the plaintiff that the contractors did not really complain about him and implied or stated that West's account of the conversations is a fabrication. Thus, the complaints by the contractors are also admissible, with no limiting instructions and as to their truth, as non-hearsay statements to refute a claim of recent fabrication under Rule 801(d)(1)(B).

Dated at North Haven, Connecticut this 11th day of July, 2008.

        THE DEFENDANT,
        SOUTHERN NEW ENGLAND TELEPHONE
        COMPANY

By _/s/ Lori B. Alexander_____
    Lori B. Alexander
    Federal Bar No. CT08970
    Littler Mendelson, P.C.
    110 Washington Avenue
    North Haven, Connecticut 06473
    Tel. (203) 234-6344
    Fax (203) 234-6345
    E-Mail: lalexander@littler.com

*Documentation: Nick Faiella By Kevin West Manager PTS*

**DEFENDANT'S EXHIBIT 31**

11/15/99

I met with Nick Faiella over a number of issues he wanted to discuss regarding the Engineer's and the Engineering Manager Rich Light. I talked to Nick regarding the verbal disagreements he has had with Rich Greene, Ron Lathrope, John Dunn, Rich Light and Yvan Boulet and while everyone felt that these out bursts were due to the medication he was taking from the cancer operation that this behavior was unacceptable. Nick promised that he would do his best to control himself and speak to me before he reacts.

2/3/00

After Nick's Manager Bob Vallario informed me of the message from SNET Executive Response Group regarding the incident with Mrs. Emerson and the driver of SNET Pick-up truck registration # 580 CZR. This truck is assigned to Nick and he is the driver. ( See Bob Vallario's notes for details) Nick denies this ever happened, again I stressed that this is not appropriate behavior and would not be tolerated.

5/16/00

I received a call from Nick Faiella telling me he needed to meet with me immediately regarding his area and projects. Nick and I discuss the fact that his Manager Bob Vallario has taken away some of his projects and assigned them to someone else. I told him I would speak to Bob Vallario and find out what was going on. Nick went on to say that he was not having an affair with Engineer Kim Bachiocchi and his nick name for her was Barbie. I told Nick that all of this was new news to me and that I was not interested as long as nothing happens on Company time or Company property. Nick went to say that because of his cancer operation he was not able to function sexually and that he had a wonderful wife. Again I told Nick I was not interested in anything other than SNET work functions.

5/16/00

I had a meeting with Bob Vallario Nick Faiella's Manager as to my conversation with Nick Faiella and would like an explanation. Bob explained that on 5/9/00 he had a meeting with both Kim Bachiocchi and Nick at their request while I was on vacation. Bob went on to explain that both Nick and Kim brought up a project that SNET contractor J. Bordieri Electric was the subcontractor on and went on to say that he was wasting the wire. Bob told them both that once the test results were compiled we would be able to determine if the project was properly engineered. Bob did tell Nick and Kim that J. Bordieri did call Bob on 5/2/00 for a meeting to discuss the project in question. Joe Bordieri told Bob that he did not want any more work from SNET because it was not worth aggravation to get abused and lose money at the same time. Apparently both Nick and Kim attacked Joe Bordieri over the amount of wire used. Joe Bordieri felt that Nick 's attack was to cover up for Kim's mistake on the quantity of wire ordered. Bob Valarrio

went on to inform me that other contractors were complaining of abusive attacks by Nick and that they always were around projects engineered by Kim Bachiocchi. Bob told me that he informed both Nick and Kim that going forward any projects engineered by Kim Bachiocchi would be going to other Installation Supervisor's other than Nick and that both Nick and Kim were opposed to this plan.

5/17/00 1:45 pm

I met with Nick Faiella as a follow up to my meeting with Bob Vallario and basically went over what Bob Vallario had told me. I told Nick that if what Bob indicated was accurate it cannot continue and will not be tolerated. Nick became aggravated and demanded I contact the Contractors in question and prove he has never had confrontations with them and they all are willing to work with Nick. I told Nick that I would definitely talk to the contractors.

5/19/00 8:30 am

### A. J. Communications Meeting

I spoke with Al Volpe owner of A. J. Communications at the request of Installation Supervisor Nick Faiella. Al had received a telephone call from Nick in the past few days regarding working together. I asked Al if he had a problem working with Nick Faiella his answer was no. I asked him if he had a verbal confrontation with Nick Faiella. Al stated that he did have a verbal confrontation with Nick Faiella over a meeting at Yale regarding a project Al was working on for SNET with Engineer Kim Bachiocchi. Kim called Nick and Nick called AL and asked him why he was trying to make Kim look bad. Al and Nick resolved the matter. Al did say that in the past he would use his own material rather than have a confrontation with Nick and Kim. I assured Al that this was not necessary and that SNET would provide any additional material required to make the projects run smooth. ( Al Volpe retired from SNET after 30+ years before opening his own business).

5/19/00 3:30 pm

### Bordieri Electric Meeting

I spoke with Joe Bordieri owner of Bordieri Electric at the request of Installation Supervisor Nick Faiella. Joe had received a telephone call from Nick in the past few days regarding working together. I asked Joe if he had a problem working with Nick Faiella his answer was no. I asked him if he had a verbal confrontation with Nick Faiella. Joe stated that he did have a verbal confrontation with Nick Faiella and Kim Bachiocchi over a project Joe was working on for SNET. Joe stated that he felt that Nick was very defensive of Kim. I asked Joe if he ever told Bob Vallario that he did not want to work for SNET. He stated that he had a meeting with Bob Vallario on 5/2 at his request and told Bob he did not want another SNET project that Kim engineered. Because he felt that they were not correctly engineered and he was losing money and did not need the aggravation that went with it.

5/22/00 8:30am

### LeMay Communications Meeting

I spoke with Ernie LeMay Sr. owner of LeMay Communications at the request of Installation Supervisor Nick Faiella. I asked Ernie if he had a problem working with Nick Faiella his answer was no. I asked him if he had a verbal confrontation with Nick Faiella. Ernie stated that he did have a verbal confrontation with Nick Faiella over a project Ernie was working on at Yale for SNET. On another project Ernie stated that was engineered by Kim Bachiocchi he felt that it was not engineered correctly and told Bob Vallario that he refused the project. Nick accused Ernie of going out to the customer on his own and that there was nothing wrong with the engineering. Ernie and Nick resolved the matter. He did say that if it was one of Kim's projects Nick was very defensive of Kim. ( Ernie LeMay Sr. retired from SNET after 30+ years before opening his own business).

5/22/00 11:00am

### Northeastern Communications and Electrical Meeting

I spoke with Ernie LeMay Jr. owner of Northeast Communications and Electrical at the request of Installation Supervisor Nick Faiella. I asked Ernie if he had a problem working with Nick Faiella his answer was no. Ernie had received a telephone call from Nick and Kim Bachiocchi in the past few days regarding working together. I asked him if he had a verbal confrontation with Nick Faiella. Ernie stated that he did not have a verbal confrontation with Nick Faiella but felt intimidated by Nick. On a SNET project Ernie was working on he called Kim about a customer change and the same day Nick is asking him what did you do to my Kimee. He felt that Kim and Nick were beating him out of additional dollars based on changes to the project. I assured Ernie that SNET would always pay him additional dollars if the changes were customer generated or if we made an error in engineering a project. Prior to having the above-mentioned talk with Nick and Kim Ernie had told Bob Vallario that he would not take another Project from Kim & Nick.

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2008, a copy of the foregoing was filed electronically on all parties to this action. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

_____
Lori B. Alexander
Federal Bar No.: CT08970

7.