**Hon. Christopher F. Droney**
**United States District Judge**

# PROPOSED JURY INSTRUCTIONS

**CASE:**     **Kimberly Bachiocchi v. Southern New England Telephone Co., – Civil Action No.  3:02 CV 908 (CFD)**

**SECTION I.**                     **GENERAL INSTRUCTIONS**

<u>**Juror Attentiveness**</u>

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will try to be as clear as possible.

It has been obvious to me that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

<u>**Role of the Court**</u>

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state.

2

Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

### Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said -- or what I may say in these instructions -- about the facts of this case. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiff has proven her case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of

certain witnesses.  The questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible that any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to either party.


## Conduct of Counsel

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All those questions of law must be decided by me, the court.  You should not show any prejudice against an attorney or the client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.


## Sympathy

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided

solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict. All parties to a civil lawsuit are entitled to a fair trial. You must make a fair and impartial decision so that you will arrive at a just verdict.

## Burden of Proof - General

This is a civil case and as such the plaintiff has the burden of proving the material allegations of her complaint by a fair preponderance of the evidence. For the plaintiff's claims alleging retaliation or sexual harassment by co-workers, if after considering all of the testimony, you are satisfied that the plaintiff has carried her burden on each essential point as to which she has the burden of proof, then you must find for the plaintiff on that claim and proceed to consider damages on that claim. If after such consideration you find the testimony of both parties to be in balance or equally probable, then the plaintiff has failed to sustain her burden on that claim and you must find for the defendant.

For the plaintiff's hostile work environment claim, if upon a consideration of all the facts on the issue of the existence of a gender-based hostile work environment created by the plaintiff's supervisors, you find that the plaintiff has failed to sustain the burden cast upon her, then you proceed no further and your verdict must be for the defendant. If, however, you find that plaintiff has sustained her burden on this claim, then you proceed to consider the issue of the affirmative defense. In this regard, the burden is upon the defendant to establish the affirmative

defense by a preponderance of the evidence. If you determine the defendant has sustained its

burden of establishing the affirmative defense, then you proceed no further and your verdict must

be for the defendant. If, however, you find that the plaintiff has established the essential

elements of that claim and that the defendant has not sustained its burden of the affirmative

defense, then you proceed to consider the issue of damages on that claim. The affirmative

defense does not apply to claims of harassment by co-workers; it only applies to claims of

harassment by supervisors.


### Burden of Proof -- Preponderance of the Evidence

Some of you may have heard of proof beyond a reasonable doubt, which is the proper

standard of proof in a criminal trial. That requirement does not apply to a civil case such as this

and you should put it out of your mind. In a civil case, the party with the burden of proof on any

given issue has the burden of proving every disputed element of the claim to you by a

preponderance of the evidence. If you conclude that the party bearing the burden of proof has

failed to establish the claim by a preponderance of the evidence, you must decide against that

party on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance

of the evidence means to prove that the fact is more likely true than not true. A preponderance of

the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness

of the evidence, not to the number of witnesses or documents. In determining whether a claim

has been proved by a preponderance of the evidence, you may consider the relevant testimony of

all witnesses, regardless of who may have called them, and all the relevant exhibits received in

evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties -- that it is equally probable that one side is right as it is that the other side is right -- then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence -- the party must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof -- that what the party claims is more likely true than not true -- then that element will have been proved by a preponderance of evidence.

## Evidence In The Case

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and any facts which are stipulated.

Deposition testimony may also be received in evidence. Depositions contain sworn testimony, with counsel for each party being entitled to ask questions. Testimony produced in a deposition may be read to you in open court. Deposition testimony may be accepted by you, subject to the same instructions which apply to witnesses testifying in open court.

To constitute evidence, exhibits must have been received or admitted into evidence. Exhibits which have been marked for identification or which were used to refresh a witness' recollection are not evidence unless they were admitted into evidence. During your deliberations,

7

you will have the exhibits that were admitted into evidence with you in the jury room.

The questions posed by the lawyers are not evidence.  It is the witnesses' answers that are evidence.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded.

Statements, objections and arguments of counsel are not evidence in this case, because the lawyers are not witnesses.  What the lawyers have said in their opening and closing statements is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

If certain evidence was received for a limited purpose, you must consider that evidence for that limited purpose only.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.


**Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses -- something he or she has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit.  Circumstantial

evidence is evidence which tends to prove a disputed fact by proof of other facts.

