**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KIMBERLY BACHIOCCHI,** | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:  02-CV-908 (CFD) |
| v. | : | |
| | : | August 15, 2008 |
| **THE SOUTHERN NEW ENGLAND** | : | |
| **TELEPHONE COMPANY,** | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S VERIFIED BILL OF COSTS**

Pursuant to Local Rule 54(b), the defendant, Southern New England Telephone Company ("SNET"), hereby submits its Objection to Plaintiff's Verified Bill Of Costs ("Bill"), filed on August 1, 2008.[1]  As explained herein, the Bill contains items that are not properly taxable as costs under the Local Rules, and expenses that arose entirely from claims on which she was not a "prevailing party."  Additionally, plaintiff should not recoup the expenses she incurred as a result of her own discovery abuses.  Accordingly, SNET respectfully requests that the court reduce the amounts recoverable by the plaintiff, as set forth below.

**I.    THE DEPOSITIONS TRANSCRIPTS OF EDWARD BACHIOCCHI, DR. TIRADO, AND DR. SARFEH WERE NOT "NECESSARILY OBTAINED FOR THE PREPARATION OF THE CASE."**

Under the Local Rules, a prevailing party may recover the cost of obtaining an original and one copy of a deposition transcript if the transcripts were "used at trial in lieu of live testimony, for cross-examination or impeachment . . . [or] necessarily obtained for the

---

[1]    SNET will file a separate objection to plaintiff's request for attorneys' fees by August 22, 2008, the deadline set by the Court on August 1, 2008.

preparation of the case and not for the convenience of counsel." D. Conn. L. R. Civ. P. 54(c)(2)(ii). In this case, the transcripts of the depositions of Edward Bachiochi (plaintiff's spouse), Dr. Tirado (plaintiff's ob/gyn physician), and Dr. Sarfeh do not satisfy that standard. Therefore, they cannot be taxable as costs under the Local Rules.

Edward Bachiocchi had no role in any of the events plaintiff claimed were sexual harassment by SNET. He did not testify at trial, nor was his transcript used "in lieu of live testimony." Plaintiff has no alternate basis for claiming that his deposition transcript was "necessarily obtained for the preparation of the case." In fact, neither party even thought it necessary to include him on their list of trial witnesses. Accordingly, the $438.33 spent to procure a copy of his deposition transcript does not qualify as a taxable cost.

Dr. Anna Lee Tirado's deposition transcript similarly was not "necessarily obtained for the preparation of the case"; rather, it was obtained "for the convenience of counsel." Dr. Tirado did not testify at any hearing or at trial, and was not included on the parties' list of trial witnesses. Indeed, no one even mentioned her name at trial. Given these facts, there is no way that her deposition transcript could have been "necessarily obtained for the preparation of the case," as required to constitute a taxable cost. The $322.13 fee that plaintiff's counsel claims to have paid for copies of her deposition transcript should be removed from the Bill.

Finally, plaintiff's procurement of a copy of Dr. Sarfeh's deposition transcript is not properly taxable as a cost. Dr. Sarfeh's extremely brief trial testimony was limited to repeating the contents of his treatment notes concerning the condition of plaintiff's wrist on June 4, 2001. Neither party needed or used his deposition transcript. Furthermore, it was clear from Dr. Sarfeh's deposition testimony five years ago that neither party would need a transcript of his deposition. (See Exh. A, attached.) At his deposition, Dr. Sarfeh testified repeatedly that his

2.

notes contained everything he knew about his evaluation of plaintiff's wrist, and he had no independent recollection or memories of plaintiff's treatment that day, or any other day.[2] Since plaintiff knew that Dr. Sarfeh's memory would not form the basis for his testimony, she also knew she only needed his treatment notes to prepare for trial. There was certainly no need for a copy of Dr. Sarfeh's deposition testimony, which merely repeated what was stated in his treatment notes, and reaffirmed that the full extent of his knowledge of the events at issue was contained in his treatment notes.

Last, Dr. Sarfeh's brief trial testimony related only to plaintiff' retaliation claim, a claim for which SNET prevailed at trial. Plaintiff offered Dr. Sarfeh's testimony to authenticate his notes of an office visit by plaintiff on June 4, 2001, the day plaintiff claimed Mr. West pulled a paper out of her hand at work. Because plaintiff testified at trial that her sexual harassment claim was based on conduct by Bob Vallario, John Dunn, and Richard Light only (not Mr. West), Dr. Sarfeh's testimony related to the paper incident had nothing to do with the sole count on which plaintiff prevailed. Because plaintiff was not the "prevailing party" on the retaliation claim, she should not be awarded costs for obtaining a transcript of Dr. Sarfeh's deposition.

All of the above facts confirm that Dr. Sarfeh's deposition transcript was ordered "for the convenience of counsel" rather than "necessarily obtained for the preparation for the case" as required under Local Rule 54. Accordingly, the $249.32 fee for obtaining a copy of his deposition transcript also is not a taxable cost.

