UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KIMBERLY BACHIOCCHI,                    \*
                                        \*
              Plaintiff,                \*       CIVIL ACTION NO. 3:02-CV-908 (CFD)
                                        \*
       v.                               \*
                                        \*
THE SOUTHERN NEW ENGLAND                \*
TELEPHONE COMPANY,                      \*       AUGUST 23, 2008
                                        \*
              Defendant.                \*
                                        \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION FOR A REMITTITUR

Plaintiff filed a motion and supporting memorandum, each dated August 4, 2008, seeking a remittitur, or alternatively, a new trial. Plaintiff submits this Objection to Defendant's motion.

In its verdict the jury in this matter awarded plaintiff $20,000 in compensatory damages as well as punitive damages in the amount of $80,000. Defendant argues that the award of punitive damages is unwarranted or, alternatively, excessive.

Punitive Damages Were Correctly Imposed

Defendant's first contention, set forth in its motion for judgment as a matter of law, is that the evidence fails to establish a basis for any award of

punitive damages. In analyzing this claim, the Court must view the evidence in the light most favorable to Plaintiff.

As set forth in greater detail in her objection to Defendant's motion for a judgment as a matter of law, Plaintiff proved over 40 incidents of hostile conduct in her workplace. These incidents occurred over a period of 18 calendar months, but were concentrated in only 7 months of active service in the workplace.

Defendant's hostile conduct came in essentially two waves, each wave reaching a peak of hostility at its conclusion. For example, Plaintiff notes a series of incidents beginning in December, 1999 with Manager Light printing out directions to her home. This first wave concludes in May, 2000 with Manager Vallario assigning Carl Lorentzen to go to customer sites and check up on plaintiff's work. Not only did Lorentzen undertake this assignment, but in doing so he undermined plaintiff with one of her largest customers, SNET Wireless, as testified to by Janice Vereb Peterson. Plaintiff then commenced a medical leave due to depression caused by Defendant's actions.

The first occasion on which Plaintiff tried to return to work on January 18, 2001 she was "welcomed" to an empty office; Manager West refused to interact with her; She spent her day alone, reading a manual; and Manager West closed the office in mid-afternoon due to an imaginary snowstorm. Her medical condition then relapsed, again due to Defendant's conduct.

When Plaintiff returned to work on a regular basis in May, 2001 she was again confronted with a series of hostile incidents, beginning with difficulty in making arrangements for her return and culminating a scant three weeks or so

later in an assault upon her person by Manager West, the highest ranking SNET official at the site.

Throughout this period Plaintiff's complaints fell upon deaf ears, as did those of her co-worker, Nick Faiella. The hostility directed at Plaintiff and SNET's studied failure and refusal to respond to her complaints were well know to Manager West and, in fact, ultimately seem to have been orchestrated by him.[1] These actions involved high management officials of Defendant including Manager West and **all** of Defendant's managers at the Elizabeth Street facility in Derby, as well as the human resources professional assigned to oversee that location, Manager Laurie Moffett. Plaintiff believes that this prolonged, repeated series of intended and malicious actions spearheaded by Defendant's managers clearly warrants the imposition of punitive damages.

Defendant itself quotes from <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 581 (1996) where the Court notes that punitive damages may be warranted where, as here, among other factors:

-the harm caused was physical [as well as here, emotional];

-the conduct evidenced an indifference to the health or safety of others;

-the conduct involved repeated incidents;

---

[1] While Defendant concedes that Manager West acted in a 'managerial capacity" it maintains that neither Manager Vallario nor Manager Light did. Defendant's memorandum for judgment at p. 39. Plaintiff disagrees. Manager Vallario oversaw the work of the installation supervisors, but the trial testimony of Defendant's witnesses pictured him as independently supervising engineers as well. Manager West also testified to his "laissez-faire management style" whereby he vested great authority in his subordinate reports and was loath to interfere with their judgments. Under these circumstances, Plaintiff believes that all three Managers worked in a managerial capacity, as did Ms. Moffett.

-the harm resulted from intentional conduct.

Defendant's memorandum at p.4.  Then, incredibly – - and in apparent denial of Manager West's actions on June 4, 2001 when he battered plaintiff - - Defendant states: "Here, there was clearly no assault or other physical aspect  .  .  .  ." Just what is Defendant thinking ?

