UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KIMBERLY BACHIOCCHI,** | : |
| Plaintiff, | : Civil Action No.: 02-CV-908 (CFD) |
| v. | : |
| **THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | : September 5, 2008 |
| Defendant. | : |

**DEFENDANT'S MOTION FOR ENFORCEMENT OF PRIOR ORDERS RE: ATTORNEY'S FEES AND COSTS AND MOTION FOR AN AWARD OF ATTORNEY'S FEES RE: MOTIONS TO COMPEL**

**I.   INTRODUCTION**

On June 17, 2004, June 21, 2004, and September 26, 2004, the court issued Orders stating that, at the conclusion of all proceedings in this case, on application, the court would consider the amount of attorney's fees to be awarded to the defendant, Southern New England Telephone Company ("defendant" or "SNET"), in connection with the need for SNET to file motions compelling plaintiff to provide (1) a copy of the videotape plaintiff took of the defendant's workplace, (2) complete responses to Defendant's First Request for the Production of Documents dated February 6, 2003, and (3) complete responses to Defendant's Second Request for the Production of Documents dated February 12, 2004. In accordance with this Court's direction, SNET hereby submits its Motion for Attorney's Fees setting forth the attorney's fees incurred in connection with these three Motions to Compel, and seeking entry of an Order requiring plaintiff and/or her counsel to reimburse defendant for said attorney's fees and costs within 30 days.

As a review of the history of discovery in this case will demonstrate, plaintiff obstructed discovery, withheld discoverable information, caused SNET to incur additional substantial attorney's fees in order to obtain discoverable information, and wasted valuable judicial resources – all of which would have been wholly unnecessary had the plaintiff and her counsel simply complied with their discovery obligations under the Federal Rules of Civil Procedure. Due to the plaintiff's conduct, SNET was forced to file 6 Motions to Compel discovery. Each and every one of which was granted in total by the court, and SNET's position was upheld in all respects.

## II.   FACTS

### A.   Plaintiff Refused to Provide an Updated Medical Authorization, Requiring Defendant to File Its First Motion to Compel

Despite the fact that plaintiff put her medical and emotional history at issue in this case, and despite the fact that she did not object to defendant's Interrogatory seeking the identity of her treating doctors and a signed medical authorization for defendant to obtain records from those doctors, plaintiff disclosed her medical information only in piecemeal fashion and then simply refused to provide any further information, forcing SNET to file a Motion to Compel it. See Defendant's Motion to Compel a Current Medical Authorization From Plaintiff and Updated Medical Information dated April 1, 2004.

For example, Interrogatory No. 9 contained in the Defendant's First Set of Interrogatories asked plaintiff to identify the names of all treators from two years prior to the start of her employment with the defendant to the present. Affidavit of Deborah DeHart Cannavino, dated April 1, 2004, Exhibit C. Plaintiff did not object to this Interrogatory. Cannavino Aff. dated April 1, 2004, Exhibit D. However, she responded by referring to her expert disclosure identifying only Dr. Sarfeh and Dr. Zachariah as treators. Cannavino Aff. dated April 1, 2004,

Exhibit D.

Thereafter, at her deposition on May 12, 2003, plaintiff testified that she had been treated by 10-15 additional doctors never previously disclosed to SNET. Cannavino Aff. dated April 1, 2004, Exhibit F. Defense counsel requested that she supplement her responses to discovery and identify the names and addresses of these new doctors. Cannavino Aff. dated April 1, 2004, Exhibit F. Plaintiff supplemented her initial responses adding an additional 23 doctors and 3 health care facilities with whom she treated, <u>after</u> the initial day of her deposition had been completed. Cannavino Aff. dated April 1, 2004, Exhibit G.

Later, nearly a year after the initial requests were made, defense counsel discovered that plaintiff was on a lengthy disability leave of absence from SNET and requested that plaintiff identify the new doctors with whom she had been treating and execute a new medical authorization so defendant could obtain the disability file. Cannavino Aff. dated April 1, 2004, ¶ 12, Exhibit H. Although plaintiff's attorney <u>admitted</u> that his client had seen additional doctors who had still not been identified to SNET, plaintiff still refused to execute a new medical authorization to obtain the records of these treating physicians. Cannavino Aff. dated April 1, 2004, ¶ 13. Exhibit F. Prior to seeking court intervention, defense counsel again requested that plaintiff supplement her responses immediately, provide the names of these new doctors, and provide a new medical authorization to obtain updated records from the treaters previously disclosed. Cannavino Aff. dated April 1, 2004, Exhibits I and J. A new medical authorization was particularly important because at least one of the doctors who was identified in the original supplemental production refused to honor the authorization plaintiff executed on the grounds that it was not current. Cannavino Aff. dated April 1, 2004, ¶ 17.