To remind you of the example I gave you at the beginning of the case, assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

An inference may be drawn only if it is reasonable and logical, not if it is speculative. You are allowed to draw logical inferences from facts that you find to have been provided; but you may not go outside of the evidence to find the facts, nor to resort to guesswork or conjecture. While you may draw conclusions from proven facts, you may not draw inferences from their inferences. To aid you in better understanding this, in the rain example I used earlier, while you could infer from the wet umbrellas that it was raining, you could not infer that there was a thunderstorm as well without more evidence. In other words, you should be careful to avoid resorting to speculation, conjecture or guesswork to determine critical facts in this case.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply

requires that your verdict must be based on a preponderance of all the evidence presented.

## Redacted Documents

You may notice that some exhibits have information redacted from them.  Those

redactions are for various reasons, such as to protect private information about other employees

or because the information was not relevant to the issues in the lawsuit.  As such, you should not

draw any inference from the fact of these redactions.

## Stipulation of Facts

A stipulation of facts is an agreement among the parties that a certain fact is true.  You

must regard such agreed facts as true.

The parties have stipulated to the following facts in this case:

1.  Plaintiff Kimberly Bachiocchi is an individual who at all times material hereto has
    been a resident of the State of Connecticut living at 21 Silano Drive, Oxford, CT
    06418.

2.  Defendant Southern New England Telephone Company is an was at all relevant
    times a corporation conducting business in the State of Connecticut and having an
    office at 310 Orange Street, New Haven, Connecticut and, among others, a facility
    at 90 Elizabeth Street, Derby, Connecticut. The defendant is subject to Title VII,
    and the Connecticut law regarding employment discrimination.

3.  The plaintiff has been employed by the defendant since July 1984 in a variety of
    positions, and is currently employed by the defendant.

4.  The plaintiff was employed in the defendant's Business Communications Sales
    ("BCS") Group from June 1998 to June 2001.  In or about June 1998, the plaintiff
    was offered and accepted a position in the BCS Group at SNET's facility located
    at 90 Elizabeth Street, Derby, Connecticut.  The department manager was Kevin
    West.

5.    Richard Light oversaw the engineering functions of the department. Initially, the plaintiff reported to Mr. Light, who, in turn, reported to Mr. West. Mr. Light retired from the company in mid-November, 2000. The plaintiff's job title was Analyst Technical Sales (Engineering).

6.    The plaintiff's duties, like those of other Analysts Technical Sales, consisted of designing, documenting and pricing voice and data communications platforms for businesses in Connecticut. She would contact customers and go to job sites to assess job requirements. She would then lay out the job, develop a materials and labor list, and determine the price of the job.

7.    The plaintiff, who lived in the New Haven area, was frequently assigned to engineer jobs in that area. Nicholas Faiella, an Analyst Technical Sales (Installation), also lived in the New Haven area, and also frequently was assigned to jobs in the New Haven area. Faiella was sometimes the installation technician for jobs that Bachiocchi had engineered.

8.    The plaintiff received medical leave from the defendant from May 19, 2000 to mid-May 2001. During that period, she did not attend work or do work for the defendant, with the exception of one day on January 18, 2001.

9.    The plaintiff is currently employed by the defendant as a Service Executive.


## <u>Witness Credibility</u>

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify.

Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did the witness appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was the witness' demeanor -- that is, carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person said but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witnesses had to see, hear, and know the things about which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.

## Credibility of Police Officers

The testimony of a police officer is entitled to no special or exclusive treatment.  The testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness.  You should not give either greater or lesser credence to the

testimony of a witness merely because he is a law enforcement officer.

## Expert Witnesses

You have heard expert testimony from two witnesses, Dr. Gary Zachariah and Dr. Stuart Kleinman.  An expert is allowed to express his opinion on those matters about which he has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, opinions, and reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept this witness's testimony merely because he or she is an expert. Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

**SECTION II.**                    **ISSUES IN THIS CASE**

Now, I will turn to the specific claims made by the plaintiff, Kimberly Bachiocchi.  The

defendant in this case, Southern New England Telephone Company, will be referred to as

"SNET."