---

[2] Dr. Sarfeh testified, "I don't have a clear memory of this event from two years ago, so my memory is essentially what is written here [in my treatment notes] has to be what my memory recalls." (Sarfeh Dep. 16; See Exh. A). He also testified, by way of further examples, that he had no opinion relating to the June 4, 2001 office visit other than what is reflected in his notes (Id. 13-14), that he had "no memories" (Id. 18), that all of his observations that he could recall concerning the treatment on June 4, 2001 were contained in his notes (Id. 23), and that all of his recollections were contained in his notes (Id. 24).

## II.    THE EXPENSES THAT ONLY RELATED TO UNSUCCESSFUL CLAIMS ARE NOT TAXABLE AS COSTS.

"The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005); see Farrar v. Hobby, 506 U.S. 103, 114 (1992). In accordance with that mandate, the Second Circuit has indicated that a "prevailing party" should only receive the costs they incurred in connection with their successful claims. See Cosgrove v. Sears, Roebuck, & Co., 191 F.3d 98, 102 (2d Cir. 1999) (vacating and remanding an award of costs so the district court could clarify whether the costs "[were] related solely to the claims on which [the defendant] prevailed, and the computation and/or the apportionment of the costs"); Patterson v. Balsamico, 220 F.3d 104, 123-24 (2d Cir. 2006) (affirming district court's decision to deduct attorney's fees and costs that were related to claims on which the plaintiff was not the prevailing party).

Here, in addition to the expenses related to Dr. Sarfeh's testimony, plaintiff's Bill includes expenditures related to the testimony of Chris Manouse and Laurie Moffett, both of whom testified exclusively about failed claims of retaliation and unequal pay. Because these witnesses had no bearing on the sole claim for which plaintiff prevailed (sexual harassment), she should be precluded from recovering the expenses associated therewith.

### A.    Dr. James Sarfeh

Plaintiff called Dr. James Sarfeh as a witness to corroborate her allegation that Kevin West grabbed plaintiff's wrist on June 4, 2001. In keeping with that purpose, Dr. Sarfeh's testimony was limited to his observations of plaintiff's wrist on that day.

As set forth above, the record establishes that the alleged wrist incident related solely to plaintiff's failed theory that West unlawfully retaliated against her. Kevin West was not one of

the individuals identified as sexually harassing plaintiff, and in fact the wrist incident happened almost a year after plaintiff filed her CHRO charge alleging sexual harassment. Therefore, Dr. Sarfeh's testimony was completely extrinsic to the single claim upon which she prevailed at trial and is not a properly recoverable expense to the plaintiff as a prevailing party. The bill for serving his trial subpoena was $126.42.[3]

### B.    Laurie Moffett

It is undisputed that Laurie Moffett was not involved in any of the circumstances that formed the basis of plaintiff's sexual harassment claim. She became a Senior Human Resources Manager after plaintiff filed her charge of sexual harassment in July 2004. As such, Moffett's testimony was limited to the events, circumstances, and actions that plaintiff claimed were taken in retaliation for her protected activities.

Because Moffett's involvement in the case pertained solely to plaintiff's failed retaliation claim, plaintiff may not seek reimbursement of the cost of Moffett's deposition. According to the invoices from Del Vecchio Reporting Services, LLC, plaintiff spent $522.33 on the first day of Moffett's deposition, and $251.73 on second day, for a total of $1,345.14.

### C.    Chris Manouse

At the very end of the trial, plaintiff called Chris Manouse as a witness and asked him very briefly about two topics: (1) co-worker Bill Volkert's time in the office, and (2) a single fishing trip referenced in his notes. Apparently, plaintiff hoped he would verify that the office was abnormally empty on January 18, 2001, and that plaintiff was excluded from a fishing trip. Both of these alleged events were offered as incidents of retaliation at trial.

---

[3] As set forth above, the limitation of Dr. Sarfeh testimony to plaintiff's retaliation claim is another reason for removing the cost of obtaining his deposition transcript from the Bill. As noted previously, plaintiff spent $438.33 in procuring his deposition transcript.

In fact, it is undisputed that Manouse was not involved in any of the events underlying her sexual harassment claim. Accordingly Manouse, like Moffett, was only a part of the litigation due to plaintiff's failed retaliation claim. Because plaintiff did not prevail on that claim, she may not seek reimbursement for the cost of Manouse's deposition or the expense of subpoenaing him for trial. According to plaintiff's invoices, these costs were $571.08 for his deposition and $122.90 on his trial subpoena, for a total of $693.98.

## III.  THE TRANSCRIPTS FROM PLAINTIFF'S LAST THREE DEPOSITIONS SHOULD NOT BE TAXABLE AS COSTS DUE TO PLAINTIFF'S MISCONDUCT DURING DISCOVERY.

The decision whether to award costs "is committed to the sound discretion of the district court." Cosgrove v. Sears, Roebuck, & Co., 191 F.3d 98, 102 (1999) (quoting ARP Films, Inc. v. Marvel Entm't Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991)). Based on the Court's discovery orders in this case, SNET should not be ordered to pay plaintiff's costs she incurred as a result of her own discovery violations.