It is sufficient to state that Plaintiff and Defendant have different views of the facts in this matter.  However,  as noted above, in seeking judgment as a matter of law, the Court must construe the facts most favorably for the non-moving party.


The Punitive Damages Award Is Not Excessive

Defendant also moves for a remittitur arguing that even if punitive damages are warranted, the amount awarded is excessive.  In this regard Defendant seems to attempt to apply a simple mathematical test to the award, contending that a ratio of 4:1 is too high.  Defendant's memorandum for remittitur at p. 5.

However even Defendant, though grudgingly, admits that "the 4:1 ratio  .  .  . is at the outermost end of the constitutional spectrum."  Perhaps, but outermost or not, this award is still within the spectrum. *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U. S. 1, 23 (1991).

In considering these issues, a recent case in the neighboring Eastern District of New York applied the methods of analysis laid down in *Gore* and *Campbell*, two cases cited by Defendant.

In *Kauffman v. Maxim Healthcare Services, Inc*., 509 F. Supp. 2d 210 (E.D.N.Y. 2007) the Court considered a requested remittitur of punitive damages.

The Court started its consideration, noting:

> Punitive damage awards should not be disturbed unless the amount is so high as to shock the judicial conscience and constitute a denial of justice.
>
> *          *          *
>
> In reviewing a punitive damages award, a court must construe the evidence in the light most favorable to the nonmoving party.
>
> *Kaufman v. Maxim Healthcare Services, Inc.,* 509 F. Supp. 2d 210, 216 (E.D.N.Y. 2007) (Internal citations omitted.)

The Kauffman Court did go on to consider the ratio of punitive damages to compensatory damages, *Kauffman* at 217-218, and, noting that the purposes of punitive damages are to punish a defendant and to defer both the offender and others from similar conduct, ordered a reduction in punitive damages, imposing a ratio of 4:1 – the exact ratio determined by the jury in this case. However, even though this approach shows that the punitive damage award here is proper, this mechanical mathematical approach is not appropriate in this case.

> As the Supreme Court has noted:
>
> Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award.  <u>Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards</u>, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.  It is appropriate, therefore, to reiterate our rejection of a categorical approach.

*Gore* at 574 –575 (Emphasis added.)

The Second Circuit also adheres to the rule that where compensatory damages are small, a higher multiplier may be appropriate. *Fabri v. United Technologies Intern., Inc*., 387 F.3d 109, 126 (2d Cir. 2004); *Accord, Chopra v. General Electric Company*, 527 F. Supp. 2d 230, 245 (D. Conn. 2007).

Applying these principles, the punitive damages award in this case is unquestionably supportable and correct. The jury seems to have confronted the difficulty of assigning an economic value to mental anguish, and were unable to do so, leaving a somewhat smaller than expected compensatory damage award. However, for that reason, the punitive damages award is fully supportable, just as the Supreme Court and the Second Circuit have observed.

Defendant's Remaining Arguments Are Unavailing

In Plaintiff's view, Defendant's claims concerning the jury instructions are without merit.[2] If any of the issues now cited by Defendant were properly preserved and do constitute error, they are, within the context of this case, clearly harmless. To have included all of the various permutations of possible activity suggested by Defendant would have led to a charge so confusing and so complicated that no juror could have followed it.

Similarly, Defendant's late-raised claims concerning the verdict form are without merit, even assuming that this claim was preserved. The jury was fully

---

[2] Plaintiff defers to the stenographic transcript and the Court's recollection as to which of Defendant's claims concerning jury instructions, if any, were raised at the charge conference.

charged by the Court in its instructions.  There simply could be no confusion in this case caused by the verdict form.

For all of the foregoing reasons, Plaintiff respectfully requests that Plaintiff's motions be rejected, that the jury's verdict remain undisturbed, and that this case be finally closed.

THE PLAINTIFF
KIMBERLY BACHIOCCHI

By: *[signature: Peter E. Gillespie]*
Peter E. Gillespie  (ct06554)
46 Riverside Avenue
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508
Email: petelaw@mac.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 23, 2008 a copy of this Objection was filed and served by first class post upon anyone unable to accept electronic filing (as noted where applicable). Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


Lori B. Alexander, Esq.
Litter Mendelson
265 Church Street – Suite 300
New Haven, CT 06510


By: *[signature]*