Plaintiff still refused to provide an updated medical authorization or updated medical records, and therefore, defendant was forced to file its first Motion to Compel. On April 27, 2004, the Court issued a Ruling on Pending Motion granting SNET's Motion to Compel stating, **"[p]laintiff's objections are not substantial, nor are they persuasive.** The defendant is entitled to discovery of this relevant information." Ruling on Pending Motions dated February 27, 2004, at 1 (emphasis added).

Even after the court Order, defense counsel had to follow up with the plaintiff because she had failed to provide the supplemental response to the Interrogatories as directed by the court. Cannavino Affidavit dated September 5, 2008, Exhibit A. It was not until May 17, 2004 that plaintiff supplemented her responses in accordance with the court Order. Cannavino Aff. dated September 5, 2008, ¶ 18.

### B. Plaintiff Refused to Provide a Viewable Copy of a Videotape, Forcing SNET to File its Second Motion to Compel

Plaintiff videotaped SNET's facility for several days in 2001 while she was out of work on a medical leave of absence for depression which she claimed was caused by SNET's conduct. She testified at her deposition that she believed this videotape supported her claims, and specifically her claim that SNET retaliated against her when she returned to work for one day on January 18, 2001 and only a few employees were in the office.

Defendant became aware of this videotape and subsequently questioned the plaintiff about it at her deposition only because defense counsel noticed that plaintiff had made notations in her calendar that she was videotaping at SNET. Plaintiff hid the existence of the videotape from SNET and did not identify it in response to Defendant's First Request for the Production of Documents dated February 6, 2003 even though all "tapes and electronic recordings" were

requested.[1]

On February 12, 2004, SNET served plaintiff with a Second Request for Production of Documents which specifically sought "any and all videotape(s) or pictures taken of SNET, its current or former employees, as referenced in plaintiff's calendar previously produced" and "any and all videotape(s), picture or other visual depictions concerning the allegations in the complaint." Affidavit of Deborah DeHart Cannavino dated April 28, 2004, Exhibit A, Doc. Req. Nos. 4 and 5. Plaintiff did not substantively object to this Request, and instead stated that it was duplicative because a copy of the videotape had been forwarded to defendant "in or about July 2003." Cannavino Aff. dated April 28, 2004, Exhibit B, at 6.

After receiving plaintiff's response, defense counsel wrote a letter to plaintiff's attorney explaining that no such videotape had been received and requesting that it be provided to her. Cannavino Aff. dated April 28, 2004, Exhibit C. Defense counsel further noted that the cover letter from plaintiff's attorney enclosing the plaintiff's July 2003 production listed the items produced by plaintiff and it did not include any mention of a videotape. Id.

Plaintiff's attorney responded stating that he had provided the videotape already, but he would make another copy if SNET requested (which, of course, it already had done). Cannavino Aff. dated April 28, 2004, Exhibit D. Plaintiff's attorney also enclosed several additional photographs not previously produced, and stated "[w]e are unaware of any additional

---

[1] Document Request No. 20 sought "any and all documents [defined to include tape and other electronic recordings] concerning your allegations in paragraph 28 that when plaintiff returned to the office on January 18, 2001, the only other regular full-time employee in the office was Kevin West; that every other regular employee who normally works in that location was scheduled to be out of the office on that day for the entire day; that in plaintiff's experience of 18 months or more in the Elizabeth Street facility this had never happened . . . ." Request No. 38 seeks all documents :that you may introduce as exhibits or parts of exhibits" and Request No. 48 seeks "any and all documents concerning your claims of retaliation." Reply, at 3.

photographs or videotapes."[2] However, again no videotape was provided. Cannavino Aff. dated April 28, 2004, at ¶ 7.