## The Plaintiff's Complaint

The plaintiff has filed what the law calls a "complaint," which sets forth all of the issues

that she intended to raise at trial.  The plaintiff's complaint consists of two claims:

> 1. The first claim alleges that SNET subjected the plaintiff to a hostile work environment,
> in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. and
> the Connecticut Fair Practices in Employment Act ("CFEPA"), Conn Gen. Stat. § 46a-51
> *et seq*;

> 2. The second claim alleges that SNET retaliated against the plaintiff because of her
> involvement in protected activities, in violation of Title VII of the Civil Rights Act of
> 1964, 42 U.S.C. § 2000(e) *et seq* and the Connecticut Fair Practices in Employment Act
> ("CFEPA"), Conn Gen. Stat. § 46a-51 *et seq*.

You probably remember that I, as well as the lawyers, mentioned a third claim, based on the

federal Equal Pay act.  This claim no longer exists in this case, and you need not consider it.  You

are not to speculate as to why you need not consider it.

## Federal and State Discrimination Law

The plaintiff made her claims based upon both federal and state statutes.  I will explain

more about her particular claims in a moment.  However, I wanted you to understand how the

federal and state statutes interact.  The standards under both state and federal law are the same.

The purpose of both Title VII of the Civil Rights Act ("Title VII") federal statute, and the

Connecticut Fair Employment Practices Act ("CFEPA") is to eliminate employment

discrimination against individuals on the basis of sex.  You need not concern yourselves with

14

parsing any differences between the two areas of law.

## Title VII of the Civil Rights Act of 1964 and Connecticut Fair Employment Practices Act: Claims 1 and 2

As I mentioned, Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act both prohibit employers from discriminating against employees in the terms or conditions of their employment because of the employee's sex.

### 1. Hostile Work Environment Claim

Here, Ms. Bachiocchi contends that discriminatory employment action was taken against her on account of her sex through what is called a "hostile work environment." The elements of such a claim are the following:

(1.) That Ms. Bachiocchi was subjected to unwelcome harassment, ridicule, or other abusive conduct; and

(2.) That the abusive conduct was motivated, at least in part, by Ms. Bachiocchi's gender - that is, the fact that she is a woman; and

(3.) That the abusive conduct was so severe or pervasive that both Ms. Bachiocchi herself and a reasonable person in her position would find her work environment so hostile or offensive that it altered the conditions of her employment by creating an abusive work environment; and

(4.) That there is some specific basis for imputing the objectionable conduct to SNET.

I will now instruct you more fully on the issues you must address regarding these elements I just described.

15

Elements 1 and 2: Unwelcome Harassment Based on Gender

You must first determine whether Ms. Bachiocchi was subject to unwelcome harassment because of her sex. As used in Title VII and the CFEPA, "sexual harassment" is defined as any unwelcome harassment in the workplace that is directed at an employee because of her gender. Conduct is unwelcome if it is not solicited or invited and is regarded as undesirable or offensive. Harassment is related to the plaintiff's sex if the harasser would not have subjected a man to the same treatment. Sexual harassment can take the form of sexual advances, requests for sexual favors, or other expressions of sexual desire. However, it is not necessary that the acts at issue be motivated by sexual desires. Differential treatment, or rude, disparaging behavior based on gender can also constitute sexual harassment. Incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination: for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not. Any harassment directed at an employee because of the employee's gender is sexual harassment.

Element 3: Abusive Work Environment

If you determine that Ms. Bachiocchi suffered unwelcome harassment because of her sex, you must next determine whether the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her work environment by creating an abusive working environment. Thus, Ms. Bachiocchi must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of

16

discriminatory harassment.

This standard has both subjective and objective elements. Specifically, you must look at all the circumstances surrounding the unwelcome conduct and determine:

> 1) whether Ms. Bachiocchi subjectively perceived the working environment as hostile or abusive; and
>
> 2) whether a reasonable woman in Ms. Bachiocchi's position would have found the working environment to be hostile or abusive. That is, you must evaluate all of the circumstances in this case and determine whether a reasonable woman in a similar working environment and under similar circumstances would have been offended by the unwelcome conduct in question.

The types of factors you may take into account in making this determination include the following:

> 1) the nature of the environment in which Ms. Bachiocchi worked;
>
> 2) the nature of the conduct;
>
> 3) the severity of the conduct;
>
> 4) the frequency of the conduct;
>
> 5) whether the conduct was physically threatening or humiliating;
>
> 6) whether the conduct consisted of merely occasional teasing;
>
> 7) whether the conduct interfered with Ms. Bachiocchi's work performance;
>
> 8) the context in which the alleged sexual harassment occurred;
>
> 9) the effect the conduct had on Ms. Bachiocchi's psychological well-being.