In deference to the Court's time, SNET will not repeat the long and tortured history of its attempts to obtain discovery from plaintiff. Its motions to compel discovery and objections to plaintiff's improper discovery, as well as the Court's rulings on these motions, are part of the record of this case. However, SNET does point out, as did Magistrate Judge Smith in his ruling on one of SNET's motions to compel, that plaintiff's "unjustified recalcitrance" in complying with her discovery obligations imposed significant unnecessary costs on defendant. (See Exh. B, attached) With specific regard to plaintiff's deposition, SNET deposed plaintiff twice in 2003, and then was forced to schedule *three more* depositions in 2004 and 2005 because plaintiff (1) refused to provide medical authorizations until the Court ordered her to do so on April 27, 2004; (2) refused to produce her 27-page handwritten log until May 2004; (3) walked out of her June 1,

2004 deposition in direct violation of the Court's order granting SNET additional time to depose her due to her belated production of several documents; (4) refused to produce the videotape entered into evidence at trial until the Court ordered her to do so on June 17, 2004; and (5) refused to produce various other documents and materials until the Court ordered her to do so in June and September 2004. (See Exhs. C, D, E, and F, attached.)

These actions, among others, caused the Court to issue repeated warnings and admonishments to plaintiff's counsel. (See Exhs. D, E, and F.) SNET was awarded costs and attorneys' fees in connection with plaintiff's decision to walk out of her deposition in open defiance of the Court's order. (See Exh. G, attached.) The Court also "agree[d] with SNET that no party 'should be required to undergo' what SNET has had to endure at the hands of plaintiff's counsel in order to obtain legitimate discovery." (See Exh. E.)

After receiving several more baseless motions and indefensible arguments from plaintiff's counsel, Magistrate Judge Smith issued a memorandum of decision sharply criticizing plaintiff and her counsel for their conduct in discovery in this matter. Magistrate Judge Smith's September 26, 2004 Memorandum of Decision ("Memorandum") began:

> This is the latest in a series of discovery motions that the plaintiff's unjustified recalcitrance has necessitated. Prior warnings have been unavailing. Plaintiff continues to skirt the rules, imposing unnecessary costs on the defendant.

(Exh. B.) Finding Plaintiff's discovery objections wholly "unmeritorious," the Court declared that "[t]he defendant should never have had to file this motion, the fifteen page memorandum that accompanies it, or the eighty pages of exhibits that the court has had to wallow through in an attempt to fathom why plaintiff has acted as she has." (Id.) Furthermore, after reviewing materials plaintiff had claimed without any basis were "privileged" and not subject to disclosure, the Court stated that it "believe[d] plaintiff's counsel was improperly attempting to conceal

discoverable documents." (Id. 3)  The court added that "[p]laintiff's attempt to portray herself as the victim of unfair or oppressive conduct on defendant's part *is simply not true*." (Id. 3.) (emphasis added).

In sum, the Court found that plaintiff's repeated discovery abuses needlessly extended the discovery process while "imposing unnecessary costs on the defendant."  SNET was denied the full benefit of its June 1, 2004 deposition, since plaintiff and her attorney left after only a few hours of testimony.  Moreover, as a consequence of plaintiff's walk-out and improper "attempt[]" to conceal discoverable documents," SNET was forced to conduct to two additional depositions of plaintiff on December 13, 2004 and February 15, 2005.  In consideration of these facts, SNET should not be forced to pay whatever expenses plaintiff incurred as a result of her own "unjustified recalcitrance," including the costs associated with the June 1, 2004 deposition, and the two depositions SNET was forced to conduct thereafter.  Transferring such expenses to SNET — in addition to the "unnecessary costs" that were already imposed by plaintiff conduct — would only reward plaintiff for her openly defiant conduct, in contravention of Magistrate Judge Smith's award of costs and attorney's fees to SNET.  According to the Bill, those expenses were $386.35 for the June 1, 2004 deposition transcript, $635.40 for the December 14, 2004 transcript, and $460.04 for the February 15, 2005 transcript, for a total of $1,481.74.

## IV.    CONCLUSION

Based on the foregoing, SNET respectfully requests that the Court remove all of the aforementioned items from Plaintiff's Bill of Costs.  According to SNET's calculations, these items amount to a reduction of $4,387.06, bringing the total Bill from $9,556.30 to $5,169.24.

Dated at New Haven, Connecticut this 15th day of August, 2008.

THE DEFENDANT,

SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By _Jennai Wei_____

Jennai S. Williams (Federal Bar No. CT27762)
Littler Mendelson, P.C.
One Century Tower – Suite 300
265 Church Street
New Haven, CT  06510
Telephone: (203) 974.8715
Facsimile: (203) 974.8799
JSWilliams@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

**Plaintiff's Counsel**
Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880

Jennai S. Williams
Federal Bar No.: CT27762

10.

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


KIMBERLY BACHIOCCHI,
          Plaintiff.