In a further effort to obtain the videotape without court intervention, defense counsel then arranged for an outside company to drive to the plaintiff's offices and pick up the videotape, copy it and return it. Cannavino Aff. dated April 28, 2004, Exhibit E. After extensive effort, on April 26, 2004, Creative Video Corporation picked up the original tape from plaintiff's counsel's office to copy it; however, much to defendant's surprise, that corporation stated the original tape could not be viewed or copied on any professional system. Cannavino Aff. dated April 28, 2004, ¶ 10. Furthermore, the company stated that it was recorded at an extremely high rate of speed on a specialized deck, and could only be viewed and copied on the same type of deck on which it was recorded, which was used solely for security purposes and was not available to rent from any of its suppliers. Cannavino Aff. dated April 28, 2004, ¶ 10, and Exhibit F. At no time did plaintiff's attorney inform the defense counsel that the videotape in his possession was incapable of being viewed or copied. Cannavino Aff., ¶ 12. To the contrary, he represented (incorrectly) that he had sent her a copy nearly a year earlier. Cannavino Aff. dated April 28, 2004, Exhibits B and D; see also, Defendant's Reply dated , at 2-5.

Because defendant still did not have a copy of the videotape that was capable of being viewed, defendant filed its second Motion to Compel on April 28, 2004 seeking a copy of the videotape as well as any other visual depiction responsive to Document Request Nos. 4 and 5 of the Defendant's Second Request for the Production of Documents dated February 12, 2004. Plaintiff filed an Opposition to the motion and supporting Affidavit on May 28, 2004. SNET

---

[2]  Interestingly, despite plaintiff's counsel's clear, unambiguous representation that there were no additional photographs, on June 30, 2008, 4 business days before trial, defense counsel received an envelope from plaintiff's attorney containing a photograph allegedly taken of her left wrist following the incident with Mr. West on June 4, 2001. SNET moved to exclude that photograph on the grounds of its late disclosure. See Defendant's Motion in Limine to Exclude, dated July 2, 2008.

filed a Reply in support of its motion on June 8, 2004.

Even *after* the filing of its Motion to Compel, SNET received a copy of the videotape that was unintelligible and the video so distorted that the picture could not be seen in many places. Reply, at 4. Therefore, SNET reiterated its request that a <u>viewable</u> copy of the videotape be compelled.

On June 17, 2004, the Court issued an Order granting SNET's Motion to Compel, stating:

> [t]he plaintiff will make a good, viewable copy of the videotape which is the subject of this motion, as well as a copy of any other visual depiction responsive to Requests 4 and 5 of Defendant's Second Request for the Production of Documents and will produce the aforesaid to defendant's counsel within 10 days of this date or will face the imposition of drastic sanctions, including possible dismissal of her case. The court does not credit the representations of plaintiff counsel that copies have already been provided. The court instead credits SNET's representations in its Reply that **"no party should be required to undergo" what SNET has had to endure at the hands of plaintiff's counsel in order to obtain legitimate discovery.** At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees that may be awarded in connection with defendant's successful pursuit of this motion.

Order 6/17/05 (emphasis added).[3]

### C. Plaintiff Interposed Baseless Objections to Virtually Every Request in SNET's Second Request for the Production of Documents, Forcing SNET to File Another Motion to Compel

Plaintiff's obfuscating tactics continued. Plaintiff objected to nearly every Request in Defendant's Second Request for the Production of Documents dated April 20, 2004, and provided only 3 pages of documents in response. In this discovery, defendant sought the following categories of information; (1) copies of all pharmacy records (2) plaintiff's submissions to her disability carrier during her leaves of absence and her disability file, (3) documents that demonstrate plaintiff's level of functioning and activity during her disability

---

[3] Even after entry of the court's Order, defendant was forced to incur additional attorney's fees in following up on the production of the videotape because a second company could not copy the original tape either, and defendant's counsel informed plaintiff's counsel that the original appeared corrupted and they could not fix it. Cannavino Aff. dated September 5, 2008, Exhibit B. Eventually, after eight months of trying, defendant was able to locate a third company that had the capability to view and copy the original tape.

leave of absence, including such things as family photographs sent as holiday cards, the family photograph taken in November 2000 (referenced in her calendar), family photos taken during family vacations (referenced in her calendar), emails and letters sent while on her leave of absence, cell phone bills and credit card statements during that period, (4) correspondence with SNET employees concerning the allegations in her complaint, and (5) documents relevant to the existence of other stressors in her life at or around the time of her diagnosis for severe depression, including financial records. Defense counsel wrote a "meet and confer" letter explaining its requests and why each was necessary and discoverable, and addressing plaintiff's objections. Affidavit of Deborah DeHart Cannavino dated April 30, 2004, Exhibit C. Despite counsel's efforts, plaintiff's counsel responded that plaintiff would stand on their objections and provided only 3 pages of pharmacy records and a few photographs that she had agreed to produce earlier. Cannavino Aff. dated April 30, 2004, ¶7.