17

This is not an exhaustive list, as you must consider the totality of the circumstances. There is no mathematical formula to determine whether the conduct was severe or pervasive. These factors must be considered cumulatively, so that you may obtain a realistic view of the work environment. However, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinary severe, or that a series of incidents were sufficiently continuous or concerted to have altered the conditions of her working environment. The more severe the harassing conduct, the less frequent it must be for you to find that the conduct amounted to unlawful sexual harassment. In sum, to decide whether the severity and pervasiveness threshold has been reached, you must examine the specific circumstances of this case in their totality and evaluate the severity, frequency, and degree of the abuse.

Element 4: SNET's Liability for Harassment

Ms. Bachiocchi also must demonstrate that a specific basis exists for imputing the objectionable conduct to her employer. An employer is not automatically liable for a hostile work environment perpetrated by its employees. Instead, an employer's liability for the abusive actions of its employees depends on whether the employee perpetrating the abuse is a supervisor or merely a co-worker of the plaintiff. SNET may be held liable for the abusive conduct of its employees, but the test for liability you must apply is different depending on whether the conduct was perpetrated by Ms. Bachiocchi's supervisors or co-workers.

Therefore, you must next consider whether the plaintiff's hostile work environment was created by a supervisor or supervisors. Under Title VII and the CFEPA, an individual qualifies as an employee's supervisor if the individual has authority to undertake or

recommend tangible employment decisions affecting the employee or to direct the employee's daily work activities.  Thus, you must determine whether the individuals who created the hostile work environment were the plaintiff's supervisors under this test.

a. <u>SNET's Liability for Harassment by Supervisors:</u>

If you find that Ms. Bachiocchi's hostile work environment was created by her supervisors, you must find SNET liable for the hostile work environment unless SNET can prove by a preponderance of the evidence its affirmative defense. SNET's affirmative defense to liability for supervisor harassment requires SNET to prove both of the following factors:

1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and

2) that Ms. Bachiocchi unreasonably failed to take advantage of any preventive or corrective opportunities provided by SNET or to avoid harm otherwise.

An important consideration in determining whether an employer has satisfied the first prong is whether the employer had an anti-harassment policy with complaint procedures. However, an employer also must prove that it exercised reasonable care not only to promptly correct any sexually harassing behavior, but also to prevent such behavior from occurring.

b. <u>SNET's Liability for Harassment by Co-Workers</u>

If you find that Ms. Bachiocchi was harassed by individuals who were non-supervisory co-workers of the plaintiff, the defendants will only be liable for the hostile work environment created by that harassment if the plaintiff demonstrates that SNET was negligent.  That is, SNET will be liable for co-worker harassment if Ms. Bachiocchi

demonstrates that either:

> (1) SNET failed to provide a reasonable avenue for complaints; or
>
> (2) SNET knew (or in the exercise of reasonable care should have known) about the harassment but failed to take immediate and appropriate remedial action.

## 2. Retaliation Claim

The plaintiff also claims that the defendant retaliated against her because she engaged in "protected activities," that is, supporting Nick Faiella's discrimination complaint and filing her own discrimination complaint. Protesting discrimination in employment is protected activity, whether or not the protest is justified. Accordingly, to make out her claim of retaliation, the plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

> (1.) That Ms. Bachiocchi engaged in a protected activity, specifically that she filed a charge of sexual harassment against SNET with the CHRO or supported Nick Faiella's charge with the CHRO; and
>
> (2.) That SNET was aware of Ms. Bachiocchi's complaint and/or her support of Faiella's complaint; and
>
> (3.) That Ms. Bachiocchi was then subjected to a material adverse action by SNET; and
>
> (4.) That there is a causal connection between Ms. Bachiocchi's protected activities

and the adverse employment action.

A) Protected Activity

With respect to the first element, to prove that she engaged in activity protected by these statutes, Ms. Bachiocchi must demonstrate that she had a good faith and objectively reasonable belief, whether or not mistaken, when she made her complaint that SNET caused her to be subjected to a hostile work environment because of her gender, or supported Mr. Faiella's complaint that he was discriminated against. Whether SNET actually discriminated against the plaintiff or Mr. Faiella is a separate and distinct issue which is not before you. The only claim which you will decide is plaintiff's claim that she was retaliated against for her protected activity, as I have defined that term.