VS.                                    CIV. ACTION NO. 02-CV-908 (CFD)


THE SOUTHERN NEW ENGLAND
TELEPHONE COMPANY,
          Defendant.




Deposition of JAMES SARFEH, M.D., taken in the hereinbefore

entitled action, pursuant to Notice and the Federal Rules of

Civil Procedure at the offices of Tyler, Cooper & Alcorn,

205 Church Street, New Haven, Connecticut, before Meghan M.

English, LSR, a Licensed Shorthand Reporter and Notary

Public, in and for the State of Connecticut on Tuesday,

September 2, 2003, at 5:16 p.m.



MEGHAN M. ENGLISH, LSR
LSR NO. 211

DEL VECCHIO REPORTER SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE                    100 PEARL STREET, 14th FLOOR
MADISON, CT 06443                  HARTFORD, CT 06103-4506
   203 245-9583                         800 839-6867

witnesses before today; is that correct?

    A     No.

    Q     It says here in the third paragraph, the first page, that the plaintiff may also call James Sarfeh, M.D. and that's you, correct?

    A     Yes.

    Q     That's your address?

    A     Yes.

    Q     As an expert.  And it further states, and I quote, Dr. Sarfeh is Miss Bachiocchi's treating physician and it is anticipated that he will testify to his opinions and observations arising from her treatment on June 4, 2001, closed quote.  Have you been asked to testify about your opinions and observations as to her treatment on June 4, 2001?

    A     I don't know how to answer that.  I have been asked to act in this deposition and answer questions.  As far as acting as an expert or offering opinions, that's unclear to me.

    Q     And when you say it is "unclear to you," has -- why is it unclear?

    A     My experience with the patient on that day is written and documented in the office notes.  Beyond that, opinions would for me include expertise that I may not have.

    Q     Do you have any opinion as to Miss Bachiocchi

the plaintiff that relate to the June 4, 2001, office
visit other than what is reflected in your notes?

    A     No.

    Q     And let's look at Exhibit 2, and could you
find -- which is the summary of your office notes.  Could you
find for me the June 4, 2001, entry that's referenced in this
disclosure of experts?

    A     Okay.

    Q     Okay.  Have you located it?

    A     Yes.

    Q     Could you start by simply reading it to me?  I
know it is handwritten and sometimes it's difficult to read.

    A     "Today while at work was grabbed in the left
wrist by her manager.  She was able to pull her wrist away
from him.  Events occurred at 9 a.m.  She became acutely
agitated after this event and extremely anxious and afraid.
She asked a friend who was an employee out on leave.  Police
were called.  She spoke with her attorney.  She reported a
subsequent redness and pain in the area which was grabbed.
This area has become tender.  Left wrist, 1 1/2 by 1 1/2
slightly red, flat bruise on the lateral radial aspect with
surrounding zone of 3 centimeters soft tissue swelling.  The
wrist is tender to palpation in this area and on rotation.
Pulse is 2 plus.  Strength and use of fingers preserved.
Soft tissue trauma.  Bruise.  Plan, Advil, ice.  Call if not

A        I cannot recall but I do not believe so.

Q        Wasn't there an open wound?  There wasn't an open wound?

A        Not that I wrote.

Q        And would you have -- if there was an open wound, is that something you would have written down?

A        Yes.

Q        Is it your memory that what you wrote down in your office notes on June 4, 2001, was an accurate and full description of what you saw at the time?

A        I don't have a clear memory of this event from two years ago, so my memory is essentially what is written here has to be what my memory recalls.

Q        And is it your practice when you take office notes to write down things, what you think are important to your medical diagnosis of a patient?

A        Yes.

Q        So if there was something additional medically important or significant it would have been your practice to add it into the handwritten notations of June 4, 2001; is that fair to say?

A        It is fair to say.

Q        It's hard to read on the photocopy, so bear with me for a moment.  You have an O question mark on the bottom of the -- about the middle of the entry.  Left wrist.

well, where was it on her wrist?

      A      According to the note, it was on the lateral radial aspect.  So this would be the thumb side of the wrist, on the outside of the thumb side.

      Q      So looking at my wrist, is that on this side or the top or bottom underneath?

      A      It would be on the thumb side.

      Q      Okay.  Just so the record is clear, you're describing it from my thumb all the way down on the top of my wrist.  Are -- can you describe better than that?  I am sorry, just for the record.

      A      The bruise does not include the thumb.  The bruise is -- according to my notes it's on the wrist on the outside.  That's right.  On the outside portion of the wrist. It's about the size of a quarter with some surrounding soft tissue swelling around it.

      Q      So if I start at my thumb and I go all the way down to my wrist that's approximately where the center of the bruising was; is that correct?

      A      From what the note says.

      Q      And you don't have any memory as you sit here today that that is different from what the note says?

      A      I have no memories.

      Q      How serious of an injury was this in your opinion?

23

A        Correct.

Q        Going back to Exhibit 3 where you were identified as -- by Miss Bachiocchi's counsel as her treating physician, you are still her treating physician; is that correct?

A        Yes.