Therefore, on April 30, 2004, SNET was forced to file a third Motion to Compel. Plaintiff filed an Opposition to the Motion and supporting Affidavit on May 28, 2004. SNET filed a Reply on June 8, 2004 and a Supplemental Reply on June 18, 2004.

On June 21, 2004, the Court granted the defendant's Motion to Compel stating,

> [t]he plaintiff will provide a complete non-evasive sworn response to the discovery requests that are the subject of this motion. To the extent that documents or other responsive material do not exist, the plaintiff will so state in writing, swear to it, sign it, and provide it to the defendant as required by the rules. The court concurs with SNET's argument that plaintiff's activity during her leave of absence is within the permissible scope of discovery, as is correspondence between plaintiff and SNET employees concerning the allegations of the complaint. Finally the plaintiff will comply with Request 13 to the extent it has been limited to information concerning plaintiff's pension, 402(k), savings and similar plans. The plaintiff will execute an appropriate authorization regarding the foregoing within 10 days hereof. **At the conclusion of all proceedings, on application, the court will consider the issue of attorney's fees. . . .**

8.

Order 6/17/04 (emphasis added).

### D. Plaintiff Refused to Produce her Draft Statement to the SNET Investigator, Forcing Defendant to File a Fourth Motion to Compel Discovery from Plaintiff

Plaintiff withheld her diary/log of events as well as her draft statement to Mr. Ellis, SNET's investigator, on the grounds of attorney client privilege. Cannavino Aff. dated May 3, 2004, Exhibit C. On April 6, 2004, defense counsel wrote to plaintiff's attorney seeking the production of these two documents as they were not communications between plaintiff and her lawyer and, therefore, were not protected by the attorney client privilege. Cannavino Aff. dated May 3, 2004, Exhibit D. Defense counsel explained its position and the factual and legal support for its request. Id. Plaintiff's attorney ultimately conceded that plaintiff's diary, which she had already testified was prepared *before* she retained legal counsel, was not subject to the attorney client privilege, and upon the threat of a Motion to Compel, produced it. Cannavino Aff. dated May 3, 2004, Exhibit E. Plaintiff, however, still refused to produce the draft statement to the investigator. Id.

Therefore, on May 3, 2004, the defendant moved for an Order compelling the plaintiff to provide a copy of her draft statement to the defendant's investigator which plaintiff had withheld from production on a claim of attorney-client privilege in response to Request No. 25 of the Defendant's First Request for Production of Documents.

On June 22, 2004, Magistrate Judge Smith issued an Order directing the plaintiff to submit the draft statement, which she contended she was entitled to withhold on the grounds of the attorney client privilege, as well as the final copy of the statement she provided to SNET's investigator within 10 days. The Magistrate Judge further stated that since the plaintiff had not asserted work product immunity, such a claim was waived.

9.

On September 22, 2004, after an in camera review of the plaintiff's draft statement and her final statement, Magistrate Judge Smith issued a Ruling granting defendant's motion to compel and ordering plaintiff to provide the draft statement to defendant. In its Ruling, the court found the plaintiff's contention that the draft statement was protected by the attorney client privilege "**utterly baseless**" and "**[a]n award of attorney's fees is wholly appropriate**." Ruling, at 2 (emphasis added). The Ruling further instructed the defendant to "file an affidavit setting for the amount of attorney's fees and costs that have been incurred in bringing the motion to compel to secure discovery of the attached document." Id.

In accordance with the court's Ruling, the defendant filed an Affidavit on October 12, 2004 stating that the work performed by defense counsel and the amount of attorney's fees and costs incurred in bringing the motion to compel to secure the discovery, which totaled $3,766.93. See Affidavit of Deborah DeHart Cannavino in Support of Attorney's Fees and Costs in Accordance with the Court's Order of September 22, 2004, at 2.