B). Defendant's Awareness

With respect to the second element, to satisfy the awareness requirement, Ms. Bachiocchi need not prove more than a general corporate awareness on the part of SNET that she engaged in protected activities. The plaintiff need not show that individual decision-makers at SNET knew that she filed a complaint or supported Faiella's complaint.

C) Material Adverse Action

With respect to the third element, an adverse action is "material," in terms of a retaliation claim, if it might well have discouraged a reasonable worker from complaining or supporting another employee's complaint about similar discrimination in employment. The adverse action itself, however, need not be related to plaintiff's employment or occur at the workplace.

D) Causal Connection between Protected Activities and Defendant's Adverse Action

In order to establish this fourth element, Ms. Bachiocchi must show that SNET took the adverse action, at least in part, because of the Ms. Bachiocchi's complaint and/or her support of Mr. Faiella's complaints. SNET need not have taken the adverse action solely, or even primarily, because of plaintiff's protected activity; but a retaliatory motive must be at least a substantial or motivating factor behind the adverse action.  Ms. Bachiocchi can prove that retaliation was a substantial or motivating factor behind an adverse employment action either:

> (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or

> (2) directly, through evidence of retaliatory animus directed against Ms. Bachiocchi by SNET.

**SECTION III.**                                    **DAMAGES**

**Compensatory Damages (Title VII and CFEPA Claims)**

If you find the plaintiff proved her claims of hostile work environment and/or

retaliation, you must then determine the amount of damages the plaintiff has sustained.  Just

because I am instructing you on how to award damages does not mean that I have any

opinion on whether or not damages should be awarded in this case.  In addition, since the

defendant must address the issue of damages during the trial or completely lose its

opportunity to do so, none of the evidence or discussion relating to damages presented on the

defendant's behalf should be taken or construed by you as an admission by the defendant that

it is liable or that the plaintiff is entitled to a damages award.

However, if you find the defendant is liable to the plaintiff on any of the grounds

advanced in this lawsuit, then you should consider the question of damages.  Compensatory

damages are designed to fairly and justly compensate a plaintiff for any injuries suffered.

Thus, in fixing compensatory damages, it is for you, in the exercise of your best judgment, to

determine the amount of money which will, in your judgment, reasonably and fairly

compensate the plaintiff for any harm of any kind which was proximately caused by the

wrongful conduct of the defendant.

The amount of compensatory damages may include reasonable compensation for any

emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other

nonpecuniary losses the plaintiff suffered.  This type of harm generally is called emotional

distress.  The plaintiff may testify as to any emotional distress she suffered, and medical

testimony is not required in order for the plaintiff to recover for emotional distress.  However,

23

a plaintiff may not recover for emotional distress unless she presents evidence of such harm.

In order to recover damages, the plaintiff must present sufficiently accurate and complete evidence for you to be able to estimate the alleged damages with reasonable certainty. Reasonable certainty of proof is all that is required, and the amount of any damages may be determined approximately upon reasonable inferences and estimates. Damages, if any, must be fair, just and reasonable and nothing more, and must reflect the harm suffered by the plaintiff. In addition, you must not speculate or guess as to damages, and under no circumstances should you let your sympathy affect your consideration of the law and the evidence. Likewise, it is not part of your function as jurors to punish the defendant or to be generous. Merely because you have been presented with evidence of the plaintiff's damages does not mean that you have to accept that evidence. It is the plaintiff's burden to prove each element and item of damage of her claim: it is not the defendant's burden to disprove them. Since it is the plaintiff's burden to prove her damages, the defendant also has no obligation to present evidence to disprove or refute her claim of damages. Thus, unless you find that the plaintiff has proven each element of damage by a fair preponderance of the evidence, you must find for the defendant on that element of damage.

**Causation and Damages**

I have said that you may award damages only for those injuries which you find the plaintiff has proven by a preponderance of evidence to have been the direct result of conduct by SNET. You must distinguish between, on the one hand, the existence of a violation of the

24

plaintiff's rights and, on the other hand, the existence of injuries naturally resulting from that violation.

## Proximate Cause

It is also important to remember that when an injury or loss follows a party's act or omission, and that injury or damage may be attributable in a causal connection to that act or omission, then that act or omission is said to be the proximate cause of that injury or loss. Expressed another way, if an act or omission of a party is found to have been a substantial factor in bringing about an injury or loss, then that act or omission is a proximate cause of that injury or loss. However, if the act or omission is not a substantial factor in bringing about that injury or loss, then it is not the proximate cause of that injury or loss. When that happens, it means that the doer of the act or omission is not liable under the law for the damage or loss.