Q        And you have indicated that you have no opinions with regard to this June 4, 2001, wrist bruise other than the facts that are contained in your notes; is that correct?

A        That is correct.

Q        And, again, referring back to the disclosure of experts which is Exhibit 3 concerning the fact that you will be testifying about observations arising from her treatment on June 4, 2001, am I correct that all of your observations that you can recall concerning the treatment on June 4, 2001, are contained in your notes?

A        Yes.

MR. GILLESPIE:  Objection.  I believe the disclosure says that he may be called not that he will be called.  Thank you.

MS. CANNAVINO:  I think I got the will from he will testify, but you're correct.  It does say we may call Dr. Sarfeh, so pardon me.

BY MS. CANNAVINO:

DEL VECCHIO REPORTING
(203) 245-9583

Q       But to the extent any one is disclosing you as
any of kind a witness with regard to your observations of the
treatment you gave Miss Bachiocchi on June 4, 2001, all of
your recollections are contained in your notes; is that
correct?

A       That's correct, yes.

Q       In the first paragraph of your notes on
June 4th you indicate that Miss Bachiocchi, as you state
right here, was grabbed in the left wrist by her manager.
You weren't present during this altercation to the extent
there was one, correct?

A       No.

Q       So you have no firsthand knowledge about that
incident, do you?

A       I do not.

Q       And Miss Bachiocchi explained to you that she
had been grabbed in the left wrist by her manager and that
she was able to pull away from him; is that correct?  You
only know that from Miss Bachiocchi?

A       Yes.

Q       And she is the one who told you that the
events occurred at 9:00 in the morning?

A       Yes.

Q       She is also -- now you note here she became
acutely agitated after this event and extremely anxious and

physician would do at the time of the visit.

    Q    Of course.  Your patient explains to you what is wrong, you utilize that information, assume it's accurate and reliable and then make your diagnosis; is that correct?

    A    Yes.

    Q    So you assume that what Miss Bachiocchi told you is accurate, as you would?

    A    Yes.

    Q    And that's your practice in dealing with your patients?

    A    Yes.

    Q    You don't recall anything else that Miss Bachiocchi told you that day that's not written down here about this incident, do you?

    A    No.

    Q    Did you ever discuss -- well, now the next time you saw Miss Bachiocchi was October 25, 2001, four months later -- 4 1/2 months later; is that correct?

    A    Yes.

    Q    And could you read to me what that entry says? I apologize.  It's very hard to read your personal handwriting.

    A    No GI complaints.  Normal bowel movements. Meds unchanged.  While lifting a computer at work felt a pop in the right elbow followed by pain in the elbow and inner,

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 SEP 26 A 9 00

U.S. DISTRICT COURT
HARTFORD, CT.

KIMBERLY BACHIOCCHI,
            -Plaintiff

            -v-                                    3-02-CV-908 (CFD)

SOUTHERN NEW ENGLAND
TELEPHONE COMPANY,
            -Defendant

RULING ON MOTION TO COMPEL (Dkt. 122)

   This is the latest in a series of discovery motions that the
plaintiff's unjustified recalcitrance has necessitated. Prior
warnings have been unavailing. Plaintiff continues to skirt the
rules, imposing unnecessary costs on the defendant.

   **The pending motion is granted in its entirety.** The defendant
should never have had to file this motion, the fifteen page
memorandum that accompanies it, or the eighty pages of exhibits
the court has had to wallow through in an attempt to fathom why
plaintiff has acted as she has.

   The following are findings, which, if 28 U.S.C. § 636(b)(1)(A)
is to have any sway at all, are reviewable pursuant to the "clearly
erroneous" statutory standard of review:

   (1) The discovery that is sought by this motion is the subject
of a discovery request to which the plaintiff failed to interpose

a timely objection.  The law is clear that an objection which is
not timely made is waived.  The court finds that the plaintiff has
waived her objection to each and every discovery request that she
has resisted;

(2) The court has nevertheless considered each of the untimely
objections that plaintiff has interposed and overrules them because
they are unmeritorious.  The information that defendant seeks is
relevant, non-privileged, and not unduly burdensome to produce;

(3) Plaintiff's invocation of the attorney-client privilege is
simply unmeritorious.  The plaintiff does not seem to understand
that the burden of establishing privilege belongs to the party
asserting the privilege.  It is not the defendant's burden to prove
that the privilege does *not* apply with respect to documents as to
which the claim of privilege has been improperly perfected.  Where
privilege is asserted, Local Rules require the preparation of a
privilege log, non-privileged portions of documents are to be
produced in redacted form, and the one asserting the privilege is
expected to provide the court with adequate analysis and case
authority to support its position.  The plaintiff has failed to do
this.  The court questions the bona fides of plaintiff's attempt to
withhold documents on grounds of privilege.  In connection with yet
another motion to compel that defendant was forced to file, the
court has reviewed other documents which it ordered submitted for

-2-

in <u>camera</u> review.   On examination, the court found that the documents were not only unprivileged, but that even a modicum of effort on plaintiff's part would have made this clear.  Having so reviewed the documents in question, the court believes that plaintiff's counsel was improperly attempting to conceal discoverable documents.