The Ruling further directed that "[w]ithin 10 days thereafter [after the defendant's submission of the requested affidavit] the plaintiff shall file whatever papers she wishes challenging the amount of fees claimed, showing cause, if there is any, why an award of attorney's fees and costs should not be immediately imposed on plaintiff and/or her counsel." Id. Plaintiff did not file any papers challenging the amount of fees claimed, showing cause, "if there is any, why an award of attorney's fees should not be immediately imposed on plaintiff and/or her counsel" as specifically directed by the Ruling.

In a subsequent Ruling by Magistrate Judge Smith concerning a separate claim of attorney client privilege by the plaintiff, the court reiterated its concerns over the plaintiff's misuse of the attorney client privilege to withhold discoverable documents:

> The court questions the <u>bona</u> <u>fides</u> of plaintiff's attempt to withhold documents on grounds of privilege. In connection with yet another motion to compel that defendant was forced to file, the court has reviewed other documents which it ordered submitted for <u>in</u> <u>camera</u> review. On examination, the court found that the documents were not only unprivileged, but that even a modicum of effort on plaintiff's part would have made this clear. **Having so reviewed the documents in question, the court believes that plaintiff's counsel was improperly attempting to conceal discoverable documents.**

Ruling on Motion to Compel, September 26, 2004, at 2-3 (emphasis added).

To date, plaintiff has not paid the defendant the attorney's fees and costs which the Court directed must be paid on the Fourth Motion to Compel Discovery. Therefore, defendant moved to enforce the prior order and to require the plaintiff to pay the defendant $3,766.93 for its attorney's fees and costs incurred in bringing its motion to compel and securing discovery of the plaintiff's draft statement within 10 days. See Defendant's Motion for Enforcement of Order Granting Defendant's Attorney's Fees and Costs Re: Disclosure of Plaintiff's Draft Statement dated August 27, 2008.

### E. **Plaintiff Walked Out of Her Deposition, Requiring SNET to File a Motion for Order and an Award of Attorney's Fees and Costs**

SNET filed a Motion for Order and Attorney's Fees relating to the plaintiff's walking out of her deposition on June 1, 2004 well before it was completed, and for her conduct thereafter in filing and pursuing a Motion for Protective Order seeking to limit her deposition even after the Court's clear Order stating that the plaintiff's deposition "will continue until it is concluded" as well as the costs incurred in conducting the continued deposition of the plaintiff. See Memorandum of Law in Support of Defendant's Motion for Order and Award of Attorney's Fees and Costs dated June 8, 2004. The Court granted SNET's Motion for Attorney's Fees on September 23, 2004.

In accordance with the court's Order, SNET set forth its attorney's fees and sought an Order requiring the plaintiff and/or her counsel to pay SNET its attorneys' fees incurred in connection with the plaintiff's conduct, which totalled $9,162.67. See Defendant's Motion for Enforcement of Order Granting Defendant's Attorney's Fees and Costs Re: Plaintiff's Deposition dated August 27, 2008. This amount of $9,162.67 has not yet been paid to SNET by the plaintiff.

### F. Plaintiff did not Provide Complete Responses to SNET's Discovery, Forcing SNET to File its Sixth Motion to Compel to Obtain Discoverable Information

Despite promises over a year old to provide additional information in response to Defendant's First Request for Production of Documents, plaintiff did not do so. Instead, plaintiff filed a Motion for Protective order seeking protection from, among other things, responding to the defense counsel's May 28, 2004 letter summarizing their earlier conversations and requesting the information promised.[4] Moreover, all of plaintiff's objections were waived due to their untimeliness.

Therefore, on August 5, 2004, SNET filed its Sixth Motion to Compel. See Defendant's Motion to Compel Plaintiff's Responses to Defendant's First Request for the Production of Documents dated August 5, 2004. By that motion, SNET sought complete responses to the discovery which included (1) documents concerning her claims for disability insurance, (2) her counsel's billing records, (3) her income tax records, (4) calendars and diaries, (5) documents concerning SNET's investigation into plaintiff's complaint, (6) communications with third parties regarding the allegations of the complaint, and (7) a representation as to which documents provided were in response to which Requests. Defendant's Memorandum of Law in Support of

---

[4] SNET objected to the plaintiff's motion on June 28, 2004, and the Court denied plaintiff's Motion for Protective Order "for the reasons set forth in defendant's opposing papers." See Endorsement Order on September 27, 2004 (emphasis added).

its Motion to Compel Plaintiff's Responses to Defendant's First Request for the Production of Documents dated August 5, 2004, at 5-13. Plaintiff filed her Opposition on August 27, 2004 and SNET filed a Reply on September 10, 2004.