## Double Recovery and Compensatory Damages

I have said that, if you return a verdict for the plaintiff, you must award her such sum of money as you believe will fairly and justly compensate her for any injury you believe she actually sustained as a direct result of the conduct of the defendant. If you find that the defendant did in fact violate the law in more than one way, you must remember, in calculating the damages, that the plaintiff is entitled to be compensated only for injuries she actually suffered. In other words, the plaintiff may not recover twice for the same injury. For example, if the defendant violated more than one law, but the resulting injury was no greater than it would have been had the defendant violated only one law, you should award an

amount of compensatory damages no greater than you would award if the defendant had

violated only one law.  If, on the other hand, the defendant violated more than one law and

you can identify separate injuries resulting from the separate violations, you should award an

amount of compensatory damages equal to the total of the damages you believe will fairly

and justly compensate the plaintiff for the separate injuries she has suffered.

## Nominal Damages

Nominal damages must be awarded when a defendant has violated Title VII and

CFEPA but the plaintiff has suffered no actual damage as a natural consequence of that

deprivation.  The mere fact that a violation of Title VII and CFEPA occurred is an injury to

the person entitled to enjoy that right, even when no actual damages flow from the

deprivation.  Therefore, if you return a verdict for the plaintiff on either or both of her Title

VII and CFEPA claims, but find that she has failed to prove by a preponderance of the

evidence that she suffered any actual damages, then you must award nominal damages of one

dollar in the area on the verdict form for compensatory damages.

## Punitive Damages

Ms. Bachiocchi claims the acts of SNET were done with malice or reckless

indifference to her federally protected rights so as to entitle her to an award of punitive

damages in addition to compensatory damages.

In some cases punitive damages may be awarded for the purpose of punishing a

defendant for its wrongful conduct and to deter others from engaging in similar wrongful

26

conduct. However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

An award of punitive damages would be appropriate in this case only if you find for plaintiff and then further find from a preponderance of the evidence:

(1) That a higher management official of defendant personally acted with malice or reckless indifference to plaintiff's federally protected rights, and

(2) That defendant itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

If you determine that SNET's conduct justifies an award of punitive damages, you may award an amount of punitive damages which you determine is proper. In fixing the amount, you should consider how offensive the conduct was, what amount is needed, considering SNET's financial condition, to prevent future repetition of the conduct, and whether the amount has a reasonable relationship to the actual damages awarded.

If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

**SECTION IV.     INSTRUCTIONS FOR DELIBERATIONS**

<u>**Right To See Exhibits and Hear Testimony**</u>
<u>**Communications With Court**</u>

You are about to go into the jury room and begin your deliberations.  The exhibits will be with you in the jury room.  If you want any of the testimony read, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting portions of the testimony.  I will also give you one copy of these instructions.

Your requests for testimony -- in fact any communication with the court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.  I caution you, also, not to communicate to me any numerical division of how you stand during your deliberations.

<u>**Duty To Deliberate/Unanimous Verdict**</u>

You will now return to decide the case.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other

jurors.  Discuss and weigh your respective opinions dispassionately, without regard to

sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which

in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based

on your consideration of the evidence and your discussions with your fellow jurors.  No juror

should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous

verdict.

### Selection of Foreperson

When you retire, you should elect one member of the jury as your foreperson.  That

person will preside over the deliberations and speak for you here in open court.

### Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been

given to you, sign and date it and advise the marshal outside your door that you are ready to

return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced

in court.  Once your verdict is announced by your foreperson in open court and officially

recorded, it cannot ordinarily be revoked.

### General Verdict Form

I have prepared a general verdict form for you to use in recording your decision.  On the

29

form, there are spaces to indicate your verdict as to the plaintiff's claims against the defendant.

Remember, each verdict must be unanimous and must reflect the conscientious judgment of

each juror.

### Final Instruction

Now the time has come for you to retire to the jury room.  When you go to the jury

room, do not begin to deliberate until you receive from the Deputy Clerk all the exhibits you are

to consider and until she formally directs you to begin your deliberations.

I remind you that at the completion of your deliberations, the foreperson should

communicate to the court through a signed note indicating that a verdict has been reached.

**Please do not send me the verdict form.**  Please remember that, in your note to me, you should

not indicate what your verdict is, but merely state that a verdict has been reached.  Then, have

the foreperson bring the executed verdict form with him or her into court.