Perhaps defense counsel should have filed her motion to compel sooner, but she reasonably believed that plaintiff's lawyer would make good on his representations to supply the requested documents. She has been burned once again.  But the plaintiff was in no way prejudiced by defendant's patiently waiting for her to do what she was legally obligated to do.

Plaintiff's lawyer now attempts to resuscitate his long-lapsed right to object by belatedly offering his interpretation of various conversations that he purportedly had with defendant's counsel, inviting the court to deconstruct his attempts to bargain his way out of providing discovery that the plaintiff is legally bound to provide.  The court declines to do this.  The defendant is entitled to the discovery it has requested.  Plaintiff's attempt to portray herself as the victim of unfair or oppressive conduct on defendant's part is simply not true.

IT IS ORDERED that within 15 days of this date the plaintiff will provide complete responses to Requests Nos. 30, 38, 39, 45, 46

and 51 of Defendant's February 6, 2003 Request for the Production
of Documents;

**IT IS ORDERED** that within 15 days of this date the plaintiff
will provide a sworn, signed supplemental discovery response
identifying which documents in her supplemental production of July
5, 2003 were in response to which specific requests;

**IT IS ORDERED** that the plaintiff's objections to Requests Nos.
29, 32 and 49 are overruled, and that the the plaintiff will
respond to the aforesaid discovery requests fully and completely
within 15 days hereof.

At the conclusion of all proceedings in this case, on
application, the court will consider the amount of attorney's fees
to be awarded in connection with this motion.

This is not a "recommended ruling."   This is a discovery
ruling and order.  It is subject to review by the trial judge, if
timely sought, pursuant to the "clearly erroneous" or "contrary to
law" standard that is prescribed by 28 U.S.C. §636(b)(1)(A) and
Rule 72(a) of the Federal Rules of Civil Procedure.

**Dated at Hartford, Connecticut, this 26th day of September,**
**2004.**

                              _____
                              Thomas P. Smith
                              United States Magistrate Judge

.

# EXHIBIT C

UNITED STATES DISTRICT COURT FILED

DISTRICT OF CONNECTICUT

2004 APR 27 P 4: 25

U.S. DISTRICT COURT
HARTFORD, CT.

KIMBERLY BACHIOCCHI,
        -Plaintiff

      -v-              CIVIL NO. 3:02 CV 908 (CFD)

SOUTHERN NEW ENGLAND
TELEPHONE COMPANY,
        -Defendant

## RULING ON PENDING MOTION

Defendant's motion to compel a current medical authorization from plaintiff to obtain updated medical records (**Dkt.35**) **is granted.** Plaintiff's objections are not substantial, nor are they persuasive. The defendant is entitled to discovery of this relevant information. While some of the information sought may conceivably be determined to be inadmissible at trial depending on plaintiff's proof, it is discoverable. Plaintiff is ordered to provide the current, updated authorization that defendant seeks.

Defendant's motion to seal (**Dkt. #37**) **is granted.** The undersigned finds that the sealed information pertains to private medical issues and is not type of information in which the public or the press normally has any interest. The court, or course, will

entertain an unsealing application at any time from any interested person or party.

This is not a "recommended ruling." It is a discovery ruling and order, which is reviewable pursuant to the "clearly erroneous" standard of review provided for in 28 U.S.C. §636(b)(1)(A).

IT IS SO ORDERED at Hartford, Connecticut, this *27ᵗʰ* day of April, 2004.

Thomas P. Smith
United States Magistrate Judge

# EXHIBIT D

82

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAY 26  A 10: 16

U.S. DISTRICT COURT
HARTFORD, CT.

```
******************************************
KIMBERLY BACHIOCCHI,                 *
                                     *
              Plaintiff,             *      CIVIL ACTION No. 3:02CV908(CFD)
                                     *
        v.                           *
                                     *
SOUTHERN NEW ENGLAND                 *      MAY 25, 2004
TELEPHONE COMPANY,                   *
                                     *
              Defendant.             *
******************************************
```

## PLAINTIFF'S MOTION TO LIMIT CONTINUED DEPOSITION ON JUNE 1

June 2, 2004.  This motion is DENIED substantially for the reasons
set forth in defendant's opposition papers (Dkt. #86).   The
plaintiff's deposition will continue until it is concluded.   The
imposition of any time limitation is inappropriate in the
circumstances of this case, as is the instant motion itself.   If
conduct such as the filing of this motion persists, at the
conclusion of all proceedings in this case, the court will
entertain an application for an imposition of attorney's fees
against plaintiff's counsel personally pursuant to 28 U.S.C. §1927.
This is not a "recommendation," but a discovery ruling and order
reviewable pursuant to the "clearly erroneous" statutory standard
of review.  28 U.S.C. §636(b)(1)(A).