On September 26, 2004, the court issued a Ruling on Motion to Compel granting SNET's Motion to Compel. It its Ruling, the court explained its dissatisfaction with plaintiff and her counsel's tactics in discovery:

> **This is latest in a series of discovery motions that the plaintiff's unjustified recalcitrance has necessitated. Prior warning have been unavailing. Plaintiff continues to skirt the rules, imposing unnecessary costs on the defendant.**
>
> The pending motion is granted in its entirety. **The defendant should never have had to file this motion, the fifteen page memorandum that accompanies it, or the eighty pages of exhibits the court has had to wallow through in an attempt to fathom why plaintiff has acted as she had. . . .**
>
> (1) [t]he discovery that is sought by this motion is the subject of a discovery request to which the plaintiff failed to interpose a timely objection. **The law is clear that an objection which is not timely is waived.** The court finds that the plaintiff has waived her objection to each and every discovery request that she has resisted;
>
> (2) [t]court has nevertheless considered each of the untimely objections that plaintiff has interposed and overruled them because they **are unmeritorious.** The information that defendant seeks is relevant, non-privileged, and not unduly burdensome to produce;
>
> (3) [p]laintiff's invocation of the attorney-client privilege is **simply unmeritorious.** The plaintiff does not seem to understand that the burden of establishing privilege belongs to the party asserting the privilege. . . . The plaintiff has failed to do this. The court questions the <u>bona</u> <u>fides</u> of plaintiff's attempt to withhold documents on grounds of privilege. In connection with yet another motion to compel that defendant was forced to file, the court has reviewed other documents which it ordered submitted for <u>in</u> <u>camera</u> review. On examination, the court found that the documents were not only unprivileged, but that even a modicum of effort on plaintiff's part would have made this clear. **Having so reviewed the documents in question, the court believes that plaintiff's counsel was improperly attempting to conceal discoverable documents.**
>
> Perhaps defense counsel should have filed her motion to compel sooner, but she reasonably believed that plaintiff's lawyer would make good on his

13.

representations to supply the requested documents. **She has been burned once again.** But the plaintiff was in no way prejudiced by defendant patiently waiting for her to do what she was legally obligated to do.

Plaintiff's lawyer now attempts to resuscitate his long-lapsed right to object by belatedly offering his interpretation of various conversations he purportedly had with defendant's counsel, **inviting the court to deconstruct his attempts to bargain his way out of providing discovery that the plaintiff is legally bound to provide. The court declines to do this.** The defendant is entitled to the discovery it has requested. **Plaintiff's attempt to portray herself as the victim of unfair or oppressive conduct on defendant's part is simply not true.** . . .

At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees to be awarded in connection with this motion. . . .

Ruling on Motion to Compel, September 26, 2004, at 2-4 (emphasis added).

Pursuant to the court's Order, plaintiff's responses were due by October 12, 2004. Unfortunately, however, defendant did not receive any responses nor did plaintiff contact the defendant to discuss the production. Cannavino Aff. dated September 5, 2008, ¶ 19. Therefore, in early on October, defense counsel called plaintiff's attorney to discuss with him the outstanding discovery. Cannavino Aff. dated September 5, 2008 ¶ 20. As he was unavailable, she left him a message concerning plaintiff's need to comply with the court's recent Ruling. Cannavino Aff. dated September 5, 2008 ¶ 20. Because plaintiff's counsel did not return the call, defendant wrote plaintiff's attorney a letter outlining the deficiencies in his responses. Cannavino Aff. dated September 5, 2008, Exhibit C. On October 20, 2004, defense counsel discovered that he had sent the Plaintiff's Supplemental Disclosures to its New Haven office, despite the fact that the attorney who had been working on this matter resided in the firm's Stamford office. Cannavino Aff. dated September 5, 2008 ¶ 22.