Thomas P. Smith
United States Magistrate Judge

THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                       \*

KIMBERLY BACHIOCCHI,       \*
                       \*
    Plaintiff,                \*
                       \*
v.                     \* CIV. ACTION NO. 3:02-CV-908 (CFD)
                       \*
THE SOUTHERN NEW      \*
ENGLAND TELEPHONE      \*
COMPANY,               \*
                       \*
    Defendant.           \* MAY 28, 2004
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S OBJECTION TO
"MOTION TO LIMIT CONTINUED DEPOSITION ON JUNE 1"
AND REQUEST FOR AWARD OF ATTORNEY'S FEES**

       The defendant, the Southern New England Telephone Company ("SNET"), hereby objects

to plaintiff's "Motion to Limit Continued Deposition on June 1" dated May 25, 2004 ("Motion"),

received by SNET yesterday, two business days before the deposition.

       First, SNET objects because, in connection with its prior request for an extension of time

to complete plaintiff's deposition through June 2, 2004, SNET also "[sought] permission of the

Court to exceed the seven-hour time delineated in Rule 30(d)(2) of the Federal Rules of Civil

Procedure." See Defendant's Reply to Plaintiff's Objection to Defendant's Request for Extension

of Time dated May 12, 2004 ("Reply") at 2. In that Reply, SNET devoted eight pages to

explaining to the Court the many problems it had had obtaining discovery from the plaintiff in this

matter and why more than 7 hours were needed for a fair examination of the plaintiff pursuant to

Rule 30(d)(2).  See Reply at 2-9.  The Reply was filed in response to Plaintiff's Objection to

Defendant's Most Recent Motion to Extend Discovery dated May 6, 2004 ("Objection") in which

plaintiff argued, just as she does again in the present objection, that SNET had no legitimate

reason to question the plaintiff for more than 7 hours.

     Notwithstanding plaintiff's attempt to limit SNET's questioning of her at her deposition in

its Objection, the Court granted SNET's request to complete the plaintiff's deposition on or

before June 2, 2004, overruling plaintiff's objection.  See Endorsement Order dated May 13, 2004

re Defendant's Motion for Extension of Time for SNET to Complete Fact Witness Depositions.

     SNET does not wish to burden the Court by repeating the long history of plaintiff's

refusals to disclose relevant information and piecemeal disclosure of other information in this

case.  It therefore respectfully incorporates by reference its prior arguments on the same issue set

forth in its May 12, 2004 Reply.

     In addition to the above reasons, after the Court granted SNET's Motion to Compel a

Medical Authorization on April 27, 2004, SNET has recently received more than 200 pages of

additional medical records concerning Ms. Bachiocchi relevant to her claim of emotional distress

in this case, as well as a 27-page handwritten log which plaintiff apparently prepared during the

period of time alleged in the Complaint but her counsel refused to produce until this month.

SNET has extensive documentation and medical information concerning the plaintiff about which

it has not yet had an opportunity to question her.

     Finally, Rule 30(d)(2) states that, "Unless otherwise authorized by the court or stipulated

by the parties, a deposition is limited to one day of seven hours."  Fed. R. Civ. P. 30(d)(2).  In its

April 27th ruling granting SNET's request for permission to complete plaintiff's deposition by

June 2, 2004, and rejecting plaintiff's argument that SNET should be limited in its questioning,

the Court has already authorized SNET to exceed the 7-hour duration.  The rule does not require

-- nor would it be appropriate in this case for -- the Court to set a durational limit given the

circumstances of this case and the discovery deadline for SNET of June 2nd.

     For all of the aforementioned reasons, SNET respectfully requests that plaintiff's Motion

to Limit Continued Deposition on June 1 be denied, and that SNET be awarded its attorneys' fees

in preparing this Opposition.

               **THE DEFENDANT**
               **THE SOUTHERN NEW ENGLAND**
               **TELEPHONE COMPANY**

               **By** _Lori B. Alexander_

                   Lori B. Alexander CT08970
                   Tyler Cooper & Alcorn, LLP
                   205 Church Street
                   P.O. Box 1936
                   New Haven, CT 06509-1910
                   Telephone:  203-784-8200
                   Fax: (203) 865-7865
                   Email: alexander@tylercooper.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was sent by telecopier and first-class mail, postage

prepaid to all counsel and *pro se* parties of record on this 28th day of May, 2004 as follows: Peter

E. Gillespie, Esquire, 46 Riverside Avenue, Post Office Box 3416, Westport, Connecticut 06880.


_____

Lori B. Alexander
Federal Bar No.: CT08970

# EXHIBIT E

| 06/17/2004 | 95 | ORDER granting <u>50</u> Motion to Compel. The plaintiff will make a good, viewable copy of the videotape which is the subject of this motion, as well as a copy of any other visual depiction responsive to Requests 4 and 5 of Defendant's Second Request for the Production of Documents and will produce the aforesaid to defendant's counsel within 10 days of this date or will face the imposition of drastic sanctions, including possible dismissal of her case. The court does not credit the representations of plaintiff's counsel (Dkt. #84 at 2 and n.1) that copies have already been provided. The court instead credits SNET's representations in its reply memorandum (Dkt. #92 at 1 -4) and agrees with SNET that no party "should be required to undergo" what SNET has had to endure at the hands of plaintiff's counsel in order to obtain legitimate discovery. At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees that may be awarded in connection with defendant's successful pursuit of this motion. Signed by Judge Thomas P. Smith on June 17, 2004. (Smith, Thomas) (Entered: 06/17/2004) |

EXHIBIT F

UNITED STATES DISTRICT COURT

FILED

DISTRICT OF CONNECTICUT

2004 SEP 22 P 4: 37

U.S. DISTRICT COURT
HARTFORD, CT.