### III. STANDARD OF LAW

Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37 provide for the entry

of attorney's fees as a sanction against a party who has failed to comply with its discovery obligations. Courts in the District of Connecticut have awarded attorney's fees as a sanction for failing to comply with discovery. See Chodkowski v. Cuno Inc., Civil No. 3:05cv997 (PCD), 2006 U.S. Dist. LEXIS 20667, at *13-14 (D. Conn. Mar. 30, 2006) (attorneys' fees awarded to defendant moving for sanctions under Fed. R. Civ. P. 37(d) in light of plaintiff's delayed and insufficient discovery response); Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154, at *164, 2004 U.S. Dist. LEXIS 27048 (D. Conn. 2004) ("The court agrees with the defendant that the 'plaintiffs' recalcitrance is not justified under the facts of this case, nor under existing law, and has served only to delay this case and interfere with [defendant's] ability to obtain discovery"); Integrated Control Sys. v. Ellcon-National, Inc., No. 3:00cv1295(PCD), 2003 U.S. Dist. LEXIS 25310, at *5 (D. Conn. Aug. 17, 2003) (awarding attorneys' fees to defendant following plaintiff's failure to comply with court's discovery order and requiring defendant to file motion for attorneys' fees in accordance with court order); Call Ctr. Techs. v. Grand Adventures Tour & Travel Publ. Corp., No. 3:03CV1036(DJS), 2007 U.S. Dist. LEXIS 62063 (D. Conn. Aug. 24, 2007) (finding that plaintiff failed to comply with court order regarding discovery and ordering that plaintiff's counsel pay expenses and attorneys' fees caused by this failure).

IV.     **ARGUMENT**

Plaintiff and her counsel's actions during discovery unnecessarily forced defendant to incur substantial attorney's fees and costs in preparing and following up on 6 Motions to Compel which it was required to file. Even after the court issued orders requiring plaintiff to comply, as set forth above, she did not do so at times without the continued dodging of defense counsel. Moreover, all of the court's Orders on the defendant's Motions to Compel, save the very first one, indicated that attorney's fees were appropriate and two of them (the one related to obtaining

the plaintiff's draft statement and the motion relating to the defendant walking out of her deposition) granted an award of attorney's fees already. The other three orders indicated that the court would determine the amount of fees to be awarded at the conclusion of the case upon the application of defendant. By this motion, defendant sets the amount of attorney's fees incurred and seeks payment of those attorney's fees. Accordingly, plaintiff should be ordered to pay SNET its attorney's fees and costs incurred in (1) obtaining a viewable copy of the videotape, (2) a complete responses to the Second Request for Production of Documents, and (3) a supplemental response to the First Request for Production of Documents.

The total fees incurred were as follows: $3,343.99 for the First Motion to Compel concerning obtaining the videotape; $2,722.65 for the Second Motion to Compel concerning responses to the Second Request for the Production of Documents; $5,507.29 for the Sixth Motion to Compel concerning obtaining responses to the Defendant's First Request for the Production of Documents, Cannavino Aff. dated Sept. 5, 2008, ¶ 8-13.

In addition, counsel for SNET spent 15 hours preparing the instant Motion for Attorney's Fees and Costs, for a total attorney's fee of $4,653.75. See Affidavit of Deborah DeHart Cannavino dated September 5, 2008, ¶ 14.

Therefore, SNET requests an order that plaintiff reimburse SNET $16,227.68 for its attorneys' fees in connection with SNET's Second, Third, and Sixth Motions to Compel, all of which were granted by this Court and for which the Court instructed that an award of attorneys' fees would be considered following the conclusion of the trial. SNET further requests that these amounts be paid by the plaintiff within 30 days of the Court's ruling on this motion.

THE DEFENDANT,

SOUTHERN NEW ENGLAND TELEPHONE COMPANY


By:  /s/ Deborah DeHart Cannavino
    Deborah DeHart Cannavino (ct08144)
    LITTLER MENDELSON, P.C.
    One Stamford Plaza
    263 Tresser Blvd., 9th Floor
    Stamford, CT  06901
    Telephone: (203) 564-1449
    Facsimile: (203) 564-1723
    Email: dcannavino@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the court's CM/ECF System.

**Plaintiff's Counsel**
Peter E. Gillespie, Esq.
46 Riverside Avenue
Post Office Box 3416
Westport, Connecticut 06880


    /s/ Deborah DeHart Cannavino
Deborah DeHart Cannavino

Firmwide:86507938.1 053999.1009