KIMBERLY BACHIOCCHI,
            -Plaintiff

-v-                                    3-02-CV-908 (CFD)

SOUTHERN NEW ENGLAND
TELEPHONE COMPANY,
            -Defendant

RULING ON MOTION TO COMPEL (Dkt. #62)

On June 22, 2004, the court ordered the plaintiff to submit
for in camera inspection a certain document which she contended was
protected by the attorney-client privilege.  (See Dkt. 99).  The
court has reviewed that document. The motion to compel is GRANTED.
The court finds that the document, which is attached hereto, may
not be withheld from discovery on grounds of the attorney-client
privilege for a variety of reasons.  First, plaintiff has not
sustained her burden of showing that the privilege applies.
Second, it is rather clear from the face of the document itself
that the privilege does not apply, since the privilege protects
communications, not facts.  Third, the subject, essence, gravamen
and substance of the information that is contained in the document
was previously revealed to the defendant when a later version of

the statement was disclosed to plaintiff's employer. Plaintiff's claim of attorney-client privilege is, in short, utterly baseless. An award of attorney's fees is wholly appropriate.

Within 20 days of this date, the defendant will file an affidavit setting forth the amount of attorney's fees and costs that have been incurred in bringing the motion to compel to secure discovery of this attached document. Within 10 days thereafter, the plaintiff shall file whatever papers she wishes challenging the amount of fees claimed, showing cause, if there is any, why an award of attorney's fees and costs should not be immediately imposed on plaintiff and/or her counsel.

Dated at Hartford, Connecticut, this _22nd_ day of September, 2004.

_____
Thomas P. Smith
United States Magistrate Judge

-2-

# EXHIBIT G

| 09/23/2004 | 131 | ORDER granting nunc pro tunc <u>70</u> Motion for Leave to File Excess Pages, granting nunc pro tunc <u>73</u> Motion for Extension of Time to File Response/Reply, granting nunc pro tunc <u>77</u> Motion for Extension of Time to File Response/Reply, granting <u>90</u> Motion for Attorney Fees. At the conclusion of all proceedings herein, on application, the court will determine the amount of attorney's fees to be awarded. ORDER granting, apparently without objection, <u>101</u> Motion to Seal, granting <u>116</u> Motion for In Camera Inspection. The document has been received and reviewed in camera. ORDER granting <u>120</u> Motion for Leave to File. The supplemental affidavit may be filed, but not under seal. ORDER denying <u>121</u> Motion to Seal. Exhibit A is not properly withheld from discovery. It shall not be filed under seal. It is not protected by the attorney-client privilege. Signed by Judge Thomas P. Smith on September 23, 2004. (Fritz, J.) (Entered: 09/23/2004) |

THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JUN -9 A 10: 00

U.S. DISTRICT COURT
HARTFORD, CT.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KIMBERLY BACHIOCCHI,

    Plaintiff,

v.

THE SOUTHERN NEW
ENGLAND TELEPHONE
COMPANY,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CIV. ACTION NO. 02-CV-908 (CFD)

JUNE 8, 2004

## DEFENDANT'S MOTION FOR ORDER AND AWARD
## OF ATTORNEYS' FEES AND COSTS

The defendant, the Southern New England Telephone Company ("SNET"), hereby seeks an order of the Court and an award of attorneys' fees and costs in connection with the conduct of plaintiff and her counsel when they walked out of the plaintiff's deposition held on June 1, 2004 before it was concluded, and for their conduct thereafter in filing a Motion for Protective Order related to the same deposition.

Pursuant to Local Rule 9 of the United States District Court for the District of Connecticut, the defendant is filing on this same date a memorandum in support of the present motion.

*ORAL ARGUMENT IS NOT REQUESTED*

Dated at New Haven, Connecticut this 8ᵗʰ day of June, 2004.

THE DEFENDANT,
SOUTHERN NEW ENGLAND TELEPHONE COMPANY

By _____
Lori B. Alexander
Federal Bar No. CT08970
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut  06509
Tel. (203) 784-8200
Fax No. (203) 789-2133
E-Mail: alexander@tylercooper.com

2

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was sent via first-class mail, postage prepaid to all counsel and *pro se* parties of record on this 8th day of June, 2004 as follows: Peter E. Gillespie, Esquire, 46 Riverside Avenue, Post Office Box 3416, Westport, Connecticut 06880.

_____
Lori B. Alexander
Federal Bar No.: CT08970

3